**DEREK SMITH LAW GROUP, PLLC**
IAN M. BRYSON, ESQUIRE
Attorney ID No. 321359
1835 Market Street, Suite 2950
Philadelphia, PA 19103
(215) 391-4790
ian@dereksmithlaw.com
*Attorneys for Plaintiff, Shakiya Brown*

## IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SHAKIYA BROWN,<br><br>                    Plaintiff,<br><br>          v.<br><br>DUNKIN' DONUTS, DUNKIN' DONUTS OF AMERICA, INC., NORTHEAST DONUT SHOPS MANAGEMENT CORPORATION, BRIAN LIN, MISA LIAO, LESHIA EVANS, KIM HONG *and* NAWAZ MATKHAILI,<br><br>                    Defendants. | Civil Action No._____<br><br>**COMPLAINT FOR DECLARATORY JUDGMENT, INJUNCTIVE RELIEF *and* DAMAGES**<br><br>JURY TRIAL DEMANDED |

## Nature of the Action

1. This is an action for relief from violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. ("Title VII"); Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981); the Pennsylvania Human Relations Act, 43 P.S. §§ 951-963 ("PHRA"); the Philadelphia Fair Practices Ordinance, Philadelphia Code §§ 9-1101 et seq. ("PFPO"); the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*; the Pennsylvania Minimum Wage Act of 1968 ("PMWA"), 42 P.S. §§ 333.101, *et seq.*; the Pennsylvania Wage Payment and Collection Law ("WPCL"), 43 P.S. § 260.1, *et seq.*, and Pennsylvania common law assault and battery.

1

2. Plaintiff seeks actual damages, compensatory damages, punitive damages, statutory penalties, reinstatement, pre- and post-judgment interest, reasonable attorneys' fees and costs of suit as remedies for Defendants' violations of her rights.

## Parties

3. Plaintiff Shakiya Brown ("Ms. Brown") is an adult individual resident of Philadelphia County and a citizen of the Commonwealth of Pennsylvania.

4. Defendant Dunkin' Donuts is a business entity registered to do business in the Commonwealth of Pennsylvania located at 1345 W. Olney Ave., Philadelphia, PA 19141. At all relevant times, Defendant acted or failed to act through its agents, servants and employees, each of whom were acting within the course and scope of their employment with Respondent. At all relevant times, Defendant was Plaintiff's employer covered under Title VII, Section 1981, the PHRA, the PFPO, the FLSA, the PMWA, and the WPCL.

5. Defendant Dunkin Donuts of America, Inc. is a business corporation registered to do business in the Commonwealth of Pennsylvania located at 130 Royall St., Canton, MA 02021. At all relevant times, Defendant acted or failed to act through its agents, servants and employees, each of whom were acting within the course and scope of their employment with Defendant. At all relevant times, Defendant was Plaintiff's employer covered under Title VII, Section 1981, the PHRA, the PFPO, the FLSA, the PMWA, and the WPCL.

6. Defendant Northeast Donut Shops Management Corporation is a business corporation registered to do business in the Commonwealth of Pennsylvania located at 1345 W. Olney Ave., Philadelphia, PA 19141. At all relevant times, Respondent acted or failed to

act through its agents, servants and employees, each of whom were acting within the course and scope of their employment with Respondent. At all relevant times, Defendant was Plaintiff's employer covered under Title VII, Section 1981, the PHRA, the PFPO, the FLSA, the PMWA, and the WPCL.

7.  Defendant Nawaz Matkhaili is an adult individual residing at 304 S. 52nd St., Philadelphia, PA 19143. Defendant Marjkaili was Plaintiff's coworker who sexually harassed and sexually assaulted Plaintiff. At all relevant times, Defendant acted or failed to act in the course and scope of his employment with Defendants.

8.  Defendant Brian Lin is an adult individual with a principal place of business located at 1345 W. Olney Ave., Philadelphia, PA 19141. Defendant Lin was Plaintiff's store manager and supervisor. At all relevant times, Defendant acted or failed to act in the course and scope of his employment with Defendants.

9.  Defendant Misa Liao is an adult individual with a principal place of business located at 1345 W. Olney Ave., Philadelphia, PA 19141. Defendant Liao was Plaintiff's manager and supervisor. At all relevant times, Defendant acted or failed to act in the course and scope of her employment with Defendants.

10. Defendant Leshia Evans is an adult individual with a principal place of business located at 1345 W. Olney Ave., Philadelphia, PA 19141. Defendant Evans was Plaintiff's human resources manager and supervisor. At all relevant times, Defendant acted or failed to act in the course and scope of her employment with Defendant.

11. Defendant Kim Hong is an adult individual with a principal place of business located at 1345 W. Olney Ave., Philadelphia, PA 19141. Defendant Hong was Plaintiff's

supervisor. At all relevant times, Defendant acted or failed to act in the course and scope of her employment with Defendants.

12. Defendants Dunkin Donuts, Dunkin Donuts of America, Inc. and Northeast Donut Shops Management Corporation were Plaintiff's joint employers who at all relevant times exercised joint control and dominion over the location of the work, discretion over the duration of the relationship between the parties, power of hiring and firing, responsibility over the method of payment and provision of employee benefits, and control over the daily activity of the workers, including assignment of work, direct supervision of workers, training and furnishing of materials.

13. At all relevant times, Defendants were "employers" and Ms. Brown was an "employee" within the meaning of the applicable law.

14. Defendants systematically and willfully violate workers' rights under Title VII, Section 1981, the PHRA, the PFPO, the FLSA, the PMWA, and the WPCL.

**Exhaustion of Administrative Remedies**

15. Ms. Brown timely filed a charges of discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") and the Philadelphia Commission on Human Relations ("PCHR") alleging violations of Title VII, the PHRA and the PFPO.

16. Plaintiff's PHRA and PFPO claims are still pending before PCHR because less than one year has elapsed since PCHR assumed jurisdiction over Plaintiff's charges. After one year, Plaintiff will seek leave to amend this complaint to assert her PHRA and PFPO claims against Defendants.

17. EEOC issued Ms. Brown a Notice of Right to Sue Within 90 Days.

18. Ms. Brown has timely filed this action and has complied with all administrative prerequisites to bring this lawsuit.

## Jurisdiction and Venue

19. This Court has jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1331 because it involves questions of federal law under the Title VII, Section 1981 and the FLSA.

20. This Court has supplemental jurisdiction over Plaintiff's PHRA, PFPO, PMWA, WPCL and Assault and Battery claims pursuant to 28 U.S.C. § 1367 because they arise from the same nucleus of operative facts as Plaintiff's Title VII, Section 1981 and FLSA claims.

21. Venue in this judicial district is proper pursuant to 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(f)(3) because the acts and omissions giving rise to Plaintiff's claims occurred here and Defendants are subject to personal jurisdiction here.

## Facts

22.  Ms. Brown is an adult Black female of African American descent who worked at Respondents' Dunkin Donuts store located at 1345 W. Olney Ave., Philadelphia, PA 19141.

23. Ms. Brown started working at Dunkin' Donuts on May 18, 2021 earning a minimum hourly wage.

24. From the beginning of her employment until her termination, Plaintiff's coworkers and supervisors subject Plaintiff to daily Race-, Color- and Sex-based discrimination, harassment and retaliation, which filled Plaintiff's workplace.

25. Defendants treated Ms. Brown with a pattern of antagonism including Race-, Color- and Sex-based insults and epithets.

26. On May 28, 2021, Defendants left Ms. Brown to close the store with Defendant Nawaz Matkhaili, who had a reputation for sexually harassing and assaulting women in the workplace.

27. On that date, Defendant Matkhaili asked Ms. Brown multiple sexual questions, and she responded stating his conduct was unwelcome.

28. Defendant Matkhaili then followed Ms. Brown to the back of the store where he grabbed and groped her breasts and pressed his erect penis into her buttocks.

29. Defendant Matkhaili then followed Ms. Brown into the bathroom and locked the door to prevent Ms. Brown from escaping.

30. Defendant Matkhaili then undressed himself and tried to force Ms. Brown to touch his penis.

31. Defendant Matkhaili then attempted to remove Ms. Brown's shirt.

32. On May 28, 2021, Ms. Brown reported the rape to her manager, Defendant Liao, via telephone.

33. On May 29, 2021, Ms. Brown reported the rape to Defendant Liao in person.

34. Defendant Liao told Ms. Brown that Defendant Matkhaili's conduct was "ok" because "he's like that with every girl" and stated "he likes girls, it's ok." Defendant Liao further stated, "you know he is a bad boy. He be touching me too."

35. Defendants refused to investigate Ms. Brown's complaint.

36. Between May 28, 2021 and June 9, 2021, Defendants continued putting Ms. Brown on the schedule with Defendant Matkhaili in spite of Ms. Brown's complaints and protests.

37. Defendants continued scheduling Ms. Brown to close the store alone with Defendant Matkhaili.

38. Ms. Brown brought her sister to work one night because she was afraid to work alone with Defendant Matkhaili. Defendant Matkhaili began sexually harassing Ms. Brown's sister and the two women left 30 minutes before the end of Ms. Brown's scheduled shift due to the ongoing harassment.

39. On June 9, 2021, Ms. Brown reported the rape to the Philadelphia Police Department, who initiated an investigation.

40. On June 9, 2021, Ms. Brown reported the rape to her Dunkin Donuts corporate HR.

41. After Ms. Brown reported the rape to the police, Defendant Liao called Ms. Brown and said she was "scared" that Ms. Brown called the police. After that, Defendant Lin acknowledged to that the police were investigating Ms. Brown's complaint.

42. Defendants failed to conduct a prompt, thorough investigation thereby allowing Defendant Matkhaili's harassment to continue.

43. Defendant Matkhaili threatened Ms. Brown, stating "You tried to get me locked up? Better hope I never catch your black ass!"

44. Defendant Liao informed Ms. Brown that the reason that Defendants refused to investigate Ms. Brown's complaint was because Ms. Brown is Black.

45. Defendant Liao informed Ms. Brown that she didn't care that Ms. Brown was sexually assaulted because Ms. Brown is Black.

46. Defendant Liao further stated to Ms. Brown that all the Black employees, including Ms. Brown, "are lazy."

47. Thereafter, Defendants showed the video footage of the rape to Ms. Brown's coworkers.

48. Defendants cut Ms. Brown's hours.

49. Defendants failed to pay Ms. Brown for all hours worked.

50. Defendants failed to pay Ms. Brown overtime compensation for all hours worked over 40 hours in a workweek.

51. Defendants refusing to show Ms. Brown her clock in and clock out times as requested.

52. Defendants refusing to allow Ms. Brown to apply for a manager position.

53. Defendants scheduled Ms. Brown to work very early in the morning even though when Ms. Brown was hired she indicated she could not come in that early due to her bus schedule.

54. Defendants refused to share tips with Ms. Brown.

55. Defendants refused to provide Ms. Brown with a uniform that was provided to all of her similarly situated coworkers who did not share Ms. Brown's protected characteristics.

56. Defendants made discriminatory race-based comments about Ms. Brown's hair.

57. Defendants subjected Ms. Brown to excessive oversight.

58. Plaintiff complained to Defendants about the ongoing discrimination and harassment on several occasions, however Defendants failed to take prompt remedial action and allowed the discrimination and harassment to continue and increase in severity.

59. Defendants did not treat Plaintiff's similarly situated non-Black/Female coworkers with the same disdain with which they treated Plaintiff.

60. Defendants' discrimination, harassment and retaliation has forced Ms. Brown to require ongoing medical care and therapy.

61. On August 12, 2021, Defendants terminated Ms. Brown's employment under conditions of an ongoing hostile work environment.

62. Ms. Brown claims unlawful actual and/or constructive discharge.

63. At all relevant times, Ms. Brown was qualified for the position and his performance was satisfactory and in accordance with the employer's expectations for the position.

64. As a result of Defendants' conduct, Ms. Brown was caused to sustain serious and permanent personal injuries, including permanent psychological injuries.

65. As a result of Defendants' actions, Ms. Brown felt extremely humiliated, degraded, victimized, embarrassed and emotionally distressed.

66. As a result of the acts and conduct complained of herein, Ms. Brown has suffered and will continue to suffer the loss of income, loss of salary, loss of benefits and other compensation which his employment entailed.

67. Ms. Brown also suffers future pecuniary losses, emotional pain, humiliation, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

68. Ms. Brown has further experienced severe emotional and physical distress.

69. As Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Ms. Brown demands Punitive Damages as against all the Defendants, jointly and severally.

70. Defendants have exhibited a pattern and practice of not only discrimination but also retaliation.

71. Defendants at all times refused to investigate or take appropriate remedial action in response to Ms. Brown's complaints of discrimination, harassment and hostile work environment.

72. Defendants' discriminatory conduct was severe and pervasive, creating a hostile work environment for Ms. Brown.

73. Ms. Brown claims a practice of discrimination and claims continuing violations and makes all claims herein under the continuing violations doctrine.

74. Defendants have exhibited a pattern and practice of not only discrimination but also retaliation.

75. Defendants discriminated against Plaintiff for opposing and/or complaining about Defendants' unlawful practices under Title VII, Section 1981, the PHRA and the PFPO.

76. Defendants discriminated against, harassed and retaliated against Plaintiff in the terms and conditions of her employment because of Race, Color and Sex.

77. Defendants subjected Plaintiff to a hostile work environment because of Race, Color and Sex and because she complained about Defendants' unlawful conduct.

78. Defendants retaliated against Plaintiff because she reported or otherwise opposed Defendants' unlawful discriminatory Race-, Color- and Sex-based conduct and practices.

79. The above are just some examples, of some of the discrimination and retaliation to which Defendants subjected Ms. Brown.

80. Because of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, salary, bonuses, benefits and other compensations which such employment entails; as well as past and future pecuniary losses, emotional distress, humiliation, suffering, inconvenience, loss of enjoyment of life activities, and other non-pecuniary loses.

**Causes of Action**

**Count I**
**Section 1981 Disparate Treatment**
**42 U.S.C. § 1981**
**Plaintiff v. All Defendants**

81. Plaintiff incorporates by reference each and every allegation made in the above

paragraphs of this complaint.

82. Section 1981 prohibits race discrimination in the making and enforcing of contracts. 42

U.S.C. § 1981.

83. The Third Circuit has stated that "a wide panoply of adverse employment actions may be

the basis of employment discrimination suits under Title VII of the Civil Rights Act and

42 U.S.C. § 1981." Clark v. Twp. of Falls, 890 F.2d 611, 618-19 (3d Cir. 1989).

84. The Third Circuit has treated Section 1981 claims and Title VII claims interchangeably

with respect to adverse employment actions. See, e.g., Barnees v. Nationwide Mut. Ins.

Co., 598 Fed. Appx. 86, 90 (3d Cir. 2015); Storey v. Burns Int'l Sec. Servs., 390 F.3d

760, 764 (3d Cir. 2004) (a Title VII case); Thompson v. City of Waco, 764 F.3d 500, 503

(5th Cir. 2014) (a Section 1981 case).

85. Under Section 1981, both employers and individual employees can be liable for

discrimination in employment. See Cardenas v. Massey, 269 F.3d 251, 268 (3d Cir.

2001) ("Although claims against individual supervisors are not permitted under Title VII,

this court has found individual liability under § 1981 when [the defendants] intentionally

cause an infringement of rights protected by Section 1981,  regardless of whether the

[employer] may also be held liable."); Al-Khazraji v. Saint Francis College, 784 F.2d

505, 518 (3d Cir. 1986) ("employees of a corporation may become personally liable

when they intentionally cause an infringement of rights protected by Section 1981,

regardless of whether the corporation may also be held liable").

86. Defendants violated Section 1981 by intentionally discriminating against Plaintiff in a

serious tangible way with respect to her compensation, terms, conditions or privileges of

employment.

87. Plaintiff's race characteristics were a determinative or motivating factor in Defendants'

employment actions.

88. Defendants cannot show any legitimate nondiscriminatory reason for their employment

practices and any reasons proffered by the Defendants for their actions against Plaintiff

are pretextual and can readily be disbelieved.

89. Plaintiff's protected status played a motivating part in the Defendants' decisions even if

other factors may also have motivated Defendants' actions against Plaintiff.

90. Defendants acted with the intent to discriminate.

91. Defendants acted upon a continuing course of conduct.

92. Defendants acted with malice or reckless indifference to Plaintiff's federally protected

rights and as a result there should be an award of punitive damages against Defendants.

93. As a result of Defendants' violations of Section 1981, Plaintiff has suffered damages,

including, but not limited to: past and future lost wages, pain and suffering,

inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress,

reputational harm, diminishment of career opportunities, and other harm, both tangible

and intangible.

**WHEREFORE**, Plaintiff demands judgment against Defendants and prays for the following

relief: (1) actual damages; (2) compensatory damages in an amount consistent with Section

1981; (3) reasonable attorneys' fees in accordance with Section 1981; (4) litigation costs in

accordance with Section 1981; (5) pre- and post-judgment interest as further allowed by law; (6)

an adjudication and declaration that Defendants' conduct as set forth herein is in violation of

Section 1981; (7) punitive damages in accordance with Section 1981; (8) front pay in accordance

with Section 1981 (9) all additional general and equitable relief to which Plaintiff is entitled.

<strong>Count II<br>
Section 1981 Hostile Work Environment<br>
42 U.S.C. § 1981<br>
Plaintiff v. All Defendants</strong>

94. Plaintiff incorporates by reference each and every allegation made in the above

paragraphs of this complaint.

95. The standards for a hostile work environment claim are identical under Title VII and

Section 1981. See, e.g., Verdin v. Weeks Marine Inc., 124 Fed. Appx. 92, 95 (3d Cir.

2005) ("Regarding [plaintiff's] hostile work environment claim, the same standard used

under Title VII applies under Section 1981."); Ocasio v. Lehigh Valley Family Health

Center, 92 Fed.Appx. 876, 879-80 (3d Cir. 2004) ("As amended by the 1991 Civil Rights

Act, § 1981 now encompasses hostile work environment  claims, and we apply the same

standards as in a similar Title VII claim.").

96. While the standards of liability are identical under Title VII and Section 1981, there is a

major difference in the coverage of the two provisions: under Title VII, only employers

can be liable for discrimination in employment, but under Section 1981, individuals,

including other employees, can be liable for racial discrimination against an employee.

See Cardenas, 269 F.3d at 268; Al-Khazarji, 784 F.2d at 518.

97. Defendants subjected Plaintiff to harassment motivated by Plaintiff's race characteristics.

98. Defendants' conduct was not welcomed by Plaintiff.

99. Defendants' conduct was so severe or pervasive that a reasonable person in Plaintiff's position would find the work environment to be hostile or abusive.

100.    Plaintiff believed her work environment was hostile or abusive as a result of Defendants' conduct.

101.    As a result of the hostile work environment, Plaintiff suffered a "tangible employment action" defined as a significant change in employment status, failure to promote, reassignment with significantly different responsibilities, and/or a decision causing a significant change in benefits.

102.    Defendants failed to exercise reasonable care to prevent racial harassment in the workplace by failing to establish an explicit policy against harassment in the workplace on the basis of race, failing to fully communicate the policy to its employees, failing to provide a reasonable way for Plaintiff to make a claim of harassment to higher management, and failing to take reasonable steps to promptly correct the harassing behavior raised by Plaintiff.

103.    Defendants acted upon a continuing course of conduct.

104.    As a result of Defendants' violations of Section 1981, Plaintiff has suffered damages, including, but not limited to: past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

**WHEREFORE**, Plaintiff demands judgment against Defendants and prays for the following relief: (1) actual damages; (2) compensatory damages in an amount consistent with Section 1981; (3) reasonable attorneys' fees in accordance with Section 1981; (4) litigation costs in

accordance with Section 1981; (5) pre- and post-judgment interest as further allowed by law; (6)

an adjudication and declaration that Defendants' conduct as set forth herein is in violation of

Section 1981; (7) punitive damages in accordance with Section 1981; (8) front pay in accordance

with Section 1981 (9) all additional general and equitable relief to which Plaintiff is entitled.

### Count III
### Section 1981 Retaliation
### 42 U.S.C. § 1981
### Plaintiff v. All Defendants

105.    Plaintiff incorporates by reference each and every allegation made in the above

paragraphs of this complaint.

106.    The Supreme Court has held that retaliation claims are cognizable under Section

1981 despite the absence of specific statutory language. CBOCS West, Inc. v.

Humphries, 553 U.S. 442 (2008).

107.    The Third Circuit has indicated that the legal standards for a retaliation claim

under Section 1981 are generally the same as those applicable to a Title VII retaliation

claim. See, e.g., Cardenas v. Massey, 269 F.3d 251, 263 (3d Cir. 2001) ("[T]o establish a

prima facie retaliation claim under Title VII [or] § 1981 … , [a plaintiff] must show: (1)

that he engaged in a protected activity; (2) that he suffered an adverse employment

action; and (3) that there was a causal connection between the protected activity and the

adverse employment action"); Khair v. Campbell Soup Co., 893 F. Supp. 316, 335-36

(D.N.J. 1995) (noting that with respect to retaliation claims, "The Civil Rights Act of

1991 extended § 1981 to the reaches of Title VII.").

108.    The most common activities protected from retaliation under Section 1981 and

Title VII are: (1) opposing unlawful discrimination; (2) making a charge of employment

discrimination; (3) testifying, assisting or participating in any manner in an investigation,

proceeding or hearing under Section 1981. See Robinson v. City of Pittsburgh, 120 F.3d

1286, 1299 (3d Cir. 1997) (filing discrimination complaint constitutes protected activity),

overruled on other grounds by Burlington N. & S.F. Ry. Co. v. White, 126 S. Ct. 2405

(2006); Kachmar v. Sungard Data Sys., Inc., 109 F.3d 173, 177 (3d Cir. 1997)

(advocating equal treatment was protected activity); Aman v. Cort Furniture, 85 F.3d

1074, 1085 (3d Cir. 1989) (under Title VII's anti-retaliation provision "a plaintiff need

not prove the merits of the underlying discrimination complaint, but only that 'he was

acting under a good faith, reasonable belief that a violation existed'"); Griffiths v.

CIGNA Corp., 988 F.2d 457, 468 (3d Cir. 1993); Sumner v. United States Postal Service,

899 F.2d 203, 209 (2d Cir. 1990), overruled on other grounds by Miller v. CIGNA Corp.,

47 F.3d 586 (3d Cir. 1995).

109.    Here, Defendants discriminated against Plaintiff because of her protected activity

under Section 1981.

110.    Plaintiff was acting under a reasonable, good faith belief that her right to be free

from discrimination on the basis of race was violated.

111.    Plaintiff was subjected to a materially adverse action at the time, or after the

protected conduct took place.

112.    There was a causal connection between Defendants' materially adverse actions

and Plaintiff's protected activity. In determining whether a plaintiff has produced

evidence of causation, courts in the Third Circuit focus on two indicia: timing and

evidence of ongoing antagonism. Plaintiff will rely on a broad array of evidence to

demonstrate a causal link between her protected activity and Defendants' actions taken

against her, such as the unusually suggestive proximity in time between events, as well as

Defendants' antagonism and change in demeanor toward Plaintiff after Defendants became aware of Plaintiff's protected activity.

113.     Defendants' actions were "materially adverse" because they were serious enough to discourage a reasonable worker from engaging in protected activity.

114.     Defendants acted upon a continuing course of conduct.

115.     Plaintiff will rely on a broad array of evidence to demonstrate a causal link between their protected activity and Defendants' actions taken against her, such as the unusually suggestive proximity in time between events, as well as Defendants' antagonism and change in demeanor toward Plaintiff after Defendants became aware of her protected activity.

116.     As a result of Defendants' violations of Section 1981, Plaintiff has suffered damages, including, but not limited to: past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

**WHEREFORE**, Plaintiff demands judgment against Defendants and prays for the following relief: (1) actual damages; (2) compensatory damages in an amount consistent with Section 1981; (3) reasonable attorneys' fees in accordance with Section 1981; (4) litigation costs in accordance with Section 1981; (5) pre- and post-judgment interest as further allowed by law; (6) an adjudication and declaration that Defendants' conduct as set forth herein is in violation of Section 1981; (7) punitive damages in accordance with Section 1981; (8) front pay in accordance with Section 1981; and (9) all additional general and equitable relief to which Plaintiff is entitled.

**Count IV**
**Title VII Disparate Treatment**
**42 U.S.C. § 2000e-2**
**Plaintiff v. Dunkin' Donuts, Dunkin' Donuts of American, Inc., and Northeast Donut Shops Management Corp.**

117.     Plaintiff incorporates by reference each and every allegation made in the above paragraphs of this complaint.

118.     Title VII provides, in relevant part, that "it shall be an unlawful employment practice for an employer . . . to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of [her] race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).

119.     Title VII further provides that "un unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice." 42 U.S.C. § 2000e-2(m).

120.     Defendants engaged in unlawful employment practices prohibited by Title VII by intentionally discriminating against Ms. Brown with respect to her compensation, terms, conditions, training and privileges of employment because of her race, color and sex and in retaliation for her protected activity.

121.     Defendants subjected Ms. Brown to adverse tangible employment actions— defined as significant changes in Plaintiff's employment status, discipline, denial of training, failure to promote, reassignment with significantly different job responsibilities, and decisions causing changes in significant changes in her employment benefits.

122.     Ms. Brown's protected characteristics played a determinative factor in Defendants' decisions.

123.     Defendants cannot show any legitimate nondiscriminatory reasons for their employment practices and any reasons proffered by Defendants for their actions against Plaintiff are pretextual and can readily be disbelieved.

124.     Alternatively, Ms. Brown's protected status played a motivating part in Defendants' decisions even if other factors may also have motivated their actions against her.

125.     Defendants acted with the intent to discriminate.

126.     Defendants acted upon a continuing course of conduct.

127.     As a result of Defendants' violations of Title VII, Plaintiff has suffered damages, including, but not limited to past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

**WHEREFORE**, Plaintiff demands judgment against Defendants and prays for the following relief: (1) an award of compensatory damages in an amount consistent with Title VII; (2) an award of reasonable attorneys' fees and costs of this action in accordance with Title VII; (3) an award of pre- and post-judgment interest and court costs as further allowed by law; (4) an adjudication and declaration that Defendants' conduct as set forth herein is in violation of Title VII; and (5) all additional general and equitable relief to which Plaintiff is entitled.

**Count V**
**Title VII Hostile Work Environment**
**42 U.S.C. § 2000e-2**
**Plaintiff v. Dunkin' Donuts, Dunkin' Donuts of American, Inc., and Northeast Donut Shops**
**Management Corp.**

128.     Plaintiff incorporates by reference each and every allegation made in the above

paragraphs of this complaint.

129.     Title VII also prohibits hostile work environment harassment, defined as

unwanted comments or conduct regarding the plaintiff's protected characteristics that

have the purpose or effect of unreasonably interfering with the terms and conditions of

the plaintiff's employment. Harris v. Forklift Systems, 510 U.S. 17, 21 (1993).

130.     An employer is strictly liable for supervisor harassment that "culminates in a

tangible employment action, such as discharge, demotion, or undesirable reassignment."

Burlington Industries, Inc. v. Ellerth, 524 U.S. 742 (1998).

131.     Respondeat superior liability for the acts of non-supervisory employees exists

where "the defendant knew or should have known of the harassment and failed to take

prompt remedial action. Andrews v. City of Philadelphia, 895 F.2d 1469, 1486 (3d Cir.

1990).

132.     Employer liability for co-worker harassment also exists where "the employer

failed to provide a reasonable avenue for complaint." Huston v. Procter & Gamble Paper

Prods. Corp., 568 F.3d 100, 105 (3d Cir. 2009).

133.     The Third Circuit has held that the retaliation provision of Title VII "can be

offended by harassment that is severe or pervasive enough to create a hostile work

environment." Jensen v. Potter, 435 F.3d 444, 446 (3d Cir. 2006).

134.     Here, Defendants' conduct occurred because of Ms. Brown's legally protected characteristics and was severe or pervasive enough to make a reasonable person of the same legally protected classes believe that the conditions of employment were altered and that the working environment was intimidating, hostile or abusive.

135.     The harassing conduct directly refers to Plaintiff's race, color and sex, and her protected activity.

136.     Defendants delegated to Plaintiff's supervisors the authority to control the work environment and they abused that authority to create a hostile work environment.

137.     Harassing conduct filled the environment of Plaintiff's work area.

138.     Defendants knew that the harassing conduct filled Plaintiff's work environment.

139.     Harassing conduct occurred daily.

140.     Harassing conduct caused Plaintiff to sustain severe emotional distress resulting in physical illness and serious psychological sequelae.

141.     Plaintiff subjectively regarded the harassing conduct as unwelcome and unwanted and objectively opposed the conduct.

142.     The conduct was both severe and pervasive.

143.     The conduct was physically threatening and humiliating.

144.     The conduct unreasonably interfered with Plaintiff's work performance.

145.     The conduct was so extreme that it resulted in material changes to the terms and conditions of Plaintiff's employment.

146.     Defendants provided a futile avenue for complaint.

147.     Defendants retaliated against Plaintiff for her complaints.

148.     Defendants acted upon a continuing course of conduct.

149.    As a result of Defendants' violations of Title VII, Plaintiff has suffered damages, including, but not limited to past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

**WHEREFORE**, Plaintiff demands judgment against Defendants and prays for the following relief: (1) an award of compensatory damages in an amount consistent with Title VII; (2) an award of reasonable attorneys' fees and costs of this action in accordance with Title VII; (3) an award of pre- and post-judgment interest and court costs as further allowed by law; (4) an adjudication and declaration that Defendants' conduct as set forth herein is in violation of Title VII; and (5) all additional general and equitable relief to which Plaintiff is entitled.

**Count VI**
**Title VII Retaliation**
**42 U.S.C. § 2000e-3**
**Plaintiff v. Dunkin' Donuts, Dunkin' Donuts of American, Inc., and Northeast Donut Shops Management Corp.**

150.    Plaintiff incorporates by reference each and every allegation made in the above paragraphs of this complaint.

151.    Title VII protects employees from retaliation for attempting to exercise their rights under the Act:

> 42 U.S.C. § 2000e-3. Other unlawful employment practices
> (a) Discrimination for making charges, testifying, assisting, or participating in enforcement proceedings. It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because [she] has opposed any practice made an unlawful employment practice by this subchapter, or because [she] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

152.    The Supreme Court in <u>Burlington v. N. & S.F. Ry. V. White</u>, 548 U.S. 53, 68 (2006) held that a cause of action for retaliation under Title VII lies whenever the employer responds to protected activity in such a way that "might have dissuaded a reasonable worker from making or supporting a charge of discrimination."

153.    Informal complaints and protests can constitute protected activity under the "opposition" clause of 42 U.S.C. § 2000e-3(a). <u>Moore v. City of Philadelphia</u>, 461 F.3d 331, 343 (3d Cir. 2006) ("Opposition to discrimination can take the form of informal protests of discriminatory employment practices, including making complaints to management.").

154.    Title VII's anti-retaliation provision also protects employees who speak out about discrimination by answering questions during an employer's internal investigation. <u>Crawford v. Metropolitan Gov't of Nashville and Davidson Cty., Tennessee</u>, 555 U.S. 271, 277 (2009) (declaring that there is "no reason to doubt that a person can 'oppose' by responding to someone else's question just as surely as by provoking the discussion, and nothing in the statute requires a freakish rule protecting an employee who reports discrimination on her own initiative but not one who reports the same discrimination in the same words when her boss asks a question.").

155.    Retaliation need not be job-related to be actionable under Title VII—an employer can effectively retaliate against an employee by taking actions not directly related to her employment or by causing her harm outside the workplace. <u>White</u>, 548 U.S. at 61-62 (rejecting authority from the Third Circuit and others requiring that the plaintiff suffer an adverse employment action in order to recover for retaliation).

156.      "[A] plaintiff need not prove the merits of the underlying discrimination

complaint, but only that '[she] was acting under a good faith, reasonable belief that a

violation existed.'" <u>Aman v. Cort Furniture Rental Corp.</u>, 85 F.3d 1074, 1085 (3d Cir.

1996); <u>Griffiths v. CIGNA Corp.</u>, 988 F.2d 457, 468 (3d Cir. 1993); <u>Sumner v. United</u>

<u>States Postal Service</u>, 899 F.2d 203, 209 (2d Cir. 1990), <u>overruled on other grounds</u> by

<u>Miller v. CIGNA Corp.</u>, 47 F.3d 586 (3d Cir.1995).

157.      An employee need not be a member of a protected class to be subject to

actionable retaliation under Title VII. <u>See</u> <u>Moore</u>, 461 F.3d at 342 ("Title VII's

whistleblower protection is not limited to those who blow the whistle on their own

mistreatment or on the mistreatment of their own race, sex, or other protected class.")

158.      Here, Defendants discriminated against Plaintiff because of her protected activity

under Title VII.

159.      Plaintiff was acting under a reasonable, good faith belief that her right to be free

from discrimination on the basis of race, color, sex and retaliation was violated.

160.      Plaintiff was subjected to materially adverse actions at the time or after the

protected conduct took place.

161.      There was a causal connection between Defendants' materially adverse actions

and Plaintiff's protected activity. In determining whether a plaintiff has produced

evidence of causation, courts in the Third Circuit focus on two indicia: timing and

evidence of ongoing antagonism. Plaintiff will rely on a broad array of evidence to

demonstrate a causal link between her protected activity and Defendants' actions taken

against her, such as the unusually suggestive proximity in time between events, as well as

Defendants' antagonism and change in demeanor toward Plaintiff after Defendants became aware of Plaintiff's protected activity.

162.     Defendants' actions were "materially adverse" because they were serious enough to discourage a reasonable worker from engaging in protected activity.

163.     Defendants acted upon a continuing course of conduct.

164.     Plaintiff will rely on a broad array of evidence to demonstrate a causal link between her protected activity and Defendants' actions taken against her, such as the unusually-suggestive proximity in time between events, as well as Defendants' antagonism and change in demeanor (such as taking away Plaintiff's shifts) toward Plaintiff after Defendants became aware of Plaintiff's protected activity.

165.     As a result of Defendants' violations of Title VII, Plaintiff has suffered damages, including, but not limited to past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

**WHEREFORE**, Plaintiff demands judgment against Defendants and prays for the following relief: (1) an award of compensatory damages in an amount consistent with Title VII; (2) an award of reasonable attorneys' fees and costs of this action in accordance with Title VII; (3) an award of pre- and post-judgment interest and court costs as further allowed by law; (4) an adjudication and declaration that Defendants' conduct as set forth herein is in violation of Title VII; and (5) all additional general and equitable relief to which Plaintiff is entitled.

## Count VII
## Failure to Pay Minimum Wages
## Fair Labor Standards Act, 29 U.S.C. Section 201, et seq.
## Plaintiff v. Dunkin' Donuts, Dunkin' Donuts of American, Inc., and Northeast Donut Shops Management Corp.

166.      Plaintiff repeats every allegation made in the above paragraphs of this complaint.

167.      Pursuant to Section 206 of the FLSA, employees must be paid certain minimum wages for each hour worked in a workweek.

168.      The FLSA entitles employees to a minimum hourly wage of $7.25.

169.      Over the course of Plaintiff's employment with Defendants, Plaintiff was denied their statutorily mandated minimum wages for all hours worked.

170.      The foregoing actions, policies and practices of Defendants violate the FLSA.

171.      Defendants' actions were willful, in bad faith, and in reckless disregard of clearly applicable FLSA provisions.

172.      Defendants are liable to Plaintiff for actual damages, liquidated damages and other relief, pursuant to 29 U.S.C. § 216(b), as well as reasonable attorneys' fees, costs and expenses.

**WHEREFORE**, Plaintiff prays for the following relief: (a) Adjudicating and declaring that Defendants' conduct as set forth herein and above is in violation of the FLSA; (b) Adjudicating and declaring that Defendants violated the FLSA by failing to pay minimum wages to Plaintiff; (c) Awarding Plaintiff such minimum wages as are due and owing in an amount consistent with the FLSA; (d) Awarding Plaintiff liquidated damages in accordance with the FLSA; (e) Awarding Plaintiff reasonable attorneys' fees and all costs of this action, to be paid by Defendants, in accordance with the FLSA; (f) Awarding pre- and post-judgment interest and court costs as further allowed by law; (g) Granting Plaintiff to add additional plaintiffs by

motion, the filing of written opt in consent forms, or any other method approved by the Court;

and (h) For all additional general and equitable relief to which Plaintiff is are entitled.

**Count VIII**
**Failure to Pay Overtime Compensation**
**Fair Labor Standards Act, 29 U.S.C. Section 201, et seq.**
**Plaintiff v. Dunkin' Donuts, Dunkin' Donuts of American, Inc., and Northeast Donut Shops**
**Management Corp.**

173.     Plaintiff repeats every allegation made in the above paragraphs of this complaint.

174.     Pursuant to Section 206(b) of the FLSA, all employees must be compensated for

every hour worked in a workweek.

175.     Moreover, Section 207(a)(1) of the FLSA states that employees must be paid

overtime, equal to 1.5 times the employees' regular rate of pay, for all hours worked in

excess of 40 hours per week.

176.     According to the policies and practices of Defendants, Plaintiff worked in excess

of 40 hours per week. Despite working in excess of 40 hours per week, Plaintiff and was

denied overtime compensation at a rate of 1.5 times the statutorily mandated minimum

wage for compensable work performed in excess of 40 hours per week in violation of the

FLSA.

177.     The forgoing actions, policies and practices of Defendants violate the FLSA.

178.     Defendants' actions were willful, in bad faith, and in reckless disregard of clearly

applicable FLSA provisions.

179.     Defendants are liable to Plaintiff for actual damages, liquidated damages and

other relief, pursuant to 29 U.S.C. § 216(b), as well as reasonable attorneys' fees, costs

and expenses.

**WHEREFORE**, Plaintiff prays for the following relief: (a) Adjudicating and declaring that Defendants' conduct as set forth herein and above is in violation of the FLSA; (b) Adjudicating and declaring that Defendants violated the FLSA by failing to pay overtime compensation to Plaintiff for work performed in excess of 40 hours per week; (c) Awarding Plaintiff such overtime compensation as is due and owing in an amount consistent with the FLSA; (d) Awarding Plaintiff damages in accordance with the FLSA; (e) Awarding Plaintiff reasonable attorneys' fees and all costs of this action, to be paid by Defendants, in accordance with the FLSA; (f) Awarding pre- and post-judgment interest and court costs as further allowed by law; (g) Granting Plaintiff leave to add additional plaintiffs by motion, the filing of written opt in consent forms, or any other method approved by the Court; and (h) For all additional general and equitable relief to which Plaintiff is entitled.

### Count IX
### Failure to Pay Minimum Wages
### Pennsylvania Minimum Wage Act, 42 P.S. Section 333.101, et seq.
### Plaintiff v. Dunkin' Donuts, Dunkin' Donuts of American, Inc., and Northeast Donut Shops Management Corp.

180.     Plaintiff repeats every allegation made in the above paragraphs of this complaint.

181.     At all relevant times, Defendants have employed Plaintiff within the meaning of the PMWA.

182.     Defendants have a willful policy and practice of requiring employees to work without receiving renumeration for such work.

183.     Defendants have a willful policy and practice of failing to pay employees the full minimum wages for all hours worked.

184.     Defendants have violated and continue to violate the PMWA.

185.     Due to Defendants' violations, Plaintiff is entitled to recover from Defendants the amount of unpaid minimum wages, attorneys' fees and costs.

**WHEREFORE**, Plaintiff prays for the following relief: (a) An award to Plaintiff for the amount of unpaid minimum wages to which she is entitled, including interest thereon, and penalties subject to proof; (b) An award to Plaintiff for reasonable attorneys' fees and all costs; and (c) An award to Plaintiff for any other damages available to them under applicable state law, and all such other relief as this Court may deem just and proper.

**Count X**
**Failure to Pay Overtime Compensation**
**Pennsylvania Minimum Wage Act, 42 P.S. Section 333.101, et seq.**
**Plaintiff v. Dunkin' Donuts, Dunkin' Donuts of American, Inc., and Northeast Donut Shops Management Corp.**

186.     Plaintiff repeats every allegation made in the above paragraphs of this complaint.

187.     At all relevant times, Defendants have employed Plaintiff within the meaning of the PMWA.

188.     Defendants have a willful policy and practice of refusing to pay overtime compensation at a rate of 1.5 times the regular rate for all hours worked in excess of 40 hours per workweek.

189.     Defendants have a willful policy and practice of failing to pay overtime compensation due and owing.

190.     Defendants have a willful policy and practice of not paying employees for all hours worked.

191.     Accordingly, Defendants have violated and continue to violate the PMWA.

192.     Due to Defendants' violations, Plaintiff is entitled to recover from Defendants the amount of unpaid overtime compensation, attorneys' fees and costs.

**WHEREFORE**, Plaintiff prays for the following relief: (a) An award to Plaintiff for the amount of unpaid overtime compensation to which they are entitled, including interest thereon, and penalties subject to proof; (b) An award to Plaintiff for reasonable attorneys' fees and all costs; and (c) An award to Plaintiff for any other damages available to them under applicable state law, and all such other relief as this Court may deem just and proper.

**Count XI**
**Failure to Pay Wages**
**Pennsylvania Wage Payment and Collection Law, 43 P.S. § 260.1, *et seq***
**Plaintiff v. Dunkin' Donuts, Dunkin' Donuts of American, Inc., and Northeast Donut Shops Management Corp.**

193.     Plaintiff repeats every allegation made in the above paragraphs of this complaint.

194.     At all relevant times, Defendants have employed Plaintiff within the meaning of the WPCL.

195.     Pursuant to the WPCL, Plaintiff was entitled to receive all compensation due and owing to her on her regular payday.

196.     Defendants had a policy of making improper deductions from wages.

197.     As a result of Defendants' unlawful policies, Plaintiff has been deprived of compensation due and owing.

198.     Plaintiff is entitled to recover from Defendants the amount of unpaid compensation and an additional amount of 25% of the unpaid compensation as liquidated damages.

**WHEREFORE**, Plaintiff prays for the following relief: (a) An award to Plaintiff for the amount of unpaid compensation to which they are entitled and liquidated damages, including interest thereon, and penalties subject to proof; (b) An award to Plaintiff for reasonable

attorneys' fees and all costs; and (c) An award to Plaintiff for any other damages available to them under applicable state law, and all such other relief as this Court may deem just and proper.

## COUNT XII
### Assault and Battery
### Plaintiff v. Nawaz Matkhaili

199.     Plaintiff incorporates by reference each and every allegation made in the above paragraphs of this complaint.

200.     Under Pennsylvania law, battery is defined as an intentional harmful or offensive contact with the person of another. Nace v. Pennridge Sch. Dist., 185 F.Supp.3d 564, 584 (E.D. Pa. 2016) (quoting C.C.H. v. Philadelphia Phillies, Inc., 596 Pa. 23 (2008)). The fact that contact occurs without consent is sufficient to establish that it is offensive, and no intent to harm the plaintiff need be established. Id. (quoting Cooper ex rel. Cooper v. Lankenau Hosp., 616 Pa. 550 (2012)).

201.     Under Pennsylvania law, assault is defined as an act intended to put another person in reasonable apprehension of an immediate battery, and which succeeds in causing an apprehension of such battery. Regan v. Upper Darby Twp., 363 Fed.Appx. 917, 921 (3d Cir. 2010) (quoting Cucinotti v. Ortmann, 399 Pa. 26 (1960)). In other words, battery is an offensive touching without consent, and assault is an action that makes a victim believe that a battery is about to occur. Martin-McFarlane v. City of Philadelphia, 299 F.Supp.3d 658, 670–71 (E.D. Pa. 2017).

202.     Here, Defendant Matkhaili acted intending to cause harmful or offensive contact with Ms. Brown, or to cause Ms. Brown imminent apprehension of such contact, and she were thereby put in such imminent apprehension. Further, Defendant Matkhaili's assault concluded with actual, nonconsensual bodily contact with Ms. Brown.

203.     As a direct and proximate result of Defendant Matkhaili's malicious and

conscious wrongful actions, Plaintiff sustained humiliation as well as severe mental and

emotional distress from the indignity to which she was subjected, which resulted in

bodily injury and damages, including punitive damages, to be determined at trial.

**WHEREFORE**, Plaintiff demands judgment against Defendant and prays for the following

relief: (1) actual damages; (2) compensatory damages; (3) reasonable attorneys' fees; (4)

litigation costs; (5) pre- and post-judgment interest; (6) an adjudication and declaration that

Defendant's conduct as set forth herein is in violation of the law; (7) punitive damages; (8) and

all additional general and equitable relief to which Plaintiffs are entitled.

### Count XIII (PLACEHOLDER)
### PHRA Discrimination
### 43 P.S. §§ 951-963
### Plaintiff v. Dunkin' Donuts, Dunkin' Donuts of American, Inc., and Northeast Donut Shops Management Corp.

204.     Plaintiff's PHRA and PFPO claims are still pending before PCHR because less than one year has elapsed since PCHR assumed jurisdiction over Plaintiff's charges. After one year, Plaintiff will seek leave to amend this complaint to assert her PHRA and PFPO claims against Defendants.

### Count XIV (PLACEHOLDER)
### PHRA Retaliation
### 43 P.S. §§ 951-963
### Plaintiff v. All Defendants

205.     Plaintiff's PHRA and PFPO claims are still pending before PCHR because less

than one year has elapsed since PCHR assumed jurisdiction over Plaintiff's charges.

After one year, Plaintiff will seek leave to amend this complaint to assert her PHRA and

PFPO claims against Defendants.

**Count XV (PLACEHOLDER)**
**PHRA Aiding and Abetting**
**43 P.S. §§ 951-963**
**Plaintiff v. All Defendants**

206.     Plaintiff's PHRA and PFPO claims are still pending before PCHR because less

than one year has elapsed since PCHR assumed jurisdiction over Plaintiff's charges.

After one year, Plaintiff will seek leave to amend this complaint to assert her PHRA and

PFPO claims against Defendants.

**Count XVI (PLACEHOLDER)**
**PFPO Discrimination**
**PFPO §§ 9-1100 et seq.**
**Plaintiff v. Dunkin' Donuts, Dunkin' Donuts of American, Inc., and Northeast Donut Shops**
**Management Corp.**

207.     Plaintiff's PHRA and PFPO claims are still pending before PCHR because less

than one year has elapsed since PCHR assumed jurisdiction over Plaintiff's charges.

After one year, Plaintiff will seek leave to amend this complaint to assert her PHRA and

PFPO claims against Defendants.

**Count XVII (PLACEHOLDER)**
**PFPO Retaliation**
**PFPO §§ 9-1100 et seq.**
**Plaintiff v. All Defendants**

208.     Plaintiff's PHRA and PFPO claims are still pending before PCHR because less

than one year has elapsed since PCHR assumed jurisdiction over Plaintiff's charges.

After one year, Plaintiff will seek leave to amend this complaint to assert her PHRA and

PFPO claims against Defendants.

**Count XVIII (PLACEHOLDER)**
**PFPO Aiding and Abetting**
**PFPO §§ 9-1100 et seq.**
**Plaintiff v. All Defendants**

209.     Plaintiff's PHRA and PFPO claims are still pending before PCHR because less

than one year has elapsed since PCHR assumed jurisdiction over Plaintiff's charges.

After one year, Plaintiff will seek leave to amend this complaint to assert her PHRA and

PFPO claims against Defendants.

## **JURY DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands

a trial by jury on all questions of fact raised by this complaint.


Respectfully submitted,

**DEREK SMITH LAW GROUP, PLLC**

*/s/ Ian M. Bryson, Esquire*
IAN M. BRYSON, ESQUIRE
1835 Market Street, Suite 2950
Philadelphia, PA 19103
215-391-4790
ian@dereksmithlaw.com

Dated: May 16, 2022                    *Attorneys for Plaintiff, Shakiya Brown*