## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| _____ | : | |
| SHAKIYA BROWN | : | NO. 2:22-cv-01916 |
| | : | |
| v. | : | |
| | : | |
| DUNKIN' DONUTS, DUNKIN' | : | |
| DONUTS OF AMERICA, INC., | : | |
| NORTHEAST DONUT SHOPS | : | |
| MANAGEMENT CORPORATION, | : | |
| BRIAN LIN, MISA LIAO, | : | |
| LESHIA EVANS, KIM HONG, | : | |
| AND NAWAZ MATKHAILI | : | CIVIL ACTION |

### <u>ORDER</u>

AND NOW, this            day of                              , 202__, upon consideration of the Motion of Defendants Dunkin' Donuts, Dunkin' Donuts of America, Inc., Northeast Donut Shops Management Corporation, Brian Lin, Misa Liao, Leshia Evans, and Kim Hong to Dismiss Plaintiff's Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6), and all responses thereto, it is hereby ORDERED that:

1.     The Motion of Defendants Dunkin' Donuts, Dunkin' Donuts of America, Inc., Northeast Donut Shops Management Corporation, Brian Lin, Misa Liao, Leshia Evans, and Kim Hong to Dismiss Plaintiff's Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) is GRANTED;

2.     All causes of action alleged against defendants Dunkin' Donuts, Dunkin' Donuts of America, Inc., Northeast Donut Shops Management Corporation, Brian Lin, Misa Liao, Leshia Evans, and Kim Hong in plaintiff's Amended Complaint are DISMISSED, with prejudice;

3.      Defendants Dunkin' Donuts, Dunkin' Donuts of America, Inc., Northeast Donut Shops Management Corporation, Brian Lin, Misa Liao, Leshia Evans, and Kim Hong are DISMISSED as parties to this case, with prejudice; and

4.      All claims, crossclaims, claims for interest, attorneys' fees, and costs of litigation against defendants Dunkin' Donuts, Dunkin' Donuts of America, Inc., Northeast Donut Shops Management Corporation, Brian Lin, Misa Liao, Leshia Evans, and Kim Hong are DISMISSED, with prejudice.

BY THE COURT:

_____
                                                                J.

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| SHAKIYA BROWN | : | NO. 2:22-cv-01916 |
| | : | |
| v. | : | |
| | : | |
| DUNKIN' DONUTS, DUNKIN' | : | |
| DONUTS OF AMERICA, INC., | : | |
| NORTHEAST DONUT SHOPS | : | |
| MANAGEMENT CORPORATION, | : | |
| BRIAN LIN, MISA LIAO, | : | |
| LESHIA EVANS, KIM HONG, | : | |
| AND NAWAZ MATKHAILI | : | CIVIL ACTION |

**MOTION OF DEFENDANTS DUNKIN' DONUTS,**
**DUNKIN' DONUTS OF AMERICA, INC., NORTHEAST DONUT SHOPS**
**MANAGEMENT CORPORATION, BRIAN LIN, MISA LIAO,**
**LESHIA EVANS, AND KIM HONG TO DISMISS PLAINTIFF'S**
**AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)**

Defendants Dunkin' Donuts, Dunkin' Donuts of America, Inc., Northeast Donut Shops

Management Corporation, Brian Lin, Misa Liao, Leshia Evans, and Kim Hong (collectively "the

Dunkin' defendants") hereby move to dismiss plaintiff's Complaint pursuant to Fed. R. Civ. P.

12(b)(6), and, in support thereof, aver the following:

**PRELIMINARY STATEMENT**

Plaintiff Shakiya Brown[1] is a former employee of defendant Northeast Donut Shops

Management Corporation, the franchisee of the Dunkin' Donuts shop located at 1345 W. Olney

Avenue in Philadelphia ("the shop").

Plaintiff was employed as a cashier/crew member at the shop from May 18, 2021 until

August 14, 2021, or for a total of 88 days, earning $10 per hour.  Plaintiff's employment with

defendant Northeast Donut Shops Management Corporation ended on August 15, 2021, after she

---

[1] Plaintiff was 19-years-old when she worked at the Dunkin' Donuts shop at issue.

climbed over the service counter while off-duty to access the employee-only office in the back of the shop:



While in the office on August 15, 2021, plaintiff took documents, including schedules, without permission to do so.  In addition to taking documents without permission, by attempting to access employee-only areas while off-duty, plaintiff violated the "Dunkin' Donuts: Crew Members Responsibilities and Duties."

On August 21, 2021 -- six days after plaintiff climbed over the service counter -- plaintiff returned to the shop, and crawled through the walk-up window:



After crawling through the walk-up window on August 21, 2021, plaintiff took a set of keys (for the cash register and front door) from the shop without permission to do so.

Despite violating the "Dunkin' Donuts: Crew Members Responsibilities and Duties" by accessing employee-only areas while off-duty and taking documents and register/front door keys from the shop without permission, plaintiff has filed suit against the Dunkin' defendants, alleging that she was subjected to race, color, and sex-based discrimination, harassment, hostile work environment, and retaliation during the course of her employment at the shop. Specifically, plaintiff has alleged the following claims against the Dunkin' defendants: disparate treatment/discrimination under 42 U.S.C. § 1981 ("Section 1981"), Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e—2000e–17 (1994) ("Title VII"), the Pennsylvania Human Relations Action, 43 P.S. §§ 951-963 ("PHRA"), and the Philadelphia Fair Practices Ordinance, Philadelphia Code §§ 9-1101, et seq. ("PFPO") (Counts I, IV, XIII, and XVI of plaintiff's Amended Complaint); hostile work environment under Section 1981 and Title VII (Counts II and V of plaintiff's Amended Complaint); retaliation under Section 1981, Title VII, PHRA, and PFPO (Counts III, VI, XIV, and XVII of plaintiff's Amended Complaint); and aiding and abetting under the PHRA and PFPO (Counts XV and XVIII of plaintiff's Amended Complaint). In her Amended Complaint, plaintiff also alleges claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, et seq., the Pennsylvania Minimum Wage Act ("PMWA"), 42 P.S. § 333.101, et seq., and the Pennsylvania Wage Payment and Collection Law ("PWPCL"), 43 P.S. § 260.1, et seq.

In discovery, plaintiff produced copies of the schedules that she took from the shop without permission on August 15, 2021.  In addition, plaintiff admitted to taking property ("keys" and "the report") of Northeast Donut Shop Management Corporation in text messages

with both her former manager (Misa Liao) and district manager (Brian Lin), which were

produced in discovery:



On December 8, 2022 -- nearly a year and a half after plaintiff's employment with

Northeast Donut Shops Management Corporation ended -- the Dunkin' defendants filed a

counterclaim for conversion against plaintiff, based on her own admissions in text messages and

her production of the schedules that she took without permission in discovery.[2]  On December 8,

2022, plaintiff filed an Amended Complaint, in which she alleges that the Dunkin' defendants

retaliated against her in filing the counterclaim for conversion.

---

[2] The Dunkin' defendants' original Answer to the Complaint did not include a claim for conversion.  Rather, the
Dunkin' defendants were granted leave on November 22, 2022 to file an Amended Answer to the Complaint and
Counterclaim for conversion.

The Dunkin' defendants now seek dismissal of all claims alleged against them, as all claims in plaintiff's Amended Complaint against the Dunkin' defendants are insufficiently pled. For the following reasons, the Dunkin defendants' Motion to Dismiss Plaintiff's Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) should be granted.

## FACTS AND PROCEDURAL HISTORY

### A. Allegations in Plaintiff's Initial Complaint

1.  On May 16, 2022, plaintiff Shakiya Brown filed a Complaint against the Dunkin' defendants and Nawaz Matkhaili, alleging that she was subjected to race, color, and sex-based discrimination, harassment, and retaliation during the course of her employment at the shop. See Complaint, docket entry no. 1, attached as Exhibit "A."

2.  Specifically, in her Complaint, plaintiff alleged that she is an African-American female that started her employment at the shop on May 18, 2021. See Exhibit "A" at ¶¶ 22-23.

3.  Plaintiff further alleged in her Complaint that, on May 28, 2021, she was harassed and assaulted by Nawaz Matkhaili, a co-worker, while they were working together at the shop. See Exhibit "A" at ¶¶ 26-31.

4.  According to plaintiff's Complaint, "[b]etween May 28, 2021 and June 9, 2021, [d]efendants continued putting [plaintiff] on the schedule with Defendant Matkhaili in spite of [plaintiff's] complaints and protests." See Exhibit "A" at ¶ 36.

5.  Plaintiff alleged the following in her Complaint:

44.  Defendant Liao informed Ms. Brown that the reason that Defendants refused to investigate Ms. Brown's complaint was because Ms. Brown is Black.

45.  Defendant Liao informed Ms. Brown that she didn't care that Ms. Brown was sexually assaulted because Ms. Brown is Black.

5

46.     Defendant Liao further stated to Ms. Brown that all the Black employees,
        including Ms. Brown, "are lazy."

                                        …

55.     Defendants refused to provide Ms. Brown with a uniform that was
        provided to all of her similarly situated coworkers who did not share Ms.
        Brown's protected characteristics.

56.     Defendants made discriminatory race-based comments about Ms. Brown's
        hair.

Exhibit "A" at ¶¶ 44-46, 55-56.

6.      Plaintiff alleges in the Complaint that, "[o]n August 12, 2021, [the Dunkin'

defendants] terminated [her] employment under conditions of an ongoing hostile work

environment."  See Exhibit "A" at ¶ 61.

7.      Therefore, according to plaintiff's Complaint, she was employed at the shop for

86 days.[3]  See Exhibit "A."

8.      In her initial Complaint, plaintiff alleged claims for violation of Section 1981,

Title VII, FLSA, PMWA, PWPCL, PHRA, and PFPO.  See Exhibit "A."

**B.  The Dunkin' Defendants' Answer and Amended Answer to Plaintiff's Complaint
      and Counterclaim for Conversion**

9.      On July 5, 2022, the Dunkin' defendants filed their Answer to plaintiff's

Complaint.  See Answer to Complaint, docket entry no. 12, attached as Exhibit "B."

10.     In their Answer to the Complaint, the Dunkin' defendants denied that they are

liable to plaintiff on any basis.  See Exhibit "B."

11.     On November 3, 2022, plaintiff responded to the Dunkin' defendants' document

requests.  Specifically, plaintiff provided copies of schedules that are the property of defendant

Northeast Donut Shops Management Corporation in her document production.[4]

---

[3] Rather, plaintiff's employment at the shop ended on August 14, 2021, her last day of work.  This means that she
was employed at the shop for a total of 88 days.

12.     On November 11, 2022, the Dunkin' defendants filed a Motion for Leave to Amend their Answer to Plaintiff's Complaint to Allege a Counterclaim for Conversion. <u>See</u> Motion for Leave to Amend (without exhibits), docket entry no. 26, attached as Exhibit "C."

13.     The Dunkin' defendants' claim for conversion was based on the fact that plaintiff took documents, including schedules, on August 15, 2021, and keys to the register/front door on August 21, 2021, without permission to do so. <u>See</u> Exhibit "C."

14.     Specifically, in their Motion to Amend, the Dunkin' defendants included a still from security video that captured plaintiff climbing over the service counter on August 15, 2021 while she was off-duty:



Exhibit "C" at ¶ 15.

15.     The Dunkin' defendants asserted in their Motion to Amend that, on August 15, 2021, after climbing over the service counter, plaintiff took documents, including schedules, from the employee-only office without permission to do so. <u>See</u> Exhibit "C" at ¶ 15.

---

[4] The work schedules that plaintiff took without permission are not attached as an exhibit to this Motion, as they contain employees' names and other personal information. However, the schedules are available for this Court's <i>in camera</i> review, if requested.

16.     The Dunkin' defendants further claimed in their Motion to Amend that, on

August 21, 2021, plaintiff crawled through the walk-up window:



Exhibit "C" at ¶ 16.

17.     As the Dunkin' defendants indicated in their Motion for Leave, after crawling

through the walk-up window on August 21, 2021, plaintiff took a set of keys to the cash register

and front door from the shop without permission to do so.  See Exhibit "C" at ¶ 17.

18.     As alleged in their Motion for Leave, the Dunkin' defendants were required to

have the cash register and front door "re-keyed" and had to purchase new keys as a result of

plaintiff's conversion.  See Exhibit "C" at ¶ 19.

19.     Notably, text messages between plaintiff, Misa Liao (store manager), and Brian

Lin (district manager) were also exchanged in discovery.  Specifically, in these messages,

plaintiff admitted to taking property of Northeast Donut Shop Management Corporation, namely,

the keys and the schedules (which she refers to as "the report":




20.     On November 22, 2022, the Court granted the Dunkin' defendants' Motion for

Leave.  See Order, dated November 22, 2022, docket entry no. 35, attached as Exhibit "D."

21.     On December 8, 2022 -- nearly a year and a half after plaintiff's employment with

Northeast Donut Shops Management Corporation ended -- the Dunkin' defendants filed their

Amended Answer to plaintiff's Complaint, which included a counterclaim for conversion.  See

Amended Answer with Counterclaim, docket entry no. 42, attached as Exhibit "E."

22.     On December 8, 2022, plaintiff filed an Amended Complaint, which included a

claim of retaliation against the Dunkin' defendants for filing a counterclaim for conversion.  See

plaintiff's Amended Complaint, docket entry no. 44, attached as Exhibit "F" at ¶¶ 84-101.

23.     In her Amended Complaint, plaintiff alleges the following claims against the

Dunkin' defendants: disparate treatment/discrimination under Section 1981, Title VII, PHRA,

and PFPO (Counts I, IV, XIII, and XVI of plaintiff's Amended Complaint); hostile work environment under Section 1981 and Title VII (Counts II and V of plaintiff's Amended Complaint); retaliation under Section 1981, Title VII, PHRA, and PFPO (Counts III, VI, XIV, and XVII of plaintiff's Amended Complaint); and aiding and abetting under the PHRA and PFPO (Counts XV and XVIII of plaintiff's Amended Complaint).  See Exhibit "F."

24.    She also alleges wage-related claims under the FLSA, PMWA, and PWPCL.  See Exhibit "F."

25.    Plaintiff's claims in the Amended Complaint are alleged against both corporate defendants[5] and individuals, including:

> (a) Brian Lin, district manager for the district that includes the Dunkin' Donuts shop at issue, see Exhibit "F" at ¶ 8;
>
> (b) Misa Liao, store manager of the Dunkin' Donuts shop at issue, see Exhibit "F" at ¶ 9;
>
> (c) Leshia Evans, [6] Regional Legal Liaison for Northeast Donut Shops Management Corporation, see Exhibit "E" at ¶ 10; and
>
> (d) Kim Hong, Regional Director of Operations for Northeast Donut Shops Management Corporation, see Exhibit "F" at ¶ 11.

26.    On December 8, 2022, plaintiff filed her Reply to the counterclaim for conversion.  See plaintiff's Reply, docket entry no. 43, attached as Exhibit "G."

27.    In her Reply, plaintiff admits to being in possession of stolen schedules and register/front door keys.  See Exhibit "G."

---

[5] Dunkin' Donuts is a trade name and trade mark.  Dunkin' Donuts of America, Inc., is an owner of several franchises unrelated to the shop at issue.

[6] In her Amended Complaint, plaintiff incorrect alleges that Ms. Evans was a "human resources manager and supervisor." See Exhibit "F" at ¶ 10

28.     On December 15, 2022, plaintiff's counsel, Ian Bryson, Esquire, filed a Motion to

Withdraw as Counsel.  See Motion to Withdraw, docket entry no. 46.  This Motion is currently

pending.

29.     The Dunkin defendants' Motion to Dismiss Plaintiff's Amended Complaint

Pursuant to Fed. R. Civ. P. 12(b)(6) should be granted for the following reasons.

### STANDARD OF REVIEW

30.     Fed. R. Civ. P. 12(b) states, in pertinent part:

**Rule 12.  Defenses and Objections: When and How Presented; Motion for
Judgment on the Pleadings; Consolidating Motions; Waiving Defenses;
Pretrial Hearing**

...

(b) How to Present Defenses. Every defense to a claim for relief in any
pleading must be asserted in the responsive pleading if one is required. But a
party may assert the following defenses by motion:

...

(6)     failure to state a claim upon which relief can be granted....

Fed. R. Civ. P. 12(b)(6).

31.     Federal Rule of Civil Procedure 12(b)(6) "authorizes a court to dismiss a claim on

the basis of a dispositive issue of law." Neitzke v. Williams, 490 U.S. 319, 326 (1989) (citing

Hishon v. King & Spalding, 467 U.S. 69, 73 (1984)).

32.     The purpose of Rule 12(b)(6) is to eliminate baseless claims and "streamline[ ]

litigation by dispensing with needless discovery and factfinding." Id., at 326-327.

33.     In other words, "if as a matter of law 'it is clear that no relief could be granted

under any set of facts that could be proved consistent with the allegations, a claim must be

11

dismissed, without regard to whether it is based on an outlandish legal theory or on a close but ultimately unavailing one."  Id., at 327 (citing Hishon, 467 U.S. at 73).

34.     The United States Supreme Court has recognized that, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, 'this basic deficiency should…be exposed at the point of minimum expenditure of time and money by the parties and the court.'"  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 558 (2007) (citing 5 Wright & Miller § 1216, at 233–234).

35.     In addition, pursuant to Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2).

36.     While Fed.R.Civ.P. 8 "does not require detailed factual allegations, [ ] it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 555).

37.     As such, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  Id. (citing Twombly, 550 U.S. at 555).

38.     In Iqbal, the United States Supreme Court affirmed that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Id. (citing Twombly, 550 U.S. at 555).

39.     The Iqbal Court ultimately concluded that "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than

12

conclusions, are not entitled to the assumption of truth.  While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Id., at 679.

## ARGUMENT

## I.

## PLAINTIFF'S DISPARATE TREATMENT/DISCRIMINATION CLAIMS UNDER SECTION 1981, TITLE VII, PHRA, AND PFPO MUST BE DISMISSED

40.     In Counts I, IV, XIII, and XVI of her Amended Complaint, plaintiff alleges disparate treatment/discrimination claims against the Dunkin' defendants under Section 1981, Title VII, the PHRA, and the PFPO.  See Exhibit "F."

41.     Specifically, plaintiff alleges that she was discriminated against on the basis of race, color, and sex.  See Exhibit "F."

42.     All these claims must be dismissed, as plaintiff has failed to allege facts in her Amended Complaint that, even if proven to be true in discovery, establish a *prima facie* disparate treatment/discrimination claim against the Dunkin' defendants.

43.     It is well-recognized that claims of race-based employment discrimination under Section 1981, Title VII, PHRA, and PFPO are analyzed coextensively.  See McKinney v. Supreme Mid-Atl. Corp., 2018 WL 6182058, at *3 (M.D. Pa. 2018) (Section 1981, Title VII, and PHRA claims); Castleberry v. STI Grp., 863 F.3d 259, 263 (3d Cir. 2017) (Section 1981 and Title VII claims); Huston v. Procter & Gamble Paper Prods. Corp., 568 F.3d 100, 104 n.2 (3d Cir. 2009) (Title VII and PHRA claims).  See also Williams v. Carson Concrete Corp., 2021 WL 1546455, at *3 (E.D. Pa. 2021) ("Claims of employment discrimination brought under Title VII, the PHRA, the PFPO, and Section 1981 are analyzed coextensively.").

44.     To set forth a claim for disparate treatment employment discrimination, a plaintiff must plead facts that raise a reasonable expectation that discovery will reveal evidence of the following *prima facie* elements:

> (1) [T]he plaintiff is a member of a protected class; (2) he or she was qualified for the position sought to be obtained or retained; (3) he or she suffered an "adverse employment action"; and (4) the adverse action occurred under circumstances that could indicate that plaintiff's protected status played a "motivating or determinative" factor in the adverse action.

Id., at *3 (citing Connelly v. Lane Constr. Corp., 809 F.3d 780, 789, 791 (3d Cir. 2016)).

45.     In this case, plaintiff confusingly claims that she was both terminated from her employment and constructively discharged.[7]  See Exhibit "F" at ¶¶ 61-62.

46.     However, even assuming *in arguendo* that the allegations in the Amended Complaint satisfy the "adverse employment action" element, there are no facts pled that establish that plaintiff's race, color, or sex was a "motivating or determinative" factor in any adverse employment action.  See Exhibit "F."

47.     The only non-boilerplate, non-conclusory allegations in the Amended Complaint that even remotely relate to racial animus are as follows:

> 44.     Defendant Liao informed Ms. Brown that the reason that Defendants refused to investigate Ms. Brown's complaint was because Ms. Brown is Black.

> 45.     Defendant Liao informed Ms. Brown that she didn't care that Ms. Brown was sexually assaulted because Ms. Brown is Black.

> 46.     Defendant Liao further stated to Ms. Brown that all the Black employees, including Ms. Brown, "are lazy."

> …

---

[7] In reality, plaintiff was not terminated from her employment.  Rather, she never returned to work again after August 14, 2021, and therefore, she abandoned her position.  In addition, on August 15, 2021, she violated "Dunkin' Donuts: Crew Members Responsibilities and Duties" by crawling over the service counter, accessing employee-only areas of the shop while off-duty, and taking the documents and keys without permission to do so.

55.     Defendants refused to provide Ms. Brown with a uniform that was provided to all of her similarly situated coworkers who did not share Ms. Brown's protected characteristics.

56.     Defendants made discriminatory race-based comments about Ms. Brown's hair.

Exhibit "F" at ¶¶ 44-46, 55-56.

48.     Even accepting these allegations as true and construing them in plaintiff's favor, they do not give rise to a reasonable expectation that discovery will reveal evidence that she was constructively discharged or terminated because of her race, color, or sex.

49.     Ultimately, the facts pled do not permit the inference that any of the actions leading up to plaintiff's alleged termination or construction discharge -- which, according to the Amended Complaint, occurred on August 12, 2021 -- were taken because of her race, color, or sex.  See Exhibit "F."

50.     As such, Counts I, IV, XIII, and XVI of plaintiff's Amended Complaint should be dismissed against the Dunkin' defendants.

## II.

## PLAINTIFF'S HOSTILE WORK ENVIRONMENT CLAIMS UNDER SECTION 1981 AND TITLE VII MUST BE DISMISSED

51.     In Counts II and V of her Amended Complaint, plaintiff alleges claims for hostile work environment under Section 1981 and Title VII.  See Exhibit "F."

52.     These claims must be dismissed, as the Amended Complaint fails to allege discriminatory conduct that even comes close to "severe or pervasive," which is required to establish a claim for hostile work environment.  See Exhibit "F."

53.     As the Eastern District has recognized, "[h]ostile work environment claims under these statutes are subject to the same analysis."  Henley v. Brandywine Hosp., LLC, 2019 WL

3326041, at *6 (E.D. Pa. 2019).  See also Anderson v. Boeing Co., 694 F. App'x 84, 88–89 (3d

Cir. 2017) (addressing the plaintiff's race- and national-original-based hostile work environment

claims under Title VII and Section 1981 together).

54.     To state a hostile work environment claim, a plaintiff must adequately plead:

(1) [T]he employee suffered intentional discrimination because of his/her [race, gender, etc.]; (2) the discrimination was severe or pervasive; (3) the discrimination detrimentally affected the plaintiff; (4) the discrimination would detrimentally affect a reasonable person in like circumstances; and (5) the existence of *respondeat superior* liability [meaning the employer is responsible].

Id. (citing Castleberry v. STI Grp., 863 F.3d 259, 263 (3d Cir. 2017) (alterations in original)

(citation and internal quotation marks omitted).

55.     In evaluating a hostile work environment claim, a court must consider the

"totality of the circumstances," including "the frequency of the discriminatory conduct; its

severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and

whether it unreasonably interferes with an employee's work performance."  Id. (citing Miller v.

Thomas Jefferson Univ. Hosp., 565 F. App'x 88, 93 (3d Cir. 2014).

56.     Ultimately, "the harassment must be so severe or pervasive that it alters the

conditions of employment and creates an abusive environment."  Mayo v. Mercy Philadelphia

Hosp., 2011 WL 1045101, at *2 (E.D. Pa. 2011).

57.     "[S]imple teasing, offhand comments, and isolated incidents (unless extremely

serious) will not amount to discriminatory changes in the terms and conditions of employment."

Id. (citing Icleanu v. Am. Baptist Churches USA,  2007 WL 2461822, at * 10 (E.D.Pa. 2007)).

58.     Like plaintiff's claim of disparate treatment/discrimination, the only non-

boilerplate, non-conclusory allegations in the Amended Complaint that even remotely relate to

racial animus are as follows:

44.     Defendant Liao informed Ms. Brown that the reason that Defendants refused to investigate Ms. Brown's complaint was because Ms. Brown is Black.

45.     Defendant Liao informed Ms. Brown that she didn't care that Ms. Brown was sexually assaulted because Ms. Brown is Black.

46.     Defendant Liao further stated to Ms. Brown that all the Black employees, including Ms. Brown, "are lazy."

…

55.     Defendants refused to provide Ms. Brown with a uniform that was provided to all of her similarly situated coworkers who did not share Ms. Brown's protected characteristics.

56.     Defendants made discriminatory race-based comments about Ms. Brown's hair.

Exhibit "F" at ¶¶ 44-46, 55-56.

59.     The conduct alleged does not come close to the level of "severe or pervasive" that is required for plaintiff to successfully allege a claim of hostile work environment.

60.     Therefore, because no relief can be granted under any set of facts that could be proved consistent with the allegations in plaintiff's Amended Complaint, Counts II and V, alleging claims of hostile work environment, should be dismissed against the Dunkin' defendants.

**III.**

**PLAINTIFF'S RETALIATION CLAIMS UNDER SECTION 1981, TITLE VII, PHRA, AND PFPO MUST BE DISMISSED**

61.     Counts III, VI, XIV, and XVII allege retaliation claims against the Dunkin' defendants under Section 1981, Title VII, PHRA, and PFPO.  See Exhibit "F."

62.     Because plaintiff has failed to allege a causal link between any protected activity and any adverse employment action, all retaliation claims in plaintiff's Amended Complaint must be dismissed.

63.     To establish a *prima facie* case of retaliation, a plaintiff must demonstrate: "(1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action." <u>Boyer v. City of Philadelphia</u>, 2015 WL 9260007, at *3 (E.D. Pa. Dec. 17, 2015) (citing <u>Thompson v. Kellogg's USA</u>, 619 F. App'x 141, 144 (3d Cir. 2015)).

64.     In fact, "[r]etaliation claims require the employee to show that his protected activity was the but-for cause of the alleged retaliation." <u>Id.</u> (citing <u>Univ. of Tex. Sw. Med. Ctr. v. Nassar</u>, 133 S. Ct. 2517, 2533 (2013)). <u>See also</u> <u>Yan Yan v. Pennsylvania State Univ.</u>, 2015 WL 5124152, at *6 (M.D. Pa. 2015) (there must be "proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer.").

65.     The Third Circuit has recognized that "[p]leading the third element requires facts showing 'either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link.'" <u>Id.</u> (citing <u>Lauren W. ex rel. Jean W. v. DeFlaminis</u>, 480 F.3d 259, 267 (3d Cir. 2007)).

66.     When considering temporal proximity, the Third Circuit "has noted that a temporal proximity greater than ten (10) days requires supplementary evidence of retaliatory motive." <u>Murphy v. McLane E., Inc.</u>, 2017 WL 770653, at *4 (M.D. Pa. 2017) (citing <u>LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n</u>, 503 F.3d 217, 233 (3d Cir. 2007)). <u>See also</u> <u>Williams v.</u>

<u>Phila. Hous. Auth. Police Dep't</u>, 380 F.3d 751, 760 (3d Cir. 2004) (two months is not unusually suggestive).

67.     In this case, plaintiff's allegations in the Amended Complaint fail to establish a close temporal proximity establishing a causal link between the protected activity and the alleged adverse employment action.  <u>See</u> Exhibit "F."

68.     Specifically, in her Amended Complaint, plaintiff alleges that she reported the conduct of defendant Matkhaili to defendant Misa Liao on May 28, 2021 and May 29, 2021.  <u>See</u> Exhibit "F" at ¶¶ 32-33.

69.     Plaintiff further alleges in the Amended Complaint that she reported the conduct of defendant Matkhaili to the Philadelphia Police and "Dunkin Donuts corporate HR" on June 9, 2021.  <u>See</u> Exhibit "F" at ¶¶ 39-40.

70.     According to the Amended Complaint, plaintiff was terminated on August 12, 2021 -- almost three months after she reported the conduct of defendant Matkhaili to defendant Liao.  <u>See</u> Exhibit "F" at ¶ 61.

71.     Ultimately, the allegations in plaintiff's Amended Complaint fail to establish an unduly suggestive temporal proximity between the protected activity and the allegedly retaliatory action.  <u>See</u> Exhibit "F."

72.     Plaintiff's Amended Complaint puts forth no other allegations that suggest that she was terminated because she reported defendant Matkhaili's conduct.  <u>See</u> Exhibit "F."

73.     As such, plaintiff's Amended Complaint fails to sufficient allege retaliation claims, and therefore, Counts III, VI, XIV, and XVII of the Amended Complaint should be dismissed.

**IV.**

**PLAINTIFF'S AIDING-AND-ABETTING CLAIMS UNDER**
**PHRA AND PFPO MUST BE DISMISSED**

74.     Counts XV and XVIII allege aiding-and-abetting claims against the Dunkin'
defendants under PHRA and PFPO.  See Exhibit "F."

75.     However, plaintiff's aiding-and-abetting must be dismissed, because there are no
viable underlying claims of discrimination, hostile work environment, or retaliation to aid and
abet.  See Exhibit "F."

76.     It is well-established that, "[f]or liability to be imposed on an aiding and abetting
theory, [ ] there must be a cognizable predicate offense, i.e. a violation by the employer of
the PHRA's or PFPO's primary anti-discrimination provision."  Williams v. Aramark Campus
LLC, 2020 WL 1182564, at *10 (E.D. Pa. 2020) (citing Lombard v. Lassip, Inc., 2017 WL
6367956, at *5 (E.D. Pa. 2017)) (internal quotations omitted).

77.     Here, plaintiff's aiding-and-abetting claims fail, as her Amended Complaint does
not allege a "cognizable predicate offense," i.e., a violation of the law's primary anti-
discrimination provision committed by plaintiff's employer, Northeast Donut Shops
Management Corporation.  See Exhibit "F."

78.     In fact, for the of the reasons argued supra, plaintiff's Amended Complaint fails to
sufficiently allege any disparate treatment/discrimination, hostile work environment, or
retaliation claims against the Dunkin' defendants.

79.     Because there are no viable underlying claims of discrimination or retaliation to
aid and abet, Counts XV and XVIII of plaintiff's Amended Complaint must be dismissed.

## V.

## THE <u>NOERR-PENNINGTON</u> DOCTRINE BARS PLAINTIFF'S CLAIM OF RETALIATION BASED ON THE FILING OF A COUNTERCLAIM

80.     Plaintiff's retaliation claims in ¶¶ 84-101 of her Amended Complaint are predicated upon the Dunkin' defendants' post-employment filing of a counterclaim for conversion.  <u>See</u> Exhibits "E" and "F."

81.     This claim for retaliation must fail because the Dunkin' defendants' constitutional right to petition a court for redress is protected by the <u>Noerr-Pennington</u> doctrine.

82.     The application of the <u>Noerr-Pennington</u> doctrine may be the basis of dismissal pursuant to Fed.R.Civ.P. 12(b)(6).  <u>See</u> <u>Trustees of Univ. of Pa. v. St. Jude Children's Research Hosp.</u>, 940 F. Supp. 2d 233, 242-243 (E.D. Pa. 2013) (holding the court may consider the applicability of <u>Noerr-Pennington</u> in deciding a motion to dismiss).

83.     The <u>Noerr-Pennington</u> doctrine "protects parties who petition governments for redress from claims arising in response to that petitioning."  <u>Id.</u>, at 239.

84.     Specifically, "the <u>Noerr-Pennington</u> immunity arose in the antitrust context, but as our Court of Appeals has explained it has 'by analogy extended the <u>Noerr-Pennington</u> doctrine to offer protection to citizens' petitioning activities in contexts outside the antitrust area as well.'" <u>Id.</u>, at 240 (citing <u>We, Inc. v. City of Philadelphia</u>, 174 F.3d 322, 326-327 (3d Cir.1999)).

85.     In <u>Trustees of Univ. of Pennsylvania</u>, the Eastern District recognized that:

> [C]ourts for decades have held that the right to petition encompasses the right to bring a lawsuit.  As the Supreme Court explained over forty years ago in <u>California Motor Transport</u>, "Certainly the right to petition extends to all departments of the Government.  The right of access to the courts is indeed but one aspect of the right of petition."

Id. (citing <u>California Motor Transp. Co. v. Trucking Unlimited</u>, 404 U.S. 508, 510 (1972)).

86.     The <u>Trustees</u> Court also confirmed that "it remains black letter law that lawsuits constitute a form of protected petitioning under <u>Noerr-Pennington</u>."  <u>Id.</u>, at 241.

87.     Notably, the <u>Noerr-Pennington</u> doctrine does not "protect 'sham' petitioning, that is, 'petitioning activity 'ostensibly directed toward influencing governmental action [but that] is a mere sham to cover ... an attempt to interfere directly' with the business relationships of a competitor.'"  <u>Id.</u>, at 240 (citing <u>Pro. Real Est. Invs., Inc. v. Columbia Pictures Indus., Inc.</u>, 508 U.S. 49, 56 (1993)).

88.     In <u>Trustees</u>, the Eastern District provided the following analysis about determining whether a claim is a "sham," and therefore, not protected by the <u>Noerr-Pennington</u> doctrine:

> The Supreme Court outlined a two-part definition of "sham" activity in <u>PRE</u>, explaining that the inquiry is initially -- and often finally -- an objective one. In order for a suit to be a "sham," it "must be objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits.  If an objective litigant could conclude that the suit is reasonably calculated to elicit a favorable outcome, the suit is immunized under <u>Noerr</u>[.]  Only if the suit is objectively without merit can a court consider a litigant's subjective motivation:  "Under this second part of our definition of sham, the court should focus on whether the baseless lawsuit conceals an attempt to interfere *directly* with the business relationships of a competitor, through the use [of] the governmental *process*—as opposed to the *outcome* of that process ...."
>
> A suit is objectively baseless if the litigant did not have probable cause to institute legal proceedings.  Probable cause requires no more than a reasonable belief that there is a chance that a claim may be held valid upon adjudication.

<u>Id.</u>, at 244-245 (emphasis in original) (internal citations and quotations omitted).

89.     In <u>Brown v. TD Bank, N.A.</u>, 2016 WL 1298973 (E.D. Pa. Apr. 4, 2016), the Eastern District applied the <u>Noerr-Pennington</u> doctrine to Title VII and Section 1981 retaliation claims.  <u>See</u> Opinion of Stewart Dalzell, J., in <u>Brown v. TD Bank, N.A.</u>, attached as Exhibit "H."

90.     Specifically, in <u>Brown v. TD Bank</u>, the plaintiff alleged "various violations of 42 U.S.C. § 1981, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e <u>et seq.</u>, and the Pennsylvania Human Relations Act ("PHRA")." <u>Id.</u>, at *1.

91.     The <u>Brown v. TD Bank</u> Court summarized the claims alleged by the plaintiff as follows:

> In Counts VII, VIII, and XII, Brown alleges that the defendants violated Section 1981, Title VII, and the PHRA by threatening to file and then filing a retaliatory civil action against him.  In Count I, Brown alleges that all defendants violated Section 1981 by creating a hostile work environment, discriminating against him based on his race, and retaliating against him.  In Counts III, V, X, and XI, Brown alleges that all defendants violated both Section 1981 and the PHRA by wrongfully suspending and terminating him.

<u>Id.</u>, *5 (internal citations omitted).

92.     The defendants in <u>Brown v. TD Bank</u> moved to dismiss all claims under "Section 1981, Title VII, and the PHRA [related to] threatening to sue Brown, and then actually filing a lawsuit against him" based on the <u>Noerr-Pennington</u> doctrine.  <u>Id.</u>, at *5.

93.     Ultimately, the <u>Brown v. TD Bank</u> court dismissed the plaintiff's retaliation claims after application of the <u>Noerr-Pennington</u> doctrine, and provided the following reasoning:

> Since we find that [the defendants'] civil action filed against [the plaintiff] in the Court of Common Pleas was not a sham, it is entitled to protection under the <u>Noerr-Pennington</u> doctrine.  We will therefore dismiss Counts VII, VIII, and XII of the first amended complaint with prejudice. We omit further discussion of these claims and the parties' arguments with respect thereto.

<u>Id.</u>, at *8.

94.     The same analysis from <u>Brown v. TD Bank</u> applies to this case, and for that reason, the retaliation claims made in ¶¶ 84-101 in plaintiff's Amended Complaint must be dismissed.

95.     In the counterclaim for conversion, it is alleged that, on August 15, 2021, plaintiff accessed the employee-only office and "took documents, including work schedules, without permission to do so."  See Exhibit "E" at Counterclaim, ¶ 7.

96.     The exchange of discovery has yielded uncontradicted, objective proof that plaintiff climbed over the service counter on August 15, 2021, accessed the employee-only office, and took documents, which she then produced in her discovery responses on November 3, 2022.

97.     Specifically, a still from security footage captured on August 15, 2021 shows plaintiff climbing over the service counter:



98.     It is further alleged in the counterclaim that, on August 21, 2021, plaintiff climbed through the walk-up window and took a set of keys (to the register and front door) without permission to do so.  See Exhibit "E" at Counterclaim, ¶¶ 11-12.

99.     A still from security footage captured on August 21, 2021 shows plaintiff crawling through the walk-up window:



100.    Text messages exchanged in discovery similarly confirm that plaintiff committed conversion on August 15, 2021 and August 21, 2021.  Below are examples of plaintiff's text messages with Misa Liao (store manager) and Brian Lin (district manager), in which plaintiff admits to taking property of Northeast Donut Shop Management Corporation:




101.    Plaintiff also admitted to taking the schedules and keys in her Reply to the Dunkin' defendants' counterclaim.  See Exhibit "G."

102.    Therefore, by plaintiff's own admissions and production of documents, a reasonable litigant in the Dunkin' defendants' position could expect success on the merits on a claim for conversion, and litigation predicated on these facts could -- and should -- leave to a favorable outcome.

103.    While Noerr-Pennington's protections do not extend to sham litigation, a reasonable litigant in the position of the Dunkin' defendants would have had an objective basis for filing the conversion counterclaim in question.  See Brown v. TD Bank, at *8.

104.    The conversion counterclaim in the Dunkin' defendants' Amended Answer to the Complaint is not objectively meritless.  In fact, it is objectively meritorious, as it is supported by text messages, admissions in plaintiff's Reply to the counterclaim, and production of documents that plaintiff took from the shop without permission.

105.    In fact, under no conceivable set of facts could it be concluded that there was no objectively reasonable basis for the counterclaim of conversion against plaintiff.

106.    Since the conversion counterclaim is not a sham, the Dunkin' defendants are entitled to protection under the Noerr-Pennington doctrine.

107.    The Dunkin' defendants cannot be held liable for exercising their right to seek redress in court.

108.    Conversely, plaintiff cannot steal property from the defendants and then claim that the defendants should be barred from asserting their rights under a guise of "retaliation."

109.     As such, all claims of retaliation against the Dunkin' defendants for filing a counterclaim for conversion against plaintiff, including, but not limited to ¶¶ 84-101 of plaintiff's Amended Complaint, should be dismissed.

## VI.

### THE DUNKIN' DEFENDANTS' COUNTERCLAIM FOR CONVERSION IS NOT AN ADVERSE EMPLOYMENT ACTION

110.     In the unlikely event that this Court finds that the Noerr-Pennington doctrine does not apply, plaintiff's retaliation claims related to the counterclaim of conversion must fail nonetheless, as this compulsory, meritorious counterclaim is not an adverse employment action.

111.     Under Burlington Northern & Santa Fe Railway Co. v. White, 548 U.S. 53 (2006), a plaintiff bringing a retaliation claim "must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it might well have dissuaded a reasonable worker from making or supporting a charge of discrimination." Id., at 68.

112.     In Smart v. Phoenix Lithographing Corp., 2022 WL 3229321 (E.D. Pa. 2022), the Eastern District affirmed that, in order for a counterclaim to be considered an adverse employment action, it is required for the plaintiff to plead "that the counterclaim [is] baseless." Id. (citing Berrada, 792 F. App'x at 164).  See also Pawlowski v. Kitchen Expressions Inc., 2017 WL 10259773, at *5 (E.D.N.Y. 2017) ("A counterclaim cannot, however, constitute an adverse employment action unless it is frivolous.  When the counterclaim has merit, it is not an adverse employment action.  In other words, only if a counterclaim is baseless can it constitute retaliation under employment law.").  See opinion in Smart, attached as Exhibit "I."

27

113.     The <u>Smart</u> Court further held that, "[t]o plead that a counterclaim is baseless, a plaintiff must do more than merely contest the factual allegations underlying the counterclaim or the merits of the counterclaim." <u>Id.</u>, at *5.

114.     "Rather, for a retaliation claim to survive the motion to dismiss stage where the employer's counterclaim is alleged to be the adverse action, a plaintiff must plead facts from which the court can reasonably infer that the counterclaim is objectively baseless." <u>Id.</u>

115.     Mere denials of fact and legal conclusions are insufficient to establish that a counterclaim is baseless. <u>Id.</u>, at *6.

116.     In fact, in <u>Smart</u>, the Court held that the plaintiff's "statement that '[d]efendants asserted a baseless counterclaim against [p]laintiff" is not a well-pleaded factual allegation which the Court is required to accept as true. The same is true of the allegations that [d]efendants' counterclaim is 'frivolous' and that [d]efendants filed it in 'bad faith.'" <u>Id.</u>

117.     Also, "the Third Circuit [has] considered the compulsory nature of a counterclaim in holding that a retaliation claim based on a counterclaim fails to state a claim." <u>Id.</u>, at *7 (citing <u>Berrada</u>, 792 F. App'x at 164).

118.     Specifically, the <u>Berrada</u> Court noted that, when "the counterclaims [are] compulsory, [ ] there is nothing suspicious about [d]efendants' counterclaims when the Rules required [d]efendants to assert them or risk waiving them." <u>Id.</u>, (citing <u>Berrada</u>, 792 F. App'x at 164).

119.     Here, it is illogical that the filing of a compulsory,[8] meritorious counterclaim for conversion -- which is supported by plaintiff's own admissions -- can form the basis of a retaliation claim.

_____

[8] Pursuant to Federal Rule of Civil Procedure 13(a), a party must file any counterclaims that "arise[ ] out of the transaction or occurrence that is the subject matter of the opposing party's claim." Fed. R. Civ. P. 13(a)(1)(A).

120.    Notably, there are no facts pled in either plaintiff's Amended Complaint or her Reply to the counterclaim that establish that the Dunkin' defendants' counterclaim is "baseless," as it is not.  See Exhibits "F" and "G."

121.    The fact that plaintiff's Reply and Amended Complaint are devoid of "any non-conclusory factual allegations which make it plausible that the [c]ounterclaim was baseless" is fatal to plaintiff's retaliation claims.  Id., at *6.

122.    In addition, like in Berrada, the fact that the Dunkin' defendants' conversion counter is compulsory "weighs against finding that the [c]ounterclaim is baseless."  Id., at *7.

123.    The Dunkin' defendants' counterclaim for conversion is well-founded and substantiated, as it is based on plaintiff's own admissions in her text messages, her admissions in her Reply to the counterclaim, and her production of the documents that she took from the shop without permission.  See Exhibit "G."

124.    As argued supra regarding application of the Noerr-Pennington doctrine, there is no way to conclude that the counterclaim against plaintiff was objectively baseless, as plaintiff admits to taking the property of Northeast Donut Shops Management Corporation in text messages and in her Reply to the counterclaim.  See Exhibit "G."

125.    Ultimately, plaintiff has not pled -- and cannot plead -- that she suffered an adverse employment action for purposes of a retaliation claim, as she has not pled any facts to establish that the counterclaim for conversion is objectively baseless.

126.    As such, dismissal of ¶¶ 84-101 of plaintiff's Amended Complaint is warranted.

---

Here, the counterclaim for conversion is compulsory under the Federal Rules, and it would have been waived if not alleged.

# VII.

## PLAINTIFF'S AMENDED COMPLAINT FAILS TO ALLEGE SUFFICIENT FACTS TO ESTABLISH LIABILITY ON THE PART OF THE INDIVIDUAL DEFENDANTS

### A.  Alleged Violations of 42 U.S.C. § 1981 (Counts I, II, and III)

127.    Counts I, II, and III of plaintiff's Amended Complaint allege that Misa Liao, Leshia Evans, Brian Lin, and Kim Hong ("the individual defendants") violated Section 1981 by discriminating against plaintiff on the basis of race, color, and sex, created a hostile work environment, and retaliated against her.  See Exhibit "F."

128.    However, plaintiff's Amended Complaint fails to set forth allegations sufficient to demonstrate that the individual defendants were personally involved in any discriminatory conduct against plaintiff or that they either intentionally caused plaintiff's employer (Northeast Donut Shops Management Corporation) to infringe upon plaintiff's Section 1981 rights or authorized, directed, or participated in any infringing conduct.

129.    As such, Counts I, II, and III of plaintiff's Amended Complaint as alleged against the individual defendants must be dismissed.

130.    It is well-accepted that "individual liability is possible under Section 1981 if the defendants intentionally cause an infringement of the rights protected by Section 1981, regardless of whether the employer-entity may be held liable."  Brown v. TD Bank, N.A., 2016 WL 1298973, at *9 (E.D. Pa. 2016) (citing Cardenas v. Massey, 269 F.3d 251, 268 (3d Cir. 2001)).

131.    In other words, "[i]ndividuals may be held personally liable if they intentionally caused the employer-entity to infringe upon a plaintiff's Section 1981 rights or if they authorize,

direct, or participate in the alleged discriminatory conduct." Id. (citing Al-Khazraji v. Saint

Francis Coll., 784 F.2d 505, 518 (3d Cir. 1986), aff'd, 481 U.S. 604 (1987)).

132.    The Eastern District has recognized that "[a] cause of action in the employment

context based upon [Section] 1981 must set forth facts tending to establish that the allegedly

disparate treatment suffered by plaintiff was the result of purposeful or intentional

discrimination." Armstrong v. Sch. Dist. of Philadelphia, 597 F. Supp. 1309, 1312 (E.D. Pa.

1984).

133.    "The criterion of purposeful or intentional discrimination cannot be satisfied by

vague and conclusory allegations in the complaint unsupported by affidavits, depositions, or

other admissible evidence dehors the complaint, stating the specific facts upon which claims of

discrimination are based." Id.

134.    Ultimately, "a claim seeking to impose personal liability under Section 1981 must

be predicated on the actor's personal involvement and there must therefore be some affirmative

link to causally connect the actor with the discriminatory action." Johnson v. Res, for Human

Dev., Inc., 843 F. Supp. 974, 977 (E.D. Pa. 1994).

135.    When there is no affirmative link pled to causally connect individual defendants

with actions complained of, dismissal of the individual defendants is appropriate. Id., at 978-

979.

136.    Here, while plaintiff has pleaded some conclusory allegations relating to the

individual defendants in her Amended Complaint, these allegations fall well short of the

Iqbal/Twombly standard for pleading that the individual defendants were "personally involved"

in intentional discrimination or that there exists a causal connection between the actions of the

individual defendants and any alleged acts of discrimination.

31

137.     Notably, there are no allegations related to any specific conduct of Leshia Evans, Kim Hong, or Brian Lin in plaintiff's Amended Complaint.  See Exhibit "F."

138.     In regard to Misa Liao, plaintiff's Amended Complaint includes the following allegations:

> 44.     Defendant Liao informed Ms. Brown that the reason that Defendants refused to investigate Ms. Brown's complaint [and Nawaz Matkhaili] was because Ms. Brown is Black.
>
> 45.     Defendant Liao informed Ms. Brown that she didn't care that Ms. Brown was sexually assaulted because Ms. Brown is Black.
>
> 46.     Defendant Liao further stated to Ms. Brown that all the Black employees, including Ms. Brown, "are lazy."

Exhibit "F" at ¶¶ 44-46.

139.     These allegations are insufficient to establish a claim of disparate treatment, hostile work environment, or retaliation under Section 1981.

140.     The remainder of the allegations against the individual defendants are improper "group pleadings," boilerplate, and conclusory, which are insufficient to state a claim for relief. See Iqbal, 556 U.S. at 678 (noting plaintiffs may not rely upon "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements"). See also Com. v. Think Fin., Inc., 2016 WL 183289, at *11 (E.D. Pa. 2016) ("group pleading that fails to provide defendants with fair notice of what they are being accused" violates Fed.R.Civ.P. 8).

141.     The allegations in plaintiff's Amended Complaint do not show any intent on the part of the individual defendants to discriminate against plaintiff because of her race, color, or sex, nor do they establish that the individual defendants personally retaliated against plaintiff or participated in a hostile work environment.  See Exhibit "F."

142.     Ultimately, in her Amended Complaint, plaintiff makes nothing other than a threadbare assertion that the individual defendants are liable under Section 1981, which is insufficient under Iqbal/Twombly.

143.     Plaintiff provides absolutely no facts in her Amended Complaint to establish that the individual defendants personally participated in any adverse employment actions against her. See Exhibit "F."

144.     Accordingly, plaintiff's disparate treatment, hostile work environment, and retaliation claims (Counts I, II, and III) as against the individual defendants fail to meet the Iqbal/Twombly pleading standard and should be dismissed.

## B.   Alleged Violations of the PHRA (Counts XIV and XV)

### 1.   Retaliation Under the PHRA (Count XIV)

145.     Section 955(d) of the PHRA states, in relevant part:

> It shall be an unlawful discriminatory practice ... [f]or any ... employer ... to discriminate in any manner against any individual because such individual has opposed any practice forbidden by this act, or because such individual has made a charge, testified or assisted, in any manner, in any investigation, proceeding or hearing under this act.

43 Pa.C.S. § 955(d).

146.     Like a retaliation claim under Section 1981, boilerplate allegations insufficient to state a claim under Section 955(d).  Clinkscales v. Children's Hosp. of Phila., 2009 WL 1259104, at *6 (E.D. Pa. 2009).

147.     In fact, to state a claim under Section 955(d), a plaintiff "must allege the individual's personal involvement in the alleged discrimination and retaliation."  Fleet v. CSX Intermodal, Inc., 2017 WL 6520535, at *3 (E.D. Pa. 2017).

148.    As argued <u>supra</u>, plaintiff has failed to allege facts in her Amended Complaint that demonstrate the individual defendants' personal involvement in the alleged retaliation.  <u>See</u> Exhibit "F."

149.    Plaintiff has pled no facts in her Amended Complaint that establishes liability against the individual defendants under Section 955(d), and therefore, Count XIV of the Amended Complaint should be dismissed.

### 2.    <u>Aiding and Abetting Under the PHRA (Count XV)</u>

150.    Section 955(e) of the PHRA forbids "any person, employer, employment agency, labor organization or employee, to aid, abet, incite, compel or coerce the doing of any act declared by this section to be an unlawful discriminatory practice…" 43 Pa.C.S. § 955(e).

151.    In <u>Destefano v. Henry Michell Co.</u>, 2000 WL 433993 (E.D. Pa. 2000), the Eastern District predicted that "the Pennsylvania Supreme Court would likely interpret section 955(e) to require allegations of scienter or a common purpose to retaliate shared between the individual defendant and the employer." <u>Id.</u>, at *2.

152.    When the plaintiff's complaint does not "specifically allege that [the individual defendants] intended to aid the [defendant-company's] discriminatory behavior, or shared some common purpose with the [c]ompany to retaliate," dismissal of claims against the individual defendants is warranted.  <u>Id.</u>, at *3.

153.    Here, the allegations in plaintiff's Amended Complaint are insufficient to plead a claim against the individual defendants for aiding and abetting discrimination under § 955(e). <u>See</u> Exhibit "F."

154.    As argued <u>supra</u>, there are no allegations that any of the individual defendants directly participated in any discriminatory conduct towards plaintiff, retaliated against her, or participated in a hostile work environment.

155.    In fact, plaintiff's Amended Complaint lacks any factual detail with respect to her claims against the individual defendants.  <u>See</u> Exhibit "F."

156.    Simply alleging that the individual defendants were plaintiff's supervisors is insufficient to withstand a motion to dismiss.  <u>See</u> <u>Miles v. City of Philadelphia</u>, 2013 WL 125186, at *8 (E.D. Pa. 2013) (although the plaintiff alleged that the individual defendants had supervisory authority over the terms and conditions of her employment, "[m]ore is required for aiding and abetting liability.").  <u>See also</u> <u>Thorpe v. Reading Hosp.</u>, 2006 WL 3196456 at *7 (E.D.Pa. 2006) (dismissing a claim under § 955(e) where plaintiff did "not allege that [d]efendant knew about the alleged discrimination and refused to remedy it").

157.    Ultimately, there are no allegations in plaintiff's Amended Complaint that establish that the individual defendants intended to aid any discriminatory behavior or shared a common purpose to retaliate.  <u>See</u> Exhibit "F."

158.    Plaintiff's conclusory allegations in relation to her claim for a violation of Section 955(e) of the PHRA are insufficient, as she fails to allege scienter or a common purpose on the part of the individual defendants.

159.    As such, Count XV of plaintiff's Amended Complaint as alleged against the individual defendants must be dismissed.

**C.** **Alleged Violations of the PFPO (Counts XVII and XVIII)**

    **1.** **Retaliation Under the PFPO (Count XVII)**

160.    The PFPO makes it unlawful for "any person to harass, threaten, harm, or otherwise penalize, retaliate or discriminate in any manner against any person" because he or she asserted his or rights under the Ordinance.  Phila., Pa. Code § 9-1103(1)(g).

161.    When a plaintiff "fails to plead any facts upon which this Court could reasonably infer that [an individual defendant] harassed, threatened, harmed, damaged, or otherwise penalized [the plaintiff] after [the plaintiff] complained of [ ] harassing conduct," dismissal of a PFPO-retaliation claim is proper.  Vazquez v. Carr & Duff, Inc., 2017 WL 4310253, at *8 (E.D. Pa. 2017).

162.    In other words, a plaintiff must allege that an individual defendant "had a hand in the allegedly retaliatory" conduct.  Id.

163.    As argued supra, plaintiff has failed to plead any facts upon which this Court could find that the individual defendants engaged in any act of unlawful retaliation against plaintiff.  See Exhibit "F."

164.    There are no allegations in plaintiff's Amended Complaint that establish that the individual defendants directed or participated in any retaliation conduct towards plaintiff.  See Exhibit "F."

165.    As such, plaintiff's PFPO-retaliation claim against the individual defendants must be dismissed.

    **2.** **Aiding and Abetting Under the PFPO (Count XVIII)**

166.    Similar to the aiding and abetting provision of the PHRA, Subsection 1103(1)(h) of the PFPO makes it unlawful:

> For any person to aid, abet, incite, induce, compel or coerce the doing of any unlawful employment practice or to obstruct or prevent any person from complying with the provisions of this Section or any order issued hereunder or to attempt directly or indirectly to commit any act declared by this Section to be an unlawful employment practice.

Phila. Code § 9-1103(1)(h).

167.    Under the PFPO, individual liability can "be imposed for a supervisor's own discriminatory conduct or their failure to take action against discrimination experienced by the employee." Ahern v. Eresearch Tech., Inc., 183 F. Supp. 3d 663, 671 (E.D. Pa. 2016).

168.    In fact, requirements under the "PHRA[ ] and the PFPO have been interpreted in a similar fashion." Id., at 668.

169.    Both the PHRA and the PFPO "require personal involvement" for there to be individual liability. Fleet v. CSX Intermodal, Inc., 2018 WL 3489245, at *18, fn. 174 (E.D. Pa. 2018).

170.    Plaintiff's aiding and abetting claim under the PFPO against the individual defendants fails to for the same reasons that her PHRA claims fail.

171.    Specifically, there are no allegations in plaintiff's Amended Complaint that demonstrate that the individual defendants directly participated in any discriminatory conduct or personally failed to take action against any alleged discrimination experienced by plaintiff. See Exhibit "F."

172.    For all of the reasons this Court should dismiss plaintiff's PHRA claim for aiding and abetting, her aiding and abetting claim under the PFPO should be dismissed.

173.    Ultimately, plaintiff fails to allege any unlawful conduct by the individual defendants, and she has pled insufficient facts to establish that the individual defendants aided or abetted any unlawful conduct.

174.    As such, plaintiff's aiding and abetting claim under the PFPO should be dismissed.

**VIII.**

**PLAINTIFF'S FAILURE-TO-PAY-MINIMUM-WAGE CLAIMS
UNDER THE FLSA AND PMWA MUST BE DISMISSED**

175.    In Counts VII and IX of the Amended Complaint, plaintiff alleges violations of the FLSA and PMWA for failure to pay her a minimum wage.  See Exhibit "F."

176.    Because plaintiff's minimum-wage claims are based solely on boilerplate, conclusory allegations in the Amended Complaint, these claims must be dismissed.

177.    Since the PMWA "substantially parallels" the FLSA, "federal courts are directed to interpretation of the FLSA when analyzing claims under the PMWA."  Bedolla v. Brandolini, 2018 WL 2291117, at *4 (E.D. Pa. 2018).

178.    To state a *prima facie* minimum-wage case under the FLSA, the plaintiff must allege: "(1) he was an 'employee,' as defined by the FLSA; (2) the defendant was 'engaged in commerce,' as defined by the FLSA; and (3) he was not paid the federal minimum wage..." Pleickhardt v. Major Motors of Pennsylvania, Inc., 2017 WL 4180112, at *3 (M.D. Pa. 2017) (citing Razak v. Uber Techs., Inc., 2016 WL 5874822, at *3 (E.D. Pa. 2016)).

179.    "Both the federal minimum wage and the Pennsylvania minimum wage are currently $7.25 per hour."  Id.

180.    Here, plaintiff's minimum-wage claims fail because she has not explicitly alleged that her average hourly wage fell below the federal minimum during any particular week.  See Razak v. Uber Techs., Inc., 2016 WL 5874822, at *6 (E.D. Pa. 2016).

181.     In fact, all of the allegations that support plaintiff's minimum-wage claims in the

Amended Complaint are boilerplate and conclusory, which are insufficient to state a claim under

Iqbal/Twombly.

182.     As such, plaintiff's failure-to-pay-minimum-wage claims, specifically Counts VII

and IX of the Amended Complaint, must be dismissed.

### IX.

### PLAINTIFF'S FAILURE-TO-PAY-OVERTIME CLAIMS UNDER THE FLSA AND PMWA MUST BE DISMISSED

183.     In Counts VIII and X of the Amended Complaint, plaintiff alleges failure-to-pay

overtime pursuant to the FLSA and PMWA.  See Exhibit "F."

184.     Like plaintiff's minimum-wage claims, her failure-to-pay-overtime claims must

be dismissed, as they are based solely on boilerplate, conclusory allegations in the Amended

Complaint.

185.     The Eastern District has recognized that, "[b]ecause of the similarities between

the PMWA and the FLSA, Pennsylvania courts analyze overtime and minimum wage violations

of the PMWA and the FLSA under the same framework."  Bansept v. G & M Auto., 434 F.

Supp. 3d 253, 258 (E.D. Pa. 2020).

186.     In Davis v. Abington Memorial Hospital, 765 F.3d 236 (3d Cir. 2014), the Third

Circuit set forth the proper pleading standard for a FLSA overtime claim.

187.     Specifically, the Davis Court held that, "in order to state a plausible FLSA

overtime claim, a plaintiff must sufficiently allege forty hours of work in a *given* workweek *as*

*well as* some uncompensated time in excess of the forty hours."  Id., at 241-242 (citing Lundy v.

Catholic Health System of Long Island Inc., 711 F.3d 106 (2d Cir.2013)) (emphasis in original).

188.     In dismissing the plaintiffs' claim for overtime pay, the <u>Davis</u> Court provided the following reasoning:

> None of the named plaintiffs has alleged a single workweek in which he or she worked at least forty hours and also worked uncompensated time in excess of forty hours.  Of the four named plaintiffs who allege that they "typically" worked at least forty hours per week, in addition to extra hours "frequently" worked during meal breaks or outside of their scheduled shifts -- Davis, Erica Williams, Gerardina Ilaria, and Diane Read -- none indicates that she in fact worked extra hours *during* a typical (that is, a forty-hour) week.  Their allegations are therefore insufficient.

<u>Id.</u>, at 243 (emphasis in original).  See also <u>Nardelli v. Lamparski</u>, 2022 WL 4133335, at *4 (W.D. Pa. 2022) "[p]laintiffs must provide sufficient detail about the length and frequency of their unpaid work to support a reasonable inference that they worked more than forty hours in a given week.").

189.     The same analysis from <u>Davis</u> applies to this case.

190.     Plaintiff fails to plead a single workweek in which she worked at least forty hours and also worked uncompensated time in excess of forty hours.  <u>See</u> Exhibit "F."

191.     Plaintiff's failure-to-pay-overtime claims are based on nothing but boilerplate, conclusory allegations, which are insufficient to state a claim for relief under <u>Iqbal/Twombly</u>. <u>See</u> Exhibit "F."

192.     As such, plaintiff's claims for failure-to-pay-overtime claims in Counts VIII and X of the Amended Complaint must be dismissed.

## X.

## PLAINTIFF'S CLAIM UNDER THE PWPCL <u>MUST BE DISMISSED</u>

193.     In Count XI of the Amended Complaint, plaintiff alleges a claim for "failure to pay wages" under the PWPCL.  <u>See</u> Exhibit "F."

194.    Because plaintiff does not allege the existence of an employment contract, her claim under the PWPCL must be dismissed.

195.    The Third Circuit has held that the PWPCL "does not create a right to compensation. Rather, it provides a statutory remedy when the employer breaches a contractual obligation to pay earned wages." Kane v. Cook Bros. Companies, 2009 WL 179728, at *4 (M.D. Pa. 2009) (citing Weldon v. Kraft, Inc., 896 F.2d 793, 801 (3d Cir.1990)).

196.    As such, "the PWPCL claim is viable only if plaintiff had a contract for the unpaid wages." Id.

197.    Here, plaintiff fails to plead the existence of a contract -- oral, written, or otherwise -- with any of the Dunkin' defendants to pay earned wages in the Amended Complaint. See Exhibit "F."

198.    The Amended Complaint does not include facts to support the requisite elements of a contract to pay earned wages. See Exhibit "F."

199.    In addition, plaintiff's PWPCL claim is asserted exclusively by boilerplate, conclusory allegations, which is insufficient to state a claim under Iqbal/Twombly.

200.    Therefore, plaintiff's PWPCL claim in Count XI of the Amended Complaint must be dismissed.

## CONCLUSION

201.    In her Amended Complaint, plaintiff fails to state any claim upon which relief can be granted against defendants Dunkin' Donuts, Dunkin' Donuts of America, Inc., Northeast Donut Shops Management Corporation, Brian Lin, Misa Liao, Leshia Evans, and Kim Hong.

202.    As such, pursuant to Fed.R.Civ.P. 12(b)(6), all causes of action alleged against defendants Dunkin' Donuts, Dunkin' Donuts of America, Inc., Northeast Donut Shops

Management Corporation, Brian Lin, Misa Liao, Leshia Evans, and Kim Hong in plaintiff's

Amended Complaint should be dismissed, with prejudice.

BILLET & ASSOCIATES, LLC

/s/ Lauren B. Orner
By:_____
ROBERT DOUGLAS BILLET, ESQUIRE
LAUREN B. ORNER, ESQUIRE

2000 Market Street, Suite 2803
Philadelphia, PA  19103
215-496-7500/fax 7505
rbillet@billetlaw.com
lorner@billetlaw.com

Attorneys for defendants Dunkin' Donuts, Dunkin
Donuts of America, Inc., Northeast Donut Shops
Management Corporation, Brian Lin, Misa Liao,
Leshia Evans, and Kim Hong

### UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SHAKIYA BROWN | : | NO. 2:22-cv-01916 |
| | : | |
| v. | : | |
| | : | |
| DUNKIN' DONUTS, DUNKIN' | : | |
| DONUTS OF AMERICA, INC., | : | |
| NORTHEAST DONUT SHOPS | : | |
| MANAGEMENT CORPORATION, | : | |
| BRIAN LIN, MISA LIAO, | : | |
| LESHIA EVANS, KIM HONG, | : | |
| AND NAWAZ MATKHAILI | : | CIVIL ACTION |

**MEMORANDUM OF LAW IN SUPPORT OF THE
MOTION OF DEFENDANTS DUNKIN' DONUTS,
DUNKIN' DONUTS OF AMERICA, INC., NORTHEAST DONUT SHOPS
MANAGEMENT CORPORATION, BRIAN LIN, MISA LIAO,
LESHIA EVANS, AND KIM HONG TO DISMISS PLAINTIFF'S
<u>AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)</u>**

So as to avoid repetition, defendants Dunkin' Donuts, Dunkin' Donuts of America, Inc.,

Northeast Donut Shops Management Corporation, Brian Lin, Misa Liao, Leshia Evans, and Kim

Hong rely on the attached motion, which contains a statement of undisputed facts, legal

arguments, and references to law.

Respectfully submitted,

BILLET & ASSOCIATES, LLC

/s/ Lauren B. Orner
By: _____
ROBERT DOUGLAS BILLET, ESQUIRE
LAUREN B. ORNER, ESQUIRE

2000 Market Street, Suite 2803
Philadelphia, PA  19103
215-496-7500/fax 7505
rbillet@billetlaw.com
lorner@billetlaw.com

Attorneys for defendants Dunkin' Donuts, Dunkin'
Donuts of America, Inc., Northeast Donut Shops
Management Corporation, Brian Lin, Misa Liao,
Leshia Evans, and Kim Hong

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| _____ | : | NO. 2:22-cv-01916 |
| SHAKIYA BROWN | : | |
| | : | |
| v. | : | |
| | : | |
| DUNKIN' DONUTS, DUNKIN' | : | |
| DONUTS OF AMERICA, INC., | : | |
| NORTHEAST DONUT SHOPS | : | |
| MANAGEMENT CORPORATION, | : | |
| BRIAN LIN, MISA LIAO, | : | |
| LESHIA EVANS, KIM HONG, | : | |
| AND NAWAZ MATKHAILI | : | CIVIL ACTION |

**CERTIFICATION OF SERVICE**

I, Lauren B. Orner, Esquire, hereby certify that, on December 20, 2022, a true and correct copy of the Motion of Defendants Dunkin' Donuts, Dunkin' Donuts of America, Inc., Northeast Donut Shops Management Corporation, Brian Lin, Misa Liao, Leshia Evans, and Kim Hong to Dismiss Plaintiff's Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) was served upon all counsel of record via electronic filing.

BILLET & ASSOCIATES, LLC

/s/ Lauren B. Orner
By:_____
ROBERT DOUGLAS BILLET, ESQUIRE
LAUREN B. ORNER, ESQUIRE

2000 Market Street, Suite 2803
Philadelphia, PA  19103
215-496-7500/fax 7505
rbillet@billetlaw.com
lorner@billetlaw.com

Attorneys for defendants Dunkin' Donuts, Dunkin'
Donuts of America, Inc., Northeast Donut Shops
Management Corporation, Brian Lin, Misa Liao,
Leshia Evans, and Kim Hong

**DEREK SMITH LAW GROUP, PLLC**
IAN M. BRYSON, ESQUIRE
Attorney ID No. 321359
1835 Market Street, Suite 2950
Philadelphia, PA 19103
(215) 391-4790
ian@dereksmithlaw.com
*Attorneys for Plaintiff, Shakiya Brown*

> **EXHIBIT A**

### IN THE UNITED STATES DISTRICT COURT FOR THE
### EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SHAKIYA BROWN,<br><br>            Plaintiff,<br><br>   v.<br><br>DUNKIN' DONUTS, DUNKIN' DONUTS OF AMERICA, INC., NORTHEAST DONUT SHOPS MANAGEMENT CORPORATION, BRIAN LIN, MISA LIAO, LESHIA EVANS, KIM HONG and NAWAZ MATKHAILI,<br><br>            Defendants. | Civil Action No._____<br><br>**COMPLAINT FOR DECLARATORY JUDGMENT, INJUNCTIVE RELIEF *and* DAMAGES**<br><br>JURY TRIAL DEMANDED |

### <u>Nature of the Action</u>

1. This is an action for relief from violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. ("Title VII"); Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981); the Pennsylvania Human Relations Act, 43 P.S. §§ 951-963 ("PHRA"); the Philadelphia Fair Practices Ordinance, Philadelphia Code §§ 9-1101 et seq. ("PFPO"); the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*; the Pennsylvania Minimum Wage Act of 1968 ("PMWA"), 42 P.S. §§ 333.101, *et seq.*; the Pennsylvania Wage Payment and Collection Law ("WPCL"), 43 P.S. § 260.1, *et seq.*, and Pennsylvania common law assault and battery.

1

2. Plaintiff seeks actual damages, compensatory damages, punitive damages, statutory penalties, reinstatement, pre- and post-judgment interest, reasonable attorneys' fees and costs of suit as remedies for Defendants' violations of her rights.

## Parties

3. Plaintiff Shakiya Brown ("Ms. Brown") is an adult individual resident of Philadelphia County and a citizen of the Commonwealth of Pennsylvania.

4. Defendant Dunkin' Donuts is a business entity registered to do business in the Commonwealth of Pennsylvania located at 1345 W. Olney Ave., Philadelphia, PA 19141. At all relevant times, Defendant acted or failed to act through its agents, servants and employees, each of whom were acting within the course and scope of their employment with Respondent. At all relevant times, Defendant was Plaintiff's employer covered under Title VII, Section 1981, the PHRA, the PFPO, the FLSA, the PMWA, and the WPCL.

5. Defendant Dunkin Donuts of America, Inc. is a business corporation registered to do business in the Commonwealth of Pennsylvania located at 130 Royall St., Canton, MA 02021. At all relevant times, Defendant acted or failed to act through its agents, servants and employees, each of whom were acting within the course and scope of their employment with Defendant. At all relevant times, Defendant was Plaintiff's employer covered under Title VII, Section 1981, the PHRA, the PFPO, the FLSA, the PMWA, and the WPCL.

6. Defendant Northeast Donut Shops Management Corporation is a business corporation registered to do business in the Commonwealth of Pennsylvania located at 1345 W. Olney Ave., Philadelphia, PA 19141. At all relevant times, Respondent acted or failed to

act through its agents, servants and employees, each of whom were acting within the course and scope of their employment with Respondent. At all relevant times, Defendant was Plaintiff's employer covered under Title VII, Section 1981, the PHRA, the PFPO, the FLSA, the PMWA, and the WPCL.

7. Defendant Nawaz Matkhaili is an adult individual residing at 304 S. 52nd St., Philadelphia, PA 19143. Defendant Marjkaili was Plaintiff's coworker who sexually harassed and sexually assaulted Plaintiff. At all relevant times, Defendant acted or failed to act in the course and scope of his employment with Defendants.

8. Defendant Brian Lin is an adult individual with a principal place of business located at 1345 W. Olney Ave., Philadelphia, PA 19141. Defendant Lin was Plaintiff's store manager and supervisor. At all relevant times, Defendant acted or failed to act in the course and scope of his employment with Defendants.

9. Defendant Misa Liao is an adult individual with a principal place of business located at 1345 W. Olney Ave., Philadelphia, PA 19141. Defendant Liao was Plaintiff's manager and supervisor. At all relevant times, Defendant acted or failed to act in the course and scope of her employment with Defendants.

10. Defendant Leshia Evans is an adult individual with a principal place of business located at 1345 W. Olney Ave., Philadelphia, PA 19141. Defendant Evans was Plaintiff's human resources manager and supervisor. At all relevant times, Defendant acted or failed to act in the course and scope of her employment with Defendant.

11. Defendant Kim Hong is an adult individual with a principal place of business located at 1345 W. Olney Ave., Philadelphia, PA 19141. Defendant Hong was Plaintiff's

supervisor. At all relevant times, Defendant acted or failed to act in the course and scope of her employment with Defendants.

12. Defendants Dunkin Donuts, Dunkin Donuts of America, Inc. and Northeast Donut Shops Management Corporation were Plaintiff's joint employers who at all relevant times exercised joint control and dominion over the location of the work, discretion over the duration of the relationship between the parties, power of hiring and firing, responsibility over the method of payment and provision of employee benefits, and control over the daily activity of the workers, including assignment of work, direct supervision of workers, training and furnishing of materials.

13. At all relevant times, Defendants were "employers" and Ms. Brown was an "employee" within the meaning of the applicable law.

14. Defendants systematically and willfully violate workers' rights under Title VII, Section 1981, the PHRA, the PFPO, the FLSA, the PMWA, and the WPCL.

<div align="center">

**Exhaustion of Administrative Remedies**

</div>

15. Ms. Brown timely filed a charges of discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") and the Philadelphia Commission on Human Relations ("PCHR") alleging violations of Title VII, the PHRA and the PFPO.

16. Plaintiff's PHRA and PFPO claims are still pending before PCHR because less than one year has elapsed since PCHR assumed jurisdiction over Plaintiff's charges. After one year, Plaintiff will seek leave to amend this complaint to assert her PHRA and PFPO claims against Defendants.

17. EEOC issued Ms. Brown a Notice of Right to Sue Within 90 Days.

18. Ms. Brown has timely filed this action and has complied with all administrative prerequisites to bring this lawsuit.

### Jurisdiction and Venue

19. This Court has jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1331 because it involves questions of federal law under the Title VII, Section 1981 and the FLSA.

20. This Court has supplemental jurisdiction over Plaintiff's PHRA, PFPO, PMWA, WPCL and Assault and Battery claims pursuant to 28 U.S.C. § 1367 because they arise from the same nucleus of operative facts as Plaintiff's Title VII, Section 1981 and FLSA claims.

21. Venue in this judicial district is proper pursuant to 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(f)(3) because the acts and omissions giving rise to Plaintiff's claims occurred here and Defendants are subject to personal jurisdiction here.

### Facts

22.  Ms. Brown is an adult Black female of African American descent who worked at Respondents' Dunkin Donuts store located at 1345 W. Olney Ave., Philadelphia, PA 19141.

23. Ms. Brown started working at Dunkin' Donuts on May 18, 2021 earning a minimum hourly wage.

24. From the beginning of her employment until her termination, Plaintiff's coworkers and supervisors subject Plaintiff to daily Race-, Color- and Sex-based discrimination, harassment and retaliation, which filled Plaintiff's workplace.

25. Defendants treated Ms. Brown with a pattern of antagonism including Race-, Color- and Sex-based insults and epithets.

26. On May 28, 2021, Defendants left Ms. Brown to close the store with Defendant Nawaz Matkhaili, who had a reputation for sexually harassing and assaulting women in the workplace.

27. On that date, Defendant Matkhaili asked Ms. Brown multiple sexual questions, and she responded stating his conduct was unwelcome.

28. Defendant Matkhaili then followed Ms. Brown to the back of the store where he grabbed and groped her breasts and pressed his erect penis into her buttocks.

29. Defendant Matkhaili then followed Ms. Brown into the bathroom and locked the door to prevent Ms. Brown from escaping.

30. Defendant Matkhaili then undressed himself and tried to force Ms. Brown to touch his penis.

31. Defendant Matkhaili then attempted to remove Ms. Brown's shirt.

32. On May 28, 2021, Ms. Brown reported the rape to her manager, Defendant Liao, via telephone.

33. On May 29, 2021, Ms. Brown reported the rape to Defendant Liao in person.

34. Defendant Liao told Ms. Brown that Defendant Matkhaili's conduct was "ok" because "he's like that with every girl" and stated "he likes girls, it's ok." Defendant Liao further stated, "you know he is a bad boy. He be touching me too."

35. Defendants refused to investigate Ms. Brown's complaint.

36. Between May 28, 2021 and June 9, 2021, Defendants continued putting Ms. Brown on the schedule with Defendant Matkhaili in spite of Ms. Brown's complaints and protests.

37. Defendants continued scheduling Ms. Brown to close the store alone with Defendant Matkhaili.

38. Ms. Brown brought her sister to work one night because she was afraid to work alone with Defendant Matkhaili. Defendant Matkhaili began sexually harassing Ms. Brown's sister and the two women left 30 minutes before the end of Ms. Brown's scheduled shift due to the ongoing harassment.

39. On June 9, 2021, Ms. Brown reported the rape to the Philadelphia Police Department, who initiated an investigation.

40. On June 9, 2021, Ms. Brown reported the rape to her Dunkin Donuts corporate HR.

41. After Ms. Brown reported the rape to the police, Defendant Liao called Ms. Brown and said she was "scared" that Ms. Brown called the police. After that, Defendant Lin acknowledged to that the police were investigating Ms. Brown's complaint.

42. Defendants failed to conduct a prompt, thorough investigation thereby allowing Defendant Matkhaili's harassment to continue.

43. Defendant Matkhaili threatened Ms. Brown, stating "You tried to get me locked up? Better hope I never catch your black ass!"

44. Defendant Liao informed Ms. Brown that the reason that Defendants refused to investigate Ms. Brown's complaint was because Ms. Brown is Black.

45. Defendant Liao informed Ms. Brown that she didn't care that Ms. Brown was sexually assaulted because Ms. Brown is Black.

46. Defendant Liao further stated to Ms. Brown that all the Black employees, including Ms. Brown, "are lazy."

47. Thereafter, Defendants showed the video footage of the rape to Ms. Brown's coworkers.

48. Defendants cut Ms. Brown's hours.

49. Defendants failed to pay Ms. Brown for all hours worked.

50. Defendants failed to pay Ms. Brown overtime compensation for all hours worked over 40 hours in a workweek.

51. Defendants refusing to show Ms. Brown her clock in and clock out times as requested.

52. Defendants refusing to allow Ms. Brown to apply for a manager position.

53. Defendants scheduled Ms. Brown to work very early in the morning even though when Ms. Brown was hired she indicated she could not come in that early due to her bus schedule.

54. Defendants refused to share tips with Ms. Brown.

55. Defendants refused to provide Ms. Brown with a uniform that was provided to all of her similarly situated coworkers who did not share Ms. Brown's protected characteristics.

56. Defendants made discriminatory race-based comments about Ms. Brown's hair.

57. Defendants subjected Ms. Brown to excessive oversight.

58. Plaintiff complained to Defendants about the ongoing discrimination and harassment on several occasions, however Defendants failed to take prompt remedial action and allowed the discrimination and harassment to continue and increase in severity.

59. Defendants did not treat Plaintiff's similarly situated non-Black/Female coworkers with the same disdain with which they treated Plaintiff.

60. Defendants' discrimination, harassment and retaliation has forced Ms. Brown to require ongoing medical care and therapy.

61. On August 12, 2021, Defendants terminated Ms. Brown's employment under conditions of an ongoing hostile work environment.

62. Ms. Brown claims unlawful actual and/or constructive discharge.

63. At all relevant times, Ms. Brown was qualified for the position and his performance was satisfactory and in accordance with the employer's expectations for the position.

64. As a result of Defendants' conduct, Ms. Brown was caused to sustain serious and permanent personal injuries, including permanent psychological injuries.

65. As a result of Defendants' actions, Ms. Brown felt extremely humiliated, degraded, victimized, embarrassed and emotionally distressed.

66. As a result of the acts and conduct complained of herein, Ms. Brown has suffered and will continue to suffer the loss of income, loss of salary, loss of benefits and other compensation which his employment entailed.

67. Ms. Brown also suffers future pecuniary losses, emotional pain, humiliation, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

68. Ms. Brown has further experienced severe emotional and physical distress.

69. As Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Ms. Brown demands Punitive Damages as against all the Defendants, jointly and severally.

70. Defendants have exhibited a pattern and practice of not only discrimination but also retaliation.

71. Defendants at all times refused to investigate or take appropriate remedial action in response to Ms. Brown's complaints of discrimination, harassment and hostile work environment.

72. Defendants' discriminatory conduct was severe and pervasive, creating a hostile work environment for Ms. Brown.

73. Ms. Brown claims a practice of discrimination and claims continuing violations and makes all claims herein under the continuing violations doctrine.

74. Defendants have exhibited a pattern and practice of not only discrimination but also retaliation.

75. Defendants discriminated against Plaintiff for opposing and/or complaining about Defendants' unlawful practices under Title VII, Section 1981, the PHRA and the PFPO.

76. Defendants discriminated against, harassed and retaliated against Plaintiff in the terms and conditions of her employment because of Race, Color and Sex.

77. Defendants subjected Plaintiff to a hostile work environment because of Race, Color and Sex and because she complained about Defendants' unlawful conduct.

78. Defendants retaliated against Plaintiff because she reported or otherwise opposed Defendants' unlawful discriminatory Race-, Color- and Sex-based conduct and practices.

79. The above are just some examples, of some of the discrimination and retaliation to which Defendants subjected Ms. Brown.

80. Because of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, salary, bonuses, benefits and other compensations which such employment entails; as well as past and future pecuniary losses, emotional distress, humiliation, suffering, inconvenience, loss of enjoyment of life activities, and other non-pecuniary loses.

**Causes of Action**

**Count I**
**Section 1981 Disparate Treatment**
**42 U.S.C. § 1981**
**Plaintiff v. All Defendants**

81. Plaintiff incorporates by reference each and every allegation made in the above

paragraphs of this complaint.

82. Section 1981 prohibits race discrimination in the making and enforcing of contracts. 42

U.S.C. § 1981.

83. The Third Circuit has stated that "a wide panoply of adverse employment actions may be

the basis of employment discrimination suits under Title VII of the Civil Rights Act and

42 U.S.C. § 1981." Clark v. Twp. of Falls, 890 F.2d 611, 618-19 (3d Cir. 1989).

84. The Third Circuit has treated Section 1981 claims and Title VII claims interchangeably

with respect to adverse employment actions. See, e.g., Barnees v. Nationwide Mut. Ins.

Co., 598 Fed. Appx. 86, 90 (3d Cir. 2015); Storey v. Burns Int'l Sec. Servs., 390 F.3d

760, 764 (3d Cir. 2004) (a Title VII case); Thompson v. City of Waco, 764 F.3d 500, 503

(5th Cir. 2014) (a Section 1981 case).

85. Under Section 1981, both employers and individual employees can be liable for

discrimination in employment. See Cardenas v. Massey, 269 F.3d 251, 268 (3d Cir.

2001) ("Although claims against individual supervisors are not permitted under Title VII,

this court has found individual liability under § 1981 when [the defendants] intentionally

cause an infringement of rights protected by Section 1981, regardless of whether the

[employer] may also be held liable."); Al-Khazraji v. Saint Francis College, 784 F.2d

505, 518 (3d Cir. 1986) ("employees of a corporation may become personally liable

when they intentionally cause an infringement of rights protected by Section 1981, regardless of whether the corporation may also be held liable").

86. Defendants violated Section 1981 by intentionally discriminating against Plaintiff in a serious tangible way with respect to her compensation, terms, conditions or privileges of employment.

87. Plaintiff's race characteristics were a determinative or motivating factor in Defendants' employment actions.

88. Defendants cannot show any legitimate nondiscriminatory reason for their employment practices and any reasons proffered by the Defendants for their actions against Plaintiff are pretextual and can readily be disbelieved.

89. Plaintiff's protected status played a motivating part in the Defendants' decisions even if other factors may also have motivated Defendants' actions against Plaintiff.

90. Defendants acted with the intent to discriminate.

91. Defendants acted upon a continuing course of conduct.

92. Defendants acted with malice or reckless indifference to Plaintiff's federally protected rights and as a result there should be an award of punitive damages against Defendants.

93. As a result of Defendants' violations of Section 1981, Plaintiff has suffered damages, including, but not limited to: past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

**WHEREFORE**, Plaintiff demands judgment against Defendants and prays for the following relief: (1) actual damages; (2) compensatory damages in an amount consistent with Section

1981; (3) reasonable attorneys' fees in accordance with Section 1981; (4) litigation costs in

accordance with Section 1981; (5) pre- and post-judgment interest as further allowed by law; (6)

an adjudication and declaration that Defendants' conduct as set forth herein is in violation of

Section 1981; (7) punitive damages in accordance with Section 1981; (8) front pay in accordance

with Section 1981 (9) all additional general and equitable relief to which Plaintiff is entitled.

### Count II
### Section 1981 Hostile Work Environment
### 42 U.S.C. § 1981
### Plaintiff v. All Defendants

94. Plaintiff incorporates by reference each and every allegation made in the above

   paragraphs of this complaint.

95. The standards for a hostile work environment claim are identical under Title VII and

   Section 1981. See, e.g., Verdin v. Weeks Marine Inc., 124 Fed. Appx. 92, 95 (3d Cir.

   2005) ("Regarding [plaintiff's] hostile work environment claim, the same standard used

   under Title VII applies under Section 1981."); Ocasio v. Lehigh Valley Family Health

   Center, 92 Fed.Appx. 876, 879-80 (3d Cir. 2004) ("As amended by the 1991 Civil Rights

   Act, § 1981 now encompasses hostile work environment  claims, and we apply the same

   standards as in a similar Title VII claim.").

96. While the standards of liability are identical under Title VII and Section 1981, there is a

   major difference in the coverage of the two provisions: under Title VII, only employers

   can be liable for discrimination in employment, but under Section 1981, individuals,

   including other employees, can be liable for racial discrimination against an employee.

   See Cardenas, 269 F.3d at 268; Al-Khazarji, 784 F.2d at 518.

97. Defendants subjected Plaintiff to harassment motivated by Plaintiff's race characteristics.

98. Defendants' conduct was not welcomed by Plaintiff.

99. Defendants' conduct was so severe or pervasive that a reasonable person in Plaintiff's position would find the work environment to be hostile or abusive.

100.    Plaintiff believed her work environment was hostile or abusive as a result of Defendants' conduct.

101.    As a result of the hostile work environment, Plaintiff suffered a "tangible employment action" defined as a significant change in employment status, failure to promote, reassignment with significantly different responsibilities, and/or a decision causing a significant change in benefits.

102.    Defendants failed to exercise reasonable care to prevent racial harassment in the workplace by failing to establish an explicit policy against harassment in the workplace on the basis of race, failing to fully communicate the policy to its employees, failing to provide a reasonable way for Plaintiff to make a claim of harassment to higher management, and failing to take reasonable steps to promptly correct the harassing behavior raised by Plaintiff.

103.    Defendants acted upon a continuing course of conduct.

104.    As a result of Defendants' violations of Section 1981, Plaintiff has suffered damages, including, but not limited to: past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

**WHEREFORE**, Plaintiff demands judgment against Defendants and prays for the following relief: (1) actual damages; (2) compensatory damages in an amount consistent with Section 1981; (3) reasonable attorneys' fees in accordance with Section 1981; (4) litigation costs in

accordance with Section 1981; (5) pre- and post-judgment interest as further allowed by law; (6) an adjudication and declaration that Defendants' conduct as set forth herein is in violation of Section 1981; (7) punitive damages in accordance with Section 1981; (8) front pay in accordance with Section 1981 (9) all additional general and equitable relief to which Plaintiff is entitled.

### Count III
### Section 1981 Retaliation
### 42 U.S.C. § 1981
### Plaintiff v. All Defendants

105.  Plaintiff incorporates by reference each and every allegation made in the above paragraphs of this complaint.

106.  The Supreme Court has held that retaliation claims are cognizable under Section 1981 despite the absence of specific statutory language. CBOCS West, Inc. v. Humphries, 553 U.S. 442 (2008).

107.  The Third Circuit has indicated that the legal standards for a retaliation claim under Section 1981 are generally the same as those applicable to a Title VII retaliation claim. See, e.g., Cardenas v. Massey, 269 F.3d 251, 263 (3d Cir. 2001) ("[T]o establish a prima facie retaliation claim under Title VII [or] § 1981 … , [a plaintiff] must show: (1) that he engaged in a protected activity; (2) that he suffered an adverse employment action; and (3) that there was a causal connection between the protected activity and the adverse employment action"); Khair v. Campbell Soup Co., 893 F. Supp. 316, 335-36 (D.N.J. 1995) (noting that with respect to retaliation claims, "The Civil Rights Act of 1991 extended § 1981 to the reaches of Title VII.").

108.  The most common activities protected from retaliation under Section 1981 and Title VII are: (1) opposing unlawful discrimination; (2) making a charge of employment discrimination; (3) testifying, assisting or participating in any manner in an investigation,

proceeding or hearing under Section 1981. See Robinson v. City of Pittsburgh, 120 F.3d 1286, 1299 (3d Cir. 1997) (filing discrimination complaint constitutes protected activity), overruled on other grounds by Burlington N. & S.F. Ry. Co. v. White, 126 S. Ct. 2405 (2006); Kachmar v. Sungard Data Sys., Inc., 109 F.3d 173, 177 (3d Cir. 1997) (advocating equal treatment was protected activity); Aman v. Cort Furniture, 85 F.3d 1074, 1085 (3d Cir. 1989) (under Title VII's anti-retaliation provision "a plaintiff need not prove the merits of the underlying discrimination complaint, but only that 'he was acting under a good faith, reasonable belief that a violation existed'"); Griffiths v. CIGNA Corp., 988 F.2d 457, 468 (3d Cir. 1993); Sumner v. United States Postal Service, 899 F.2d 203, 209 (2d Cir. 1990), overruled on other grounds by Miller v. CIGNA Corp., 47 F.3d 586 (3d Cir. 1995).

109.     Here, Defendants discriminated against Plaintiff because of her protected activity under Section 1981.

110.     Plaintiff was acting under a reasonable, good faith belief that her right to be free from discrimination on the basis of race was violated.

111.     Plaintiff was subjected to a materially adverse action at the time, or after the protected conduct took place.

112.     There was a causal connection between Defendants' materially adverse actions and Plaintiff's protected activity. In determining whether a plaintiff has produced evidence of causation, courts in the Third Circuit focus on two indicia: timing and evidence of ongoing antagonism. Plaintiff will rely on a broad array of evidence to demonstrate a causal link between her protected activity and Defendants' actions taken against her, such as the unusually suggestive proximity in time between events, as well as

Defendants' antagonism and change in demeanor toward Plaintiff after Defendants became aware of Plaintiff's protected activity.

113.     Defendants' actions were "materially adverse" because they were serious enough to discourage a reasonable worker from engaging in protected activity.

114.     Defendants acted upon a continuing course of conduct.

115.     Plaintiff will rely on a broad array of evidence to demonstrate a causal link between their protected activity and Defendants' actions taken against her, such as the unusually suggestive proximity in time between events, as well as Defendants' antagonism and change in demeanor toward Plaintiff after Defendants became aware of her protected activity.

116.     As a result of Defendants' violations of Section 1981, Plaintiff has suffered damages, including, but not limited to: past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

**WHEREFORE**, Plaintiff demands judgment against Defendants and prays for the following relief: (1) actual damages; (2) compensatory damages in an amount consistent with Section 1981; (3) reasonable attorneys' fees in accordance with Section 1981; (4) litigation costs in accordance with Section 1981; (5) pre- and post-judgment interest as further allowed by law; (6) an adjudication and declaration that Defendants' conduct as set forth herein is in violation of Section 1981; (7) punitive damages in accordance with Section 1981; (8) front pay in accordance with Section 1981; and (9) all additional general and equitable relief to which Plaintiff is entitled.

**Count IV**
**Title VII Disparate Treatment**
**42 U.S.C. § 2000e-2**
**Plaintiff v. Dunkin' Donuts, Dunkin' Donuts of American, Inc., and Northeast Donut Shops**
**Management Corp.**

117.　　Plaintiff incorporates by reference each and every allegation made in the above

paragraphs of this complaint.

118.　　Title VII provides, in relevant part, that "it shall be an unlawful employment

practice for an employer . . . to discriminate against any individual with respect to [her]

compensation, terms, conditions, or privileges of employment, because of [her] race,

color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).

119.　　Title VII further provides that "un unlawful employment practice is established

when the complaining party demonstrates that race, color, religion, sex, or national origin

was a motivating factor for any employment practice, even though other factors also

motivated the practice." 42 U.S.C. § 2000e-2(m).

120.　　Defendants engaged in unlawful employment practices prohibited by Title VII by

intentionally discriminating against Ms. Brown with respect to her compensation, terms,

conditions, training and privileges of employment because of her race, color and sex and

in retaliation for her protected activity.

121.　　Defendants subjected Ms. Brown to adverse tangible employment actions—

defined as significant changes in Plaintiff's employment status, discipline, denial of

training, failure to promote, reassignment with significantly different job responsibilities,

and decisions causing changes in significant changes in her employment benefits.

122.　　Ms. Brown's protected characteristics played a determinative factor in

Defendants' decisions.

123.     Defendants cannot show any legitimate nondiscriminatory reasons for their

employment practices and any reasons proffered by Defendants for their actions against

Plaintiff are pretextual and can readily be disbelieved.

124.     Alternatively, Ms. Brown's protected status played a motivating part in

Defendants' decisions even if other factors may also have motivated their actions against

her.

125.     Defendants acted with the intent to discriminate.

126.     Defendants acted upon a continuing course of conduct.

127.     As a result of Defendants' violations of Title VII, Plaintiff has suffered damages,

including, but not limited to past and future lost wages, pain and suffering,

inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress,

reputational harm, diminishment of career opportunities, and other harm, both tangible

and intangible.

**WHEREFORE**, Plaintiff demands judgment against Defendants and prays for the following

relief: (1) an award of compensatory damages in an amount consistent with Title VII; (2) an

award of reasonable attorneys' fees and costs of this action in accordance with Title VII; (3) an

award of pre- and post-judgment interest and court costs as further allowed by law; (4) an

adjudication and declaration that Defendants' conduct as set forth herein is in violation of Title

VII; and (5) all additional general and equitable relief to which Plaintiff is entitled.

## Count V
## Title VII Hostile Work Environment
## 42 U.S.C. § 2000e-2
## Plaintiff v. Dunkin' Donuts, Dunkin' Donuts of American, Inc., and Northeast Donut Shops
## Management Corp.

128.    Plaintiff incorporates by reference each and every allegation made in the above

paragraphs of this complaint.

129.    Title VII also prohibits hostile work environment harassment, defined as

unwanted comments or conduct regarding the plaintiff's protected characteristics that

have the purpose or effect of unreasonably interfering with the terms and conditions of

the plaintiff's employment. Harris v. Forklift Systems, 510 U.S. 17, 21 (1993).

130.    An employer is strictly liable for supervisor harassment that "culminates in a

tangible employment action, such as discharge, demotion, or undesirable reassignment."

Burlington Industries, Inc. v. Ellerth, 524 U.S. 742 (1998).

131.    Respondeat superior liability for the acts of non-supervisory employees exists

where "the defendant knew or should have known of the harassment and failed to take

prompt remedial action. Andrews v. City of Philadelphia, 895 F.2d 1469, 1486 (3d Cir.

1990).

132.    Employer liability for co-worker harassment also exists where "the employer

failed to provide a reasonable avenue for complaint." Huston v. Procter & Gamble Paper

Prods. Corp., 568 F.3d 100, 105 (3d Cir. 2009).

133.    The Third Circuit has held that the retaliation provision of Title VII "can be

offended by harassment that is severe or pervasive enough to create a hostile work

environment." Jensen v. Potter, 435 F.3d 444, 446 (3d Cir. 2006).

134.    Here, Defendants' conduct occurred because of Ms. Brown's legally protected characteristics and was severe or pervasive enough to make a reasonable person of the same legally protected classes believe that the conditions of employment were altered and that the working environment was intimidating, hostile or abusive.

135.    The harassing conduct directly refers to Plaintiff's race, color and sex, and her protected activity.

136.    Defendants delegated to Plaintiff's supervisors the authority to control the work environment and they abused that authority to create a hostile work environment.

137.    Harassing conduct filled the environment of Plaintiff's work area.

138.    Defendants knew that the harassing conduct filled Plaintiff's work environment.

139.    Harassing conduct occurred daily.

140.    Harassing conduct caused Plaintiff to sustain severe emotional distress resulting in physical illness and serious psychological sequelae.

141.    Plaintiff subjectively regarded the harassing conduct as unwelcome and unwanted and objectively opposed the conduct.

142.    The conduct was both severe and pervasive.

143.    The conduct was physically threatening and humiliating.

144.    The conduct unreasonably interfered with Plaintiff's work performance.

145.    The conduct was so extreme that it resulted in material changes to the terms and conditions of Plaintiff's employment.

146.    Defendants provided a futile avenue for complaint.

147.    Defendants retaliated against Plaintiff for her complaints.

148.    Defendants acted upon a continuing course of conduct.

149.     As a result of Defendants' violations of Title VII, Plaintiff has suffered damages,

including, but not limited to past and future lost wages, pain and suffering,

inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress,

reputational harm, diminishment of career opportunities, and other harm, both tangible

and intangible.

**WHEREFORE**, Plaintiff demands judgment against Defendants and prays for the following

relief: (1) an award of compensatory damages in an amount consistent with Title VII; (2) an

award of reasonable attorneys' fees and costs of this action in accordance with Title VII; (3) an

award of pre- and post-judgment interest and court costs as further allowed by law; (4) an

adjudication and declaration that Defendants' conduct as set forth herein is in violation of Title

VII; and (5) all additional general and equitable relief to which Plaintiff is entitled.

<div align="center">

**Count VI**
**Title VII Retaliation**
**42 U.S.C. § 2000e-3**
**Plaintiff v. Dunkin' Donuts, Dunkin' Donuts of American, Inc., and Northeast Donut Shops
Management Corp.**

</div>

150.     Plaintiff incorporates by reference each and every allegation made in the above

paragraphs of this complaint.

151.     Title VII protects employees from retaliation for attempting to exercise their

rights under the Act:

> 42 U.S.C. § 2000e-3. Other unlawful employment practices
> (a) Discrimination for making charges, testifying, assisting, or
> participating in enforcement proceedings. It shall be an unlawful
> employment practice for an employer to discriminate against any of
> his employees . . . because [she] has opposed any practice made an
> unlawful employment practice by this subchapter, or because [she]
> has made a charge, testified, assisted, or participated in any manner
> in an investigation, proceeding, or hearing under this subchapter.

152.    The Supreme Court in <u>Burlington v. N. & S.F. Ry. V. White</u>, 548 U.S. 53, 68

(2006) held that a cause of action for retaliation under Title VII lies whenever the

employer responds to protected activity in such a way that "might have dissuaded a

reasonable worker from making or supporting a charge of discrimination."

153.    Informal complaints and protests can constitute protected activity under the

"opposition" clause of 42 U.S.C. § 2000e-3(a). <u>Moore v. City of Philadelphia</u>, 461 F.3d

331, 343 (3d Cir. 2006) ("Opposition to discrimination can take the form of informal

protests of discriminatory employment practices, including making complaints to

management.").

154.    Title VII's anti-retaliation provision also protects employees who speak out about

discrimination by answering questions during an employer's internal investigation.

<u>Crawford v. Metropolitan Gov't of Nashville and Davidson Cty., Tennessee</u>, 555 U.S.

271, 277 (2009) (declaring that there is "no reason to doubt that a person can 'oppose' by

responding to someone else's question just as surely as by provoking the discussion, and

nothing in the statute requires a freakish rule protecting an employee who reports

discrimination on her own initiative but not one who reports the same discrimination in

the same words when her boss asks a question.").

155.    Retaliation need not be job-related to be actionable under Title VII—an employer

can effectively retaliate against an employee by taking actions not directly related to her

employment or by causing her harm outside the workplace. <u>White</u>, 548 U.S. at 61-62

(rejecting authority from the Third Circuit and others requiring that the plaintiff suffer an

adverse employment action in order to recover for retaliation).

156.     "[A] plaintiff need not prove the merits of the underlying discrimination

complaint, but only that '[she] was acting under a good faith, reasonable belief that a

violation existed.'" <u>Aman v. Cort Furniture Rental Corp.</u>, 85 F.3d 1074, 1085 (3d Cir.

1996); <u>Griffiths v. CIGNA Corp.</u>, 988 F.2d 457, 468 (3d Cir. 1993); <u>Sumner v. United

States Postal Service</u>, 899 F.2d 203, 209 (2d Cir. 1990), <u>overruled on other grounds</u> by

<u>Miller v. CIGNA Corp.</u>, 47 F.3d 586 (3d Cir.1995).

157.     An employee need not be a member of a protected class to be subject to

actionable retaliation under Title VII. <u>See</u> <u>Moore</u>, 461 F.3d at 342 ("Title VII's

whistleblower protection is not limited to those who blow the whistle on their own

mistreatment or on the mistreatment of their own race, sex, or other protected class.")

158.     Here, Defendants discriminated against Plaintiff because of her protected activity

under Title VII.

159.     Plaintiff was acting under a reasonable, good faith belief that her right to be free

from discrimination on the basis of race, color, sex and retaliation was violated.

160.     Plaintiff was subjected to materially adverse actions at the time or after the

protected conduct took place.

161.     There was a causal connection between Defendants' materially adverse actions

and Plaintiff's protected activity. In determining whether a plaintiff has produced

evidence of causation, courts in the Third Circuit focus on two indicia: timing and

evidence of ongoing antagonism. Plaintiff will rely on a broad array of evidence to

demonstrate a causal link between her protected activity and Defendants' actions taken

against her, such as the unusually suggestive proximity in time between events, as well as

Defendants' antagonism and change in demeanor toward Plaintiff after Defendants became aware of Plaintiff's protected activity.

162.     Defendants' actions were "materially adverse" because they were serious enough to discourage a reasonable worker from engaging in protected activity.

163.     Defendants acted upon a continuing course of conduct.

164.     Plaintiff will rely on a broad array of evidence to demonstrate a causal link between her protected activity and Defendants' actions taken against her, such as the unusually-suggestive proximity in time between events, as well as Defendants' antagonism and change in demeanor (such as taking away Plaintiff's shifts) toward Plaintiff after Defendants became aware of Plaintiff's protected activity.

165.     As a result of Defendants' violations of Title VII, Plaintiff has suffered damages, including, but not limited to past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

**WHEREFORE**, Plaintiff demands judgment against Defendants and prays for the following relief: (1) an award of compensatory damages in an amount consistent with Title VII; (2) an award of reasonable attorneys' fees and costs of this action in accordance with Title VII; (3) an award of pre- and post-judgment interest and court costs as further allowed by law; (4) an adjudication and declaration that Defendants' conduct as set forth herein is in violation of Title VII; and (5) all additional general and equitable relief to which Plaintiff is entitled.

## Count VII
## Failure to Pay Minimum Wages
## Fair Labor Standards Act, 29 U.S.C. Section 201, et seq.
## Plaintiff v. Dunkin' Donuts, Dunkin' Donuts of American, Inc., and Northeast Donut Shops Management Corp.

166.     Plaintiff repeats every allegation made in the above paragraphs of this complaint.

167.     Pursuant to Section 206 of the FLSA, employees must be paid certain minimum wages for each hour worked in a workweek.

168.     The FLSA entitles employees to a minimum hourly wage of $7.25.

169.     Over the course of Plaintiff's employment with Defendants, Plaintiff was denied their statutorily mandated minimum wages for all hours worked.

170.     The foregoing actions, policies and practices of Defendants violate the FLSA.

171.     Defendants' actions were willful, in bad faith, and in reckless disregard of clearly applicable FLSA provisions.

172.     Defendants are liable to Plaintiff for actual damages, liquidated damages and other relief, pursuant to 29 U.S.C. § 216(b), as well as reasonable attorneys' fees, costs and expenses.

**WHEREFORE**, Plaintiff prays for the following relief: (a) Adjudicating and declaring that Defendants' conduct as set forth herein and above is in violation of the FLSA; (b) Adjudicating and declaring that Defendants violated the FLSA by failing to pay minimum wages to Plaintiff; (c) Awarding Plaintiff such minimum wages as are due and owing in an amount consistent with the FLSA; (d) Awarding Plaintiff liquidated damages in accordance with the FLSA; (e) Awarding Plaintiff reasonable attorneys' fees and all costs of this action, to be paid by Defendants, in accordance with the FLSA; (f) Awarding pre- and post-judgment interest and court costs as further allowed by law; (g) Granting Plaintiff to add additional plaintiffs by

motion, the filing of written opt in consent forms, or any other method approved by the Court;

and (h) For all additional general and equitable relief to which Plaintiff is are entitled.

**Count VIII**
**Failure to Pay Overtime Compensation**
**Fair Labor Standards Act, 29 U.S.C. Section 201, et seq.**
**Plaintiff v. Dunkin' Donuts, Dunkin' Donuts of American, Inc., and Northeast Donut Shops**
**Management Corp.**

173.        Plaintiff repeats every allegation made in the above paragraphs of this complaint.

174.        Pursuant to Section 206(b) of the FLSA, all employees must be compensated for
every hour worked in a workweek.

175.        Moreover, Section 207(a)(1) of the FLSA states that employees must be paid
overtime, equal to 1.5 times the employees' regular rate of pay, for all hours worked in
excess of 40 hours per week.

176.        According to the policies and practices of Defendants, Plaintiff worked in excess
of 40 hours per week. Despite working in excess of 40 hours per week, Plaintiff and was
denied overtime compensation at a rate of 1.5 times the statutorily mandated minimum
wage for compensable work performed in excess of 40 hours per week in violation of the
FLSA.

177.        The forgoing actions, policies and practices of Defendants violate the FLSA.

178.        Defendants' actions were willful, in bad faith, and in reckless disregard of clearly
applicable FLSA provisions.

179.        Defendants are liable to Plaintiff for actual damages, liquidated damages and
other relief, pursuant to 29 U.S.C. § 216(b), as well as reasonable attorneys' fees, costs
and expenses.

**WHEREFORE**, Plaintiff prays for the following relief: (a) Adjudicating and declaring that Defendants' conduct as set forth herein and above is in violation of the FLSA; (b) Adjudicating and declaring that Defendants violated the FLSA by failing to pay overtime compensation to Plaintiff for work performed in excess of 40 hours per week; (c) Awarding Plaintiff such overtime compensation as is due and owing in an amount consistent with the FLSA; (d) Awarding Plaintiff damages in accordance with the FLSA; (e) Awarding Plaintiff reasonable attorneys' fees and all costs of this action, to be paid by Defendants, in accordance with the FLSA; (f) Awarding pre- and post-judgment interest and court costs as further allowed by law; (g) Granting Plaintiff leave to add additional plaintiffs by motion, the filing of written opt in consent forms, or any other method approved by the Court; and (h) For all additional general and equitable relief to which Plaintiff is entitled.

<div align="center">

**Count IX**
**Failure to Pay Minimum Wages**
**Pennsylvania Minimum Wage Act, 42 P.S. Section 333.101, et seq.**
**Plaintiff v. Dunkin' Donuts, Dunkin' Donuts of American, Inc., and Northeast Donut Shops Management Corp.**

</div>

180.     Plaintiff repeats every allegation made in the above paragraphs of this complaint.

181.     At all relevant times, Defendants have employed Plaintiff within the meaning of the PMWA.

182.     Defendants have a willful policy and practice of requiring employees to work without receiving renumeration for such work.

183.     Defendants have a willful policy and practice of failing to pay employees the full minimum wages for all hours worked.

184.     Defendants have violated and continue to violate the PMWA.

185.     Due to Defendants' violations, Plaintiff is entitled to recover from Defendants the amount of unpaid minimum wages, attorneys' fees and costs.

**WHEREFORE**, Plaintiff prays for the following relief: (a) An award to Plaintiff for the amount of unpaid minimum wages to which she is entitled, including interest thereon, and penalties subject to proof; (b) An award to Plaintiff for reasonable attorneys' fees and all costs; and (c) An award to Plaintiff for any other damages available to them under applicable state law, and all such other relief as this Court may deem just and proper.

### Count X
### Failure to Pay Overtime Compensation
### Pennsylvania Minimum Wage Act, 42 P.S. Section 333.101, et seq.
### Plaintiff v. Dunkin' Donuts, Dunkin' Donuts of American, Inc., and Northeast Donut Shops Management Corp.

186.     Plaintiff repeats every allegation made in the above paragraphs of this complaint.

187.     At all relevant times, Defendants have employed Plaintiff within the meaning of the PMWA.

188.     Defendants have a willful policy and practice of refusing to pay overtime compensation at a rate of 1.5 times the regular rate for all hours worked in excess of 40 hours per workweek.

189.     Defendants have a willful policy and practice of failing to pay overtime compensation due and owing.

190.     Defendants have a willful policy and practice of not paying employees for all hours worked.

191.     Accordingly, Defendants have violated and continue to violate the PMWA.

192.     Due to Defendants' violations, Plaintiff is entitled to recover from Defendants the amount of unpaid overtime compensation, attorneys' fees and costs.

**WHEREFORE**, Plaintiff prays for the following relief: (a) An award to Plaintiff for the amount of unpaid overtime compensation to which they are entitled, including interest thereon, and penalties subject to proof; (b) An award to Plaintiff for reasonable attorneys' fees and all costs; and (c) An award to Plaintiff for any other damages available to them under applicable state law, and all such other relief as this Court may deem just and proper.

### Count XI
### Failure to Pay Wages
### Pennsylvania Wage Payment and Collection Law, 43 P.S. § 260.1, *et seq*
### Plaintiff v. Dunkin' Donuts, Dunkin' Donuts of American, Inc., and Northeast Donut Shops
### Management Corp.

193.     Plaintiff repeats every allegation made in the above paragraphs of this complaint.

194.     At all relevant times, Defendants have employed Plaintiff within the meaning of the WPCL.

195.     Pursuant to the WPCL, Plaintiff was entitled to receive all compensation due and owing to her on her regular payday.

196.     Defendants had a policy of making improper deductions from wages.

197.     As a result of Defendants' unlawful policies, Plaintiff has been deprived of compensation due and owing.

198.     Plaintiff is entitled to recover from Defendants the amount of unpaid compensation and an additional amount of 25% of the unpaid compensation as liquidated damages.

**WHEREFORE**, Plaintiff prays for the following relief: (a) An award to Plaintiff for the amount of unpaid compensation to which they are entitled and liquidated damages, including interest thereon, and penalties subject to proof; (b) An award to Plaintiff for reasonable

attorneys' fees and all costs; and (c) An award to Plaintiff for any other damages available to

them under applicable state law, and all such other relief as this Court may deem just and proper.

## COUNT XII
### Assault and Battery
### Plaintiff v. Nawaz Matkhaili

199.      Plaintiff incorporates by reference each and every allegation made in the above

paragraphs of this complaint.

200.      Under Pennsylvania law, battery is defined as an intentional harmful or offensive

contact with the person of another. Nace v. Pennridge Sch. Dist., 185 F.Supp.3d 564, 584

(E.D. Pa. 2016) (quoting C.C.H. v. Philadelphia Phillies, Inc., 596 Pa. 23 (2008)). The

fact that contact occurs without consent is sufficient to establish that it is offensive, and

no intent to harm the plaintiff need be established. Id. (quoting Cooper ex rel. Cooper v.

Lankenau Hosp., 616 Pa. 550 (2012)).

201.      Under Pennsylvania law, assault is defined as an act intended to put another

person in reasonable apprehension of an immediate battery, and which succeeds in

causing an apprehension of such battery. Regan v. Upper Darby Twp., 363 Fed.Appx.

917, 921 (3d Cir. 2010) (quoting Cucinotti v. Ortmann, 399 Pa. 26 (1960)). In other

words, battery is an offensive touching without consent, and assault is an action that

makes a victim believe that a battery is about to occur. Martin-McFarlane v. City of

Philadelphia, 299 F.Supp.3d 658, 670–71 (E.D. Pa. 2017).

202.      Here, Defendant Matkhaili acted intending to cause harmful or offensive contact

with Ms. Brown, or to cause Ms. Brown imminent apprehension of such contact, and she

were thereby put in such imminent apprehension. Further, Defendant Matkhaili's assault

concluded with actual, nonconsensual bodily contact with Ms. Brown.

203.    As a direct and proximate result of Defendant Matkhaili's malicious and

conscious wrongful actions, Plaintiff sustained humiliation as well as severe mental and

emotional distress from the indignity to which she was subjected, which resulted in

bodily injury and damages, including punitive damages, to be determined at trial.

**WHEREFORE**, Plaintiff demands judgment against Defendant and prays for the following

relief: (1) actual damages; (2) compensatory damages; (3) reasonable attorneys' fees; (4)

litigation costs; (5) pre- and post-judgment interest; (6) an adjudication and declaration that

Defendant's conduct as set forth herein is in violation of the law; (7) punitive damages; (8) and

all additional general and equitable relief to which Plaintiffs are entitled.

### Count XIII (PLACEHOLDER)
### PHRA Discrimination
### 43 P.S. §§ 951-963
### Plaintiff v. Dunkin' Donuts, Dunkin' Donuts of American, Inc., and Northeast Donut Shops Management Corp.

204.    Plaintiff's PHRA and PFPO claims are still pending before PCHR because less
than one year has elapsed since PCHR assumed jurisdiction over Plaintiff's charges.
After one year, Plaintiff will seek leave to amend this complaint to assert her PHRA and
PFPO claims against Defendants.

### Count XIV (PLACEHOLDER)
### PHRA Retaliation
### 43 P.S. §§ 951-963
### Plaintiff v. All Defendants

205.    Plaintiff's PHRA and PFPO claims are still pending before PCHR because less

than one year has elapsed since PCHR assumed jurisdiction over Plaintiff's charges.

After one year, Plaintiff will seek leave to amend this complaint to assert her PHRA and

PFPO claims against Defendants.

**Count XV (PLACEHOLDER)**
**PHRA Aiding and Abetting**
**43 P.S. §§ 951-963**
**Plaintiff v. All Defendants**

206.     Plaintiff's PHRA and PFPO claims are still pending before PCHR because less

than one year has elapsed since PCHR assumed jurisdiction over Plaintiff's charges.

After one year, Plaintiff will seek leave to amend this complaint to assert her PHRA and

PFPO claims against Defendants.

**Count XVI (PLACEHOLDER)**
**PFPO Discrimination**
**PFPO §§ 9-1100 et seq.**
**Plaintiff v. Dunkin' Donuts, Dunkin' Donuts of American, Inc., and Northeast Donut Shops**
**Management Corp.**

207.     Plaintiff's PHRA and PFPO claims are still pending before PCHR because less

than one year has elapsed since PCHR assumed jurisdiction over Plaintiff's charges.

After one year, Plaintiff will seek leave to amend this complaint to assert her PHRA and

PFPO claims against Defendants.

**Count XVII (PLACEHOLDER)**
**PFPO Retaliation**
**PFPO §§ 9-1100 et seq.**
**Plaintiff v. All Defendants**

208.     Plaintiff's PHRA and PFPO claims are still pending before PCHR because less

than one year has elapsed since PCHR assumed jurisdiction over Plaintiff's charges.

After one year, Plaintiff will seek leave to amend this complaint to assert her PHRA and

PFPO claims against Defendants.

**Count XVIII (PLACEHOLDER)**
**PFPO Aiding and Abetting**
**PFPO §§ 9-1100 et seq.**
**Plaintiff v. All Defendants**

209.     Plaintiff's PHRA and PFPO claims are still pending before PCHR because less

than one year has elapsed since PCHR assumed jurisdiction over Plaintiff's charges.

After one year, Plaintiff will seek leave to amend this complaint to assert her PHRA and

PFPO claims against Defendants.

## **JURY DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands

a trial by jury on all questions of fact raised by this complaint.


Respectfully submitted,

**DEREK SMITH LAW GROUP, PLLC**

*/s/ Ian M. Bryson, Esquire*
IAN M. BRYSON, ESQUIRE
1835 Market Street, Suite 2950
Philadelphia, PA 19103
215-391-4790
ian@dereksmithlaw.com
Dated: May 16, 2022          *Attorneys for Plaintiff, Shakiya Brown*

JS 44 (Rev. 10/20)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

SHAKIYA BROWN

**DEFENDANTS**

DUNKIN' DONUTS, et al.

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant _____
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Derek Smith Law Group, PLLC, 1835 Market St., Ste. 2950, Philadelphia, PA 19103, 215-391-4790

Attorneys *(If Known)*

Billet & Associates, LLC, 2000 Market St., Ste. 2903, Philadelphia, PA 19103, 215-496-7500

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | | | |
|---|---|---|---|
| ☐ 1 | U.S. Government Plaintiff | ☒ 3 | Federal Question *(U.S. Government Not a Party)* |
| ☐ 2 | U.S. Government Defendant | ☐ 4 | Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability / Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & / ☐ 367 Health Care/ | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | Slander / Pharmaceutical Personal Injury | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' / Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | Liability / ☐ 368 Asbestos Personal ☐ 340 Marine / Injury Product | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 345 Marine Product / Liability Liability / **PERSONAL PROPERTY** | | ☐ 840 Trademark ☐ 880 Defend Trade Secrets Act of 2016 | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 350 Motor Vehicle / ☐ 370 Other Fraud | **LABOR** | | ☐ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract | ☐ 355 Motor Vehicle / ☐ 371 Truth in Lending | ☒ 710 Fair Labor Standards Act | | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | Product Liability / ☐ 380 Other Personal | ☐ 720 Labor/Management Relations | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | ☐ 360 Other Personal / Property Damage Injury / ☐ 385 Property Damage | ☐ 740 Railway Labor Act | ☐ 861 HIA (1395ff) ☐ 862 Black Lung (923) | ☐ 890 Other Statutory Actions |
| | ☐ 362 Personal Injury - / Product Liability Medical Malpractice | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights / **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting / ☐ 463 Alien Detainee | | **FEDERAL TAX SUITS** | ☐ 899 Administrative Procedure |
| ☐ 230 Rent Lease & Ejectment | ☒ 442 Employment / ☐ 510 Motions to Vacate | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | Act/Review or Appeal of Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/ / Sentence Accommodations / ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - / ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | Employment / **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 446 Amer. w/Disabilities - / ☐ 540 Mandamus & Other Other / ☐ 550 Civil Rights | ☐ 465 Other Immigration Actions | | |
| | ☐ 448 Education / ☐ 555 Prison Condition | | | |
| | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation - Transfer | ☐ 8 Multidistrict Litigation - Direct File | |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. § 1981 (Section 1981); 42 U.S.C. §§ 2000e et seq. ("Title VII"); 29 U.S.C. §§ 201, et seq. ("FLSA")

Brief description of cause:
Employment discrimination, harassment and retaliation; and wage and hour

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $ _____

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____ DOCKET NUMBER _____

DATE

May 16, 2022

SIGNATURE OF ATTORNEY OF RECORD

*/s/ Ian M. Bryson, Esq.*

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**DESIGNATION FORM**

*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: _____6060 Crescentville Road, Apt. NA9, Philadelphia, PA 19120_____

Address of Defendant: _____1345 Olney Ave., Philadelphia, PA 19141_____

Place of Accident, Incident or Transaction: _____1345 Olney Ave., Philadelphia, PA 19141_____

---

**RELATED CASE, IF ANY:**

Case Number: _____ Judge: _____ Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?      Yes ☐      No ☑

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?      Yes ☐      No ☑

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?      Yes ☐      No ☑

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?      Yes ☐      No ☑

I certify that, to my knowledge, the within case ☐ is / ☐ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 05/16/2022      */s/ Ian M. Bryson, Esq.*      321359
      Must sign here
      *Attorney-at-Law / Pro Se Plaintiff*      *Attorney I.D. # (if applicable)*

---

**CIVIL: (Place a √ in one category only)**

**A.      *Federal Question Cases:***

1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☑ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☐ All other Federal Question Cases
    *(Please specify)* _____

**B.      *Diversity Jurisdiction Cases:***

1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury *(Please specify)* _____
7. ☐ Products Liability
8. ☐ Products Liability – Asbestos
9. ☐ All other Diversity Cases
    *(Please specify)* _____

---

**ARBITRATION CERTIFICATION**

*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, _____Ian M. Bryson_____, counsel of record *or* pro se plaintiff, do hereby certify:

☑ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

☐ Relief other than monetary damages is sought.

DATE: 05/16/2022      */s/ Ian M. Bryson, Esq.*      321359
      Sign here if applicable
      *Attorney-at-Law / Pro Se Plaintiff*      *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

Civ. 609 (5/2018)

**EXHIBIT B**

**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| SHAKIYA BROWN | : | NO. 2:22-cv-01916 |
| | : | |
| v. | : | |
| | : | |
| DUNKIN' DONUTS, DUNKIN' | : | |
| DONUTS OF AMERICA, INC., | : | |
| NORTHEAST DONUT SHOPS | : | |
| MANAGEMENT CORPORATION, | : | |
| BRIAN LIN, MISA LIAO, LESHIA | : | |
| EVANS, KIM HONG and | : | |
| NAWAZ MATKHAILI | : | CIVIL ACTION |

**ANSWER WITH AFFIRMATIVE DEFENSES AND CROSSCLAIM OF
DEFENDANTS DUNKIN' DONUTS, DUNKIN' DONUTS OF AMERICA, INC.
(Improperly Pled), NORTHEAST DONUT SHOPS MANAGEMENT CORPORATION,
BRIAN LIN, MISA LIAO, LESHIA EVANS, AND KIM HONG,
TO PLAINTIFF'S COMPLAINT**

**NATURE OF THE ACTION**

1.      Admitted in part; denied in part.  It is admitted that plaintiff has alleged claims as identified in this paragraph.  However, defendants deny that they are liable to plaintiff under any of the theories pled.

2.      Admitted in part; denied in part.  It is admitted that plaintiff seeks damages as identified in this paragraph.  However, defendants deny that they are liable to plaintiff any of the damages claimed.

3.      Denied.  Answering defendants are without knowledge or information sufficient to form a belief as to the truth of said averments, which are therefore denied as a matter of law.

4.      Denied.  Dunkin Donuts is a trademark and/or logo name for doughnut shops nationwide.  It is specifically denied that Dunkin Donuts was plaintiff's employer.  With regard to the remaining averments, answering defendants are without knowledge or information

sufficient to form a belief as to the truth thereof, which are therefore denied as a matter of law. To the extent that said averments contain conclusions of law, they are deemed denied.

     5.     Denied.  Dunkin Donuts of America, Inc., has no relationship to the Dunkin Donuts shop located at 1345 W. Olney Avenue in Philadelphia, Pennsylvania 19141.  It is specifically denied that Dunkin Donuts of America, Inc., was plaintiff's employer.  With regard to the remaining averments, answering defendants are without knowledge or information sufficient to form a belief as to the truth thereof, which are therefore denied as a matter of law. To the extent that said averments contain conclusions of law, they are deemed denied.

     6.     Admitted in part; denied in part.  It is admitted that Northeast Donut Shops Management Corporation is a Pennsylvania corporation, doing business at 1345 W. Olney Avenue in Philadelphia, Pennsylvania.  It is also admitted that Northeast Donut Shops Management Corporation was plaintiff's employer at all times relevant.  With regard to the remaining averments, answering defendants are without knowledge or information sufficient to form a belief as to the truth thereof, which are therefore denied as a matter of law.  To the extent that said averments contain conclusions of law, they are deemed denied.

     7.     Denied.  Answering defendants are without knowledge or information sufficient to form a belief as to the truth of said averments, which are therefore denied as a matter of law. To the extent that said averments contain conclusions of law, they are deemed denied.

     8.     Admitted in part; denied in part.  It is admitted that Brian Lin is the District Manager for the district that includes the Dunkin Donuts shop at 1345 W. Onley Avenue in Philadelphia, Pennsylvania.  With regard to the remaining averments, answering defendants are without knowledge or information sufficient to form a belief as to the truth thereof, which are

therefore denied as a matter of law.  To the extent that said averments contain conclusions of law, they are deemed denied.

9.      Admitted in part; denied in part.  It is admitted that Misa Liao is the Store Manager of the Dunkin Donuts shop at 1345 W. Onley Avenue in Philadelphia, Pennsylvania. With regard to the remaining averments, answering defendants are without knowledge or information sufficient to form a belief as to the truth thereof, which are therefore denied as a matter of law.  To the extent that said averments contain conclusions of law, they are deemed denied.

10.     Admitted in part; denied in part.  It is admitted that Leshia Evans is the Regional Legal Liaison for Northeast Donut Shops Management Corporation.  With regard to the remaining averments, answering defendants are without knowledge or information sufficient to form a belief as to the truth thereof, which are therefore denied as a matter of law.  To the extent that said averments contain conclusions of law, they are deemed denied.

11.     Admitted in part; denied in part.  It is admitted that Kim Hong is the Regional Director of Operations for Northeast Donut Shops Management Corporation.  With regard to the remaining averments, answering defendants are without knowledge or information sufficient to form a belief as to the truth thereof, which are therefore denied as a matter of law.  To the extent that said averments contain conclusions of law, they are deemed denied.

12.     Denied.  It is specifically denied that Dunkin Donuts, Dunkin Donuts of America, Inc., and Northeast Donut Shops Management Corporation were plaintiff's joint employers. With regard to the remaining averments, answering defendants are without knowledge or information sufficient to form a belief as to the truth thereof, which are therefore denied as a

matter of law. To the extent that said averments contain conclusions of law, they are deemed denied.

13. Denied. It is specifically denied that plaintiff was an employee of all defendants. With regard to the remaining averments, answering defendants are without knowledge or information sufficient to form a belief as to the truth thereof, which are therefore denied as a matter of law. To the extent that said averments contain conclusions of law, they are deemed denied.

14. Denied. The averments in this paragraph constitute a conclusion of law, and therefore they are deemed denied.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

15. Denied. Answering defendants are without knowledge or information sufficient to form a belief as to the truth thereof, which are therefore denied as a matter of law. To the extent that said averments contain conclusions of law, they are deemed denied.

16. Denied. Answering defendants are without knowledge or information sufficient to form a belief as to the truth thereof, which are therefore denied as a matter of law. To the extent that said averments contain conclusions of law, they are deemed denied.

17. Admitted.

18. Denied. Answering defendants are without knowledge or information sufficient to form a belief as to the truth thereof, which are therefore denied as a matter of law. To the extent that said averments contain conclusions of law, they are deemed denied.

**JURISDICTION AND VENUE**

19.     Admitted in part; denied in part.  It is admitted that, in her Complaint, plaintiff alleges a cause of action with jurisdiction pursuant to 28 U.S.C. § 1331.  The basis for those averments is denied.

20.     Admitted in part; denied in part.  It is admitted that, in her Complaint, plaintiff alleges a cause of action with supplemental jurisdiction pursuant to 28 U.S.C. § 1367.  The basis for those averments is denied.

21.     Admitted in part; denied in part.  It is admitted that, based on the averments in the Complaint, venue is proper in the Eastern District.  The basis for those averments is denied.

**FACTS**

22.     Admitted in part; denied in part.  It is admitted that plaintiff is an African American female who worked as an employee at the Dunkin Donuts shop at 1345 W. Olney Avenue in Philadelphia, Pennsylvania.  It is denied that she was an employee of all the defendants.  With regard to the remaining averments, answering defendants are without knowledge or information sufficient to form a belief as to the truth thereof, which are therefore denied as a matter of law.  To the extent that said averments contain conclusions of law, they are deemed denied.

23.     Admitted in part; denied in part.  It is admitted that plaintiff was hired as a cashier/crew member on May 18, 2021.  It is denied that plaintiff was paid a minimum hourly wage.

24.     Denied.  The averments in this paragraph are specifically denied.  To the extent that said averments contain conclusions of law, they are deemed denied.

25.     Denied.  The averments in this paragraph are specifically denied.  To the extent that said averments contain conclusions of law, they are deemed denied.

26.     Admitted in part; denied in part.  It is admitted that plaintiff was scheduled to work on May 28, 2021.  The remainder of the averments in this paragraph are specifically denied.

27.     Denied.  Answering defendants are without knowledge or information sufficient to form a belief as to the truth thereof, which are therefore denied as a matter of law.  To the extent that said averments contain conclusions of law, they are deemed denied.

28.     Denied.  Answering defendants are without knowledge or information sufficient to form a belief as to the truth thereof, which are therefore denied as a matter of law.  To the extent that said averments contain conclusions of law, they are deemed denied.

29.     Denied.  Answering defendants are without knowledge or information sufficient to form a belief as to the truth thereof, which are therefore denied as a matter of law.  To the extent that said averments contain conclusions of law, they are deemed denied.

30.     Denied.  Answering defendants are without knowledge or information sufficient to form a belief as to the truth thereof, which are therefore denied as a matter of law.  To the extent that said averments contain conclusions of law, they are deemed denied.

31.     Denied.  Answering defendants are without knowledge or information sufficient to form a belief as to the truth thereof, which are therefore denied as a matter of law.  To the extent that said averments contain conclusions of law, they are deemed denied.

32.     Denied.  The averments in this paragraph are specifically denied.  To the extent that said averments contain conclusions of law, they are deemed denied.

33.     Denied.  The averments in this paragraph are specifically denied.  To the extent that said averments contain conclusions of law, they are deemed denied.

34.     Denied.  The averments in this paragraph are specifically denied.  To the extent that said averments contain conclusions of law, they are deemed denied.

35.     Denied.  The averments in this paragraph are specifically denied.  To the extent that said averments contain conclusions of law, they are deemed denied.

36.     Denied.  The averments in this paragraph are specifically denied.  To the extent that said averments contain conclusions of law, they are deemed denied.

37.     Denied.  The averments in this paragraph are specifically denied.  To the extent that said averments contain conclusions of law, they are deemed denied.

38.     Denied.  Answering defendants are without knowledge or information sufficient to form a belief as to the truth thereof, which are therefore denied as a matter of law.  To the extent that said averments contain conclusions of law, they are deemed denied.

39.     Denied.  Answering defendants are without knowledge or information sufficient to form a belief as to the truth thereof, which are therefore denied as a matter of law.  To the extent that said averments contain conclusions of law, they are deemed denied.

40.     Denied as stated, as it is denied that plaintiff made a report to "her Dunkin Donuts corporate HR."

41.     Denied.  The averments in this paragraph are specifically denied.  To the extent that said averments contain conclusions of law, they are deemed denied.

42.     Denied.  The averments in this paragraph are specifically denied.  To the extent that said averments contain conclusions of law, they are deemed denied.

43.     Denied.  Answering defendants are without knowledge or information sufficient to form a belief as to the truth thereof, which are therefore denied as a matter of law.  To the extent that said averments contain conclusions of law, they are deemed denied.

44.     Denied.  The averments in this paragraph are specifically denied.  To the extent that said averments contain conclusions of law, they are deemed denied.

45.     Denied.  The averments in this paragraph are specifically denied.  To the extent that said averments contain conclusions of law, they are deemed denied.

46.     Denied.  The averments in this paragraph are specifically denied.  To the extent that said averments contain conclusions of law, they are deemed denied.

47.     Denied.  The averments in this paragraph are specifically denied.  To the extent that said averments contain conclusions of law, they are deemed denied.

48.     Denied.  The averments in this paragraph are specifically denied.  To the extent that said averments contain conclusions of law, they are deemed denied.

49.     Denied.  The averments in this paragraph are specifically denied.  To the extent that said averments contain conclusions of law, they are deemed denied.

50.     Denied.  The averments in this paragraph are specifically denied.  To the extent that said averments contain conclusions of law, they are deemed denied.

51.     Denied.  The averments in this paragraph are specifically denied.  To the extent that said averments contain conclusions of law, they are deemed denied.

52.     Denied.  The averments in this paragraph are specifically denied.  To the extent that said averments contain conclusions of law, they are deemed denied.

53.     Denied.  The averments in this paragraph are specifically denied.  To the extent that said averments contain conclusions of law, they are deemed denied.

54. Denied. The averments in this paragraph are specifically denied. To the extent that said averments contain conclusions of law, they are deemed denied.

55. Denied. The averments in this paragraph are specifically denied. To the extent that said averments contain conclusions of law, they are deemed denied.

56. Denied. The averments in this paragraph are specifically denied. To the extent that said averments contain conclusions of law, they are deemed denied.

57. Denied. The averments in this paragraph are specifically denied. To the extent that said averments contain conclusions of law, they are deemed denied.

58. Denied. The averments in this paragraph are specifically denied. To the extent that said averments contain conclusions of law, they are deemed denied.

59. Denied. The averments in this paragraph are specifically denied. To the extent that said averments contain conclusions of law, they are deemed denied.

60. Denied. Answering defendants are without knowledge or information sufficient to form a belief as to the truth thereof, which are therefore denied as a matter of law. To the extent that said averments contain conclusions of law, they are deemed denied.

61. Denied. The averments in this paragraph are specifically denied. To the extent that said averments contain conclusions of law, they are deemed denied.

62. Admitted in part; denied in part. It is admitted that plaintiff has alleged claims as identified in this paragraph. However, defendants deny that they are liable to plaintiff.

63. Admitted in part; denied in part. It is admitted that plaintiff was qualified for the position of cashier/crew member when she was hired. The remainder of the averments in this paragraph are specifically denied. To the extent that said averments contain conclusions of law, they are deemed denied.

64.     Denied.  Answering defendants are without knowledge or information sufficient to form a belief as to the truth thereof, which are therefore denied as a matter of law.  To the extent that said averments contain conclusions of law, they are deemed denied.

65.     Denied.  Answering defendants are without knowledge or information sufficient to form a belief as to the truth thereof, which are therefore denied as a matter of law.  To the extent that said averments contain conclusions of law, they are deemed denied.

66.     Denied.  Answering defendants are without knowledge or information sufficient to form a belief as to the truth thereof, which are therefore denied as a matter of law.  To the extent that said averments contain conclusions of law, they are deemed denied.

67.     Denied.  Answering defendants are without knowledge or information sufficient to form a belief as to the truth thereof, which are therefore denied as a matter of law.  To the extent that said averments contain conclusions of law, they are deemed denied.

68.     Denied.  Answering defendants are without knowledge or information sufficient to form a belief as to the truth thereof, which are therefore denied as a matter of law.  To the extent that said averments contain conclusions of law, they are deemed denied.

69.     Denied.  It is specifically denied that answering defendants are liable for punitive damages.

70.     Denied.  The averments in this paragraph are specifically denied.  To the extent that said averments contain conclusions of law, they are deemed denied.

71.     Denied.  The averments in this paragraph are specifically denied.  To the extent that said averments contain conclusions of law, they are deemed denied.

72.     Denied.  The averments in this paragraph are specifically denied.  To the extent that said averments contain conclusions of law, they are deemed denied.

73.     Denied.  The averments in this paragraph constitute a conclusion of law, and therefore, they are deemed denied.

74.     Denied.  The averments in this paragraph are specifically denied.  To the extent that said averments contain conclusions of law, they are deemed denied.

75.     Denied.  The averments in this paragraph are specifically denied.  To the extent that said averments contain conclusions of law, they are deemed denied.

76.     Denied.  The averments in this paragraph are specifically denied.  To the extent that said averments contain conclusions of law, they are deemed denied.

77.     Denied.  The averments in this paragraph are specifically denied.  To the extent that said averments contain conclusions of law, they are deemed denied.

78.     Denied.  The averments in this paragraph are specifically denied.  To the extent that said averments contain conclusions of law, they are deemed denied.

79.     Denied.  The averments in this paragraph are specifically denied.  To the extent that said averments contain conclusions of law, they are deemed denied.

80.     Denied.  Answering defendants are without knowledge or information sufficient to form a belief as to the truth thereof, which are therefore denied as a matter of law.  To the extent that said averments contain conclusions of law, they are deemed denied.

## COUNT I

**DISPARATE TREATMENT**
**42 U.S.C. § 1981**

### PLAINTIFF v. ALL DEFENDANTS

81.    Answering defendants hereby incorporate paragraphs 1 through 80, inclusively, as fully as though herein set forth at length.

82.    Denied.  The averments in this paragraph constitute a conclusion of law, and therefore, they are deemed denied.

83.    Denied.  The averments in this paragraph constitute a conclusion of law, and therefore, they are deemed denied.

84.    Denied.  The averments in this paragraph constitute a conclusion of law, and therefore, they are deemed denied.

85.    Denied.  The averments in this paragraph constitute a conclusion of law, and therefore, they are deemed denied.

86.    Denied.  The averments in this paragraph constitute a conclusion of law, and therefore, they are deemed denied.

87.    Denied.  The averments in this paragraph are specifically denied.  To the extent that said averments contain conclusions of law, they are deemed denied.

88.    Denied.  The averments in this paragraph are specifically denied.  To the extent that said averments contain conclusions of law, they are deemed denied.

89.    Denied.  The averments in this paragraph are specifically denied.  To the extent that said averments contain conclusions of law, they are deemed denied.

90.    Denied.  The averments in this paragraph are specifically denied.  To the extent that said averments contain conclusions of law, they are deemed denied.

91.     Denied.  The averments in this paragraph are specifically denied.  To the extent that said averments contain conclusions of law, they are deemed denied.

92.     Denied.  The averments in this paragraph are specifically denied.  To the extent that said averments contain conclusions of law, they are deemed denied.

93.     Denied.   Answering defendants are without knowledge or information sufficient to form a belief as to the truth thereof, which are therefore denied as a matter of law.  To the extent that said averments contain conclusions of law, they are deemed denied.

WHEREFORE, answering defendants demand judgment in their favor.

## COUNT II

### SECTION 1981 HOSTILE WORK ENVIRONMENT
### 42 U.S.C. § 1981

### PLAINTIFF v. ALL DEFENDANTS

94.     Answering defendants hereby incorporate paragraphs 1 through 93, inclusively, as fully as though herein set forth at length.

95.     Denied.  The averments in this paragraph constitute a conclusion of law, and therefore, they are deemed denied.

96.     Denied.  The averments in this paragraph constitute a conclusion of law, and therefore, they are deemed denied.

97.     Denied.  The averments in this paragraph are specifically denied.  To the extent that said averments contain conclusions of law, they are deemed denied.

98.     Denied.  Answering defendants are without knowledge or information sufficient to form a belief as to the truth thereof, which are therefore denied as a matter of law.  To the extent that said averments contain conclusions of law, they are deemed denied.

99.    Denied.  The averments in this paragraph are specifically denied.  To the extent that said averments contain conclusions of law, they are deemed denied.

100.    Denied.  The averments in this paragraph are specifically denied.  To the extent that said averments contain conclusions of law, they are deemed denied.

101.    Denied.  The averments in this paragraph are specifically denied.  To the extent that said averments contain conclusions of law, they are deemed denied.

102.    Denied.  The averments in this paragraph are specifically denied.  To the extent that said averments contain conclusions of law, they are deemed denied.

103.    Denied.  The averments in this paragraph are specifically denied.  To the extent that said averments contain conclusions of law, they are deemed denied.

104.    Denied.   Answering defendants are without knowledge or information sufficient to form a belief as to the truth thereof, which are therefore denied as a matter of law.  To the extent that said averments contain conclusions of law, they are deemed denied.

WHEREFORE, answering defendants demand judgment in their favor.

## COUNT III

### SECTION 1981 RETALIATION
### 42 U.S.C. § 1981

### PLAINTIFF v. ALL DEFENDANTS

105.    Answering defendants hereby incorporate paragraphs 1 through 104, inclusively, as fully as though herein set forth at length.

106.    Denied.  The averments in this paragraph constitute a conclusion of law, and therefore, they are deemed denied.

107.    Denied.  The averments in this paragraph constitute a conclusion of law, and therefore, they are deemed denied.

108.   Denied.  The averments in this paragraph constitute a conclusion of law, and therefore, they are deemed denied.

109.   Denied.  The averments in this paragraph are specifically denied.  To the extent that said averments contain conclusions of law, they are deemed denied.

110.   Denied.  Answering defendants are without knowledge or information sufficient to form a belief as to the truth thereof, which are therefore denied as a matter of law.  To the extent that said averments contain conclusions of law, they are deemed denied.

111.   Denied.  The averments in this paragraph are specifically denied.  To the extent that said averments contain conclusions of law, they are deemed denied.

112.   Denied.  The averments in this paragraph are specifically denied.  To the extent that said averments contain conclusions of law, they are deemed denied.

113.   Denied.  The averments in this paragraph are specifically denied.  To the extent that said averments contain conclusions of law, they are deemed denied.

114.   Denied.  The averments in this paragraph are specifically denied.  To the extent that said averments contain conclusions of law, they are deemed denied.

115.   Denied.  Answering defendants are without knowledge or information sufficient to form a belief as to the truth thereof, which are therefore denied as a matter of law.  To the extent that said averments contain conclusions of law, they are deemed denied.

116.   Denied.   Answering defendants are without knowledge or information sufficient to form a belief as to the truth thereof, which are therefore denied as a matter of law.  To the extent that said averments contain conclusions of law, they are deemed denied.

WHEREFORE, answering defendants demand judgment in their favor.

## COUNT IV

**TITLE VII DISPARATE TREATMENT**
**42 U.S.C. § 2000e-2**

**PLAINTIFF v. DUNKIN' DONUTS, DUNKIN' DONUTS OF AMERICAN, INC.,**
**AND NORTHEAST DONUT SHOPS MANAGEMENT CORP.**

117.    Answering defendants hereby incorporate paragraphs 1 through 116, inclusively, as fully as though herein set forth at length.

118.    Denied.  The averments in this paragraph constitute a conclusion of law, and therefore, they are deemed denied.

119.    Denied.  The averments in this paragraph constitute a conclusion of law, and therefore, they are deemed denied.

120.    Denied.  The averments in this paragraph are specifically denied.  To the extent that said averments contain conclusions of law, they are deemed denied.

121.    Denied.  The averments in this paragraph are specifically denied.  To the extent that said averments contain conclusions of law, they are deemed denied.

122.    Denied.  The averments in this paragraph are specifically denied.  To the extent that said averments contain conclusions of law, they are deemed denied.

123.    Denied.  The averments in this paragraph are specifically denied.  To the extent that said averments contain conclusions of law, they are deemed denied.

124.    Denied.  The averments in this paragraph are specifically denied.  To the extent that said averments contain conclusions of law, they are deemed denied.

125.    Denied.  The averments in this paragraph are specifically denied.  To the extent that said averments contain conclusions of law, they are deemed denied.

126.     Denied.  The averments in this paragraph are specifically denied.  To the extent that said averments contain conclusions of law, they are deemed denied.

127.     Denied.   Answering defendants are without knowledge or information sufficient to form a belief as to the truth thereof, which are therefore denied as a matter of law.  To the extent that said averments contain conclusions of law, they are deemed denied.

WHEREFORE, answering defendants demand judgment in their favor.

## COUNT V

### TITLE VII HOSTILE WORK ENVIRONMENT
### 42 U.S.C. § 2000e-2

### PLAINTIFF v. DUNKIN' DONUTS, DUNKIN' DONUTS OF AMERICAN, INC., AND NORTHEAST DONUT SHOPS MANAGEMENT CORP.

128.     Answering defendants hereby incorporate paragraphs 1 through 127, inclusively, as fully as though herein set forth at length.

129.     Denied.  The averments in this paragraph constitute a conclusion of law, and therefore, they are deemed denied.

130.     Denied.  The averments in this paragraph constitute a conclusion of law, and therefore, they are deemed denied.

131.     Denied.  The averments in this paragraph constitute a conclusion of law, and therefore, they are deemed denied.

132.     Denied.  The averments in this paragraph constitute a conclusion of law, and therefore, they are deemed denied.

133.     Denied.  The averments in this paragraph constitute a conclusion of law, and therefore, they are deemed denied.

134.    Denied.  The averments in this paragraph are specifically denied.  To the extent that said averments contain conclusions of law, they are deemed denied.

135.    Denied.  The averments in this paragraph are specifically denied.  To the extent that said averments contain conclusions of law, they are deemed denied.

136.    Denied.  The averments in this paragraph are specifically denied.  To the extent that said averments contain conclusions of law, they are deemed denied.

137.    Denied.  The averments in this paragraph are specifically denied.  To the extent that said averments contain conclusions of law, they are deemed denied.

138.    Denied.  The averments in this paragraph are specifically denied.  To the extent that said averments contain conclusions of law, they are deemed denied.

139.    Denied.  The averments in this paragraph are specifically denied.  To the extent that said averments contain conclusions of law, they are deemed denied.

140.    Denied.  Answering defendants are without knowledge or information sufficient to form a belief as to the truth thereof, which are therefore denied as a matter of law.  To the extent that said averments contain conclusions of law, they are deemed denied.

141.    Denied.  Answering defendants are without knowledge or information sufficient to form a belief as to the truth thereof, which are therefore denied as a matter of law.  To the extent that said averments contain conclusions of law, they are deemed denied.

142.    Denied.  The averments in this paragraph are specifically denied.  To the extent that said averments contain conclusions of law, they are deemed denied.

143.    Denied.  The averments in this paragraph are specifically denied.  To the extent that said averments contain conclusions of law, they are deemed denied.

144.     Denied.  The averments in this paragraph are specifically denied.  To the extent that said averments contain conclusions of law, they are deemed denied.

145.     Denied.  The averments in this paragraph are specifically denied.  To the extent that said averments contain conclusions of law, they are deemed denied.

146.     Denied.  The averments in this paragraph are specifically denied.  To the extent that said averments contain conclusions of law, they are deemed denied.

147.     Denied.  The averments in this paragraph are specifically denied.  To the extent that said averments contain conclusions of law, they are deemed denied.

148.     Denied.  The averments in this paragraph are specifically denied.  To the extent that said averments contain conclusions of law, they are deemed denied.

149.     Denied.   Answering defendants are without knowledge or information sufficient to form a belief as to the truth thereof, which are therefore denied as a matter of law.  To the extent that said averments contain conclusions of law, they are deemed denied.

WHEREFORE, answering defendants demand judgment in their favor.

## COUNT VI

### TITLE VII RETALIATION
### 42 U.S.C. § 2000e-2

### PLAINTIFF v. DUNKIN' DONUTS, DUNKIN' DONUTS OF AMERICAN, INC., AND NORTHEAST DONUT SHOPS MANAGEMENT CORP.

150.     Answering defendants hereby incorporate paragraphs 1 through 149, inclusively, as fully as though herein set forth at length.

151.     Denied.  The averments in this paragraph constitute a conclusion of law, and therefore, they are deemed denied.

152.     Denied.  The averments in this paragraph constitute a conclusion of law, and therefore, they are deemed denied.

153.     Denied.  The averments in this paragraph constitute a conclusion of law, and therefore, they are deemed denied.

154.     Denied.  The averments in this paragraph constitute a conclusion of law, and therefore, they are deemed denied.

155.     Denied.  The averments in this paragraph constitute a conclusion of law, and therefore, they are deemed denied.

156.     Denied.  The averments in this paragraph constitute a conclusion of law, and therefore, they are deemed denied.

157.     Denied.  The averments in this paragraph constitute a conclusion of law, and therefore, they are deemed denied.

158.     Denied.  The averments in this paragraph are specifically denied.  To the extent that said averments contain conclusions of law, they are deemed denied.

159.     Denied.  Answering defendants are without knowledge or information sufficient to form a belief as to the truth thereof, which are therefore denied as a matter of law.  To the extent that said averments contain conclusions of law, they are deemed denied.

160.     Denied.  The averments in this paragraph are specifically denied.  To the extent that said averments contain conclusions of law, they are deemed denied.

161.     Denied.  The averments in this paragraph are specifically denied.  To the extent that said averments contain conclusions of law, they are deemed denied.

162.     Denied.  The averments in this paragraph are specifically denied.  To the extent that said averments contain conclusions of law, they are deemed denied.

163.    Denied.  The averments in this paragraph are specifically denied.  To the extent that said averments contain conclusions of law, they are deemed denied.

164.    Denied.  Answering defendants are without knowledge or information sufficient to form a belief as to the truth thereof, which are therefore denied as a matter of law.  To the extent that said averments contain conclusions of law, they are deemed denied.

165.    Denied.   Answering defendants are without knowledge or information sufficient to form a belief as to the truth thereof, which are therefore denied as a matter of law.  To the extent that said averments contain conclusions of law, they are deemed denied.

WHEREFORE, answering defendants demand judgment in their favor.

## COUNT VII

### FAILURE TO PAY MINIMUM WAGES
### FAIR LABOR STANDARDS ACT, 29 U.S.C. § 201, et seq.

### PLAINTIFF v. DUNKIN' DONUTS, DUNKIN' DONUTS OF AMERICAN, INC., AND NORTHEAST DONUT SHOPS MANAGEMENT CORP.

166.    Answering defendants hereby incorporate paragraphs 1 through 165, inclusively, as fully as though herein set forth at length.

167.    Denied.  The averments in this paragraph constitute a conclusion of law, and therefore, they are deemed denied.

168.    Denied.  The averments in this paragraph constitute a conclusion of law, and therefore, they are deemed denied.

169.    Denied.  The averments in this paragraph are specifically denied.  To the extent that said averments contain conclusions of law, they are deemed denied.

170.    Denied.  The averments in this paragraph are specifically denied.  To the extent that said averments contain conclusions of law, they are deemed denied.

171.     Denied.  The averments in this paragraph are specifically denied.  To the extent that said averments contain conclusions of law, they are deemed denied.

172.     Denied.  The averments in this paragraph are specifically denied.  To the extent that said averments contain conclusions of law, they are deemed denied.

WHEREFORE, answering defendants demand judgment in their favor.

## COUNT VIII

### FAILURE TO PAY OVERTIME COMPENSATION
### FAIR LABOR STANDARDS ACT, 29 U.S.C. § 201, et seq.

### PLAINTIFF v. DUNKIN' DONUTS, DUNKIN' DONUTS OF AMERICAN, INC., AND NORTHEAST DONUT SHOPS MANAGEMENT CORP.

173.     Answering defendants hereby incorporate paragraphs 1 through 172, inclusively, as fully as though herein set forth at length.

174.     Denied.  The averments in this paragraph constitute a conclusion of law, and therefore, they are deemed denied.

175.     Denied.  The averments in this paragraph constitute a conclusion of law, and therefore, they are deemed denied.

176.     Denied.  The averments in this paragraph are specifically denied.  To the extent that said averments contain conclusions of law, they are deemed denied.

177.     Denied.  The averments in this paragraph are specifically denied.  To the extent that said averments contain conclusions of law, they are deemed denied.

178.     Denied.  The averments in this paragraph are specifically denied.  To the extent that said averments contain conclusions of law, they are deemed denied.

179.     Denied.  The averments in this paragraph are specifically denied.  To the extent that said averments contain conclusions of law, they are deemed denied.

WHEREFORE, answering defendants demand judgment in their favor.

## COUNT IX

### FAILURE TO PAY MINIUMUM WAGES
### PENNSYLVANIA MINIMUM WAGE ACT, 42 P.S. § 333.101, et seq.

### PLAINTIFF v. DUNKIN' DONUTS, DUNKIN' DONUTS OF AMERICAN, INC.,
### AND NORTHEAST DONUT SHOPS MANAGEMENT CORP.

180.    Answering defendants hereby incorporate paragraphs 1 through 179, inclusively, as fully as though herein set forth at length.

181.    Denied.  The averments in this paragraph constitute a conclusion of law, and therefore, they are deemed denied.

182.    Denied.  The averments in this paragraph are specifically denied.  To the extent that said averments contain conclusions of law, they are deemed denied.

183.    Denied.  The averments in this paragraph are specifically denied.  To the extent that said averments contain conclusions of law, they are deemed denied.

184.    Denied.  The averments in this paragraph are specifically denied.  To the extent that said averments contain conclusions of law, they are deemed denied.

185.    Denied.  The averments in this paragraph are specifically denied.  To the extent that said averments contain conclusions of law, they are deemed denied.

WHEREFORE, answering defendants demand judgment in their favor.

## COUNT X

### FAILURE TO PAY OVERTIME COMPENSATION
### PENNSYLVANIA MINIMUM WAGE ACT, 42 P.S. § 333.101, et seq.

### PLAINTIFF v. DUNKIN' DONUTS, DUNKIN' DONUTS OF AMERICAN, INC.,
### AND NORTHEAST DONUT SHOPS MANAGEMENT CORP.

186.    Answering defendants hereby incorporate paragraphs 1 through 185, inclusively, as fully as though herein set forth at length.

187.    Denied.  The averments in this paragraph constitute a conclusion of law, and therefore, they are deemed denied.

188.    Denied.  The averments in this paragraph are specifically denied.  To the extent that said averments contain conclusions of law, they are deemed denied.

189.    Denied.  The averments in this paragraph are specifically denied.  To the extent that said averments contain conclusions of law, they are deemed denied.

190.    Denied.  The averments in this paragraph are specifically denied.  To the extent that said averments contain conclusions of law, they are deemed denied.

191.    Denied.  The averments in this paragraph are specifically denied.  To the extent that said averments contain conclusions of law, they are deemed denied.

192.    Denied.  The averments in this paragraph are specifically denied.  To the extent that said averments contain conclusions of law, they are deemed denied.

WHEREFORE, answering defendants demand judgment in their favor.

## COUNT XI

### FAILURE TO PAY WAGES
### PENNSYLVANIA WAGE PAYMENT AND COLLECTION LAW, 43 P.S. § 260.1, et seq.

### PLAINTIFF v. DUNKIN' DONUTS, DUNKIN' DONUTS OF AMERICAN, INC., AND NORTHEAST DONUT SHOPS MANAGEMENT CORP.

193.     Answering defendants hereby incorporate paragraphs 1 through 192, inclusively, as fully as though herein set forth at length.

194.     Denied.  The averments in this paragraph constitute a conclusion of law, and therefore, they are deemed denied.

195.     Denied.  The averments in this paragraph constitute a conclusion of law, and therefore, they are deemed denied.

196.     Denied.  The averments in this paragraph are specifically denied.  To the extent that said averments contain conclusions of law, they are deemed denied.

197.     Denied.  The averments in this paragraph are specifically denied.  To the extent that said averments contain conclusions of law, they are deemed denied.

198.     Denied.  The averments in this paragraph are specifically denied.  To the extent that said averments contain conclusions of law, they are deemed denied.

WHEREFORE, answering defendants demand judgment in their favor.

## COUNT XII

### ASSAULT AND BATTERY

### PLAINTIFF v. NAWAZ MATKHAILI

199.     Answering defendants hereby incorporate paragraphs 1 through 198, inclusively, as fully as though herein set forth at length.

200.    Denied.  The averments in this paragraph constitute a conclusion of law, and therefore, they are deemed denied.

201.    Denied.  The averments in this paragraph constitute a conclusion of law, and therefore, they are deemed denied.

202.    Denied.  Answering defendants are without knowledge or information sufficient to form a belief as to the truth thereof, which are therefore denied as a matter of law.  To the extent that said averments contain conclusions of law, they are deemed denied.

203.    Denied.  Answering defendants are without knowledge or information sufficient to form a belief as to the truth thereof, which are therefore denied as a matter of law.  To the extent that said averments contain conclusions of law, they are deemed denied.

WHEREFORE, answering defendants demand judgment in their favor.

## COUNT XIII (PLACEHOLDER)

### PHRA DISCRIMINATION
### 43 P.S. §§ 951-963

### PLAINTIFF v. DUNKIN' DONUTS, DUNKIN' DONUTS OF AMERICAN, INC., AND NORTHEAST DONUT SHOPS MANAGEMENT CORP.

204.    Denied.  Answering defendants are without knowledge or information sufficient to form a belief as to the truth thereof, which are therefore denied as a matter of law.  To the extent that said averments contain conclusions of law, they are deemed denied.

WHEREFORE, answering defendants demand judgment in their favor.

## COUNT XIV (PLACEHOLDER)

### PHRA RETALIATION
### 43 P.S. §§ 951-963

### PLAINTIFF v. DUNKIN' DONUTS, DUNKIN' DONUTS OF AMERICAN, INC., AND NORTHEAST DONUT SHOPS MANAGEMENT CORP.

205.     Denied.  Answering defendants are without knowledge or information sufficient to form a belief as to the truth thereof, which are therefore denied as a matter of law.  To the extent that said averments contain conclusions of law, they are deemed denied.

WHEREFORE, answering defendants demand judgment in their favor.

## COUNT XV (PLACEHOLDER)

### PHRA AIDING AND ABETTING
### 43 P.S. §§ 951-963

### PLAINTIFF v. DUNKIN' DONUTS, DUNKIN' DONUTS OF AMERICAN, INC., AND NORTHEAST DONUT SHOPS MANAGEMENT CORP.

206.     Denied.  Answering defendants are without knowledge or information sufficient to form a belief as to the truth thereof, which are therefore denied as a matter of law.  To the extent that said averments contain conclusions of law, they are deemed denied.

WHEREFORE, answering defendants demand judgment in their favor.

## COUNT XVI (PLACEHOLDER)

### PFPO DISCRIMINATION
### PFPO §§ 9-1100, et seq.

### PLAINTIFF v. DUNKIN' DONUTS, DUNKIN' DONUTS OF AMERICAN, INC., AND NORTHEAST DONUT SHOPS MANAGEMENT CORP.

207.     Denied.  Answering defendants are without knowledge or information sufficient to form a belief as to the truth thereof, which are therefore denied as a matter of law.  To the extent that said averments contain conclusions of law, they are deemed denied.

WHEREFORE, answering defendants demand judgment in their favor.

### COUNT XVII (PLACEHOLDER)

**PFPO RETALIATION
PFPO §§ 9-1100, et seq.**

### PLAINTIFF v. ALL DEFENDANTS

208.    Denied.  Answering defendants are without knowledge or information sufficient to form a belief as to the truth thereof, which are therefore denied as a matter of law.  To the extent that said averments contain conclusions of law, they are deemed denied.

WHEREFORE, answering defendants demand judgment in their favor.

### COUNT XVIII (PLACEHOLDER)

**PFPO AIDING AND ABETTING
PFPO §§ 9-1100, et seq.**

### PLAINTIFF v. ALL DEFENDANTS

209.    Denied.  Answering defendants are without knowledge or information sufficient to form a belief as to the truth thereof, which are therefore denied as a matter of law.  To the extent that said averments contain conclusions of law, they are deemed denied.

WHEREFORE, answering defendants demand judgment in their favor.

### AFFIRMATIVE DEFENSES

1.    The plaintiff's complaint fails to state a cause of action upon which relief can be granted.

2.    The causes of action alleged by plaintiff in the Complaint are barred or limited by Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, et seq., which is incorporated by reference herein, and made a part hereof as fully as though herein set forth at length.

3.      The causes of action alleged by plaintiff in the Complaint are barred or limited by § 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981, which is incorporated by reference herein, and made a part hereof as fully as though herein set forth at length.

4.      The causes of action alleged by plaintiff in the Complaint are barred or limited by the Pennsylvania Human Relations Act, 43 P.S. §§ 951-963, which is incorporated by reference herein, and made a part hereof as fully as though herein set forth at length.

5.      The causes of action alleged by plaintiff in the Complaint are barred or limited by the Philadelphia Fair Practices Ordinance, Philadelphia Code §§ 9-1101, et seq., which is incorporated by reference herein, and made a part hereof as fully as though herein set forth at length.

6.      The causes of action alleged by plaintiff in the Complaint are barred or limited by the Fair Labor Standards Act, 29 U.S.C. §§ 201, et seq., which is incorporated by reference herein, and made a part hereof as fully as though herein set forth at length.

7.      The causes of action alleged by plaintiff in the Complaint are barred or limited by Pennsylvania Minimum Wage Act of 1968, 42 P.S. §§ 333.101, et seq., which is incorporated by reference herein, and made a part hereof as fully as though herein set forth at length.

8.      The causes of action alleged by plaintiff in the Complaint are barred or limited by the Pennsylvania Wage Payment and Collection Law, 43 P.S. § 260.1, et seq., which is incorporated by reference herein, and made a part hereof as fully as though herein set forth at length.

9.      The causes of action alleged by plaintiff in the Complaint are barred or limited by Pennsylvania common law on assault and battery.

10.     Defendant Nawaz Matkhaili did not act within the course or scope of employment with answering defendant in committing any of the acts alleged by plaintiff.

11.     The plaintiff has failed to join indispensable, necessary, and proper parties.

12.     All allegations pertaining to agency, supervision, or control are specifically denied, and strict proof, if deemed relevant, will be demanded at the time of the trial.

13.     If the plaintiff sustained injuries and damages as alleged in the Complaint, and said injuries and damages were the direct and proximate result of the negligence, carelessness, recklessness, lack of due care, willful and wanton misconduct, or other acts or omissions to act of individuals, parties, or entities other than the plaintiff herself, then the plaintiff's injuries and damages were the direct and proximate result of the negligence, carelessness, lack of due care, willful and wanton misconduct, or other acts or omissions to act of other individuals, parties, or entities other than the answering defendants, over whom the answering defendants had no control or right of control.

14.     Collateral estoppel and/or res judicata apply to bar litigation of issues previously adjudicated concerning the case of action set forth in the plaintiff's Complaint.

15.     Any damages claimed by the plaintiff's, the existence of which are specifically denied, were caused in whole or in part, by the actions or inactions of third parties over whom the answering defendants had no control or right of control.

16.     Plaintiff's damages and injuries, if any, were the result of unforeseeable, intervening, and/or superseding causes and/or acts of others unrelated to the conduct of the answering defendants.

17.     Plaintiff failed to mitigate her damages.

18.     Plaintiff has failed to exhaust all administrative remedies.

19.     The causes of action as set forth in plaintiff's Complaint are barred or limited by the terms of any and all contracts and/or subcontracts or other contracts, subcontracts, or agreements in effect at the time of the accident which governed the relationships among the parties.

20.     The plaintiff's Complaint is barred by the statute of limitations.

21.     At all times relevant hereto, answering defendants employed reasonable care to avoid and/or prevent sexual harassment on its premises.

22.     The causes of action alleged by plaintiff in her Complaint are frivolous, unreasonable, and without foundation, warranting an award of attorney's fees to answering defendants.

23.     The causes of action alleged by plaintiff in her Complaint are barred, in whole or in part, because all of answering defendants' actions or inactions concerning plaintiff complied with all relevant and applicable laws and were based on legitimate, nondiscriminatory, and non-retaliatory reasons, and neither plaintiff's race, sex, or color, nor any other protected characteristic, was a motivating, determinative, or any factor in any actions and/or inactions with regard to plaintiff.

24.     Plaintiff's claim for punitive damages claims is barred because answering defendants did not act with malice or with reckless indifference to the federally protected rights of plaintiff.

25.     Plaintiff is not entitled to punitive damages because answering defendants made good faith efforts to comply with all applicable laws.

26.     Plaintiff has not complied with the requirements for filing claims under Pennsylvania state laws, and therefore, cannot claim violations of Pennsylvania state law.

27.     Plaintiff is not entitled to any relief for, and her claims are barred by, any alleged acts or omissions that exceed the scope of the charges filed with EEOC.

28.     The causes of action alleged by plaintiff in the Complaint are barred or limited by the Pennsylvania Human Relations Act , 43 P.S. §§951-963, which is incorporated by reference herein, and made a part hereof as fully as though herein set forth at length.

29.     The causes of action alleged by plaintiff in the Complaint are barred or limited by the Philadelphia Fair Practices Ordinance, §§9-1100, et seq., which is incorporated by reference herein, and made a part hereof as fully as though herein set forth at length.

WHEREFORE, answering defendants demand judgment in its favor.

## CROSSCLAIM AGAINST DEFENDANT NAWAZ MATKHAILI

1.      If defendant Nawaz Matkhaili committed acts of assault, battery, and sexual harassment as averred in plaintiff's Complaint, then said acts were *ultra vires* and/or outside the course or scope of any employment or agency with defendant Northeast Donut Shops Management Corporation, and were caused solely by Nawaz Matkhaili, were not caused by any act or failure to act of answering defendants, and were not a basis for vicarious liability ore respondeat superior liability on the part of answering defendants.

2.      Answering defendants crossclaim against defendant Matkhaili, for contribution and/or indemnification.

WHEREFORE, answering defendants hereby crossclaims against defendant Matkhaili, who is alone liable, jointly liable, or liable over to answering defendants by way of contribution and/or indemnification.

BILLET & ASSOCIATES, LLC


By: /s/ Lauren B. Orner
_____
ROBERT DOUGLAS BILLET, ESQUIRE
LAUREN B. ORNER, ESQUIRE
PA Atty I.D. 38430/313078

2000 Market Street, Suite 2803
Philadelphia, PA 19103-3201
215-496-7500/fax 7505
rbillet@billetlaw.com
lorner@billetlaw.com

Attorneys for defendants Dunkin' Donuts, Dunkin'
Donuts of America, Inc., Northeast Donut Shops
Management Corporation, Brian Lin, Misa Liao,
Leshia Evans, and Kim Hong

**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| SHAKIYA BROWN | : | NO. 2:22-cv-01916 |
| | : | |
| v. | : | |
| | : | |
| DUNKIN' DONUTS, DUNKIN' | : | |
| DONUTS OF AMERICA, INC., | : | |
| NORTHEAST DONUT SHOPS | : | |
| MANAGEMENT CORPORATION, | : | |
| BRIAN LIN, MISA LIAO, LESHIA | : | |
| EVANS, KIM HONG and | : | |
| NAWAZ MATKHAILI | : | CIVIL ACTION |

<u>**CERTIFICATION OF SERVICE**</u>

I, Lauren B. Orner, Esquire, hereby certify that a true and correct copy of the Answer to

Plaintiff's Complaint with Affirmative Defenses and Crossclaim of Defendants Dunkin' Donuts,

Dunkin' Donuts of America, Inc., Northeast Donut Shops Management Corporation, Brian Lin,

Misa Liao, Leshia Evans, and Kim Hong was served upon all counsel by the electronic filing

system and e-mail on July 5, 2022.

BILLET & ASSOCIATES, LLC

/s/ Lauren B. Orner
By: _____
ROBERT DOUGLAS BILLET, ESQUIRE
LAUREN B. ORNER, ESQUIRE
PA Atty I.D. 38430/313078

2000 Market Street, Suite 2803
Philadelphia, PA 19103-3201
215-496-7500/fax 7505
rbillet@billetlaw.com
lorner@billetlaw.com

Attorneys for defendants Dunkin' Donuts, Dunkin'
Donuts of America, Inc., Northeast Donut Shops
Management Corporation, Brian Lin, Misa Liao,
Leshia Evans, and Kim Hong

**EXHIBIT C**

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SHAKIYA BROWN | : | NO. 2:22-cv-01916 |
| | : | |
| v. | : | |
| | : | |
| DUNKIN' DONUTS, DUNKIN' | : | |
| DONUTS OF AMERICA, INC., | : | |
| NORTHEAST DONUT SHOPS | : | |
| MANAGEMENT CORPORATION, | : | |
| BRIAN LIN, MISA LIAO, | : | |
| LESHIA EVANS, KIM HONG, | : | |
| AND NAWAZ MATKHAILI | : | CIVIL ACTION |

## ORDER

AND NOW, this _____ day of _____, 2022, upon consideration of the Motion of Defendants Dunkin' Donuts, Dunkin' Donuts of America, Inc., Northeast Donut Shops Management Corporation, Brian Lin, Misa Liao, Leshia Evans, and Kim Hong for Leave to Amend their Answer to Plaintiff's Complaint to Allege a Counterclaim for Conversion, and all responses thereto, it is hereby ORDERED that:

1. The Motion of Defendants Dunkin' Donuts, Dunkin' Donuts of America, Inc., Northeast Donut Shops Management Corporation, Brian Lin, Misa Liao, Leshia Evans, and Kim Hong for Leave to Amend their Answer to Plaintiff's Complaint to Allege a Counterclaim for Conversion is GRANTED;

2. Defendants Dunkin' Donuts, Dunkin' Donuts of America, Inc., Northeast Donut Shops Management Corporation, Brian Lin, Misa Liao, Leshia Evans, and Kim Hong are hereby granted leave to file the proposed Amended Answer to Plaintiff's Complaint attached as Exhibit "D" to this Motion.

BY THE COURT:

_____
                                        J.

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SHAKIYA BROWN | : | NO. 2:22-cv-01916 |
| | : | |
| v. | : | |
| | : | |
| DUNKIN' DONUTS, DUNKIN' | : | |
| DONUTS OF AMERICA, INC., | : | |
| NORTHEAST DONUT SHOPS | : | |
| MANAGEMENT CORPORATION, | : | |
| BRIAN LIN, MISA LIAO, | : | |
| LESHIA EVANS, KIM HONG, | : | |
| AND NAWAZ MATKHAILI | : | CIVIL ACTION |

## MOTION OF DEFENDANTS DUNKIN' DONUTS, DUNKIN' DONUTS OF AMERICA, INC., NORTHEAST DONUT SHOPS MANAGEMENT CORPORATION, BRIAN LIN, MISA LIAO, LESHIA EVANS, AND KIM HONG FOR LEAVE TO AMEND THEIR ANSWER TO PLAINTIFF'S COMPLAINT TO ALLEGE A COUNTERCLAIM FOR CONVERSION

Defendants Dunkin' Donuts, Dunkin' Donuts of America, Inc., Northeast Donut Shops Management Corporation, Brian Lin, Misa Liao, Leshia Evans, and Kim Hong (collectively "the Dunkin' defendants") hereby move for leave to file an Amended Answer to plaintiff's Complaint to allege a counterclaim for conversion, and, in support thereof, aver the following:

## FACTS AND PROCEDURAL HISTORY

1.      On May 16, 2022, plaintiff Shakiya Brown filed a Complaint against the Dunkin' defendants and Nawaz Matkhaili, alleging that she was subjected to race, color, and sex-based discrimination, harassment, and retaliation during the course of her employment at a Dunkin' Donuts shop located at 1345 W. Olney Avenue in Philadelphia ("the shop"). See Complaint, docket entry no. 1, attached as Exhibit "A."

2.      Specifically, in her Complaint, plaintiff alleges that, on May 28, 2021, she was harassed and assaulted by Nawaz Matkhaili, a co-worker, while they were working together at the shop.  See Exhibit "A" at ¶¶ 26-31.

3.      Plaintiff further alleges in her Complaint that, after the alleged assault, she reported the incident to her manager, defendant Misa Liao, who "refused to investigate [plaintiff's] complaint" because "[plaintiff] is Black."  See Exhibit "A" at ¶¶ 32-35, 44-45.

4.      According to plaintiff's Complaint, the Dunkin' defendants continued to schedule plaintiff to work with Mr. Matkhaili after she reported the alleged assault.  See Exhibit "A" at ¶¶ 36-37.

5.      Plaintiff also alleges in her Complaint that the Dunkin' defendants, inter alia, "cut [her] hours," "failed to pay [her] for all hours worked," "failed to pay [her] overtime compensation for all hours worked over 40 hours in a work week," "refused to share tips with [her]," "refused to provide [her] with a uniform…," "made discriminatory race-based comments about [her] hair," and "subjected [her] to excessive oversight."  See Exhibit "A" at ¶¶ 48-57.

6.      In addition, as alleged in the Complaint, the Dunkin' defendants "failed to take prompt remedial action and allowed the discrimination and harassment to continue and increase in severity."  See Exhibit "A" at ¶ 58.

7.      According to the Complaint, the Dunkin' defendants "did not treat [p]laintiff's similarly situated non-Black/Female coworkers with the same disdain with which they treated [p]laintiff."  See Exhibit "A" at ¶ 59.

8.      Plaintiff alleges in the Complaint that, "[o]n August 12, 2021, [the Dunkin' defendants] terminated [her] employment under conditions of an ongoing hostile work environment."  See Exhibit "A" at ¶ 61.

9.      Plaintiff has alleged claims for violation of 42 U.S.C. § 1981, Title VII of the

Civil Rights Act of 1964, 42 U.S.C. §§ 2000e—2000e–17 (1994), the Fair Labor Standards Act,

29 U.S.C. § 201, et seq., the Pennsylvania Minimum Wage Act, 42 P.S. § 333.101, et seq., the

Pennsylvania Wage Payment and Collection Law, 43 P.S. § 260.1, et seq., the Pennsylvania

Human Relations Act, 43 P.S. §§ 951-963, and Philadelphia Fair Practices Ordinance,

Philadelphia Code §§ 9-1101, et seq., against the Dunkin' defendants.  See Exhibit "A."

10.     On July 5, 2022, the Dunkin' defendants filed their Answer to plaintiff's

Complaint.  See Answer to Complaint, docket entry no. 12, attached as Exhibit "B."

11.     In their Answer to the Complaint, the Dunkin' defendants denied that they are

liable to plaintiff on any basis.  See Exhibit "B."

12.     On November 3, 2022, plaintiff produced responses to the Dunkin' defendants'

interrogatories and document requests.

13.     As part of her document production, plaintiff ironically produced work schedules[1]

that she took without permission from the shop on August 15, 2021.[2]

14.     The work schedules taken by plaintiff were owned by defendant Northeast Donut

Shops Management Corporation.

15.     In fact, on August 15, 2021, security cameras from inside the shop captured

plaintiff climbing over the service counter to access the office, which is where she located and

took the schedules without permission to do so:

---

[1] The work schedules that plaintiff took without permission are not attached as an exhibit to this Motion, as they contain employees' names and other personal information.  However, the schedules are available for this Court's *in camera* review, if requested.

[2] On August 14, 2021 -- the day before she climbed over the service counter -- plaintiff worked nearly eight hours at the shop.  Plaintiff did not quit; she simply did not show up for work ever again after August 14th.  On August 15, 2021 -- the day that she climbed over the service counter to take documents from the office without permission -- plaintiff was not scheduled to work.  In addition to taking documents without permission, by attempting to access employee-only areas while off-duty, plaintiff violated the "Dunkin' Donuts: Crew Members Responsibilities and Duties."



16.     In addition, security cameras from inside the shop captured plaintiff crawling

through the walk-up window on August 21, 2021:



17.     After crawling through the walk-up window on August 21, 2021, plaintiff took a

set of keys (for the cash register and front door) from the shop without permission to do so.

18.     In fact, plaintiff admitted that she took the keys in texts to defendant Misa Liao,

the manager of the shop. See texts from plaintiff, attached as Exhibit "C."

4

19.     As a result of plaintiff taking keys for the cash register and front door, the defendants were required to have the cash register and front door "re-keyed," and had to purchase new keys.

20.     The proposed Amended Answer of the Dunkin' defendants is attached to this Motion as Exhibit "D."

21.     The proposed Amended Answer of the Dunkin' defendants includes a counterclaim for conversion and two additional affirmative defenses related to their counterclaim. <u>See</u> Exhibit "D."

22.     For the following reasons, the Dunkin' defendants should be granted leave to file an Amended Answer to plaintiff's Complaint to allege a counterclaim for conversion.

## <u>STANDARD TO AMEND THE PLEADINGS</u>

23.     Fed. R. Civ. P. 15 states, in pertinent part:

(a) Amendments Before Trial.

    (1) Amending as a Matter of Course.  A party may amend its pleading once as a matter of course within:

        (A) 21 days after serving it, or

        (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.

    (2) Other Amendments.  In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. *The court should freely give leave when justice so requires.*

    (3) Time to Respond.  Unless the court orders otherwise, any required response to an amended pleading must be made within the time remaining to respond to the original pleading or within 14 days after service of the amended pleading, whichever is later.

Fed.R.Civ.P. 15(a) (emphasis added).

24.     The Third Circuit has "held consistently that leave to amend should be granted

freely."  Dole v. Arco Chem. Co., 921 F.2d 484, 486-487 (3d Cir. 1990) (citing Heyl & Patterson

Int'l, Inc. v. F.D. Rich Housing, 663 F.2d 419, 425 (3d Cir. 1981).  See also Bechtel v. Robinson,

886 F.2d 644 (3d Cir. 1989) (court should use "strong liberality" in considering whether to grant

leave to amend).

25.     In fact, the Supreme Court has identified a number of factors to be considered in

deciding on a motion to amend under Fed.R.Civ.P. 15(a):

> In the absence of any apparent or declared reason -- such as undue delay, bad
> faith or dilatory motive on the part of the movant, repeated failure to cure
> deficiencies by amendments previously allowed, undue prejudice to the
> opposing party by virtue of allowance of the amendment, futility of
> amendment, etc. -- the leave sought should, as the rules require, be "freely
> given."

Id., at 652 (citing Foman v. Davis, 371 U.S. 178, 182 (1962)).

### PURSUANT TO FED. R. CIV. P. 15, THE DUNKIN' DEFENDANTS SHOULD BE PERMITTED LEAVE TO AMEND THEIR ANSWER TO INCLUDE A COUNTERCLAIM FOR CONVERSION AGAINST PLAINTIFF

26.     In accordance with Fed. R. Civ. P. 15, the Dunkin' defendants should be allowed

freely to amend their Answer to plaintiff's Complaint to include a counterclaim for conversion

against plaintiff.

27.     In Pennsylvania, conversion is defined as "the deprivation of another's right of

property in, or use or possession of, a chattel, without the owner's consent and without lawful

justification." Ranalli v. Etsy.com, LLC, 570 F. Supp. 3d 301, 308 (W.D. Pa. 2021) (citing

Premier Payments Online, Inc. v. Payment Sys. Worldwide, 848 F. Supp.2d 513, 529 (E.D. Pa.

2012); Francis J. Bernhardt, III, P.C. v. Needleman, 705 A.2d 875, 879 (Pa. Super. 1997)).

28.     In this case, the Dunkin' defendants allege in their proposed Amended Answer that plaintiff took schedules from the shop on August 15, 2021, as well as cash register and front door keys from the shop on August 21, 2021, without permission to do so.  See Exhibit "D."

29.     Notably, plaintiff's responses to discovery -- which were received on November 3, 2022 -- confirm that she took the schedules, as she produced them in response to the Dunkin' defendants' document requests.

30.     In addition, plaintiff's texts to defendant Misa Liao confirm that she took the keys without permission.  See Exhibit "C."

31.     Discovery is ongoing, and plaintiff has not yet been deposed.

32.     Plaintiff will not be prejudiced by the proposed amendment.

33.     The Dunkin' defendants are seeking to amend their Answer to the Complaint to allege a counterclaim for conversion within the two-year statute of limitations, as the conversion occurred in August 2021.

34.     As such, pursuant to Fed. R. Civ. P. 15, the Dunkin' defendants should be permitted leave to file an Amended Answer to plaintiff's Complaint, to allege a counterclaim of conversion against plaintiff.

## THIS COURT HAS SUPPLEMENTAL JURISDICTION OVER THE DUNKIN' DEFENDANTS' CLAIM OF CONVERSION PURSUANT TO  28 U.S.C. § 1367(a)

35.     In the event that plaintiff argues that this Court lacks supplemental jurisdiction over a counterclaim for conversion, such an argument must fail.

36.     28 U.S.C. § 1367(a) states, in pertinent part:

> [I]n any civil action of which the district courts shall have original jurisdiction, the district court shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original

jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

Id.

37.    It is well-recognized that "[a]ny counterclaim that is based on the same 'transaction or occurrence' as the underlying federal claim necessarily has a 'common nucleus of operative facts' with that claim." Ambromovage v. United Mine Workers of America, 726 F.2d 972, 989-988 (3d Cir. 1984).

38.    This "same transaction or occurrence" test "is generally liberally construed." Plebani v. Bucks Cnty. Rescue Emergency Med. Servs., 2004 WL 2244543, at *3 (E.D. Pa. 2004) (citing 6 Wright & Miller, Federal Practice and Procedure § 1410 (2d ed.1990)).

39.    Courts have exercised supplemental jurisdiction over a defendant-employer's conversion counterclaim alleged in a Title VII action. See, e.g., Singleton v. Mellon Fin. Corp., 2005 WL 2403722 (W.D. Pa. 2005) (the Court exercised supplemental jurisdiction over the defendant's conversion counterclaim when the plaintiff had initially alleged a race-discrimination claim under Title VII); Turevsky v. FixtureOne Corp., 904 F. Supp. 2d 454 (E.D. Pa. 2012) (in Title VII action, the court had supplemental jurisdiction over counterclaims against the plaintiff for civil conspiracy, misappropriation, and conversion); Plebani v. Bucks Cnty. Rescue Emergency Med. Servs., 2004 WL 2244543 (E.D. Pa. 2004) (in Title VII action, the "defendant's counterclaims in conversion and unjust enrichment do appear logically connected to plaintiff's claims, and thus compulsory.").

40.    Here, the Dunkin' defendants' counterclaim for conversion is "part of the same case or controversy" as plaintiff's discrimination claims, and therefore, this Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a).

41.    In the proposed Amended Answer, the Dunkin' defendants allege that plaintiff took work schedules and keys without permission, which is the true reason why plaintiff's employment ended.  See Exhibit "D."

42.    The Dunkin' defendants have alleged that plaintiff's own behavior -- which includes climbing over the service counter, crawling through the walk-up window, and taking work schedules and keys without permission -- is the sole reason for the end of plaintiff's employment, and is an affirmative defense to her claim of retaliation and hostile work environment.

43.    Therefore, the Dunkin' defendants' affirmative defenses and their counterclaim for conversion involve similar factual issues.

44.    Because the parties' claims involve differing views of certain events that occurred within the employment relationship -- mainly the reason why plaintiff's employment ended -- their claims are logically related, and this Court should exercise supplemental jurisdiction over the Dunkin defendants' conversion counterclaim.  Plebani, 2004 WL 2244543 at *3.

45.    As such, the Dunkin' defendants should be permitted leave to amend their Answer to include a counterclaim for conversion.

## CONCLUSION

46.    For all the foregoing reasons, the Motion of Defendants Dunkin' Donuts, Dunkin' Donuts of America, Inc., Northeast Donut Shops Management Corporation, Brian Lin, Misa Liao, Leshia Evans, and Kim Hong for Leave to Amend their Answer to Plaintiff's Complaint to Allege a Counterclaim for Conversion should be granted.

BILLET & ASSOCIATES, LLC


/s/ Lauren B. Orner
By:_____
ROBERT DOUGLAS BILLET, ESQUIRE
LAUREN B. ORNER, ESQUIRE

2000 Market Street, Suite 2803
Philadelphia, PA  19103
215-496-7500/fax 7505
rbillet@billetlaw.com
lorner@billetlaw.com

Attorneys for defendants Dunkin' Donuts, Dunkin
Donuts of America, Inc., Northeast Donut Shops
Management Corporation, Brian Lin, Misa Liao,
Leshia Evans, and Kim Hong

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SHAKIYA BROWN | : | NO. 2:22-cv-01916 |
| | : | |
| v. | : | |
| | : | |
| DUNKIN' DONUTS, DUNKIN' | : | |
| DONUTS OF AMERICA, INC., | : | |
| NORTHEAST DONUT SHOPS | : | |
| MANAGEMENT CORPORATION, | : | |
| BRIAN LIN, MISA LIAO, | : | |
| LESHIA EVANS, KIM HONG, | : | |
| AND NAWAZ MATKHAILI | : | CIVIL ACTION |

**MEMORANDUM OF LAW IN SUPPORT OF THE
MOTION OF DEFENDANTS DUNKIN' DONUTS, DUNKIN' DONUTS
OF AMERICA, INC., NORTHEAST DONUT SHOPS MANAGEMENT
CORPORATION, BRIAN LIN, MISA LIAO, LESHIA EVANS, AND KIM
HONG FOR LEAVE TO AMEND THEIR ANSWER TO PLAINTIFF'S
COMPLAINT TO ALLEGE A COUNTERCLAIM FOR CONVERSION**

**I.**

**FACTS AND PROCEDURAL HISTORY**

On May 16, 2022, plaintiff Shakiya Brown filed a Complaint against the Dunkin'

defendants and Nawaz Matkhaili, alleging that she was subjected to race, color, and sex-based

discrimination, harassment, and retaliation during the course of her employment at a Dunkin'

Donuts shop located at 1345 W. Olney Avenue in Philadelphia ("the shop"). See Exhibit "A."

Specifically, in her Complaint, plaintiff alleges that, on May 28, 2021, she was harassed and

assaulted by Nawaz Matkhaili, a co-worker, while they were working together at the shop. See

Exhibit "A" at ¶¶ 26-31.

Plaintiff further alleges in her Complaint that, after the alleged assault, she reported the

incident to her manager, defendant Misa Liao, who "refused to investigate [plaintiff's]

complaint" because "[plaintiff] is Black."  <u>See</u> Exhibit "A" at ¶¶ 32-35, 44-45.  According to

plaintiff's Complaint, the Dunkin' defendants continued to schedule plaintiff to work with Mr.

Matkhaili after she reported the alleged assault.  <u>See</u> Exhibit "A" at ¶¶ 36-37.  Plaintiff also

alleges in her Complaint that the Dunkin' defendants, <u>inter alia</u>, "cut [her] hours," "failed to pay

[her] for all hours worked," "failed to pay [her] overtime compensation for all hours worked over

40 hours in a work week," "refused to share tips with [her]," "refused to provide [her] with a

uniform…," "made discriminatory race-based comments about [her] hair," and "subjected [her]

to excessive oversight."  <u>See</u> Exhibit "A" at ¶¶ 48-57.

 In addition, as alleged in the Complaint, the Dunkin' defendants "failed to take prompt

remedial action and allowed the discrimination and harassment to continue and increase in

severity."  <u>See</u> Exhibit "A" at ¶ 58.  According to the Complaint, the Dunkin' defendants "did

not treat [p]laintiff's similarly situated non-Black/Female coworkers with the same disdain with

which they treated [p]laintiff."  <u>See</u> Exhibit "A" at ¶ 59.

 Plaintiff alleges in the Complaint that, "[o]n August 12, 2021, [the Dunkin' defendants]

terminated [her] employment under conditions of an ongoing hostile work environment."  <u>See</u>

Exhibit "A" at ¶ 61.  Plaintiff has alleged claims for violation of 42 U.S.C. § 1981, Title VII of

the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e—2000e–17 (1994), the Fair Labor Standards

Act, 29 U.S.C. § 201, <u>et seq.</u>, the Pennsylvania Minimum Wage Act, 42 P.S. § 333.101, <u>et seq.</u>,

the Pennsylvania Wage Payment and Collection Law, 43 P.S. § 260.1, <u>et seq.</u>, the Pennsylvania

Human Relations Act, 43 P.S. §§ 951-963, and Philadelphia Fair Practices Ordinance,

Philadelphia Code §§ 9-1101, <u>et seq.</u>, against the Dunkin' defendants.  See Exhibit "A."

On July 5, 2022, the Dunkin' defendants filed their Answer to plaintiff's Complaint.  <u>See</u> Exhibit "B."  In their Answer to the Complaint, the Dunkin' defendants denied that they are liable to plaintiff on any basis.  <u>See</u> Exhibit "B."

On November 3, 2022, plaintiff produced responses to the Dunkin' defendants' interrogatories and document requests.  As part of her document production, plaintiff ironically produced work schedules[1] that she took without permission from the shop on August 15, 2021.[2] The work schedules taken by plaintiff were owned by defendant Northeast Donut Shops Management Corporation.

In fact, on August 15, 2021, security cameras from inside the shop captured plaintiff climbing over the service counter to access the office, which is where she located and took the schedules without permission to do so:



[1] The work schedules that plaintiff took without permission are not attached as an exhibit to this Motion, as they contain employees' names and other personal information.  However, the schedules are available for this Court's *in camera* review, if requested.

[2] On August 14, 2021 -- the day before she crawled over the service counter -- plaintiff worked nearly eight hours at the shop.  Plaintiff did not quit; she simply did not show up for work ever again after August 14th.  On August 15, 2021 -- the day that she climbed over the service counter to take documents from the office without permission -- plaintiff was not scheduled to work.  In addition to taking documents without permission, by attempting to access employee-only areas while off-duty, plaintiff violated the "Dunkin' Donuts: Crew Members Responsibilities and Duties."

In addition, security cameras from inside the shop captured plaintiff crawling through the walk-up window on August 21, 2021:



After crawling through the walk-up window on August 21, 2021, plaintiff took a set of keys (for the cash register and front door) from the shop without permission to do so. In fact, plaintiff admitted that she took the keys in texts to defendant Misa Liao, the manager of the shop. See Exhibit "C." As a result of plaintiff taking keys for the cash register and front door, the defendants were required to have the cash register and front door "re-keyed," and had to purchase new keys.

The proposed Amended Answer of the Dunkin' defendants is attached to this Motion as Exhibit "D." The proposed Amended Answer of the Dunkin' defendants includes a counterclaim for conversion and two additional affirmative defenses related to their counterclaim. See Exhibit "D."

For the following reasons, the Dunkin' defendants should be granted leave to file an Amended Answer to plaintiff's Complaint to allege a counterclaim for conversion.

4

# II.

## ARGUMENT

## STANDARD TO AMEND THE PLEADINGS

Fed. R. Civ. P. 15 states, in pertinent part:

(a) Amendments Before Trial.

> (1) Amending as a Matter of Course.  A party may amend its pleading once as a matter of course within:

>> (A) 21 days after serving it, or

>> (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.

> (2) Other Amendments.  In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave.  *The court should freely give leave when justice so requires.*

> (3) Time to Respond.  Unless the court orders otherwise, any required response to an amended pleading must be made within the time remaining to respond to the original pleading or within 14 days after service of the amended pleading, whichever is later.

Fed.R.Civ.P. 15(a) (emphasis added).

The Third Circuit has "held consistently that leave to amend should be granted freely." Dole v. Arco Chem. Co., 921 F.2d 484, 486-487 (3d Cir. 1990) (citing Heyl & Patterson Int'l, Inc. v. F.D. Rich Housing, 663 F.2d 419, 425 (3d Cir. 1981).  See also Bechtel v. Robinson, 886 F.2d 644 (3d Cir. 1989) (court should use "strong liberality" in considering whether to grant leave to amend).  In fact, the Supreme Court has identified a number of factors to be considered in deciding on a motion to amend under Fed.R.Civ.P. 15(a):

> In the absence of any apparent or declared reason -- such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the

> opposing party by virtue of allowance of the amendment, futility of
> amendment, etc. -- the leave sought should, as the rules require, be "freely
> given."

Id., at 652 (citing Foman v. Davis, 371 U.S. 178, 182 (1962)).

### PURSUANT TO FED. R. CIV. P. 15, THE DUNKIN' DEFENDANTS SHOULD BE PERMITTED LEAVE TO AMEND THEIR ANSWER TO INCLUDE A COUNTERCLAIM FOR CONVERSION AGAINST PLAINTIFF

In accordance with Fed. R. Civ. P. 15, the Dunkin' defendants should be allowed freely to amend their Answer to plaintiff's Complaint to include a counterclaim for conversion against plaintiff.

In Pennsylvania, conversion is defined as "the deprivation of another's right of property in, or use or possession of, a chattel, without the owner's consent and without lawful justification." Ranalli v. Etsy.com, LLC, 570 F. Supp. 3d 301, 308 (W.D. Pa. 2021) (citing Premier Payments Online, Inc. v. Payment Sys. Worldwide, 848 F. Supp.2d 513, 529 (E.D. Pa. 2012); Francis J. Bernhardt, III, P.C. v. Needleman, 705 A.2d 875, 879 (Pa. Super. 1997)).

In this case, the Dunkin' defendants allege in their proposed Amended Answer that plaintiff took schedules from the shop on August 15, 2021, as well as cash register and front door keys from the shop on August 21, 2021, without permission to do so. See Exhibit "D." Notably, plaintiff's responses to discovery -- which were received on November 3, 2022 -- confirm that she took the schedules, as she produced them in response to the Dunkin' defendants' document requests. In addition, plaintiff's texts to defendant Misa Liao confirm that she took the keys without permission. See Exhibit "C."

Discovery is ongoing, and plaintiff has not yet been deposed. Plaintiff will not be prejudiced by the proposed amendment. The Dunkin' defendants are seeking to amend their

Answer to the Complaint to allege a counterclaim for conversion within the two-year statute of

limitations, as the conversion occurred in August 2021.

As such, pursuant to Fed. R. Civ. P. 15, the Dunkin' defendants should be permitted

leave to file an Amended Answer to plaintiff's Complaint, to allege a counterclaim of conversion

against plaintiff.

**THIS COURT HAS SUPPLEMENTAL JURISDICTION
OVER THE DUNKIN' DEFENDANTS' CLAIM OF
CONVERSION PURSUANT TO  28 U.S.C. § 1367(a)**

In the event that plaintiff argues that this Court lacks supplemental jurisdiction over a

counterclaim for conversion, such an argument must fail.

28 U.S.C. § 1367(a) states, in pertinent part:

> [I]n any civil action of which the district courts shall have original
> jurisdiction, the district court shall have supplemental jurisdiction over all
> other claims that are so related to claims in the action within such original
> jurisdiction that they form part of the same case or controversy under Article
> III of the United States Constitution.

Id.  It is well-recognized that "[a]ny counterclaim that is based on the same 'transaction or

occurrence' as the underlying federal claim necessarily has a 'common nucleus of operative

facts' with that claim." Ambromovage v. United Mine Workers of America, 726 F.2d 972, 989-

988 (3d Cir. 1984).  This "same transaction or occurrence" test "is generally liberally construed."

Plebani v. Bucks Cnty. Rescue Emergency Med. Servs., 2004 WL 2244543, at *3 (E.D. Pa.

2004) (citing 6 Wright & Miller, Federal Practice and Procedure § 1410 (2d ed.1990)).

Courts have exercised supplemental jurisdiction over a defendant-employer's conversion

counterclaim alleged in a Title VII action.  See, e.g., Singleton v. Mellon Fin. Corp., 2005 WL

2403722 (W.D. Pa. 2005) (the Court exercised supplemental jurisdiction over the defendant's

conversion counterclaim when the plaintiff had initially alleged a race-discrimination claim

under Title VII); <u>Turevsky v. FixtureOne Corp.</u>, 904 F. Supp. 2d 454 (E.D. Pa. 2012) (in Title VII action, the court had supplemental jurisdiction over counterclaims against the plaintiff for civil conspiracy, misappropriation, and conversion); <u>Plebani v. Bucks Cnty. Rescue Emergency Med. Servs.</u>, 2004 WL 2244543 (E.D. Pa. 2004) (in Title VII action, the "defendant's counterclaims in conversion and unjust enrichment do appear logically connected to plaintiff's claims, and thus compulsory.").

Here, the Dunkin' defendants' counterclaim for conversion is "part of the same case or controversy" as plaintiff's discrimination claims, and therefore, this Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a). In the proposed Amended Answer, the Dunkin' defendants allege that plaintiff took work schedules and keys without permission, which is the true reason why plaintiff's employment ended. <u>See</u> Exhibit "D." The Dunkin' defendants have alleged that plaintiff's own behavior -- which includes climbing over the service counter, crawling through the walk-up window, and taking work schedules and keys without permission -- is the sole reason for the end of plaintiff's employment, and is an affirmative defense to her claim of retaliation and hostile work environment. Therefore, the Dunkin' defendants' affirmative defenses and their counterclaim for conversion involve similar factual issues.

Because the parties' claims involve differing views of certain events that occurred within the employment relationship -- mainly the reason why plaintiff's employment ended -- their claims are logically related, and this Court should exercise supplemental jurisdiction over the Dunkin defendants' conversion counterclaim. <u>Plebani</u>, 2004 WL 2244543 at *3. As such, the Dunkin' defendants should be permitted leave to amend their Answer to include a counterclaim for conversion.

**III.**

**<u>CONCLUSION</u>**

For all the foregoing reasons, the Motion of Defendants Dunkin' Donuts, Dunkin' Donuts

of America, Inc., Northeast Donut Shops Management Corporation, Brian Lin, Misa Liao,

Leshia Evans, and Kim Hong for Leave to Amend their Answer to Plaintiff's Complaint to

Allege a Counterclaim for Conversion should be granted.

Respectfully submitted,

BILLET & ASSOCIATES, LLC


/s/ Lauren B. Orner
By:_____
ROBERT DOUGLAS BILLET, ESQUIRE
LAUREN B. ORNER, ESQUIRE

2000 Market Street, Suite 2803
Philadelphia, PA  19103
215-496-7500/fax 7505
rbillet@billetlaw.com
lorner@billetlaw.com

Attorneys for defendants Dunkin' Donuts, Dunkin'
Donuts of America, Inc., Northeast Donut Shops
Management Corporation, Brian Lin, Misa Liao,
Leshia Evans, and Kim Hong

9

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| SHAKIYA BROWN | : | NO. 2:22-cv-01916 |
| | : | |
| v. | : | |
| | : | |
| DUNKIN' DONUTS, DUNKIN' | : | |
| DONUTS OF AMERICA, INC., | : | |
| NORTHEAST DONUT SHOPS | : | |
| MANAGEMENT CORPORATION, | : | |
| BRIAN LIN, MISA LIAO, | : | |
| LESHIA EVANS, KIM HONG, | : | |
| AND NAWAZ MATKHAILI | : | CIVIL ACTION |

**CERTIFICATION OF SERVICE**

I, Lauren B. Orner, Esquire, hereby certify that, on November 11, 2022, a true and correct copy of the Motion of Defendants Dunkin' Donuts, Dunkin' Donuts of America, Inc., Northeast Donut Shops Management Corporation, Brian Lin, Misa Liao, Leshia Evans, and Kim Hong for Leave to Amend their Answer to Plaintiff's Complaint to Allege a Counterclaim for Conversion was served upon all counsel of record via the Court's electronic filing system.

BILLET & ASSOCIATES, LLC

/s/ Lauren B. Orner
By:_____
ROBERT DOUGLAS BILLET, ESQUIRE
LAUREN B. ORNER, ESQUIRE

2000 Market Street, Suite 2803
Philadelphia, PA  19103
215-496-7500/fax 7505
rbillet@billetlaw.com
lorner@billetlaw.com

Attorneys for defendants Dunkin' Donuts, Dunkin' Donuts of America, Inc., Northeast Donut Shops Management Corporation, Brian Lin, Misa Liao, Leshia Evans, and Kim Hong

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

<div style="border:1px solid black;">

**EXHIBIT
D**

</div>

| | | |
|---|---|---|
| SHAKIYA BROWN, | : | CIVIL ACTION |
| *Plaintiff* | : | |
| | : | |
| v. | : | |
| | : | No. 22-1916 |
| DUNKIN' DONUTS, et al., | : | |
| *Defendants* | : | |
| | : | |

**O R D E R**

AND NOW, this 22nd day of November, 2022, upon consideration of Defendants'

Motion for Leave to Amend their Answer (Doc. No. 26), it is hereby **ORDERED** that the

motion (Doc. No. 26) is **GRANTED.**

BY THE COURT:

GENE E.K. PRATTER
United States District Judge

EXHIBIT
E

**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| SHAKIYA BROWN | : | NO. 2:22-cv-01916 |
| | : | |
| v. | : | |
| | : | |
| DUNKIN' DONUTS, DUNKIN' | : | |
| DONUTS OF AMERICA, INC., | : | |
| NORTHEAST DONUT SHOPS | : | |
| MANAGEMENT CORPORATION, | : | |
| BRIAN LIN, MISA LIAO, LESHIA | : | |
| EVANS, KIM HONG and | : | |
| NAWAZ MATKHAILI | : | CIVIL ACTION |

**AMENDED ANSWER WITH AFFIRMATIVE DEFENSES, COUNTERCLAIM**
**AND CROSSCLAIM OF DEFENDANTS DUNKIN' DONUTS, DUNKIN'**
**DONUTS OF AMERICA, INC. (Improperly Pled), NORTHEAST DONUT**
**SHOPS MANAGEMENT CORPORATION, BRIAN LIN, MISA LIAO, LESHIA**
**EVANS, AND KIM HONG, TO PLAINTIFF'S COMPLAINT**

**NATURE OF THE ACTION**

1.     Admitted in part; denied in part.  It is admitted that plaintiff has alleged claims as identified in this paragraph.  However, defendants deny that they are liable to plaintiff under any of the theories pled.

2.     Admitted in part; denied in part.  It is admitted that plaintiff seeks damages as identified in this paragraph.  However, defendants deny that they are liable to plaintiff any of the damages claimed.

3.     Denied.  Answering defendants are without knowledge or information sufficient to form a belief as to the truth of said averments, which are therefore denied as a matter of law.

4.     Denied.  Dunkin Donuts is a trademark and/or logo name for doughnut shops nationwide.  It is specifically denied that Dunkin Donuts was plaintiff's employer.  With regard to the remaining averments, answering defendants are without knowledge or information

sufficient to form a belief as to the truth thereof, which are therefore denied as a matter of law. To the extent that said averments contain conclusions of law, they are deemed denied.

5.      Denied.  Dunkin Donuts of America, Inc., has no relationship to the Dunkin Donuts shop located at 1345 W. Olney Avenue in Philadelphia, Pennsylvania 19141.  It is specifically denied that Dunkin Donuts of America, Inc., was plaintiff's employer.  With regard to the remaining averments, answering defendants are without knowledge or information sufficient to form a belief as to the truth thereof, which are therefore denied as a matter of law. To the extent that said averments contain conclusions of law, they are deemed denied.

6.      Admitted in part; denied in part.  It is admitted that Northeast Donut Shops Management Corporation is a Pennsylvania corporation, doing business at 1345 W. Olney Avenue in Philadelphia, Pennsylvania.  It is also admitted that Northeast Donut Shops Management Corporation was plaintiff's employer at all times relevant.  With regard to the remaining averments, answering defendants are without knowledge or information sufficient to form a belief as to the truth thereof, which are therefore denied as a matter of law.  To the extent that said averments contain conclusions of law, they are deemed denied.

7.      Denied.  Answering defendants are without knowledge or information sufficient to form a belief as to the truth of said averments, which are therefore denied as a matter of law. To the extent that said averments contain conclusions of law, they are deemed denied.

8.      Admitted in part; denied in part.  It is admitted that Brian Lin is the District Manager for the district that includes the Dunkin Donuts shop at 1345 W. Onley Avenue in Philadelphia, Pennsylvania.  With regard to the remaining averments, answering defendants are without knowledge or information sufficient to form a belief as to the truth thereof, which are

therefore denied as a matter of law.  To the extent that said averments contain conclusions of law, they are deemed denied.

9.      Admitted in part; denied in part.  It is admitted that Misa Liao is the Store Manager of the Dunkin Donuts shop at 1345 W. Onley Avenue in Philadelphia, Pennsylvania. With regard to the remaining averments, answering defendants are without knowledge or information sufficient to form a belief as to the truth thereof, which are therefore denied as a matter of law.  To the extent that said averments contain conclusions of law, they are deemed denied.

10.      Admitted in part; denied in part.  It is admitted that Leshia Evans is the Regional Legal Liaison for Northeast Donut Shops Management Corporation.  With regard to the remaining averments, answering defendants are without knowledge or information sufficient to form a belief as to the truth thereof, which are therefore denied as a matter of law.  To the extent that said averments contain conclusions of law, they are deemed denied.

11.      Admitted in part; denied in part.  It is admitted that Kim Hong is the Regional Director of Operations for Northeast Donut Shops Management Corporation.  With regard to the remaining averments, answering defendants are without knowledge or information sufficient to form a belief as to the truth thereof, which are therefore denied as a matter of law.  To the extent that said averments contain conclusions of law, they are deemed denied.

12.      Denied.  It is specifically denied that Dunkin Donuts, Dunkin Donuts of America, Inc., and Northeast Donut Shops Management Corporation were plaintiff's joint employers. With regard to the remaining averments, answering defendants are without knowledge or information sufficient to form a belief as to the truth thereof, which are therefore denied as a

matter of law.  To the extent that said averments contain conclusions of law, they are deemed denied.

       13.     Denied.  It is specifically denied that plaintiff was an employee of all defendants. With regard to the remaining averments, answering defendants are without knowledge or information sufficient to form a belief as to the truth thereof, which are therefore denied as a matter of law.  To the extent that said averments contain conclusions of law, they are deemed denied.

       14.     Denied.  The averments in this paragraph constitute a conclusion of law, and therefore they are deemed denied.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

       15.     Denied.  Answering defendants are without knowledge or information sufficient to form a belief as to the truth thereof, which are therefore denied as a matter of law.  To the extent that said averments contain conclusions of law, they are deemed denied.

       16.     Denied.  Answering defendants are without knowledge or information sufficient to form a belief as to the truth thereof, which are therefore denied as a matter of law.  To the extent that said averments contain conclusions of law, they are deemed denied.

       17.     Admitted.

       18.     Denied.  Answering defendants are without knowledge or information sufficient to form a belief as to the truth thereof, which are therefore denied as a matter of law.  To the extent that said averments contain conclusions of law, they are deemed denied.

## JURISDICTION AND VENUE

19.     Admitted in part; denied in part.  It is admitted that, in her Complaint, plaintiff alleges a cause of action with jurisdiction pursuant to 28 U.S.C. § 1331.  The basis for those averments is denied.

20.     Admitted in part; denied in part.  It is admitted that, in her Complaint, plaintiff alleges a cause of action with supplemental jurisdiction pursuant to 28 U.S.C. § 1367.  The basis for those averments is denied.

21.     Admitted in part; denied in part.  It is admitted that, based on the averments in the Complaint, venue is proper in the Eastern District.  The basis for those averments is denied.

## FACTS

22.     Admitted in part; denied in part.  It is admitted that plaintiff is an African American female who worked as an employee at the Dunkin Donuts shop at 1345 W. Olney Avenue in Philadelphia, Pennsylvania.  It is denied that she was an employee of all the defendants.  With regard to the remaining averments, answering defendants are without knowledge or information sufficient to form a belief as to the truth thereof, which are therefore denied as a matter of law.  To the extent that said averments contain conclusions of law, they are deemed denied.

23.     Admitted in part; denied in part.  It is admitted that plaintiff was hired as a cashier/crew member on May 18, 2021.  It is denied that plaintiff was paid a minimum hourly wage.

24.     Denied.  The averments in this paragraph are specifically denied.  To the extent that said averments contain conclusions of law, they are deemed denied.

25.     Denied.  The averments in this paragraph are specifically denied.  To the extent that said averments contain conclusions of law, they are deemed denied.

26.     Admitted in part; denied in part.  It is admitted that plaintiff was scheduled to work on May 28, 2021.  The remainder of the averments in this paragraph are specifically denied.

27.     Denied.  Answering defendants are without knowledge or information sufficient to form a belief as to the truth thereof, which are therefore denied as a matter of law.  To the extent that said averments contain conclusions of law, they are deemed denied.

28.     Denied.  Answering defendants are without knowledge or information sufficient to form a belief as to the truth thereof, which are therefore denied as a matter of law.  To the extent that said averments contain conclusions of law, they are deemed denied.

29.     Denied.  Answering defendants are without knowledge or information sufficient to form a belief as to the truth thereof, which are therefore denied as a matter of law.  To the extent that said averments contain conclusions of law, they are deemed denied.

30.     Denied.  Answering defendants are without knowledge or information sufficient to form a belief as to the truth thereof, which are therefore denied as a matter of law.  To the extent that said averments contain conclusions of law, they are deemed denied.

31.     Denied.  Answering defendants are without knowledge or information sufficient to form a belief as to the truth thereof, which are therefore denied as a matter of law.  To the extent that said averments contain conclusions of law, they are deemed denied.

32.     Denied.  The averments in this paragraph are specifically denied.  To the extent that said averments contain conclusions of law, they are deemed denied.

33.     Denied.  The averments in this paragraph are specifically denied.  To the extent that said averments contain conclusions of law, they are deemed denied.

34.     Denied.  The averments in this paragraph are specifically denied.  To the extent that said averments contain conclusions of law, they are deemed denied.

35.     Denied.  The averments in this paragraph are specifically denied.  To the extent that said averments contain conclusions of law, they are deemed denied.

36.     Denied.  The averments in this paragraph are specifically denied.  To the extent that said averments contain conclusions of law, they are deemed denied.

37.     Denied.  The averments in this paragraph are specifically denied.  To the extent that said averments contain conclusions of law, they are deemed denied.

38.     Denied.  Answering defendants are without knowledge or information sufficient to form a belief as to the truth thereof, which are therefore denied as a matter of law.  To the extent that said averments contain conclusions of law, they are deemed denied.

39.     Denied.  Answering defendants are without knowledge or information sufficient to form a belief as to the truth thereof, which are therefore denied as a matter of law.  To the extent that said averments contain conclusions of law, they are deemed denied.

40.     Denied as stated, as it is denied that plaintiff made a report to "her Dunkin Donuts corporate HR."

41.     Denied.  The averments in this paragraph are specifically denied.  To the extent that said averments contain conclusions of law, they are deemed denied.

42.     Denied.  The averments in this paragraph are specifically denied.  To the extent that said averments contain conclusions of law, they are deemed denied.

43.     Denied.  Answering defendants are without knowledge or information sufficient to form a belief as to the truth thereof, which are therefore denied as a matter of law.  To the extent that said averments contain conclusions of law, they are deemed denied.

44.     Denied.  The averments in this paragraph are specifically denied.  To the extent that said averments contain conclusions of law, they are deemed denied.

45.     Denied.  The averments in this paragraph are specifically denied.  To the extent that said averments contain conclusions of law, they are deemed denied.

46.     Denied.  The averments in this paragraph are specifically denied.  To the extent that said averments contain conclusions of law, they are deemed denied.

47.     Denied.  The averments in this paragraph are specifically denied.  To the extent that said averments contain conclusions of law, they are deemed denied.

48.     Denied.  The averments in this paragraph are specifically denied.  To the extent that said averments contain conclusions of law, they are deemed denied.

49.     Denied.  The averments in this paragraph are specifically denied.  To the extent that said averments contain conclusions of law, they are deemed denied.

50.     Denied.  The averments in this paragraph are specifically denied.  To the extent that said averments contain conclusions of law, they are deemed denied.

51.     Denied.  The averments in this paragraph are specifically denied.  To the extent that said averments contain conclusions of law, they are deemed denied.

52.     Denied.  The averments in this paragraph are specifically denied.  To the extent that said averments contain conclusions of law, they are deemed denied.

53.     Denied.  The averments in this paragraph are specifically denied.  To the extent that said averments contain conclusions of law, they are deemed denied.

54.     Denied.  The averments in this paragraph are specifically denied.  To the extent that said averments contain conclusions of law, they are deemed denied.

55.     Denied.  The averments in this paragraph are specifically denied.  To the extent that said averments contain conclusions of law, they are deemed denied.

56.     Denied.  The averments in this paragraph are specifically denied.  To the extent that said averments contain conclusions of law, they are deemed denied.

57.     Denied.  The averments in this paragraph are specifically denied.  To the extent that said averments contain conclusions of law, they are deemed denied.

58.     Denied.  The averments in this paragraph are specifically denied.  To the extent that said averments contain conclusions of law, they are deemed denied.

59.     Denied.  The averments in this paragraph are specifically denied.  To the extent that said averments contain conclusions of law, they are deemed denied.

60.     Denied.  Answering defendants are without knowledge or information sufficient to form a belief as to the truth thereof, which are therefore denied as a matter of law.  To the extent that said averments contain conclusions of law, they are deemed denied.

61.     Denied.  The averments in this paragraph are specifically denied.  To the extent that said averments contain conclusions of law, they are deemed denied.

62.     Admitted in part; denied in part.  It is admitted that plaintiff has alleged claims as identified in this paragraph.  However, defendants deny that they are liable to plaintiff.

63.     Admitted in part; denied in part.  It is admitted that plaintiff was qualified for the position of cashier/crew member when she was hired.  The remainder of the averments in this paragraph are specifically denied.  To the extent that said averments contain conclusions of law, they are deemed denied.

64.     Denied.  Answering defendants are without knowledge or information sufficient to form a belief as to the truth thereof, which are therefore denied as a matter of law.  To the extent that said averments contain conclusions of law, they are deemed denied.

65.     Denied.  Answering defendants are without knowledge or information sufficient to form a belief as to the truth thereof, which are therefore denied as a matter of law.  To the extent that said averments contain conclusions of law, they are deemed denied.

66.     Denied.  Answering defendants are without knowledge or information sufficient to form a belief as to the truth thereof, which are therefore denied as a matter of law.  To the extent that said averments contain conclusions of law, they are deemed denied.

67.     Denied.  Answering defendants are without knowledge or information sufficient to form a belief as to the truth thereof, which are therefore denied as a matter of law.  To the extent that said averments contain conclusions of law, they are deemed denied.

68.     Denied.  Answering defendants are without knowledge or information sufficient to form a belief as to the truth thereof, which are therefore denied as a matter of law.  To the extent that said averments contain conclusions of law, they are deemed denied.

69.     Denied.  It is specifically denied that answering defendants are liable for punitive damages.

70.     Denied.  The averments in this paragraph are specifically denied.  To the extent that said averments contain conclusions of law, they are deemed denied.

71.     Denied.  The averments in this paragraph are specifically denied.  To the extent that said averments contain conclusions of law, they are deemed denied.

72.     Denied.  The averments in this paragraph are specifically denied.  To the extent that said averments contain conclusions of law, they are deemed denied.

73.     Denied.  The averments in this paragraph constitute a conclusion of law, and therefore, they are deemed denied.

74.     Denied.  The averments in this paragraph are specifically denied.  To the extent that said averments contain conclusions of law, they are deemed denied.

75.     Denied.  The averments in this paragraph are specifically denied.  To the extent that said averments contain conclusions of law, they are deemed denied.

76.     Denied.  The averments in this paragraph are specifically denied.  To the extent that said averments contain conclusions of law, they are deemed denied.

77.     Denied.  The averments in this paragraph are specifically denied.  To the extent that said averments contain conclusions of law, they are deemed denied.

78.     Denied.  The averments in this paragraph are specifically denied.  To the extent that said averments contain conclusions of law, they are deemed denied.

79.     Denied.  The averments in this paragraph are specifically denied.  To the extent that said averments contain conclusions of law, they are deemed denied.

80.     Denied.  Answering defendants are without knowledge or information sufficient to form a belief as to the truth thereof, which are therefore denied as a matter of law.  To the extent that said averments contain conclusions of law, they are deemed denied.

## COUNT I

**DISPARATE TREATMENT**
**42 U.S.C. § 1981**

### PLAINTIFF v. ALL DEFENDANTS

81.     Answering defendants hereby incorporate paragraphs 1 through 80, inclusively, as fully as though herein set forth at length.

82.     Denied.  The averments in this paragraph constitute a conclusion of law, and therefore, they are deemed denied.

83.     Denied.  The averments in this paragraph constitute a conclusion of law, and therefore, they are deemed denied.

84.     Denied.  The averments in this paragraph constitute a conclusion of law, and therefore, they are deemed denied.

85.     Denied.  The averments in this paragraph constitute a conclusion of law, and therefore, they are deemed denied.

86.     Denied.  The averments in this paragraph constitute a conclusion of law, and therefore, they are deemed denied.

87.     Denied.  The averments in this paragraph are specifically denied.  To the extent that said averments contain conclusions of law, they are deemed denied.

88.     Denied.  The averments in this paragraph are specifically denied.  To the extent that said averments contain conclusions of law, they are deemed denied.

89.     Denied.  The averments in this paragraph are specifically denied.  To the extent that said averments contain conclusions of law, they are deemed denied.

90.     Denied.  The averments in this paragraph are specifically denied.  To the extent that said averments contain conclusions of law, they are deemed denied.

91.     Denied.  The averments in this paragraph are specifically denied.  To the extent that said averments contain conclusions of law, they are deemed denied.

92.     Denied.  The averments in this paragraph are specifically denied.  To the extent that said averments contain conclusions of law, they are deemed denied.

93.     Denied.   Answering defendants are without knowledge or information sufficient to form a belief as to the truth thereof, which are therefore denied as a matter of law.  To the extent that said averments contain conclusions of law, they are deemed denied.

WHEREFORE, answering defendants demand judgment in their favor.

## COUNT II

### SECTION 1981 HOSTILE WORK ENVIRONMENT
### 42 U.S.C. § 1981

### PLAINTIFF v. ALL DEFENDANTS

94.     Answering defendants hereby incorporate paragraphs 1 through 93, inclusively, as fully as though herein set forth at length.

95.     Denied.  The averments in this paragraph constitute a conclusion of law, and therefore, they are deemed denied.

96.     Denied.  The averments in this paragraph constitute a conclusion of law, and therefore, they are deemed denied.

97.     Denied.  The averments in this paragraph are specifically denied.  To the extent that said averments contain conclusions of law, they are deemed denied.

98.     Denied.  Answering defendants are without knowledge or information sufficient to form a belief as to the truth thereof, which are therefore denied as a matter of law.  To the extent that said averments contain conclusions of law, they are deemed denied.

99.     Denied.  The averments in this paragraph are specifically denied.  To the extent that said averments contain conclusions of law, they are deemed denied.

100.     Denied.  The averments in this paragraph are specifically denied.  To the extent that said averments contain conclusions of law, they are deemed denied.

101.     Denied.  The averments in this paragraph are specifically denied.  To the extent that said averments contain conclusions of law, they are deemed denied.

102.     Denied.  The averments in this paragraph are specifically denied.  To the extent that said averments contain conclusions of law, they are deemed denied.

103.     Denied.  The averments in this paragraph are specifically denied.  To the extent that said averments contain conclusions of law, they are deemed denied.

104.     Denied.   Answering defendants are without knowledge or information sufficient to form a belief as to the truth thereof, which are therefore denied as a matter of law.  To the extent that said averments contain conclusions of law, they are deemed denied.

WHEREFORE, answering defendants demand judgment in their favor.

## COUNT III

### SECTION 1981 RETALIATION
### 42 U.S.C. § 1981

### PLAINTIFF v. ALL DEFENDANTS

105.     Answering defendants hereby incorporate paragraphs 1 through 104, inclusively, as fully as though herein set forth at length.

106.     Denied.  The averments in this paragraph constitute a conclusion of law, and therefore, they are deemed denied.

107.     Denied.  The averments in this paragraph constitute a conclusion of law, and therefore, they are deemed denied.

108.    Denied.  The averments in this paragraph constitute a conclusion of law, and therefore, they are deemed denied.

109.    Denied.  The averments in this paragraph are specifically denied.  To the extent that said averments contain conclusions of law, they are deemed denied.

110.    Denied.  Answering defendants are without knowledge or information sufficient to form a belief as to the truth thereof, which are therefore denied as a matter of law.  To the extent that said averments contain conclusions of law, they are deemed denied.

111.    Denied.  The averments in this paragraph are specifically denied.  To the extent that said averments contain conclusions of law, they are deemed denied.

112.    Denied.  The averments in this paragraph are specifically denied.  To the extent that said averments contain conclusions of law, they are deemed denied.

113.    Denied.  The averments in this paragraph are specifically denied.  To the extent that said averments contain conclusions of law, they are deemed denied.

114.    Denied.  The averments in this paragraph are specifically denied.  To the extent that said averments contain conclusions of law, they are deemed denied.

115.    Denied.  Answering defendants are without knowledge or information sufficient to form a belief as to the truth thereof, which are therefore denied as a matter of law.  To the extent that said averments contain conclusions of law, they are deemed denied.

116.    Denied.   Answering defendants are without knowledge or information sufficient to form a belief as to the truth thereof, which are therefore denied as a matter of law.  To the extent that said averments contain conclusions of law, they are deemed denied.

WHEREFORE, answering defendants demand judgment in their favor.

## COUNT IV

### TITLE VII DISPARATE TREATMENT
### 42 U.S.C. § 2000e-2

### PLAINTIFF v. DUNKIN' DONUTS, DUNKIN' DONUTS OF AMERICAN, INC., AND NORTHEAST DONUT SHOPS MANAGEMENT CORP.

117.    Answering defendants hereby incorporate paragraphs 1 through 116, inclusively, as fully as though herein set forth at length.

118.    Denied.  The averments in this paragraph constitute a conclusion of law, and therefore, they are deemed denied.

119.    Denied.  The averments in this paragraph constitute a conclusion of law, and therefore, they are deemed denied.

120.    Denied.  The averments in this paragraph are specifically denied.  To the extent that said averments contain conclusions of law, they are deemed denied.

121.    Denied.  The averments in this paragraph are specifically denied.  To the extent that said averments contain conclusions of law, they are deemed denied.

122.    Denied.  The averments in this paragraph are specifically denied.  To the extent that said averments contain conclusions of law, they are deemed denied.

123.    Denied.  The averments in this paragraph are specifically denied.  To the extent that said averments contain conclusions of law, they are deemed denied.

124.    Denied.  The averments in this paragraph are specifically denied.  To the extent that said averments contain conclusions of law, they are deemed denied.

125.    Denied.  The averments in this paragraph are specifically denied.  To the extent that said averments contain conclusions of law, they are deemed denied.

126.     Denied.  The averments in this paragraph are specifically denied.  To the extent that said averments contain conclusions of law, they are deemed denied.

127.     Denied.   Answering defendants are without knowledge or information sufficient to form a belief as to the truth thereof, which are therefore denied as a matter of law.  To the extent that said averments contain conclusions of law, they are deemed denied.

WHEREFORE, answering defendants demand judgment in their favor.

## COUNT V

### TITLE VII HOSTILE WORK ENVIRONMENT
### 42 U.S.C. § 2000e-2

### PLAINTIFF v. DUNKIN' DONUTS, DUNKIN' DONUTS OF AMERICAN, INC., AND NORTHEAST DONUT SHOPS MANAGEMENT CORP.

128.     Answering defendants hereby incorporate paragraphs 1 through 127, inclusively, as fully as though herein set forth at length.

129.     Denied.  The averments in this paragraph constitute a conclusion of law, and therefore, they are deemed denied.

130.     Denied.  The averments in this paragraph constitute a conclusion of law, and therefore, they are deemed denied.

131.     Denied.  The averments in this paragraph constitute a conclusion of law, and therefore, they are deemed denied.

132.     Denied.  The averments in this paragraph constitute a conclusion of law, and therefore, they are deemed denied.

133.     Denied.  The averments in this paragraph constitute a conclusion of law, and therefore, they are deemed denied.

134.    Denied.  The averments in this paragraph are specifically denied.  To the extent that said averments contain conclusions of law, they are deemed denied.

135.    Denied.  The averments in this paragraph are specifically denied.  To the extent that said averments contain conclusions of law, they are deemed denied.

136.    Denied.  The averments in this paragraph are specifically denied.  To the extent that said averments contain conclusions of law, they are deemed denied.

137.    Denied.  The averments in this paragraph are specifically denied.  To the extent that said averments contain conclusions of law, they are deemed denied.

138.    Denied.  The averments in this paragraph are specifically denied.  To the extent that said averments contain conclusions of law, they are deemed denied.

139.    Denied.  The averments in this paragraph are specifically denied.  To the extent that said averments contain conclusions of law, they are deemed denied.

140.    Denied.  Answering defendants are without knowledge or information sufficient to form a belief as to the truth thereof, which are therefore denied as a matter of law.  To the extent that said averments contain conclusions of law, they are deemed denied.

141.    Denied.  Answering defendants are without knowledge or information sufficient to form a belief as to the truth thereof, which are therefore denied as a matter of law.  To the extent that said averments contain conclusions of law, they are deemed denied.

142.    Denied.  The averments in this paragraph are specifically denied.  To the extent that said averments contain conclusions of law, they are deemed denied.

143.    Denied.  The averments in this paragraph are specifically denied.  To the extent that said averments contain conclusions of law, they are deemed denied.

144. Denied. The averments in this paragraph are specifically denied. To the extent that said averments contain conclusions of law, they are deemed denied.

145. Denied. The averments in this paragraph are specifically denied. To the extent that said averments contain conclusions of law, they are deemed denied.

146. Denied. The averments in this paragraph are specifically denied. To the extent that said averments contain conclusions of law, they are deemed denied.

147. Denied. The averments in this paragraph are specifically denied. To the extent that said averments contain conclusions of law, they are deemed denied.

148. Denied. The averments in this paragraph are specifically denied. To the extent that said averments contain conclusions of law, they are deemed denied.

149. Denied. Answering defendants are without knowledge or information sufficient to form a belief as to the truth thereof, which are therefore denied as a matter of law. To the extent that said averments contain conclusions of law, they are deemed denied.

WHEREFORE, answering defendants demand judgment in their favor.

## COUNT VI

### TITLE VII RETALIATION
### 42 U.S.C. § 2000e-2

### PLAINTIFF v. DUNKIN' DONUTS, DUNKIN' DONUTS OF AMERICAN, INC., AND NORTHEAST DONUT SHOPS MANAGEMENT CORP.

150. Answering defendants hereby incorporate paragraphs 1 through 149, inclusively, as fully as though herein set forth at length.

151. Denied. The averments in this paragraph constitute a conclusion of law, and therefore, they are deemed denied.

152.    Denied.  The averments in this paragraph constitute a conclusion of law, and therefore, they are deemed denied.

153.    Denied.  The averments in this paragraph constitute a conclusion of law, and therefore, they are deemed denied.

154.    Denied.  The averments in this paragraph constitute a conclusion of law, and therefore, they are deemed denied.

155.    Denied.  The averments in this paragraph constitute a conclusion of law, and therefore, they are deemed denied.

156.    Denied.  The averments in this paragraph constitute a conclusion of law, and therefore, they are deemed denied.

157.    Denied.  The averments in this paragraph constitute a conclusion of law, and therefore, they are deemed denied.

158.    Denied.  The averments in this paragraph are specifically denied.  To the extent that said averments contain conclusions of law, they are deemed denied.

159.    Denied.  Answering defendants are without knowledge or information sufficient to form a belief as to the truth thereof, which are therefore denied as a matter of law.  To the extent that said averments contain conclusions of law, they are deemed denied.

160.    Denied.  The averments in this paragraph are specifically denied.  To the extent that said averments contain conclusions of law, they are deemed denied.

161.    Denied.  The averments in this paragraph are specifically denied.  To the extent that said averments contain conclusions of law, they are deemed denied.

162.    Denied.  The averments in this paragraph are specifically denied.  To the extent that said averments contain conclusions of law, they are deemed denied.

163.     Denied.  The averments in this paragraph are specifically denied.  To the extent that said averments contain conclusions of law, they are deemed denied.

164.     Denied.  Answering defendants are without knowledge or information sufficient to form a belief as to the truth thereof, which are therefore denied as a matter of law.  To the extent that said averments contain conclusions of law, they are deemed denied.

165.     Denied.   Answering defendants are without knowledge or information sufficient to form a belief as to the truth thereof, which are therefore denied as a matter of law.  To the extent that said averments contain conclusions of law, they are deemed denied.

WHEREFORE, answering defendants demand judgment in their favor.

## COUNT VII

### FAILURE TO PAY MINIMUM WAGES
### FAIR LABOR STANDARDS ACT, 29 U.S.C. § 201, et seq.

### PLAINTIFF v. DUNKIN' DONUTS, DUNKIN' DONUTS OF AMERICAN, INC., AND NORTHEAST DONUT SHOPS MANAGEMENT CORP.

166.     Answering defendants hereby incorporate paragraphs 1 through 165, inclusively, as fully as though herein set forth at length.

167.     Denied.  The averments in this paragraph constitute a conclusion of law, and therefore, they are deemed denied.

168.     Denied.  The averments in this paragraph constitute a conclusion of law, and therefore, they are deemed denied.

169.     Denied.  The averments in this paragraph are specifically denied.  To the extent that said averments contain conclusions of law, they are deemed denied.

170.     Denied.  The averments in this paragraph are specifically denied.  To the extent that said averments contain conclusions of law, they are deemed denied.

171. Denied. The averments in this paragraph are specifically denied. To the extent that said averments contain conclusions of law, they are deemed denied.

172. Denied. The averments in this paragraph are specifically denied. To the extent that said averments contain conclusions of law, they are deemed denied.

WHEREFORE, answering defendants demand judgment in their favor.

## COUNT VIII

### FAILURE TO PAY OVERTIME COMPENSATION
### FAIR LABOR STANDARDS ACT, 29 U.S.C. § 201, et seq.

### PLAINTIFF v. DUNKIN' DONUTS, DUNKIN' DONUTS OF AMERICAN, INC., AND NORTHEAST DONUT SHOPS MANAGEMENT CORP.

173. Answering defendants hereby incorporate paragraphs 1 through 172, inclusively, as fully as though herein set forth at length.

174. Denied. The averments in this paragraph constitute a conclusion of law, and therefore, they are deemed denied.

175. Denied. The averments in this paragraph constitute a conclusion of law, and therefore, they are deemed denied.

176. Denied. The averments in this paragraph are specifically denied. To the extent that said averments contain conclusions of law, they are deemed denied.

177. Denied. The averments in this paragraph are specifically denied. To the extent that said averments contain conclusions of law, they are deemed denied.

178. Denied. The averments in this paragraph are specifically denied. To the extent that said averments contain conclusions of law, they are deemed denied.

179. Denied. The averments in this paragraph are specifically denied. To the extent that said averments contain conclusions of law, they are deemed denied.

WHEREFORE, answering defendants demand judgment in their favor.

## COUNT IX

**FAILURE TO PAY MINIUMUM WAGES
PENNSYLVANIA MINIMUM WAGE ACT, 42 P.S. § 333.101, et seq.**

**PLAINTIFF v. DUNKIN' DONUTS, DUNKIN' DONUTS OF AMERICAN, INC.,
AND NORTHEAST DONUT SHOPS MANAGEMENT CORP.**

180.     Answering defendants hereby incorporate paragraphs 1 through 179, inclusively, as fully as though herein set forth at length.

181.     Denied.  The averments in this paragraph constitute a conclusion of law, and therefore, they are deemed denied.

182.     Denied.  The averments in this paragraph are specifically denied.  To the extent that said averments contain conclusions of law, they are deemed denied.

183.     Denied.  The averments in this paragraph are specifically denied.  To the extent that said averments contain conclusions of law, they are deemed denied.

184.     Denied.  The averments in this paragraph are specifically denied.  To the extent that said averments contain conclusions of law, they are deemed denied.

185.     Denied.  The averments in this paragraph are specifically denied.  To the extent that said averments contain conclusions of law, they are deemed denied.

WHEREFORE, answering defendants demand judgment in their favor.

## COUNT X

**FAILURE TO PAY OVERTIME COMPENSATION**
**PENNSYLVANIA MINIMUM WAGE ACT, 42 P.S. § 333.101, et seq.**

**PLAINTIFF v. DUNKIN' DONUTS, DUNKIN' DONUTS OF AMERICAN, INC.,**
**AND NORTHEAST DONUT SHOPS MANAGEMENT CORP.**

186.     Answering defendants hereby incorporate paragraphs 1 through 185, inclusively, as fully as though herein set forth at length.

187.     Denied.  The averments in this paragraph constitute a conclusion of law, and therefore, they are deemed denied.

188.     Denied.  The averments in this paragraph are specifically denied.  To the extent that said averments contain conclusions of law, they are deemed denied.

189.     Denied.  The averments in this paragraph are specifically denied.  To the extent that said averments contain conclusions of law, they are deemed denied.

190.     Denied.  The averments in this paragraph are specifically denied.  To the extent that said averments contain conclusions of law, they are deemed denied.

191.     Denied.  The averments in this paragraph are specifically denied.  To the extent that said averments contain conclusions of law, they are deemed denied.

192.     Denied.  The averments in this paragraph are specifically denied.  To the extent that said averments contain conclusions of law, they are deemed denied.

WHEREFORE, answering defendants demand judgment in their favor.

## COUNT XI

### FAILURE TO PAY WAGES
### PENNSYLVANIA WAGE PAYMENT AND COLLECTION LAW, 43 P.S. § 260.1, et seq.

### PLAINTIFF v. DUNKIN' DONUTS, DUNKIN' DONUTS OF AMERICAN, INC., AND NORTHEAST DONUT SHOPS MANAGEMENT CORP.

193.    Answering defendants hereby incorporate paragraphs 1 through 192, inclusively, as fully as though herein set forth at length.

194.    Denied.  The averments in this paragraph constitute a conclusion of law, and therefore, they are deemed denied.

195.    Denied.  The averments in this paragraph constitute a conclusion of law, and therefore, they are deemed denied.

196.    Denied.  The averments in this paragraph are specifically denied.  To the extent that said averments contain conclusions of law, they are deemed denied.

197.    Denied.  The averments in this paragraph are specifically denied.  To the extent that said averments contain conclusions of law, they are deemed denied.

198.    Denied.  The averments in this paragraph are specifically denied.  To the extent that said averments contain conclusions of law, they are deemed denied.

WHEREFORE, answering defendants demand judgment in their favor.

## COUNT XII

### ASSAULT AND BATTERY

### PLAINTIFF v. NAWAZ MATKHAILI

199.    Answering defendants hereby incorporate paragraphs 1 through 198, inclusively, as fully as though herein set forth at length.

200.    Denied.  The averments in this paragraph constitute a conclusion of law, and therefore, they are deemed denied.

201.    Denied.  The averments in this paragraph constitute a conclusion of law, and therefore, they are deemed denied.

202.    Denied.  Answering defendants are without knowledge or information sufficient to form a belief as to the truth thereof, which are therefore denied as a matter of law.  To the extent that said averments contain conclusions of law, they are deemed denied.

203.    Denied.  Answering defendants are without knowledge or information sufficient to form a belief as to the truth thereof, which are therefore denied as a matter of law.  To the extent that said averments contain conclusions of law, they are deemed denied.

WHEREFORE, answering defendants demand judgment in their favor.

## COUNT XIII (PLACEHOLDER)

### PHRA DISCRIMINATION
### 43 P.S. §§ 951-963

### PLAINTIFF v. DUNKIN' DONUTS, DUNKIN' DONUTS OF AMERICAN, INC., AND NORTHEAST DONUT SHOPS MANAGEMENT CORP.

204.    Denied.  Answering defendants are without knowledge or information sufficient to form a belief as to the truth thereof, which are therefore denied as a matter of law.  To the extent that said averments contain conclusions of law, they are deemed denied.

WHEREFORE, answering defendants demand judgment in their favor.

## COUNT XIV (PLACEHOLDER)

### PHRA RETALIATION
### 43 P.S. §§ 951-963

### PLAINTIFF v. DUNKIN' DONUTS, DUNKIN' DONUTS OF AMERICAN, INC., AND NORTHEAST DONUT SHOPS MANAGEMENT CORP.

205.    Denied.  Answering defendants are without knowledge or information sufficient to form a belief as to the truth thereof, which are therefore denied as a matter of law.  To the extent that said averments contain conclusions of law, they are deemed denied.

WHEREFORE, answering defendants demand judgment in their favor.

## COUNT XV (PLACEHOLDER)

### PHRA AIDING AND ABETTING
### 43 P.S. §§ 951-963

### PLAINTIFF v. DUNKIN' DONUTS, DUNKIN' DONUTS OF AMERICAN, INC., AND NORTHEAST DONUT SHOPS MANAGEMENT CORP.

206.    Denied.  Answering defendants are without knowledge or information sufficient to form a belief as to the truth thereof, which are therefore denied as a matter of law.  To the extent that said averments contain conclusions of law, they are deemed denied.

WHEREFORE, answering defendants demand judgment in their favor.

## COUNT XVI (PLACEHOLDER)

### PFPO DISCRIMINATION
### PFPO §§ 9-1100, et seq.

### PLAINTIFF v. DUNKIN' DONUTS, DUNKIN' DONUTS OF AMERICAN, INC., AND NORTHEAST DONUT SHOPS MANAGEMENT CORP.

207.    Denied.  Answering defendants are without knowledge or information sufficient to form a belief as to the truth thereof, which are therefore denied as a matter of law.  To the extent that said averments contain conclusions of law, they are deemed denied.

WHEREFORE, answering defendants demand judgment in their favor.

## COUNT XVII (PLACEHOLDER)

### PFPO RETALIATION
### PFPO §§ 9-1100, et seq.

### PLAINTIFF v. ALL DEFENDANTS

208.    Denied.  Answering defendants are without knowledge or information sufficient to form a belief as to the truth thereof, which are therefore denied as a matter of law.  To the extent that said averments contain conclusions of law, they are deemed denied.

WHEREFORE, answering defendants demand judgment in their favor.

## COUNT XVIII (PLACEHOLDER)

### PFPO AIDING AND ABETTING
### PFPO §§ 9-1100, et seq.

### PLAINTIFF v. ALL DEFENDANTS

209.    Denied.  Answering defendants are without knowledge or information sufficient to form a belief as to the truth thereof, which are therefore denied as a matter of law.  To the extent that said averments contain conclusions of law, they are deemed denied.

WHEREFORE, answering defendants demand judgment in their favor.

## AFFIRMATIVE DEFENSES

1.    The plaintiff's complaint fails to state a cause of action upon which relief can be granted.

2.    The causes of action alleged by plaintiff in the Complaint are barred or limited by Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, et seq., which is incorporated by reference herein, and made a part hereof as fully as though herein set forth at length.

3.    The causes of action alleged by plaintiff in the Complaint are barred or limited by § 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981, which is incorporated by reference herein, and made a part hereof as fully as though herein set forth at length.

4.    The causes of action alleged by plaintiff in the Complaint are barred or limited by the Pennsylvania Human Relations Act, 43 P.S. §§ 951-963, which is incorporated by reference herein, and made a part hereof as fully as though herein set forth at length.

5.    The causes of action alleged by plaintiff in the Complaint are barred or limited by the Philadelphia Fair Practices Ordinance, Philadelphia Code §§ 9-1101, et seq., which is incorporated by reference herein, and made a part hereof as fully as though herein set forth at length.

6.    The causes of action alleged by plaintiff in the Complaint are barred or limited by the Fair Labor Standards Act, 29 U.S.C. §§ 201, et seq., which is incorporated by reference herein, and made a part hereof as fully as though herein set forth at length.

7.    The causes of action alleged by plaintiff in the Complaint are barred or limited by Pennsylvania Minimum Wage Act of 1968, 42 P.S. §§ 333.101, et seq., which is incorporated by reference herein, and made a part hereof as fully as though herein set forth at length.

8.    The causes of action alleged by plaintiff in the Complaint are barred or limited by the Pennsylvania Wage Payment and Collection Law, 43 P.S. § 260.1, et seq., which is incorporated by reference herein, and made a part hereof as fully as though herein set forth at length.

9.    The causes of action alleged by plaintiff in the Complaint are barred or limited by Pennsylvania common law on assault and battery.

10.    Defendant Nawaz Matkhaili did not act within the course or scope of employment with answering defendant in committing any of the acts alleged by plaintiff.

11.    The plaintiff has failed to join indispensable, necessary, and proper parties.

12.    All allegations pertaining to agency, supervision, or control are specifically denied, and strict proof, if deemed relevant, will be demanded at the time of the trial.

13.    If the plaintiff sustained injuries and damages as alleged in the Complaint, and said injuries and damages were the direct and proximate result of the negligence, carelessness, recklessness, lack of due care, willful and wanton misconduct, or other acts or omissions to act of individuals, parties, or entities other than the plaintiff herself, then the plaintiff's injuries and damages were the direct and proximate result of the negligence, carelessness, lack of due care, willful and wanton misconduct, or other acts or omissions to act of other individuals, parties, or entities other than the answering defendants, over whom the answering defendants had no control or right of control.

14.    Collateral estoppel and/or res judicata apply to bar litigation of issues previously adjudicated concerning the case of action set forth in the plaintiff's Complaint.

15.    Any damages claimed by the plaintiff's, the existence of which are specifically denied, were caused in whole or in part, by the actions or inactions of third parties over whom the answering defendants had no control or right of control.

16.    Plaintiff's damages and injuries, if any, were the result of unforeseeable, intervening, and/or superseding causes and/or acts of others unrelated to the conduct of the answering defendants.

17.    Plaintiff failed to mitigate her damages.

18.    Plaintiff has failed to exhaust all administrative remedies.

19.     The causes of action as set forth in plaintiff's Complaint are barred or limited by the terms of any and all contracts and/or subcontracts or other contracts, subcontracts, or agreements in effect at the time of the accident which governed the relationships among the parties.

20.     The plaintiff's Complaint is barred by the statute of limitations.

21.     At all times relevant hereto, answering defendants employed reasonable care to avoid and/or prevent sexual harassment on its premises.

22.     The causes of action alleged by plaintiff in her Complaint are frivolous, unreasonable, and without foundation, warranting an award of attorney's fees to answering defendants.

23.     The causes of action alleged by plaintiff in her Complaint are barred, in whole or in part, because all of answering defendants' actions or inactions concerning plaintiff complied with all relevant and applicable laws and were based on legitimate, nondiscriminatory, and non-retaliatory reasons, and neither plaintiff's race, sex, or color, nor any other protected characteristic, was a motivating, determinative, or any factor in any actions and/or inactions with regard to plaintiff.

24.     Plaintiff's claim for punitive damages claims is barred because answering defendants did not act with malice or with reckless indifference to the federally protected rights of plaintiff.

25.     Plaintiff is not entitled to punitive damages because answering defendants made good faith efforts to comply with all applicable laws.

26.     Plaintiff has not complied with the requirements for filing claims under Pennsylvania state laws, and therefore, cannot claim violations of Pennsylvania state law.

27.     Plaintiff is not entitled to any relief for, and her claims are barred by, any alleged acts or omissions that exceed the scope of the charges filed with EEOC.

28.     The causes of action alleged by plaintiff in the Complaint are barred or limited by the Pennsylvania Human Relations Act , 43 P.S. §§951-963, which is incorporated by reference herein, and made a part hereof as fully as though herein set forth at length.

29.     The causes of action alleged by plaintiff in the Complaint are barred or limited by the Philadelphia Fair Practices Ordinance, §§9-1100, et seq., which is incorporated by reference herein, and made a part hereof as fully as though herein set forth at length.

30.     Plaintiff never returned to work after August 14, 2021.

31.     Plaintiff's employment ended after she stole papers and keys to the cash register and front door.

WHEREFORE, answering defendants demand judgment in its favor.

## COUNTERCLAIM AGAINST PLAINTIFF

## NATURE OF THE COUNTERCLAIM

1.     On August 15, 2021 and August 21, 2021, plaintiff took property -- including, but not limited to, work schedules and keys to the front door and cash register -- that belonged to defendant Northeast Donut Shops Management Corporation without its permission to do so.

2.     Defendant Northeast Donut Shops Management Corporation brings this counterclaim for conversion to recover the damages that it incurred as a result of plaintiff taking its property without permission.

## JURISDICTION

3.     The Court has subject matter jurisdiction over this counterclaim pursuant to 28 U.S.C. § 1367(a).

## FACTS OF COUNTERCLAIM

4.      On August 14, 2021, plaintiff worked approximately eight hours at the Dunkin' Donuts shop located at 1345 W. Olney Avenue in Philadelphia, Pennsylvania.

5.      The following day, on August 15, 2021, plaintiff was not scheduled to work. However, at approximately 3:09 p.m., security video captured plaintiff entering the Dunkin' Donuts shop with a friend.

6.      After trying to access the back of the shop through the door near the register, plaintiff crawled over and across the service counter to get to the back.

7.      Plaintiff then went into the office in the back of the shop, where she took documents, including work schedules, without permission to do so.

8.      In addition to taking documents without permission, by attempting to access employee-only areas while off-duty, plaintiff violated the "Dunkin' Donuts: Crew Members Responsibilities and Duties."

9.      After plaintiff's behavior on August 15, 2021 -- which included climbing over the counter and taking documents without permission – plaintiff's employment with defendant Northeast Donut Shops Management Corporation ended.

10.     Despite never working at Dunkin' Donuts after August 14, 2021, plaintiff again attempted to access the employee-only areas of the shop on August 21, 2021, this time through the walk-up window.

11.     Specifically, on August 21st at approximately 4:00 p.m., security video captured plaintiff climbing through the walk-up window.

12.     After gaining access to the back of the shop on August 21, 2021, plaintiff took a set of keys from the Dunkin' Donuts shop -- including to the cash register and front door -- without permission.

## COUNT I – CONVERSION

13.     Defendant Northeast Donut Shops Management Corporation realleges paragraphs 1 through 12 of this counterclaim as if fully restated herein.

14.     Plaintiff took and retained possession of identifiable chattel, including, but not limited to, work schedules and keys, that belong to defendant Northeast Donut Shops Management Corporation.

15.     Plaintiff has retained possession of the property of defendant Northeast Donut Shops Management Corporation without its consent and without lawful justification.

16.     To date, plaintiff has failed to remit the property that she took from defendant Northeast Donut Shops Management Corporation.

WHEREFORE, defendant/counterclaim plaintiff Northeast Donut Shop Management Corporation seeks the following relief:

A.      Final judgment be entered in favor of defendant Northeast Donut Shops Management Corporation on all claims and counterclaims;

B.      Compensatory damages in an amount to be determined at trial;

C.      Restitution damages;

D.      Interest, including prejudgment and post-judgment interest;

E.      Costs and attorneys' fees incurred in defending and prosecuting this action;

F.      Punitive damages; and

G.      Other such relief that the Court deems equitable and proper.

## CROSSCLAIM AGAINST DEFENDANT NAWAZ MATKHAILI

1.	If defendant Nawaz Matkhaili committed acts of assault, battery, and sexual harassment as averred in plaintiff's Complaint, then said acts were *ultra vires* and/or outside the course or scope of any employment or agency with defendant Northeast Donut Shops Management Corporation, and were caused solely by Nawaz Matkhaili, were not caused by any act or failure to act of answering defendants, and were not a basis for vicarious liability ore respondeat superior liability on the part of answering defendants.

2.	Answering defendants crossclaim against defendant Matkhaili, for contribution and/or indemnification.

WHEREFORE, answering defendants hereby crossclaims against defendant Matkhaili, who is alone liable, jointly liable, or liable over to answering defendants by way of contribution and/or indemnification.

BILLET & ASSOCIATES, LLC


/s/ Lauren B. Orner
By:_____
ROBERT DOUGLAS BILLET, ESQUIRE
LAUREN B. ORNER, ESQUIRE
PA Atty I.D. 38430/313078

2000 Market Street, Suite 2803
Philadelphia, PA  19103-3201
215-496-7500/fax 7505
rbillet@billetlaw.com
lorner@billetlaw.com

Attorneys for defendants Dunkin' Donuts, Dunkin'
Donuts of America, Inc., Northeast Donut Shops
Management Corporation, Brian Lin, Misa Liao,
Leshia Evans, and Kim Hong

**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| SHAKIYA BROWN | : | NO. 2:22-cv-01916 |
| | : | |
| v. | : | |
| | : | |
| DUNKIN' DONUTS, DUNKIN' | : | |
| DONUTS OF AMERICA, INC., | : | |
| NORTHEAST DONUT SHOPS | : | |
| MANAGEMENT CORPORATION, | : | |
| BRIAN LIN, MISA LIAO, LESHIA | : | |
| EVANS, KIM HONG and | : | |
| NAWAZ MATKHAILI | : | CIVIL ACTION |

## CERTIFICATION OF SERVICE

I, Lauren B. Orner, Esquire, hereby certify that a true and correct copy of the Amended

Answer to Plaintiff's Complaint with Affirmative Defenses, Counterclaim and Crossclaim of

Defendants Dunkin' Donuts, Dunkin' Donuts of America, Inc., (Improperly Pled), Northeast

Donut Shops Management Corporation, Brian Lin, Misa Liao, Leshia Evans, and Kim Hong was

served upon all counsel by the electronic filing system and e-mail on  December 8, 2022.

BILLET & ASSOCIATES, LLC

/s/ Lauren B. Orner
By:_____
ROBERT DOUGLAS BILLET, ESQUIRE
LAUREN B. ORNER, ESQUIRE
PA Atty I.D. 38430/313078

2000 Market Street, Suite 2803
Philadelphia, PA  19103-3201
215-496-7500/fax 7505
rbillet@billetlaw.com
lorner@billetlaw.com

Attorneys for defendants Dunkin' Donuts, Dunkin'
Donuts of America, Inc., Northeast Donut Shops
Management Corporation, Brian Lin, Misa Liao,
Leshia Evans, and Kim Hong

EXHIBIT
F

**DEREK SMITH LAW GROUP, PLLC**
IAN M. BRYSON, ESQUIRE
Attorney ID No. 321359
1835 Market Street, Suite 2950
Philadelphia, PA 19103
(215) 391-4790
ian@dereksmithlaw.com
*Attorneys for Plaintiff, Shakiya Brown*

### IN THE UNITED STATES DISTRICT COURT FOR THE
### EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SHAKIYA BROWN,<br><br>Plaintiff,<br><br>v.<br><br>DUNKIN' DONUTS, DUNKIN' DONUTS OF AMERICA, INC., NORTHEAST DONUT SHOPS MANAGEMENT CORPORATION, BRIAN LIN, MISA LIAO, LESHIA EVANS, KIM HONG *and* NAWAZ MATKHAILI,<br><br>Defendants. | Civil Action No. 2:22-cv-01916<br><br>**FIRST AMENDED COMPLAINT FOR DECLARATORY JUDGMENT, INJUNCTIVE RELIEF *and* DAMAGES**<br><br>JURY TRIAL DEMANDED |

### <u>Nature of the Action</u>

1. This is an action for relief from violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. ("Title VII"); Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981); the Pennsylvania Human Relations Act, 43 P.S. §§ 951-963 ("PHRA"); the Philadelphia Fair Practices Ordinance, Philadelphia Code §§ 9-1101 et seq. ("PFPO"); the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*; the Pennsylvania Minimum Wage Act of 1968 ("PMWA"), 42 P.S. §§ 333.101, *et seq.*; the Pennsylvania Wage Payment and Collection Law ("WPCL"), 43 P.S. § 260.1, *et seq.*, and Pennsylvania common law assault and battery.

2. Plaintiff seeks actual damages, compensatory damages, punitive damages, statutory penalties, reinstatement, pre- and post-judgment interest, reasonable attorneys' fees and costs of suit as remedies for Defendants' violations of her rights.

### Parties

3. Plaintiff Shakiya Brown ("Ms. Brown") is an adult individual resident of Philadelphia County and a citizen of the Commonwealth of Pennsylvania.

4. Defendant Dunkin' Donuts is a business entity registered to do business in the Commonwealth of Pennsylvania located at 1345 W. Olney Ave., Philadelphia, PA 19141. At all relevant times, Defendant acted or failed to act through its agents, servants and employees, each of whom were acting within the course and scope of their employment with Respondent. At all relevant times, Defendant was Plaintiff's employer covered under Title VII, Section 1981, the PHRA, the PFPO, the FLSA, the PMWA, and the WPCL.

5. Defendant Dunkin Donuts of America, Inc. is a business corporation registered to do business in the Commonwealth of Pennsylvania located at 130 Royall St., Canton, MA 02021. At all relevant times, Defendant acted or failed to act through its agents, servants and employees, each of whom were acting within the course and scope of their employment with Defendant. At all relevant times, Defendant was Plaintiff's employer covered under Title VII, Section 1981, the PHRA, the PFPO, the FLSA, the PMWA, and the WPCL.

6. Defendant Northeast Donut Shops Management Corporation is a business corporation registered to do business in the Commonwealth of Pennsylvania located at 1345 W. Olney Ave., Philadelphia, PA 19141. At all relevant times, Respondent acted or failed to

act through its agents, servants and employees, each of whom were acting within the
course and scope of their employment with Respondent. At all relevant times, Defendant
was Plaintiff's employer covered under Title VII, Section 1981, the PHRA, the PFPO,
the FLSA, the PMWA, and the WPCL.

7. Defendant Nawaz Matkhaili is an adult individual residing at 304 S. 52nd St.,
   Philadelphia, PA 19143. Defendant Marjkaili was Plaintiff's coworker who sexually
   harassed and sexually assaulted Plaintiff. At all relevant times, Defendant acted or failed
   to act in the course and scope of his employment with Defendants.

8. Defendant Brian Lin is an adult individual with a principal place of business located at
   1345 W. Olney Ave., Philadelphia, PA 19141. Defendant Lin was Plaintiff's store
   manager and supervisor. At all relevant times, Defendant acted or failed to act in the
   course and scope of his employment with Defendants.

9. Defendant Misa Liao is an adult individual with a principal place of business located at
   1345 W. Olney Ave., Philadelphia, PA 19141. Defendant Liao was Plaintiff's manager
   and supervisor. At all relevant times, Defendant acted or failed to act in the course and
   scope of her employment with Defendants.

10. Defendant Leshia Evans is an adult individual with a principal place of business located
    at 1345 W. Olney Ave., Philadelphia, PA 19141. Defendant Evans was Plaintiff's human
    resources manager and supervisor. At all relevant times, Defendant acted or failed to act
    in the course and scope of her employment with Defendant.

11. Defendant Kim Hong is an adult individual with a principal place of business located at
    1345 W. Olney Ave., Philadelphia, PA 19141. Defendant Hong was Plaintiff's

3

supervisor. At all relevant times, Defendant acted or failed to act in the course and scope of her employment with Defendants.

12. Defendants Dunkin Donuts, Dunkin Donuts of America, Inc. and Northeast Donut Shops Management Corporation were Plaintiff's joint employers who at all relevant times exercised joint control and dominion over the location of the work, discretion over the duration of the relationship between the parties, power of hiring and firing, responsibility over the method of payment and provision of employee benefits, and control over the daily activity of the workers, including assignment of work, direct supervision of workers, training and furnishing of materials.

13. At all relevant times, Defendants were "employers" and Ms. Brown was an "employee" within the meaning of the applicable law.

14. Defendants systematically and willfully violate workers' rights under Title VII, Section 1981, the PHRA, the PFPO, the FLSA, the PMWA, and the WPCL.

## Exhaustion of Administrative Remedies

15. Ms. Brown timely filed a charges of discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") and the Philadelphia Commission on Human Relations ("PCHR") alleging violations of Title VII, the PHRA and the PFPO.

16. More than one year has elapsed since Plaintiff's PHRA and PFPO claims were filed before PCHR because less than one year has elapsed since PCHR assumed jurisdiction over Plaintiff's charges. Plaintiff now seeks leave to amend this complaint to assert her PHRA and PFPO claims against Defendants.

17. EEOC issued Ms. Brown a Notice of Right to Sue Within 90 Days.

18. Ms. Brown has timely filed this action and has complied with all administrative prerequisites to bring this lawsuit.

### Jurisdiction and Venue

19. This Court has jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1331 because it involves questions of federal law under the Title VII, Section 1981 and the FLSA.

20. This Court has supplemental jurisdiction over Plaintiff's PHRA, PFPO, PMWA, WPCL and Assault and Battery claims pursuant to 28 U.S.C. § 1367 because they arise from the same nucleus of operative facts as Plaintiff's Title VII, Section 1981 and FLSA claims.

21. Venue in this judicial district is proper pursuant to 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(f)(3) because the acts and omissions giving rise to Plaintiff's claims occurred here and Defendants are subject to personal jurisdiction here.

### Facts

22. Ms. Brown is an adult Black female of African American descent who worked at Respondents' Dunkin Donuts store located at 1345 W. Olney Ave., Philadelphia, PA 19141.

23. Ms. Brown started working at Dunkin' Donuts on May 18, 2021 earning a minimum hourly wage.

24. From the beginning of her employment until her termination, Plaintiff's coworkers and supervisors subject Plaintiff to daily Race-, Color- and Sex-based discrimination, harassment and retaliation, which filled Plaintiff's workplace.

25. Defendants treated Ms. Brown with a pattern of antagonism including Race-, Color- and Sex-based insults and epithets.

26. On May 28, 2021, Defendants left Ms. Brown to close the store with Defendant Nawaz Matkhaili, who had a reputation for sexually harassing and assaulting women in the workplace.

27. On that date, Defendant Matkhaili asked Ms. Brown multiple sexual questions, and she responded stating his conduct was unwelcome.

28. Defendant Matkhaili then followed Ms. Brown to the back of the store where he grabbed and groped her breasts and pressed his erect penis into her buttocks.

29. Defendant Matkhaili then followed Ms. Brown into the bathroom and locked the door to prevent Ms. Brown from escaping.

30. Defendant Matkhaili then undressed himself and tried to force Ms. Brown to touch his penis.

31. Defendant Matkhaili then attempted to remove Ms. Brown's shirt.

32. On May 28, 2021, Ms. Brown reported the rape to her manager, Defendant Liao, via telephone.

33. On May 29, 2021, Ms. Brown reported the rape to Defendant Liao in person.

34. Defendant Liao told Ms. Brown that Defendant Matkhaili's conduct was "ok" because "he's like that with every girl" and stated "he likes girls, it's ok." Defendant Liao further stated, "you know he is a bad boy. He be touching me too."

35. Defendants refused to investigate Ms. Brown's complaint.

36. Between May 28, 2021 and June 9, 2021, Defendants continued putting Ms. Brown on the schedule with Defendant Matkhaili in spite of Ms. Brown's complaints and protests.

37. Defendants continued scheduling Ms. Brown to close the store alone with Defendant Matkhaili.

38. Ms. Brown brought her sister to work one night because she was afraid to work alone with Defendant Matkhaili. Defendant Matkhaili began sexually harassing Ms. Brown's sister and the two women left 30 minutes before the end of Ms. Brown's scheduled shift due to the ongoing harassment.

39. On June 9, 2021, Ms. Brown reported the rape to the Philadelphia Police Department, who initiated an investigation.

40. On June 9, 2021, Ms. Brown reported the rape to her Dunkin Donuts corporate HR.

41. After Ms. Brown reported the rape to the police, Defendant Liao called Ms. Brown and said she was "scared" that Ms. Brown called the police. After that, Defendant Lin acknowledged to that the police were investigating Ms. Brown's complaint.

42. Defendants failed to conduct a prompt, thorough investigation thereby allowing Defendant Matkhaili's harassment to continue.

43. Defendant Matkhaili threatened Ms. Brown, stating "You tried to get me locked up? Better hope I never catch your black ass!"

44. Defendant Liao informed Ms. Brown that the reason that Defendants refused to investigate Ms. Brown's complaint was because Ms. Brown is Black.

45. Defendant Liao informed Ms. Brown that she didn't care that Ms. Brown was sexually assaulted because Ms. Brown is Black.

46. Defendant Liao further stated to Ms. Brown that all the Black employees, including Ms. Brown, "are lazy."

47. Thereafter, Defendants showed the video footage of the rape to Ms. Brown's coworkers.

48. Defendants cut Ms. Brown's hours.

49. Defendants failed to pay Ms. Brown for all hours worked.

50. Defendants failed to pay Ms. Brown overtime compensation for all hours worked over 40 hours in a workweek.

51. Defendants refusing to show Ms. Brown her clock in and clock out times as requested.

52. Defendants refusing to allow Ms. Brown to apply for a manager position.

53. Defendants scheduled Ms. Brown to work very early in the morning even though when Ms. Brown was hired she indicated she could not come in that early due to her bus schedule.

54. Defendants refused to share tips with Ms. Brown.

55. Defendants refused to provide Ms. Brown with a uniform that was provided to all of her similarly situated coworkers who did not share Ms. Brown's protected characteristics.

56. Defendants made discriminatory race-based comments about Ms. Brown's hair.

57. Defendants subjected Ms. Brown to excessive oversight.

58. Plaintiff complained to Defendants about the ongoing discrimination and harassment on several occasions, however Defendants failed to take prompt remedial action and allowed the discrimination and harassment to continue and increase in severity.

59. Defendants did not treat Plaintiff's similarly situated non-Black/Female coworkers with the same disdain with which they treated Plaintiff.

60. Defendants' discrimination, harassment and retaliation has forced Ms. Brown to require ongoing medical care and therapy.

61. On August 12, 2021, Defendants terminated Ms. Brown's employment under conditions of an ongoing hostile work environment.

62. Ms. Brown claims unlawful actual and/or constructive discharge.

63. At all relevant times, Ms. Brown was qualified for the position and his performance was satisfactory and in accordance with the employer's expectations for the position.

64. As a result of Defendants' conduct, Ms. Brown was caused to sustain serious and permanent personal injuries, including permanent psychological injuries.

65. As a result of Defendants' actions, Ms. Brown felt extremely humiliated, degraded, victimized, embarrassed and emotionally distressed.

66. As a result of the acts and conduct complained of herein, Ms. Brown has suffered and will continue to suffer the loss of income, loss of salary, loss of benefits and other compensation which his employment entailed.

67. Ms. Brown also suffers future pecuniary losses, emotional pain, humiliation, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

68. Ms. Brown has further experienced severe emotional and physical distress.

69. As Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Ms. Brown demands Punitive Damages as against all the Defendants, jointly and severally.

70. Defendants have exhibited a pattern and practice of not only discrimination but also retaliation.

71. Defendants at all times refused to investigate or take appropriate remedial action in response to Ms. Brown's complaints of discrimination, harassment and hostile work environment.

72. Defendants' discriminatory conduct was severe and pervasive, creating a hostile work environment for Ms. Brown.

73. Ms. Brown claims a practice of discrimination and claims continuing violations and makes all claims herein under the continuing violations doctrine.

74. Defendants have exhibited a pattern and practice of not only discrimination but also retaliation.

75. Defendants discriminated against Plaintiff for opposing and/or complaining about Defendants' unlawful practices under Title VII, Section 1981, the PHRA and the PFPO.

76. Defendants discriminated against, harassed and retaliated against Plaintiff in the terms and conditions of her employment because of Race, Color and Sex.

77. Defendants subjected Plaintiff to a hostile work environment because of Race, Color and Sex and because she complained about Defendants' unlawful conduct.

78. Defendants retaliated against Plaintiff because she reported or otherwise opposed Defendants' unlawful discriminatory Race-, Color- and Sex-based conduct and practices.

79. The above are just some examples, of some of the discrimination and retaliation to which Defendants subjected Ms. Brown.

80. Because of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, salary, bonuses, benefits and other compensations which such employment entails; as well as past and future pecuniary losses, emotional distress, humiliation, suffering, inconvenience, loss of enjoyment of life activities, and other non-pecuniary loses.

## **Supplemental Facts**

81. On May 16, 2022, Plaintiff filed her Complaint initiating this lawsuit alleging violations of Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981") (Counts I-III); Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq.

("Title VII") (Counts IV-VI); the Fair Labor Standards Act, 29 U.S.C. §§ 201, et seq. ("FLSA") (Counts VII-VIII); the Pennsylvania Minimum Wage Act of 1968, 42 P.S. §§ 333.101, et seq. ("PMWA") (Counts IX-X); the Pennsylvania Wage Payment and Collection Law, 43 P.S. § 260.1, et seq. ("WPCL") (Count XI); Assault and Battery (Count XII). <u>See</u> ECF No. 1, Plaintiff's Complaint.

82. On November 6, 2022, the one-year waiting period elapsed on Plaintiff's PHRA and PFPO claims which became ripe for adjudication on that date. Plaintiff now seeks to amend her complaint to include these causes of action.

83. Defendants knew Plaintiff intended to amend her complaint to assert these additional claims.

84. After Plaintiff's PHRA and PFPO claims became ripe, on November 11, 2022, Defendant knowingly chose to assert a counterclaim for "conversion" with the most severe retaliatory impact—that is, a counterclaim that is designed to inflict the greatest possible economic threat to Plaintiff.

85. Defendants' threat of frivolous counterclaims is designed to harass and deter Ms. Brown and her attorneys from engaging in protected EEOC activity or otherwise engaging in the legal process.

86. Moreover, other workers might be deterred from engaging in protected EEOC activity or otherwise engaging in the legal process given the threat of frivolous counterclaims.

87. Defendants' bad faith threat of frivolous counterclaims has caused other injuries, including, but not limited to, mental distress and anguish to Ms. Brown and her immediate family.

88. Indeed, even though Ms. Brown knows that Defendants' threat of counterclaims is frivolous and in retaliation for engaging in protected activity, she nonetheless remains fearful that she stands at risk of losing everything, for doing nothing more than engaging in protected activity.

89. Plaintiff's allegations of retaliatory counterclaims state a claim upon which relief can be granted. Plaintiff alleges that she engaged in protected activity by filing both EEOC charges and the instant lawsuit. She alleges that Defendants took adverse action by filing a counterclaim for conversion in a bad faith effort to threaten her with harassing litigation to dissuade her from pursuing her claims. She further alleges that Defendants knew their counterclaims were objectively baseless. Finally, Plaintiff alleges specific damages suffered as a result of Defendants' counterclaims.

90. As a result of Defendants' conduct, Ms. Brown was caused to sustain serious and permanent personal injuries, including permanent psychological injuries.

91. As a result of Defendants' actions, Ms. Brown felt extremely humiliated, degraded, victimized, embarrassed and emotionally distressed.

92. As a result of the acts and conduct complained of herein, Ms. Brown has suffered and will continue to suffer the loss of income, loss of salary, loss of benefits and other compensation which his employment entailed.

93. Ms. Brown also suffers future pecuniary losses, emotional pain, humiliation, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

94. Ms. Brown has further experienced severe emotional and physical distress.

95. As Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Ms. Brown demands Punitive Damages as against all the Defendants, jointly and severally.

96. Defendants have exhibited a pattern and practice of not only discrimination but also retaliation.

97. Defendants discriminated against Plaintiff for opposing and/or complaining about Defendants' unlawful practices under Title VII, Section 1981, the PHRA and the PFPO.

98. Defendants discriminated against, harassed and retaliated against Plaintiff in the terms and conditions of her employment because of Race, Color and Sex.

99. Defendants retaliated against Plaintiff because she reported or otherwise opposed Defendants' unlawful discriminatory Race-, Color- and Sex-based conduct and practices.

100. The above are just some examples, of some of the discrimination and retaliation to which Defendants subjected Ms. Brown.

101. Because of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, salary, bonuses, benefits and other compensations which such employment entails; as well as past and future pecuniary losses, emotional distress, humiliation, suffering, inconvenience, loss of enjoyment of life activities, and other non-pecuniary loses.

## Causes of Action

### Count I
### Section 1981 Disparate Treatment
### 42 U.S.C. § 1981
### Plaintiff v. All Defendants

102. Plaintiff incorporates by reference each and every allegation made in the above paragraphs of this complaint.

103.    Section 1981 prohibits race discrimination in the making and enforcing of

contracts. 42 U.S.C. § 1981.

104.    The Third Circuit has stated that "a wide panoply of adverse employment actions

may be the basis of employment discrimination suits under Title VII of the Civil Rights

Act and 42 U.S.C. § 1981." Clark v. Twp. of Falls, 890 F.2d 611, 618-19 (3d Cir. 1989).

105.    The Third Circuit has treated Section 1981 claims and Title VII claims

interchangeably with respect to adverse employment actions. See, e.g., Barnees v.

Nationwide Mut. Ins. Co., 598 Fed. Appx. 86, 90 (3d Cir. 2015); Storey v. Burns Int'l

Sec. Servs., 390 F.3d 760, 764 (3d Cir. 2004) (a Title VII case); Thompson v. City of

Waco, 764 F.3d 500, 503 (5th Cir. 2014) (a Section 1981 case).

106.    Under Section 1981, both employers and individual employees can be liable for

discrimination in employment. See Cardenas v. Massey, 269 F.3d 251, 268 (3d Cir.

2001) ("Although claims against individual supervisors are not permitted under Title VII,

this court has found individual liability under § 1981 when [the defendants] intentionally

cause an infringement of rights protected by Section 1981, regardless of whether the

[employer] may also be held liable."); Al-Khazraji v. Saint Francis College, 784 F.2d

505, 518 (3d Cir. 1986) ("employees of a corporation may become personally liable

when they intentionally cause an infringement of rights protected by Section 1981,

regardless of whether the corporation may also be held liable").

107.    Defendants violated Section 1981 by intentionally discriminating against Plaintiff

in a serious tangible way with respect to her compensation, terms, conditions or

privileges of employment.

108.     Plaintiff's race characteristics were a determinative or motivating factor in
Defendants' employment actions.

109.     Defendants cannot show any legitimate nondiscriminatory reason for their
employment practices and any reasons proffered by the Defendants for their actions
against Plaintiff are pretextual and can readily be disbelieved.

110.     Plaintiff's protected status played a motivating part in the Defendants' decisions
even if other factors may also have motivated Defendants' actions against Plaintiff.

111.     Defendants acted with the intent to discriminate.

112.     Defendants acted upon a continuing course of conduct.

113.     Defendants acted with malice or reckless indifference to Plaintiff's federally
protected rights and as a result there should be an award of punitive damages against
Defendants.

114.     As a result of Defendants' violations of Section 1981, Plaintiff has suffered
damages, including, but not limited to: past and future lost wages, pain and suffering,
inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress,
reputational harm, diminishment of career opportunities, and other harm, both tangible
and intangible.

**WHEREFORE**, Plaintiff demands judgment against Defendants and prays for the following
relief: (1) actual damages; (2) compensatory damages in an amount consistent with Section
1981; (3) reasonable attorneys' fees in accordance with Section 1981; (4) litigation costs in
accordance with Section 1981; (5) pre- and post-judgment interest as further allowed by law; (6)
an adjudication and declaration that Defendants' conduct as set forth herein is in violation of

Section 1981; (7) punitive damages in accordance with Section 1981; (8) front pay in accordance

with Section 1981 (9) all additional general and equitable relief to which Plaintiff is entitled.

**Count II**
**Section 1981 Hostile Work Environment**
**42 U.S.C. § 1981**
**Plaintiff v. All Defendants**

115.      Plaintiff incorporates by reference each and every allegation made in the above

paragraphs of this complaint.

116.      The standards for a hostile work environment claim are identical under Title VII

and Section 1981. See, e.g., Verdin v. Weeks Marine Inc., 124 Fed. Appx. 92, 95 (3d Cir.

2005) ("Regarding [plaintiff's] hostile work environment claim, the same standard used

under Title VII applies under Section 1981."); Ocasio v. Lehigh Valley Family Health

Center, 92 Fed.Appx. 876, 879-80 (3d Cir. 2004) ("As amended by the 1991 Civil Rights

Act, § 1981 now encompasses hostile work environment claims, and we apply the same

standards as in a similar Title VII claim.").

117.      While the standards of liability are identical under Title VII and Section 1981,

there is a major difference in the coverage of the two provisions: under Title VII, only

employers can be liable for discrimination in employment, but under Section 1981,

individuals, including other employees, can be liable for racial discrimination against an

employee. See Cardenas, 269 F.3d at 268; Al-Khazarji, 784 F.2d at 518.

118.      Defendants subjected Plaintiff to harassment motivated by Plaintiff's race

characteristics.

119.      Defendants' conduct was not welcomed by Plaintiff.

120.      Defendants' conduct was so severe or pervasive that a reasonable person in

Plaintiff's position would find the work environment to be hostile or abusive.

121.     Plaintiff believed her work environment was hostile or abusive as a result of Defendants' conduct.

122.     As a result of the hostile work environment, Plaintiff suffered a "tangible employment action" defined as a significant change in employment status, failure to promote, reassignment with significantly different responsibilities, and/or a decision causing a significant change in benefits.

123.     Defendants failed to exercise reasonable care to prevent racial harassment in the workplace by failing to establish an explicit policy against harassment in the workplace on the basis of race, failing to fully communicate the policy to its employees, failing to provide a reasonable way for Plaintiff to make a claim of harassment to higher management, and failing to take reasonable steps to promptly correct the harassing behavior raised by Plaintiff.

124.     Defendants acted upon a continuing course of conduct.

125.     As a result of Defendants' violations of Section 1981, Plaintiff has suffered damages, including, but not limited to: past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

**WHEREFORE**, Plaintiff demands judgment against Defendants and prays for the following relief: (1) actual damages; (2) compensatory damages in an amount consistent with Section 1981; (3) reasonable attorneys' fees in accordance with Section 1981; (4) litigation costs in accordance with Section 1981; (5) pre- and post-judgment interest as further allowed by law; (6) an adjudication and declaration that Defendants' conduct as set forth herein is in violation of

Section 1981; (7) punitive damages in accordance with Section 1981; (8) front pay in accordance

with Section 1981 (9) all additional general and equitable relief to which Plaintiff is entitled.

**Count III**
**Section 1981 Retaliation**
**42 U.S.C. § 1981**
**Plaintiff v. All Defendants**

126.     Plaintiff incorporates by reference each and every allegation made in the above

paragraphs of this complaint.

127.     The Supreme Court has held that retaliation claims are cognizable under Section

1981 despite the absence of specific statutory language. CBOCS West, Inc. v.

Humphries, 553 U.S. 442 (2008).

128.     The Third Circuit has indicated that the legal standards for a retaliation claim

under Section 1981 are generally the same as those applicable to a Title VII retaliation

claim. See, e.g., Cardenas v. Massey, 269 F.3d 251, 263 (3d Cir. 2001) ("[T]o establish a

prima facie retaliation claim under Title VII [or] § 1981 … , [a plaintiff] must show: (1)

that he engaged in a protected activity; (2) that he suffered an adverse employment

action; and (3) that there was a causal connection between the protected activity and the

adverse employment action"); Khair v. Campbell Soup Co., 893 F. Supp. 316, 335-36

(D.N.J. 1995) (noting that with respect to retaliation claims, "The Civil Rights Act of

1991 extended § 1981 to the reaches of Title VII.").

129.     The most common activities protected from retaliation under Section 1981 and

Title VII are: (1) opposing unlawful discrimination; (2) making a charge of employment

discrimination; (3) testifying, assisting or participating in any manner in an investigation,

proceeding or hearing under Section 1981. See Robinson v. City of Pittsburgh, 120 F.3d

1286, 1299 (3d Cir. 1997) (filing discrimination complaint constitutes protected activity),

overruled on other grounds by Burlington N. & S.F. Ry. Co. v. White, 126 S. Ct. 2405

(2006); Kachmar v. Sungard Data Sys., Inc., 109 F.3d 173, 177 (3d Cir. 1997)

(advocating equal treatment was protected activity); Aman v. Cort Furniture, 85 F.3d

1074, 1085 (3d Cir. 1989) (under Title VII's anti-retaliation provision "a plaintiff need

not prove the merits of the underlying discrimination complaint, but only that 'he was

acting under a good faith, reasonable belief that a violation existed'"); Griffiths v.

CIGNA Corp., 988 F.2d 457, 468 (3d Cir. 1993); Sumner v. United States Postal Service,

899 F.2d 203, 209 (2d Cir. 1990), overruled on other grounds by Miller v. CIGNA Corp.,

47 F.3d 586 (3d Cir. 1995).

130.    Here, Defendants discriminated against Plaintiff because of her protected activity

under Section 1981.

131.    Plaintiff was acting under a reasonable, good faith belief that her right to be free

from discrimination on the basis of race was violated.

132.    Plaintiff was subjected to a materially adverse action at the time, or after the

protected conduct took place.

133.    There was a causal connection between Defendants' materially adverse actions

and Plaintiff's protected activity. In determining whether a plaintiff has produced

evidence of causation, courts in the Third Circuit focus on two indicia: timing and

evidence of ongoing antagonism. Plaintiff will rely on a broad array of evidence to

demonstrate a causal link between her protected activity and Defendants' actions taken

against her, such as the unusually suggestive proximity in time between events, as well as

Defendants' antagonism and change in demeanor toward Plaintiff after Defendants

became aware of Plaintiff's protected activity.

134.    Defendants' actions were "materially adverse" because they were serious enough to discourage a reasonable worker from engaging in protected activity.

135.    Defendants acted upon a continuing course of conduct.

136.    Plaintiff will rely on a broad array of evidence to demonstrate a causal link between their protected activity and Defendants' actions taken against her, such as the unusually suggestive proximity in time between events, as well as Defendants' antagonism and change in demeanor toward Plaintiff after Defendants became aware of her protected activity.

137.    As a result of Defendants' violations of Section 1981, Plaintiff has suffered damages, including, but not limited to: past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

**WHEREFORE**, Plaintiff demands judgment against Defendants and prays for the following relief: (1) actual damages; (2) compensatory damages in an amount consistent with Section 1981; (3) reasonable attorneys' fees in accordance with Section 1981; (4) litigation costs in accordance with Section 1981; (5) pre- and post-judgment interest as further allowed by law; (6) an adjudication and declaration that Defendants' conduct as set forth herein is in violation of Section 1981; (7) punitive damages in accordance with Section 1981; (8) front pay in accordance with Section 1981; and (9) all additional general and equitable relief to which Plaintiff is entitled.

## Count IV
## Title VII Disparate Treatment
## 42 U.S.C. § 2000e-2
## Plaintiff v. Dunkin' Donuts, Dunkin' Donuts of American, Inc., and Northeast Donut Shops Management Corp.

138.    Plaintiff incorporates by reference each and every allegation made in the above

paragraphs of this complaint.

139.    Title VII provides, in relevant part, that "it shall be an unlawful employment

practice for an employer . . . to discriminate against any individual with respect to [her]

compensation, terms, conditions, or privileges of employment, because of [her] race,

color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).

140.    Title VII further provides that "un unlawful employment practice is established

when the complaining party demonstrates that race, color, religion, sex, or national origin

was a motivating factor for any employment practice, even though other factors also

motivated the practice." 42 U.S.C. § 2000e-2(m).

141.    Defendants engaged in unlawful employment practices prohibited by Title VII by

intentionally discriminating against Ms. Brown with respect to her compensation, terms,

conditions, training and privileges of employment because of her race, color and sex and

in retaliation for her protected activity.

142.    Defendants subjected Ms. Brown to adverse tangible employment actions—

defined as significant changes in Plaintiff's employment status, discipline, denial of

training, failure to promote, reassignment with significantly different job responsibilities,

and decisions causing changes in significant changes in her employment benefits.

143.    Ms. Brown's protected characteristics played a determinative factor in

Defendants' decisions.

144.     Defendants cannot show any legitimate nondiscriminatory reasons for their employment practices and any reasons proffered by Defendants for their actions against Plaintiff are pretextual and can readily be disbelieved.

145.     Alternatively, Ms. Brown's protected status played a motivating part in Defendants' decisions even if other factors may also have motivated their actions against her.

146.     Defendants acted with the intent to discriminate.

147.     Defendants acted upon a continuing course of conduct.

148.     As a result of Defendants' violations of Title VII, Plaintiff has suffered damages, including, but not limited to past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

**WHEREFORE**, Plaintiff demands judgment against Defendants and prays for the following relief: (1) an award of compensatory damages in an amount consistent with Title VII; (2) an award of reasonable attorneys' fees and costs of this action in accordance with Title VII; (3) an award of pre- and post-judgment interest and court costs as further allowed by law; (4) an adjudication and declaration that Defendants' conduct as set forth herein is in violation of Title VII; and (5) all additional general and equitable relief to which Plaintiff is entitled.

## Count V
### Title VII Hostile Work Environment
### 42 U.S.C. § 2000e-2
### Plaintiff v. Dunkin' Donuts, Dunkin' Donuts of American, Inc., and Northeast Donut Shops Management Corp.

149.    Plaintiff incorporates by reference each and every allegation made in the above paragraphs of this complaint.

150.    Title VII also prohibits hostile work environment harassment, defined as unwanted comments or conduct regarding the plaintiff's protected characteristics that have the purpose or effect of unreasonably interfering with the terms and conditions of the plaintiff's employment. Harris v. Forklift Systems, 510 U.S. 17, 21 (1993).

151.    An employer is strictly liable for supervisor harassment that "culminates in a tangible employment action, such as discharge, demotion, or undesirable reassignment." Burlington Industries, Inc. v. Ellerth, 524 U.S. 742 (1998).

152.    Respondeat superior liability for the acts of non-supervisory employees exists where "the defendant knew or should have known of the harassment and failed to take prompt remedial action. Andrews v. City of Philadelphia, 895 F.2d 1469, 1486 (3d Cir. 1990).

153.    Employer liability for co-worker harassment also exists where "the employer failed to provide a reasonable avenue for complaint." Huston v. Procter & Gamble Paper Prods. Corp., 568 F.3d 100, 105 (3d Cir. 2009).

154.    The Third Circuit has held that the retaliation provision of Title VII "can be offended by harassment that is severe or pervasive enough to create a hostile work environment." Jensen v. Potter, 435 F.3d 444, 446 (3d Cir. 2006).

155.     Here, Defendants' conduct occurred because of Ms. Brown's legally protected characteristics and was severe or pervasive enough to make a reasonable person of the same legally protected classes believe that the conditions of employment were altered and that the working environment was intimidating, hostile or abusive.

156.     The harassing conduct directly refers to Plaintiff's race, color and sex, and her protected activity.

157.     Defendants delegated to Plaintiff's supervisors the authority to control the work environment and they abused that authority to create a hostile work environment.

158.     Harassing conduct filled the environment of Plaintiff's work area.

159.     Defendants knew that the harassing conduct filled Plaintiff's work environment.

160.     Harassing conduct occurred daily.

161.     Harassing conduct caused Plaintiff to sustain severe emotional distress resulting in physical illness and serious psychological sequelae.

162.     Plaintiff subjectively regarded the harassing conduct as unwelcome and unwanted and objectively opposed the conduct.

163.     The conduct was both severe and pervasive.

164.     The conduct was physically threatening and humiliating.

165.     The conduct unreasonably interfered with Plaintiff's work performance.

166.     The conduct was so extreme that it resulted in material changes to the terms and conditions of Plaintiff's employment.

167.     Defendants provided a futile avenue for complaint.

168.     Defendants retaliated against Plaintiff for her complaints.

169.     Defendants acted upon a continuing course of conduct.

170.     As a result of Defendants' violations of Title VII, Plaintiff has suffered damages,

including, but not limited to past and future lost wages, pain and suffering,

inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress,

reputational harm, diminishment of career opportunities, and other harm, both tangible

and intangible.

**WHEREFORE**, Plaintiff demands judgment against Defendants and prays for the following

relief: (1) an award of compensatory damages in an amount consistent with Title VII; (2) an

award of reasonable attorneys' fees and costs of this action in accordance with Title VII; (3) an

award of pre- and post-judgment interest and court costs as further allowed by law; (4) an

adjudication and declaration that Defendants' conduct as set forth herein is in violation of Title

VII; and (5) all additional general and equitable relief to which Plaintiff is entitled.

**Count VI**
**Title VII Retaliation**
**42 U.S.C. § 2000e-3**
**Plaintiff v. Dunkin' Donuts, Dunkin' Donuts of American, Inc., and Northeast Donut Shops**
**Management Corp.**

171.     Plaintiff incorporates by reference each and every allegation made in the above

paragraphs of this complaint.

172.     Title VII protects employees from retaliation for attempting to exercise their

rights under the Act:

> 42 U.S.C. § 2000e-3. Other unlawful employment practices
> (a) Discrimination for making charges, testifying, assisting, or
> participating in enforcement proceedings. It shall be an unlawful
> employment practice for an employer to discriminate against any of
> his employees . . . because [she] has opposed any practice made an
> unlawful employment practice by this subchapter, or because [she]
> has made a charge, testified, assisted, or participated in any manner
> in an investigation, proceeding, or hearing under this subchapter.

173.     The Supreme Court in <u>Burlington v. N. & S.F. Ry. V. White</u>, 548 U.S. 53, 68 (2006) held that a cause of action for retaliation under Title VII lies whenever the employer responds to protected activity in such a way that "might have dissuaded a reasonable worker from making or supporting a charge of discrimination."

174.     Informal complaints and protests can constitute protected activity under the "opposition" clause of 42 U.S.C. § 2000e-3(a). <u>Moore v. City of Philadelphia</u>, 461 F.3d 331, 343 (3d Cir. 2006) ("Opposition to discrimination can take the form of informal protests of discriminatory employment practices, including making complaints to management.").

175.     Title VII's anti-retaliation provision also protects employees who speak out about discrimination by answering questions during an employer's internal investigation. <u>Crawford v. Metropolitan Gov't of Nashville and Davidson Cty., Tennessee</u>, 555 U.S. 271, 277 (2009) (declaring that there is "no reason to doubt that a person can 'oppose' by responding to someone else's question just as surely as by provoking the discussion, and nothing in the statute requires a freakish rule protecting an employee who reports discrimination on her own initiative but not one who reports the same discrimination in the same words when her boss asks a question.").

176.     Retaliation need not be job-related to be actionable under Title VII—an employer can effectively retaliate against an employee by taking actions not directly related to her employment or by causing her harm outside the workplace. <u>White</u>, 548 U.S. at 61-62 (rejecting authority from the Third Circuit and others requiring that the plaintiff suffer an adverse employment action in order to recover for retaliation).

177.     "[A] plaintiff need not prove the merits of the underlying discrimination complaint, but only that '[she] was acting under a good faith, reasonable belief that a violation existed.'" Aman v. Cort Furniture Rental Corp., 85 F.3d 1074, 1085 (3d Cir. 1996); Griffiths v. CIGNA Corp., 988 F.2d 457, 468 (3d Cir. 1993); Sumner v. United States Postal Service, 899 F.2d 203, 209 (2d Cir. 1990), overruled on other grounds by Miller v. CIGNA Corp., 47 F.3d 586 (3d Cir.1995).

178.     An employee need not be a member of a protected class to be subject to actionable retaliation under Title VII. See Moore, 461 F.3d at 342 ("Title VII's whistleblower protection is not limited to those who blow the whistle on their own mistreatment or on the mistreatment of their own race, sex, or other protected class.")

179.     Here, Defendants discriminated against Plaintiff because of her protected activity under Title VII.

180.     Plaintiff was acting under a reasonable, good faith belief that her right to be free from discrimination on the basis of race, color, sex and retaliation was violated.

181.     Plaintiff was subjected to materially adverse actions at the time or after the protected conduct took place.

182.     There was a causal connection between Defendants' materially adverse actions and Plaintiff's protected activity. In determining whether a plaintiff has produced evidence of causation, courts in the Third Circuit focus on two indicia: timing and evidence of ongoing antagonism. Plaintiff will rely on a broad array of evidence to demonstrate a causal link between her protected activity and Defendants' actions taken against her, such as the unusually suggestive proximity in time between events, as well as

Defendants' antagonism and change in demeanor toward Plaintiff after Defendants became aware of Plaintiff's protected activity.

183. Defendants' actions were "materially adverse" because they were serious enough to discourage a reasonable worker from engaging in protected activity.

184. Defendants acted upon a continuing course of conduct.

185. Plaintiff will rely on a broad array of evidence to demonstrate a causal link between her protected activity and Defendants' actions taken against her, such as the unusually-suggestive proximity in time between events, as well as Defendants' antagonism and change in demeanor (such as taking away Plaintiff's shifts) toward Plaintiff after Defendants became aware of Plaintiff's protected activity.

186. As a result of Defendants' violations of Title VII, Plaintiff has suffered damages, including, but not limited to past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

**WHEREFORE**, Plaintiff demands judgment against Defendants and prays for the following relief: (1) an award of compensatory damages in an amount consistent with Title VII; (2) an award of reasonable attorneys' fees and costs of this action in accordance with Title VII; (3) an award of pre- and post-judgment interest and court costs as further allowed by law; (4) an adjudication and declaration that Defendants' conduct as set forth herein is in violation of Title VII; and (5) all additional general and equitable relief to which Plaintiff is entitled.

## Count VII
### Failure to Pay Minimum Wages
### Fair Labor Standards Act, 29 U.S.C. Section 201, et seq.
### Plaintiff v. Dunkin' Donuts, Dunkin' Donuts of American, Inc., and Northeast Donut Shops Management Corp.

187.    Plaintiff repeats every allegation made in the above paragraphs of this complaint.

188.    Pursuant to Section 206 of the FLSA, employees must be paid certain minimum wages for each hour worked in a workweek.

189.    The FLSA entitles employees to a minimum hourly wage of $7.25.

190.    Over the course of Plaintiff's employment with Defendants, Plaintiff was denied their statutorily mandated minimum wages for all hours worked.

191.    The foregoing actions, policies and practices of Defendants violate the FLSA.

192.    Defendants' actions were willful, in bad faith, and in reckless disregard of clearly applicable FLSA provisions.

193.    Defendants are liable to Plaintiff for actual damages, liquidated damages and other relief, pursuant to 29 U.S.C. § 216(b), as well as reasonable attorneys' fees, costs and expenses.

**WHEREFORE**, Plaintiff prays for the following relief: (a) Adjudicating and declaring that Defendants' conduct as set forth herein and above is in violation of the FLSA; (b) Adjudicating and declaring that Defendants violated the FLSA by failing to pay minimum wages to Plaintiff; (c) Awarding Plaintiff such minimum wages as are due and owing in an amount consistent with the FLSA; (d) Awarding Plaintiff liquidated damages in accordance with the FLSA; (e) Awarding Plaintiff reasonable attorneys' fees and all costs of this action, to be paid by Defendants, in accordance with the FLSA; (f) Awarding pre- and post-judgment interest and court costs as further allowed by law; (g) Granting Plaintiff to add additional plaintiffs by

motion, the filing of written opt in consent forms, or any other method approved by the Court; and (h) For all additional general and equitable relief to which Plaintiff is are entitled.

**Count VIII**
**Failure to Pay Overtime Compensation**
**Fair Labor Standards Act, 29 U.S.C. Section 201, et seq.**
**Plaintiff v. Dunkin' Donuts, Dunkin' Donuts of American, Inc., and Northeast Donut Shops**
**Management Corp.**

194.  Plaintiff repeats every allegation made in the above paragraphs of this complaint.

195.  Pursuant to Section 206(b) of the FLSA, all employees must be compensated for every hour worked in a workweek.

196.  Moreover, Section 207(a)(1) of the FLSA states that employees must be paid overtime, equal to 1.5 times the employees' regular rate of pay, for all hours worked in excess of 40 hours per week.

197.  According to the policies and practices of Defendants, Plaintiff worked in excess of 40 hours per week. Despite working in excess of 40 hours per week, Plaintiff and was denied overtime compensation at a rate of 1.5 times the statutorily mandated minimum wage for compensable work performed in excess of 40 hours per week in violation of the FLSA.

198.  The forgoing actions, policies and practices of Defendants violate the FLSA.

199.  Defendants' actions were willful, in bad faith, and in reckless disregard of clearly applicable FLSA provisions.

200.  Defendants are liable to Plaintiff for actual damages, liquidated damages and other relief, pursuant to 29 U.S.C. § 216(b), as well as reasonable attorneys' fees, costs and expenses.

**WHEREFORE**, Plaintiff prays for the following relief: (a) Adjudicating and declaring that Defendants' conduct as set forth herein and above is in violation of the FLSA; (b) Adjudicating and declaring that Defendants violated the FLSA by failing to pay overtime compensation to Plaintiff for work performed in excess of 40 hours per week; (c) Awarding Plaintiff such overtime compensation as is due and owing in an amount consistent with the FLSA; (d) Awarding Plaintiff damages in accordance with the FLSA; (e) Awarding Plaintiff reasonable attorneys' fees and all costs of this action, to be paid by Defendants, in accordance with the FLSA; (f) Awarding pre- and post-judgment interest and court costs as further allowed by law; (g) Granting Plaintiff leave to add additional plaintiffs by motion, the filing of written opt in consent forms, or any other method approved by the Court; and (h) For all additional general and equitable relief to which Plaintiff is entitled.

<div align="center">

**Count IX**
**Failure to Pay Minimum Wages**
**Pennsylvania Minimum Wage Act, 42 P.S. Section 333.101, et seq.**
**Plaintiff v. Dunkin' Donuts, Dunkin' Donuts of American, Inc., and Northeast Donut Shops Management Corp.**

</div>

201.     Plaintiff repeats every allegation made in the above paragraphs of this complaint.

202.     At all relevant times, Defendants have employed Plaintiff within the meaning of the PMWA.

203.     Defendants have a willful policy and practice of requiring employees to work without receiving renumeration for such work.

204.     Defendants have a willful policy and practice of failing to pay employees the full minimum wages for all hours worked.

205.     Defendants have violated and continue to violate the PMWA.

206.     Due to Defendants' violations, Plaintiff is entitled to recover from Defendants the amount of unpaid minimum wages, attorneys' fees and costs.

**WHEREFORE**, Plaintiff prays for the following relief: (a) An award to Plaintiff for the amount of unpaid minimum wages to which she is entitled, including interest thereon, and penalties subject to proof; (b) An award to Plaintiff for reasonable attorneys' fees and all costs; and (c) An award to Plaintiff for any other damages available to them under applicable state law, and all such other relief as this Court may deem just and proper.

<div align="center">

**Count X**
**Failure to Pay Overtime Compensation**
**Pennsylvania Minimum Wage Act, 42 P.S. Section 333.101, et seq.**
**Plaintiff v. Dunkin' Donuts, Dunkin' Donuts of American, Inc., and Northeast Donut Shops**
**Management Corp.**

</div>

207.     Plaintiff repeats every allegation made in the above paragraphs of this complaint.

208.     At all relevant times, Defendants have employed Plaintiff within the meaning of the PMWA.

209.     Defendants have a willful policy and practice of refusing to pay overtime compensation at a rate of 1.5 times the regular rate for all hours worked in excess of 40 hours per workweek.

210.     Defendants have a willful policy and practice of failing to pay overtime compensation due and owing.

211.     Defendants have a willful policy and practice of not paying employees for all hours worked.

212.     Accordingly, Defendants have violated and continue to violate the PMWA.

213.     Due to Defendants' violations, Plaintiff is entitled to recover from Defendants the amount of unpaid overtime compensation, attorneys' fees and costs.

**WHEREFORE**, Plaintiff prays for the following relief: (a) An award to Plaintiff for the amount of unpaid overtime compensation to which they are entitled, including interest thereon, and penalties subject to proof; (b) An award to Plaintiff for reasonable attorneys' fees and all costs; and (c) An award to Plaintiff for any other damages available to them under applicable state law, and all such other relief as this Court may deem just and proper.

### Count XI
### Failure to Pay Wages
### Pennsylvania Wage Payment and Collection Law, 43 P.S. § 260.1, *et seq*
### Plaintiff v. Dunkin' Donuts, Dunkin' Donuts of American, Inc., and Northeast Donut Shops Management Corp.

214.    Plaintiff repeats every allegation made in the above paragraphs of this complaint.

215.    At all relevant times, Defendants have employed Plaintiff within the meaning of the WPCL.

216.    Pursuant to the WPCL, Plaintiff was entitled to receive all compensation due and owing to her on her regular payday.

217.    Defendants had a policy of making improper deductions from wages.

218.    As a result of Defendants' unlawful policies, Plaintiff has been deprived of compensation due and owing.

219.    Plaintiff is entitled to recover from Defendants the amount of unpaid compensation and an additional amount of 25% of the unpaid compensation as liquidated damages.

**WHEREFORE**, Plaintiff prays for the following relief: (a) An award to Plaintiff for the amount of unpaid compensation to which they are entitled and liquidated damages, including interest thereon, and penalties subject to proof; (b) An award to Plaintiff for reasonable

attorneys' fees and all costs; and (c) An award to Plaintiff for any other damages available to them under applicable state law, and all such other relief as this Court may deem just and proper.

### COUNT XII
### Assault and Battery
### Plaintiff v. Nawaz Matkhaili

220.     Plaintiff incorporates by reference each and every allegation made in the above paragraphs of this complaint.

221.     Under Pennsylvania law, battery is defined as an intentional harmful or offensive contact with the person of another. Nace v. Pennridge Sch. Dist., 185 F.Supp.3d 564, 584 (E.D. Pa. 2016) (quoting C.C.H. v. Philadelphia Phillies, Inc., 596 Pa. 23 (2008)). The fact that contact occurs without consent is sufficient to establish that it is offensive, and no intent to harm the plaintiff need be established. Id. (quoting Cooper ex rel. Cooper v. Lankenau Hosp., 616 Pa. 550 (2012)).

222.     Under Pennsylvania law, assault is defined as an act intended to put another person in reasonable apprehension of an immediate battery, and which succeeds in causing an apprehension of such battery. Regan v. Upper Darby Twp., 363 Fed.Appx. 917, 921 (3d Cir. 2010) (quoting Cucinotti v. Ortmann, 399 Pa. 26 (1960)). In other words, battery is an offensive touching without consent, and assault is an action that makes a victim believe that a battery is about to occur. Martin-McFarlane v. City of Philadelphia, 299 F.Supp.3d 658, 670–71 (E.D. Pa. 2017).

223.     Here, Defendant Matkhaili acted intending to cause harmful or offensive contact with Ms. Brown, or to cause Ms. Brown imminent apprehension of such contact, and she were thereby put in such imminent apprehension. Further, Defendant Matkhaili's assault concluded with actual, nonconsensual bodily contact with Ms. Brown.

224.     As a direct and proximate result of Defendant Matkhaili's malicious and
conscious wrongful actions, Plaintiff sustained humiliation as well as severe mental and
emotional distress from the indignity to which she was subjected, which resulted in
bodily injury and damages, including punitive damages, to be determined at trial.

**WHEREFORE**, Plaintiff demands judgment against Defendant and prays for the following
relief: (1) actual damages; (2) compensatory damages; (3) reasonable attorneys' fees; (4)
litigation costs; (5) pre- and post-judgment interest; (6) an adjudication and declaration that
Defendant's conduct as set forth herein is in violation of the law; (7) punitive damages; (8) and
all additional general and equitable relief to which Plaintiffs are entitled.

<div align="center">

**Count XIII**
**PHRA Discrimination**
**43 P.S. §§ 951-963**
**Plaintiff v. Dunkin' Donuts, Dunkin' Donuts of American, Inc., and Northeast Donut Shops**
**Management Corp.**

</div>

225.     Plaintiff hereby incorporates all allegations contained in the above paragraphs as
fully as if they were set forth at length.

226.     The PHRA § 955(a) provides that it shall be an unlawful discriminatory practice:
For any employer because of the race, color, religious creed, ancestry, age, sex, national
origin, or non-job related handicap or disability or the use of a guide or support animal
because of blindness, deafness or physical handicap of any individual or independent
contractor, to refuse to hire or employ or contract with, or to bar or to discharge from
employment such individual or independent contractor, or to otherwise discriminate
against such individual or independent contractor with respect to compensation, hire,
tenure, terms, conditions, or privileges of employment or contract, if the individual or
independent contractor is the best able and most competent to perform the service required.

227.     Defendants engaged in an unlawful discriminatory practice by discriminating against the Plaintiff because of her sex and gender with respect to the terms and conditions of her employment.

228.     Plaintiff hereby makes a claim against Defendants under all applicable paragraphs of PHRA § 955.

229.     At all times material, Defendant acted with intent to discriminate.

230.     At all times material, Defendant acted upon a continuing course of conduct.

231.     PHRA § 955(e) provides that it shall be unlawful discriminatory practice: "For any person, employer, employment agency, labor organization or employee, to aid, abet, incite, compel or coerce the doing of any act declared by this section to be an unlawful discriminatory practice, or to obstruct or prevent any person from complying with the provisions of this act or any order issued thereunder, or to attempt, directly or indirectly, to commit any act declared by this section to be an unlawful discriminatory practice."

232.     Defendants engaged in an unlawful discriminatory practice in violation of PHRA § 955(e) by committing assault, aiding, abetting, inciting, compelling, and/or coercing the discriminatory conduct.

233.     Here, Defendants' conduct occurred because of Ms. Brown's legally protected characteristics and was severe or pervasive enough to make a reasonable person of the same legally protected classes believe that the conditions of employment were altered and that the working environment was intimidating, hostile or abusive.

234.     The harassing conduct directly refers to Plaintiff's race, color and sex, and her protected activity.

235.     Defendants delegated to Plaintiff's supervisors the authority to control the work
environment and they abused that authority to create a hostile work environment.

236.     Harassing conduct filled the environment of Plaintiff's work area.

237.     Defendants knew that the harassing conduct filled Plaintiff's work environment.

238.     Harassing conduct occurred daily.

239.     Harassing conduct caused Plaintiff to sustain severe emotional distress resulting
in physical illness and serious psychological sequelae.

240.     Plaintiff subjectively regarded the harassing conduct as unwelcome and unwanted
and objectively opposed the conduct.

241.     The conduct was both severe and pervasive.

242.     The conduct was physically threatening and humiliating.

243.     The conduct unreasonably interfered with Plaintiff's work performance.

244.     The conduct was so extreme that it resulted in material changes to the terms and
conditions of Plaintiff's employment.

245.     Defendants provided a futile avenue for complaint.

246.     Defendants retaliated against Plaintiff for her complaints.

247.     Defendants acted upon a continuing course of conduct.

248.     As a result of the Defendant's violations of the PHRA, Plaintiff has suffered
damages including, but not limited to; past and future lost wages, pain and suffering,
inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress,
reputational harm, diminishment of career opportunities, and other harm, both tangible and
intangible.

**WHEREFORE**, Plaintiff demands judgment against Defendant and prays for the following relief: (1) actual damages; (2) compensatory damages; (3) reasonable attorneys' fees; (4) litigation costs; (5) pre- and post-judgment interest; (6) an adjudication and declaration that Defendant's conduct as set forth herein is in violation of the law; (7) punitive damages; (8) and all additional general and equitable relief to which Plaintiff is entitled.

### Count XIV
### PHRA Retaliation
### 43 P.S. §§ 951-963
### Plaintiff v. All Defendants

249.    Plaintiff hereby incorporates all allegations contained in the above paragraphs as fully as if they were set forth at length.

250.    PHRA § 955(d) provides that it shall be an unlawful discriminatory practice: "For any person, employer, employment agency or labor organization to discriminate in any manner against any individual because such individual has opposed any practice forbidden by this act, or because such individual has made a charge, testified or assisted, in any manner, in any investigation, proceeding or hearing under this act."

251.    Defendants engaged in an unlawful discriminatory practice by discharging, retaliating, and otherwise discriminating against the Plaintiff by retaliating against Plaintiff with respect to the terms, conditions, and/or privileges of her employment because of her opposition to and reporting of the unlawful employment practices of Defendants.

252.    Plaintiff continued to oppose the severe and pervasive discrimination and harassment in the workplace by making multiple formal and informal reports of harassment to management and Human Resources.

253.    At all times material, Plaintiff acted under a good faith belief that her right to be free from unlawful discrimination in the workplace was violated.

254.     Defendants failed to investigate Plaintiff's reports of discrimination and harassment in the workplace.

255.     Similarly, Defendants refused to initiate prompt corrective action in response to Plaintiff's reports.

256.     Accordingly, Defendants permitted, sanctioned, condoned, and allowed the discrimination and harassment to continue.

257.     Any corrective action taken by the Defendants was not enforced and Plaintiff was subjected to a campaign of severe and pervasive retaliation which also created a hostile work environment.

258.     Defendants acted upon a continuing course of conduct.

259.     As a result of the Defendant's violations of the PHRA, Plaintiff has suffered damages including, but not limited to; past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

**WHEREFORE**, Plaintiff demands judgment against Defendant and prays for the following relief: (1) actual damages; (2) compensatory damages; (3) reasonable attorneys' fees; (4) litigation costs; (5) pre- and post-judgment interest; (6) an adjudication and declaration that Defendant's conduct as set forth herein is in violation of the law; (7) punitive damages; (8) and all additional general and equitable relief to which Plaintiff is entitled.

## Count XV
## PHRA Aiding and Abetting
## 43 P.S. §§ 951-963
## Plaintiff v. All Defendants

260.    Plaintiff's PHRA and PFPO claims are still pending before PCHR because less

than one year has elapsed since PCHR assumed jurisdiction over Plaintiff's charges.

After one year, Plaintiff will seek leave to amend this complaint to assert her PHRA and

PFPO claims against Defendants.

261.    Plaintiff incorporates by reference each and every allegation made in the above

paragraphs of this complaint.

262.    PHRA § 955(e) provides that it shall be an unlawful discriminatory practice: "for

any person, employer, employment agency, labor organization or employee, to aid, abet,

incite, compel or coerce the doing of any act declared by this section to be an unlawful

discriminatory practice, or to obstruct or prevent any person from complying with the

provisions of this act or any order issued thereunder, or to attempt, directly or indirectly,

to commit any act declared by this section to be an unlawful discriminatory practice."

263.    Defendant engaged in an unlawful discriminatory practice in violation of PHRA

§955(e) by committing, aiding, abetting, inciting, compelling and coercing the

discriminatory conduct.

264.    As a result, Plaintiff has suffered damages including, but not limited to; past and

future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment

of life, humiliation, emotional distress, reputational harm, diminishment of career

opportunities, and other harm, both tangible and intangible..

**WHEREFORE**, Plaintiff demands judgment against Defendant and prays for the following

relief: (1) actual damages; (2) compensatory damages; (3) reasonable attorneys' fees; (4)

litigation costs; (5) pre- and post-judgment interest; (6) an adjudication and declaration that

Defendant's conduct as set forth herein is in violation of the law; (7) punitive damages; (8) and

all additional general and equitable relief to which Plaintiff is entitled.

<div align="center">

**Count XVI**
**PFPO Discrimination**
**PFPO §§ 9-1100 et seq.**
**Plaintiff v. Dunkin' Donuts, Dunkin' Donuts of American, Inc., and Northeast Donut Shops
Management Corp.**

</div>

265.     Plaintiff hereby incorporates all allegations contained in the above paragraphs as

fully as if they were set forth at length.

266.     PFPO § 9-1103(1)(a) provides that it shall be an unlawful employment practice:

a.     "To deny or interfere with the employment opportunities of an individual based

upon his or her race, ethnicity, color, sex (including pregnancy, childbirth, or a

related medical condition), sexual orientation, gender identity, religion, national

origin, ancestry, age, disability, marital status, familial status, genetic information,

or domestic or sexual violence victim status, including, but not limited to, the

following:

i.     (a)     For any employer to refuse to hire, discharge, or otherwise

discriminate against any individual, with respect to tenure, promotions,

terms, conditions or privileges of employment or with respect to any matter

directly or indirectly related to employment.

267.     Defendants engaged in an unlawful discriminatory practice by discriminating

against the Plaintiff because of her sex and gender with respect to the terms and conditions

of her employment.

268.     At all times material, Defendant acted with intent to discriminate.

<div align="center">41</div>

269.    At all times material, Defendant acted upon a continuing course of conduct.

270.    Defendants engaged in an unlawful discriminatory practice in violation of the
        PFPO by committing assault, aiding, abetting, inciting, compelling, and/or coercing the
        discriminatory conduct.

271.    Here, Defendants' conduct occurred because of Ms. Brown's legally protected
        characteristics and was severe or pervasive enough to make a reasonable person of the
        same legally protected classes believe that the conditions of employment were altered and
        that the working environment was intimidating, hostile or abusive.

272.    The harassing conduct directly refers to Plaintiff's race, color and sex, and her
        protected activity.

273.    Defendants delegated to Plaintiff's supervisors the authority to control the work
        environment and they abused that authority to create a hostile work environment.

274.    Harassing conduct filled the environment of Plaintiff's work area.

275.    Defendants knew that the harassing conduct filled Plaintiff's work environment.

276.    Harassing conduct occurred daily.

277.    Harassing conduct caused Plaintiff to sustain severe emotional distress resulting
        in physical illness and serious psychological sequelae.

278.    Plaintiff subjectively regarded the harassing conduct as unwelcome and unwanted
        and objectively opposed the conduct.

279.    The conduct was both severe and pervasive.

280.    The conduct was physically threatening and humiliating.

281.    The conduct unreasonably interfered with Plaintiff's work performance.

282.     The conduct was so extreme that it resulted in material changes to the terms and conditions of Plaintiff's employment.

283.     Defendants provided a futile avenue for complaint.

284.     Defendants retaliated against Plaintiff for her complaints.

285.     Defendants acted upon a continuing course of conduct.

286.     As a result of the Defendant's violations of the PFPO, Plaintiff has suffered damages including, but not limited to; past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

**WHEREFORE**, Plaintiff demands judgment against Defendant and prays for the following relief: (1) actual damages; (2) compensatory damages; (3) reasonable attorneys' fees; (4) litigation costs; (5) pre- and post-judgment interest; (6) an adjudication and declaration that Defendant's conduct as set forth herein is in violation of the law; (7) punitive damages; (8) and all additional general and equitable relief to which Plaintiff is entitled.

**Count XVII**
**PFPO Retaliation**
**PFPO §§ 9-1100 et seq.**
**Plaintiff v. All Defendants**

287.     Plaintiff incorporates by reference each and every allegation made in the above paragraphs of this complaint.

288.     The Philadelphia Fair Practices Ordinance § 9-1103(1)(g) provides that it shall be unlawful discriminatory practice: "For any person to harass, threaten, harm, damage, or otherwise penalize, retaliate or discriminate in any manner against any person because he, she or it has complied with the provisions of this Chapter, exercised his, her or its rights

under this Chapter, enjoyed the benefits of this Chapter, or made a charge, testified or

assisted in any manner in any investigation, proceeding or hearing hereunder."

289.     Defendants engaged in an unlawful discriminatory practice in violation of

Philadelphia Fair Practices Ordinance § 9-1103(1)(g) by discriminating against Plaintiff

because of Plaintiff's opposition to the unlawful employment practices of their employer.

290.     Defendants discriminated against Plaintiff because Plaintiff asserted her rights to

a discrimination-free workplace under the PFPO.

291.     Plaintiff was acting under a reasonable, good faith belief that her right to be free

from discrimination on the basis of sex was violated.

292.     Because Plaintiff asserted her rights under the PFPO, Defendants retaliated

against her.

293.     Plaintiff will rely on a broad array of evidence to demonstrate a causal link

between her protected activity and the Defendants' actions taken against her, such as the

unusually suggestive proximity in time between events, as well as Defendants'

antagonism and change in demeanor toward Plaintiff after Defendants became aware of

Plaintiff's protected activity.

294.     As a result, Plaintiff has suffered damages including, but not limited to; past and

future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment

of life, humiliation, emotional distress, reputational harm, diminishment of career

opportunities, and other harm, both tangible and intangible..

**WHEREFORE**, Plaintiff demands judgment against Defendant and prays for the following

relief: (1) actual damages; (2) compensatory damages; (3) reasonable attorneys' fees; (4)

litigation costs; (5) pre- and post-judgment interest; (6) an adjudication and declaration that

Defendant's conduct as set forth herein is in violation of the law; (7) punitive damages; (8) and all additional general and equitable relief to which Plaintiff is entitled.

### Count XVIII
### PFPO Aiding and Abetting
### PFPO §§ 9-1100 et seq.
### Plaintiff v. All Defendants

295.     Plaintiff incorporates by reference each and every allegation made in the above paragraphs of this complaint.

296.     The Philadelphia Fair Practices Ordinance § 9-1103(1)(h) provides that it shall be unlawful discriminatory practice: "For any person to aid, abet, incite, induce, compel or coerce the doing of any unlawful employment practice or to obstruct or prevent any person from complying with the provisions of this Section or any order issued hereunder or to attempt directly or indirectly to commit any act declared by this Section to be an unlawful employment practice."

297.     Defendant engaged in an unlawful discriminatory practice in violation of Philadelphia Fair Practices Ordinance § 9-1103(1)(h) by aiding, abetting, inciting, compelling and coercing the above discriminatory, unlawful and retaliatory conduct.

298.     As a result, Plaintiff has suffered damages including, but not limited to; past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible..

**WHEREFORE**, Plaintiff demands judgment against Defendant and prays for the following relief: (1) actual damages; (2) compensatory damages; (3) reasonable attorneys' fees; (4) litigation costs; (5) pre- and post-judgment interest; (6) an adjudication and

declaration that Defendant's conduct as set forth herein is in violation of the law; (7) punitive

damages; (8) and all additional general and equitable relief to which Plaintiff is entitled.

## **JURY DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands

a trial by jury on all questions of fact raised by this complaint.


Respectfully submitted,

**DEREK SMITH LAW GROUP, PLLC**

*/s/ Ian M. Bryson, Esquire*
IAN M. BRYSON, ESQUIRE
1835 Market Street, Suite 2950
Philadelphia, PA 19103
215-391-4790
ian@dereksmithlaw.com

Dated: <u>November 16, 2022</u>           *Attorneys for Plaintiff, Shakiya Brown*

EXHIBIT
G

**DEREK SMITH LAW GROUP, PLLC**
IAN M. BRYSON, ESQUIRE
Attorney ID No. 321359
1835 Market Street, Suite 2950
Philadelphia, PA 19103
(215) 391-4790
ian@dereksmithlaw.com
*Attorneys for Plaintiff, Shakiya Brown*

### IN THE UNITED STATES DISTRICT COURT FOR THE
### EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SHAKIYA BROWN, | Civil Action No. 2:22-cv-01916 |
| Plaintiff, | |
| v. | **Counter-Defendant Shakiya Brown's Answer to Counterclaim Asserted in Counter-Claimant Northeast Donut Shops Management Corporation's Amended Answer** |
| DUNKIN' DONUTS, et al., | |
| Defendants. | |

Counter-Defendant, Shakiya Brown, submits this reply to the counterclaim of Counter-Claimant Northeast Donut Shops Management Corporation, and states as follows:

1. Ms. Brown admits to having own printed work schedules; Ms. Brown further admits to having had keys in her possession which she refused to return until Defendants provided Ms. Brown with her paychecks that Defendants had been withholding from Ms. Brown. The remaining allegations contained in this paragraph are denied.

2. Ms. Brown denies that Northeast Donut Shops Management Corporation is entitled to any damages. The remaining allegations in this paragraph are not directed to Ms. Brown or contain conclusions of law, thus no responsive pleading is required. To the extent that a response is required, Ms. Brown denies the allegations contained in this paragraph.

3. The allegations in this paragraph are not directed to Ms. Brown or contain conclusions of law, thus no responsive pleading is required. To the extent that a response is required, Ms. Brown denies the allegations contained in this paragraph.

4. Ms. Brown is without sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph, thus Ms. Brown neither admits nor denies these allegations and leaves Northeast Donut Shops Management Corporation to its proofs at trial. To the extent that a response is required, Ms. Brown denies the allegations contained in this paragraph.

5. Ms. Brown is without sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph, thus Ms. Brown neither admits nor denies these allegations and leaves Northeast Donut Shops Management Corporation to its proofs at trial. To the extent that a response is required, Ms. Brown denies the allegations contained in this paragraph.

6. Ms. Brown is without sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph, thus Ms. Brown neither admits nor denies these allegations and leaves Northeast Donut Shops Management Corporation to its proofs at trial. To the extent that a response is required, Ms. Brown denies the allegations contained in this paragraph.

7. Denied as stated. Ms. Brown admits to having own printed work schedules. The remaining allegations contained in this paragraph are denied.

8. Denied.

9. Denied.

10. Denied. Defendants attempted to entice Ms. Brown to climb through the walk-up window to obtain her paycheck that Defendants had been withholding from Ms. Brown.

11. Denied. Defendants attempted to entice Ms. Brown to climb through the walk-up window to obtain her paycheck that Defendants had been withholding from Ms. Brown.

12. Ms. Brown admits to having had keys in her possession which she refused to return until Defendants provided Ms. Brown with her paychecks that Defendants had been withholding from Ms. Brown. The remaining allegations contained in this paragraph are denied.

13. The allegations in this paragraph are not directed to Ms. Brown or contain conclusions of law, thus no responsive pleading is required. To the extent that a response is required, Ms. Brown denies the allegations contained in this paragraph.

14. Ms. Brown admits to having own printed work schedules; Ms. Brown further admits to having had keys in her possession which she refused to return until Defendants provided Ms. Brown with her paychecks that Defendants had been withholding from Ms. Brown. The remaining allegations contained in this paragraph are denied.

15. Ms. Brown admits to having own printed work schedules; Ms. Brown further admits to having had keys in her possession which she refused to return until Defendants provided Ms. Brown with her paychecks that Defendants had been withholding from Ms. Brown. The remaining allegations contained in this paragraph are denied.

16. Denied.

**WHEREFORE** Ms. Brown demands judgment in her favor dismissing Northeast Donut Shops Management Corporation's counterclaim with prejudice, along with an award of attorneys' fees, costs and such other relief as the Court deems appropriate.

## AFFIRMATIVE DEFENSES

1. The counterclaim fails to state a claim upon which relief may be granted.

2. Counterclaimant lacks standing to assert the allegations in the counterclaim.

3. Counterclaimant's claim is barred by a lack of subject matter jurisdiction.

4. Counterclaimant's claim is barred by the applicable statute of limitations.

5. Counterclaimant's claim is barred by the entire controversy doctrine.

6. Counterclaimant's claim is barred by the doctrines of res judicata and/or collateral estoppel.

7. Counterclaimant's claim is barred by the doctrines of laches, waiver, estoppel, fraud, and/or unclean hands.

8. Counterclaimant's claim is barred because counterclaimant abandoned the property at issue.

9. Counterclaimant's claim is barred because counterclaimant approved or consented to Ms. Brown's conduct.

10. Counterclaimant's claim is barred because the property at issue lacks value.

11. Counterclaimant's claim is barred because of nonexistence or lack of identity of the property at issue.

12. Counterclaimant's claim is barred by privilege.

13. Counterclaimant has not suffered any actual or cognizable injury.

14. Counterclaimant has not suffered any damages.

15. Any damages alleged by counterclaimant was caused by its own conduct.

16. Any damages alleged by counterclaimant were caused by third parties over whom Ms. Brown has no control, and for whose acts and/or omissions Ms. Brown bears no responsibility or liability.

17. Any damages alleged by counterclaimant were the proximate result of superseding or intervening causes for which Ms. Brown bears no responsibility or liability.

18. Counterclaimant's claims for damages are barred or reduced by its failure to reasonably mitigate its damages.

19. Counterclaimant's request for punitive damages must be dismissed because there is no factual or legal basis for such an award.

20. Counterclaimant is not entitled to attorneys' fees and costs.

21. Ms. Brown has not breached any common law, contractual or statutory duty owed to counterclaimant.

22. Ms. Brown's answer and affirmative defenses are based upon currently available information. Ms. Brown reserves the right to revise, amend, and/or supplement her answer and affirmative defenses at any time during the course of this litigation.

**DEREK SMITH LAW GROUP, PLLC**

*/s/ Ian M. Bryson, Esquire*
IAN M. BRYSON, ESQUIRE
Attorney ID No. 321359
1835 Market Street, Suite 2950
Philadelphia, PA 19103
(215) 391-4790
ian@dereksmithlaw.com

Dated: December 6, 2022                  *Attorneys for Plaintiff, Shakiya Brown*

Case 2:22-cv-01916-GEKP   Document 4 ... 1/20/22   Page 227 of 243

Brown v. TD Bank, N.A., Not Reported in Fed. Supp. (2016)


**EXHIBIT H**

2016 WL 1298973
Only the Westlaw citation is currently available.
United States District Court, E.D. Pennsylvania.

Howard BROWN

v.

TD BANK, N.A., Agnus Lin, Robert
Mindick, Ronald Matthew, and Eve Badecki.

CIVIL ACTION NO. 15-5474
|
Signed 04/04/2016

**Attorneys and Law Firms**

Jeremy M. Cerutti, Ari Risson Karpf, Karpf, Karpf & Cerutti, P.C., Bensalem, PA, for Howard Brown.

Richard G. Rosenblatt, Courtney Wirth Griffin, Morgan Lewis & Bockius LLP, Philadelphia, PA, for TD Bank, N.A., Agnus Lin, Robert Mindick, Ronald Matthew, and Eve Badecki.

MEMORANDUM

Stewart Dalzell, J.

**I. Introduction**

\*1 We consider here the defendants' partial motion to dismiss. Plaintiff Howard Brown brings twelve claims against defendants TD Bank, N.A. ("TD Bank") and several of its employees, alleging various violations of 42 U.S.C. § 1981, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and the Pennsylvania Human Relations Act ("PHRA"). Brown alleges that TD Bank and the individual defendants — Agnus Lin, Robert Mindick, Ronald Matthew, and Eve Badecki — discriminated against him based on his race and then retaliated after he complained.

TD Bank and the individual defendants move to dismiss Counts VII, VIII, and XII. The individual defendants also move to dismiss Counts I, III, V, VII, XI, and XII. Brown opposes the defendants' motion. For the reasons explained below, we will grant the defendants' motion to dismiss Counts VII, VIII and XII in their entirety, and Count I with respect to the individual defendants.

**II. Standard of Review**

A defendant moving to dismiss under Fed. R. Civ. P. 12(b)(6) bears the burden of proving that the plaintiff has failed to state a claim for relief. See Fed. R. Civ. P. 12(b)(6); see also, e.g., Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005). To survive a Rule 12(b)(6) motion, the complaint must contain sufficient factual matter, accepted as true, to state a facially plausible claim to relief. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

As the Supreme Court stresses, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action…do not suffice." Id. Courts "are not bound to accept as true a legal conclusion couched as a factual allegation." Twombly, 550 U.S. at 555.

In the wake of Twombly and Iqbal, our Court of Appeals laid out a two-part test to apply when considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6):

> First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a plausible claim for relief.

Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (internal citations and quotations omitted). In deciding a motion to dismiss, we may consider "the allegations contained in the complaint, exhibits attached to the complaint and matters of public record," and any "undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims

Brown v. TD Bank, N.A., Not Reported in Fed. Supp. (2016)

Case 2:22-cv-01916-GEKP   Document 49   Filed 12/20/22   Page 228 of 243

are based on the document."  Pension Benefits Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).

**\*2** We recite the facts as they appear in the first amended complaint.

### III. Factual Background

Defendant TD Bank hired plaintiff Howard Brown in April of 2011 as an assistant vice-president in its asset-based lending and syndications department. First Am. Compl. ¶ 18. In June of 2013, after positive performance reviews in 2011 and 2012, Brown was promoted to vice-president, credit portfolio manager of the middle market lending department. Id. at ¶¶ 19-20. During the first few months after his promotion, Brown was supervised by defendant Robert Mindick and also by Damien Ghee, who is not a party in this case. Id. at ¶ 21. Brown alleges that Mindick began to subject him to "discriminatory harassment" shortly after his promotion. Id. at ¶ 22. Brown is black and Mindick is white. Id. at ¶¶ 16, 21.

Brown alleges that Mindick treated him "in a rude and condescending manner, selectively enforced policies against him, failed to invite him to important meetings for accounts that he was working on, and issued him his first negative performance evaluation," and that Mindick did not treat Brown's non-black co-workers this way. Id. at ¶ 23.

In December of 2013, Brown expressed his concerns about the alleged discrimination and harassment to Mindick and questioned why he was being treated differently than his non-black co-workers. Id. at ¶ 24. Mindick responded that he was afraid Brown "would punch him in the face," even though Mindick had no reason to believe that Brown was violent or aggressive, thereby implying to Brown that he was aggressive or violent because of his race. Id. at ¶ 25.

In January of 2014, Damien Ghee moved to a new position at TD Bank and defendant Agnus Lin began co-supervising Brown. Id. at ¶ 26. Brown confided in Lin that he believed Mindick was exhibiting prejudice toward him. Id. at ¶ 27. Lin confirmed that Mindick treated him more harshly than his non-black co-workers, and that Mindick appeared to be "watching" him. Id. While being supervised by Lin and Mindick, Brown claims he continued to be subjected to increased hostility and harassment from management, including both Lin and Mindick. Id. at ¶ 28.

Brown alleges that Lin placed him on an unwarranted performance improvement plan ("PIP" or "plan") only one month after she began supervising him and that the plan included inaccurate and false accusations. Id. at ¶ 29. He also alleges that, one week before Lin placed him on the PIP, he complained to defendant Eve Badecki that his supervisors were discriminating against him and treating him unfairly. Id. at p.7 n.4. He alleges that management treated him less favorably than his non-black co-workers by

> failing to provide him with the proper support, refusing to pay for his professional memberships, refusing to provide him with more lucrative accounts, selectively forcing him to account for his hours, failing to provide him with additional time to complete projects (when needed on a rare occasion), refusing to respond to his e-mails, making false accusations against him to destroy his credibility and put his job in jeopardy, [and] changing his assignments and/ or adding tasks to his assignments without giving him proper time to complete said assignments.

**\*3** Id. at ¶ 29.

On March 11, 2014, Brown's attorney emailed a draft of Brown's original charge of discrimination to TD Bank's management, including the individual defendants and Vincent Vita in the email. Id. at ¶ 31. The email stated that if he did not hear from TD Bank or its counsel on or before March 24, 2014, Brown would file his draft charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human Relations Commission ("PHRC"). Id. at ¶ 31. Brown's original charge named defendants Lin, Mindick, and Badecki. Id. at ¶ 32. Badecki never investigated Brown's complaints as memorialized in his counsel's email. Id. at ¶ 57.

About one day later, on March 12, Brown received a new PIP, which he claims also contained false and inaccurate information. Id. at ¶ 34. He received the new plan during a meeting with defendant Ronald Matthew. Id. at ¶ 35. During the meeting, Matthew was very hostile, belittling

Case 2:22-cv-01916-GEKP  Document 49  Filed 12/20/22  Page 229 of 243

Brown v. TD Bank, N.A., Not Reported in Fed. Supp. (2016)

and ridiculing him. Id. About two weeks later, on or about March 27, 2014, Brown met with Matthew and Lin. Id. at ¶ 36. During this meeting, Matthew asked Brown, "How do you feel we are discriminating against you?" and Brown felt intimidated and uncomfortable since he thought the meeting was about the PIP, and he had not been told they would be discussing his discrimination claims. Id. at ¶ 37. Matthew asked Lin if Brown had kept up with his credit reports, and Lin responded that "unfortunately" there were no credit reports due. Id. at ¶ 38. Brown believes that since they were disappointed that they could not reprimand him based on his credit reports, Lin and Matthew instead criticized him for not having completed certain projects one week ahead of schedule. Id. at ¶ 39. Matthew told Lin to assign more work to Brown and to revise the PIP. Id.

On or about April 7, 2014, Brown emailed Badecki to complain about Matthew and Lin's conduct during the March 12 meeting and to rebut his revised PIP from March 27. Id. at ¶ 40. In his email, Brown told Badecki that he did not think it was appropriate to discuss his prior discrimination complaints during a meeting about his work performance. Id. at ¶ 41. Badecki replied that she would look into the matter, but she never followed up with him. Id. at ¶ 42.

On or about April 10, 2014, Brown had another PIP meeting with Matthew and Lin. Id. at ¶ 43. Lin gave Brown a new plan and complained that he had made typographical errors in one of his draft reports. Id. Brown acknowledged that his draft did include some errors "but indicated that everyone make[s] mistakes and politely pointed out a few typographical errors that Defendant Lin had made in the PIP that she had just given him." Id. at ¶ 43. The meeting ended cordially and Brown worked the remainder of the day. Id. at ¶ 44.

Lin then complained to Badecki that Brown had discriminated against her based on her national origin because he had pointed out spelling and grammatical errors in the PIP that she gave him. Id. at ¶ 45. According to Brown, Lin is "Asian-American." Id. at ¶ 26. Brown avers that Lin only made her complaint about the alleged discrimination after she had received a draft of his EEOC charge naming her as one of the employees discriminating against him and after she had discussed his complaints with Badecki. Id. at ¶ 46.

 **\*4**  On or about April 15, 2014, Badecki called Brown into a meeting and told him it was about an investigation regarding his PIP. Id. at ¶ 47. During that meeting, Brown was asked if he had made any derogatory or discriminatory remarks about

Lin during the April 10 meeting. Id. at ¶ 48. Brown denied that he had. Id. Badecki then told him that he was being suspended because of the investigation into what occurred at the April 10 meeting with Lin and Matthew. Id. at ¶ 50. Badecki had already drafted a suspension letter for Brown before she asked him to attend the April 15 meeting. Id. at ¶ 51.

After informing Brown of his suspension, Badecki permitted him to proceed to his desk without an escort. Id. at ¶ 52. But "before Plaintiff could barely even get to his desk, Defendant Badecki approached Plaintiff, closed his laptop and indicated that he needed to leave." Id. Brown gave Badecki his Blackberry and began clearing items from his desk, including some personal papers that he placed in his bag. Id. at ¶ 53. Badecki accused Brown of trying to take loan documents. Id. at ¶ 54. Brown tried to tell Badecki that he had taken only his personal papers, but Badecki insisted that he give her his bag. Id. at ¶ 55. He politely refused, since it was his personal property. Id.

Badecki sent a suspension notice to Brown's attorney soon thereafter, stating that Brown was being suspended for failing to cooperate with the investigation, attempting to dispose of confidential documents, and placing a large number of other documents that appeared to be TD Bank property into his bag before leaving the building. Id. at ¶ 56.

On or about April 23, 2014, Brown's attorney emailed defendants indicating that Brown would cooperate with the investigation, but that he believed the April 15 accusations were in retaliation for Brown's prior complaints of discrimination and retaliation. Id. at ¶ 58. On or about April 29, 2014, Brown filed a charge of discrimination with the EEOC. Id. at ¶ 59. Brown's attorney also emailed a copy of the charge to defendants' attorney. Id. at ¶ 60. Several hours later, defendants' attorney emailed Brown's attorney "and threatened to file a lawsuit against" Brown if he did not return all of TD Bank's documents, data, property, materials, documents, records, or information by the close of business the next day. Id. at ¶ 61.

On or about May 1, 2014, TD Bank fired Brown. Id. at ¶ 62. TD Bank's termination letter stated that it was firing him "based upon the results of [its] investigation into the incidents of April 10, 2014 and April 15, 2014." Id. at ¶ 63 (quoting from the termination letter). The termination letter characterized these incidents as Brown making discriminatory remarks to Lin, violating TD Bank policy by refusing to cooperate in its investigation of those

remarks, attempting to improperly dispose of confidential documents, and removing TD Bank documents and other property from the workplace after being suspended. Id.

According to Brown, "Defendants attempted to have [him] sign an affidavit requesting that [he] agree to demands that would, among other things, prevent him from ever disseminating documents or information relating to his work (with no exception for providing information to the EEOC) and prevent him from ever contacting" TD Bank's clients or customers, which he believes "would bar him from possibly obtaining information relevant to his EEOC charge." Id. at ¶ 64. Brown agreed to sign an affidavit if the parties could agree on terms addressing those concerns. Id. at ¶ 65. No such terms were agreed to, and TD Bank sued Brown for conversion in the Court of Common Pleas of Philadelphia County on August 22, 2014. Id. at ¶ 66.

**\*5** In the action filed in the Court of Common Pleas, TD Bank alleged that Brown's employment with it gave him access to confidential and sensitive information such as loan applications, tax returns, account statements, credit reports, customer appraisal documentation, legal and court documents, title reports, and propriety information relating to TD Bank's business operations and strategy. Defs.' Partial Mot. to Dismiss ("Partial MTD") Ex. C at 5-6. TD Bank claimed, with respect to Brown's conduct when clearing out his desk, that he "improperly disposed of some confidential customer documents, and began placing into a bag a large number of documents, many of which appeared to contain confidential and proprietary information." Id. at 6.

TD Bank further alleged that Brown refused Badecki's request to return the documents in his bag "and fled the workplace," and that he "wrongfully retained" a TD Bank credit card and an RSA token (which provides the holder with remote access to TD Bank's electronic systems). Id. TD Bank also claimed that it had evidence that Brown retained documents based upon emails from his counsel that purported to return certain documents and emails Brown sent from his TD Bank email account to his personal email account containing TD Bank's documents. Id. at 7-8. Because Brown would not sign TD Bank's requested certification that he had returned all of TD Bank's confidential or propriety documents and had not improperly disseminated such material, TD Bank sued him for conversion. Id. at 8-9.

Brown properly exhausted his administrative remedies with respect to his Title VII claims by timely filing charges with the

EEOC and filing this lawsuit within ninety days of receiving a right-to-sue letter. First Am. Compl. ¶ 5. He exhausted his administrative remedies with respect to his PHRA claims by timely filing charges with the PHRC and waiting at least one year to file this lawsuit. Id. at ¶ 6.

## IV. <u>Discussion</u>

The first amended complaint raises twelve claims under 🔖Section 1981, Title VII, and the PHRA. All defendants move to dismiss Counts VII, VIII, and XII. See Partial MTD at 7. The individual defendants move to dismiss Counts I, III, V, VII, X, XI, and XII. See id. at 16, 20.

In Counts VII, VIII, and XII, Brown alleges that the defendants violated 🔖Section 1981, Title VII, and the PHRA by threatening to file and then filing a retaliatory civil action against him. First Am. Compl. ¶¶ 102-06, 107-10, 120-22. In Count I, Brown alleges that all defendants violated 🔖Section 1981 by creating a hostile work environment, discriminating against him based on his race, and retaliating against him. Id. at ¶¶ 67-73. In Counts III, V, X, and XI, Brown alleges that all defendants violated both 🔖Section 1981 and the PHRA by wrongfully suspending and terminating him. Id. at ¶¶ 80-85, 91-96, 114-16, 117-19.

Brown opposes the motion or, in the alternative, requests leave to amend his complaint to cure any deficiencies. Pl.'s Resp. in Opp. at 29-30. We consider the parties' arguments here.

### A. <u>Counts VII, VIII, and XII: The Civil Action in State Court</u>

Brown alleges in Counts VII, VIII, and XII that the defendants violated 🔖Section 1981,[1] Title VII, and the PHRA by threatening to sue Brown, and then actually filing a lawsuit against him. All defendants move to dismiss these three counts, arguing that: (1) the communication that Brown characterized as a "threat" of litigation was not a threat and, even if it were, such a threat does not constitute an adverse employment action; (2) the <u>Noerr-Pennington</u> doctrine bars Brown's retaliation claims; and (3) there was no existing or proposed contractual relationship between Brown and TD Bank when TD Bank filed its lawsuit.[2] Partial MTD at 7, 9, 11. Brown responds that: (1) the threat of litigation and eventual lawsuit by TD Bank are adverse employment actions

Brown v. TD Bank, N.A., Not Reported in Fed. Supp. (2016)

Case 2:22-cv-01916-GEKP   Document 49   Filed 12/20/22   Page 231 of 243

because they would have dissuaded a reasonable worker from making or supporting a charge of discrimination; (2) the Noerr-Pennington doctrine does not apply to Title VII and Section 1981 claims; and (3) Section 1981 broadly encompasses at-will employment contracts, so a lawsuit filed after termination remains actionable. Pl.'s Resp. in Opp. at 13, 16, 18.

### 1. Whether The Threat Of Litigation And Filing Of A Lawsuit Are Adverse Employment Actions

**\*6** A prima facie case for retaliation under Section 1981 requires allegations that (1) the plaintiff engaged in protected activity, (2) the employer took an adverse employment action against the plaintiff, and (3) there was a causal connection between the participation in the protected activity and the adverse employment action. Estate of Oliva ex rel. McHugh v. New Jersey, 604 F.3d 788, 798 (3d Cir. 2010) (citing Moore v. City of Philadelphia, 461 F.3d 331, 340-41 (3d Cir. 2006)). The same standard applies to retaliation cases under Title VII and the PHRA. See id. at 798 n.15 (citing Humphries v. CBOCS West, Inc., 474 F.3d 387, 403-04 (7th Cir. 2007), aff'd, 553 U.S. 442 (2008) (explaining that the same prima facie requirements apply to discrimination claims brought under Title VII and Section 1981); Fogleman v. Mercy Hosp., Inc., 283 F.3d 561, 567 (3d Cir. 2002) (explaining that the PHRA and Title VII's anti-retaliation provisions are substantially similar and that PHRA is interpreted identically to federal anti-discrimination laws unless there is something specifically different in its language requiring that it be treated differently)).

To determine whether a plaintiff has suffered an adverse employment action, we must inquire whether the challenged conduct was materially adverse, meaning that it "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Burlington Northern & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006). The concern is whether an employer is deterring victims of discrimination from complaining to the EEOC, courts, or employers, and "normally petty slights, minor annoyances, and simple lack of good manners" do not create such deterrence. Id. The standard is objective, and so we focus on how the "reasonable employee" would react and

not a plaintiff's subjective feelings. Id. at 68-69. The significance of an alleged retaliatory act depends upon the circumstances of the case, and so we must view the act in context. Id. at 69.

This Court has previously found that an employer's threat to accuse an employee of a criminal offense "could certainly be construed as 'materially adverse.'" Walsh v. Irvin Stern's Costumes, 2006 WL 2380379, \*2-\*3 (E.D. Pa. Aug. 15, 2006) (Baylson, J.) (unreported) (reasoning in light of Burlington Northern that "common sense suggests that one good way to discourage an employee" from bringing discrimination charges would be to threaten to bring criminal charges against her unless the employee withdrew her discrimination claims). See also Rattigan v. Holder, 604 F. Supp. 2d 33, 53 (D.D.C. 2009) (discussing cases to support the conclusion that whether an action is materially adverse is determined by whether it holds a deterrent prospect of harm, not by whether the harm comes to pass or whether any ill effects are felt in the present). Similarly, other courts have found that the filing of a counterclaim by an employer might well ground a retaliation claim, since an employee might choose to withdraw her charges of discrimination rather than face counterclaims "which directly attack the integrity of the plaintiff as well as her professional standing as an attorney." Nesselrotte v. Allegheny Energy, Inc., 2007 WL 3147038, \*12 n.25 (W.D. Pa. Oct. 25, 2007) (Fischer, J.) (unreported). See also Parry v. New Dominion Construction, Inc., 2015 WL 540155, \*7 (W.D. Pa. Feb. 10, 2015) (Schwab, J.) (unreported) (explaining that the filing of a counterclaim subjecting an employee to potential monetary damages could dissuade a reasonable worker from pursuing a charge of discrimination). While Nesselrotte and Parry were both in the procedural posture of a motion for leave to amend the complaint, the reasoning applies with equal force in the procedural posture of a motion to dismiss, since we accept the complaint's well-pled factual allegations as true.

**\*7** Considering the reasoning in Walsh, Rattigan, Nesselrotte, and Parry, we are persuaded that threating to file a civil action and actually filing a civil action may be adverse employment actions in light of Burlington Northern's broader perspective on what is materially adverse and based upon a common sense approach to what might deter a reasonable employee. Threatening to file and then filing a lawsuit are beyond the petty slights, minor annoyances, and simple lack of good manners that are insufficient to

Case 2:22-cv-01916-GEKP   Document 49   Filed 12/20/22   Page 232 of 243

Brown v. TD Bank, N.A., Not Reported in Fed. Supp. (2016)

deter the reasonable worker. Litigation is expensive, time-consuming, and emotionally draining. So too is the mere threat of litigation, since the steps an individual must take when threatened with a lawsuit are often the same steps an individual must take when actually sued: locating and obtaining counsel, evaluating options for settlement or litigation, and spending time and treasure to resolve the prospective or filed claim. A reasonable worker, faced with the prospect or reality of a civil action, might well decide to abandon his charges of discrimination rather than move forward.

We therefore find, in this procedural posture of a motion to dismiss, that the first amended complaint alleges sufficient factual matter, accepted as true, to make a prima facie showing under Section 1981, Title VII, and the PHRA that TD Bank took an adverse employment action against Brown when it threatened to file, and then filed, a civil action against him in the Court of Common Pleas of Philadelphia County.

### 2. Whether The Noerr-Pennington Doctrine Bars Plaintiff's Retaliation Claim

The Noerr-Pennington doctrine protects parties who petition government entities — such as legislatures, administrative agencies, and the courts — from claims arising in response to that petitioning. See Cheminor Drugs, Ltd. v. Ethyl Corp., 168 F.3d 119, 122 (3d Cir. 1999) (citing Eastern R.R. Presidents Conference v. Noerr Motor Freight, 365 U.S. 127 (1961) and United Mine Workers of Am. v. Pennington, 381 U.S. 657 (1965)). The Noerr-Pennington doctrine thus protects those who petition for relief through the courts. California Motor Transp. Co. v. Trucking Unlimited, 404 U.S. 508, 510 (1972).

Although this doctrine arose in the antitrust arena, it has been extended by analogy to petitioning in other contexts. We, Inc. v. City of Philadelphia, 174 F.3d 322, 326-27 (3d Cir. 1999). The doctrine does not, however, protect "sham" petitioning — meaning petitions or lawsuits that are "nothing more than an attempt to interfere directly with the business relationships of a competitor." Cheminor Drugs, Ltd., 168 F.3d at 122; Professional Real Estate Inv'rs, Inc. v. Columbia Pictures Indus., Inc., 508 U.S. 49, 56 (1993) ("PRE"). We have previously held that lawsuits are

a form of protected petitioning under Noerr-Pennington, and that if the facts relevant to determining Noerr-Pennington's applicability are undisputed and contained within the record, we may decide the issue on a motion to dismiss. See Trustees of the Univ. of Pa. v. St. Jude Children's Research Hosp., 940 F. Supp. 2d 233, 241-43 (E.D. Pa. 2013).

Litigation is a "sham" within the meaning of Noerr-Pennington if it is objectively baseless, meaning that no reasonable litigant could realistically expect success on the merits. PRE, 508 U.S. at 60. If a reasonable litigant could conclude that its suit is reasonably calculated to elicit a favorable outcome, then the suit is protected by Noerr-Pennington. Id. If, however, the challenged litigation is objectively meritless, then the court may consider the litigant's subjective motivation. Id. A plaintiff must first disprove the challenged lawsuit's objective legal viability before we may consider the subjective components of the sham litigation. Id. at 61.

We first inquire whether TD Bank's lawsuit against plaintiff was objectively baseless. See Partial MTD Ex. C. [3]

**\*8** In TD Bank's suit against Brown, it alleged that Brown "improperly disposed of some confidential customer documents, and began placing into a bag a large number of documents, many of which appeared to contain confidential and proprietary information." Partial MTD Ex. C at 6. TD Bank further alleged that Brown refused Badecki's request to return the documents he put in his bag, fled the workplace, and wrongfully retained both a TD Bank credit card and a RSA token. Id. TD Bank also alleged that it had email evidence of Brown's retention of TD Bank's documents. Id. at 7-8.

By Brown's own account, he did not comply with Badecki's request to return the papers he put in his bag and never signed an affidavit or certification that he had not improperly retained or disseminated TD Bank's confidential or propriety documents or information, as TD Bank requested he do. [4] In light of these facts, a reasonable litigant in TD Bank's position could expect success on the merits and that litigation predicated on such facts could lead to a favorable outcome, namely, either the return of the documents or assurances that there were no documents left to return. Noerr-Pennington's protections do not extend to sham litigation, but a reasonable litigant in TD Bank's position would have had an objective basis for filing the lawsuit in question. Since TD Bank's civil action is not objectively meritless, we do not inquire about

Case 2:22-cv-01916-GEKP Document 49 Filed 12/20/22 Page 233 of 243

Brown v. TD Bank, N.A., Not Reported in Fed. Supp. (2016)

TD Bank's subjective motivations in filing the action. See, e.g., PRE, 508 U.S. at 60 ("Only if challenged litigation is objectively meritless may a court examine the litigant's subjective motivation."); see also Trustees of the Univ. of Pa. v. St. Jude Children's Research Hosp., 940 F. Supp. 2d at 243 (explaining that the question of intent would only be relevant if the court were to find that the action itself was a sham). Since we find that TD Bank's civil action filed against Brown in the Court of Common Pleas was not a sham, it is entitled to protection under the Noerr-Pennington doctrine. We will therefore dismiss Counts VII, VIII, and XII of the first amended complaint with prejudice. We omit further discussion of these claims and the parties' arguments with respect thereto.

**B. Counts I, III, and V: Personal Liability Under Section 1981**

In Counts I, III, and V Brown alleges that the defendants created a hostile work environment and wrongfully suspended and wrongfully terminated him, all in violation of Section 1981. The individual defendants move to dismiss all three counts, arguing that they fail to set forth allegations sufficient to demonstrate that they were personally involved in any discriminatory conduct against Brown or that they either intentionally caused TD Bank to infringe upon Brown's Section 1981 rights or authorized, directed, or participated in any infringing conduct. Partial MTD at 16-17. Brown responds that his factual allegations raise the plausible inference that there is an affirmative link causally connecting the individual defendants with the alleged discriminatory actions. Pl.'s Resp. in Opp. at 24.

**\*9** Although claims against individual supervisors are not permissible under Title VII, individual liability is possible under Section 1981 if the defendants intentionally cause an infringement of the rights protected by Section 1981, regardless of whether the employer-entity may be held liable. Cardenas v. Massey, 269 F.3d 251, 268 (3d Cir. 2001); Weldon v. Kraft, Inc., 896 F.2d 793, 796 (3d Cir. 1990); Al-Khazraji v. Saint Francis Coll., 784 F.2d 505, 518 (3d Cir. 1986), aff'd, 481 U.S. 604 (1987). Individuals may be held personally liable if they intentionally caused the employer-entity to infringe upon a plaintiff's Section 1981 rights or if they authorize, direct, or participate in

the alleged discriminatory conduct. Al-Khazraji, 784 F.2d at 518. Because the individual defendants' alleged actions are pertinent herein, we briefly review the first amended complaint's specific allegations as to each defendant.

Brown alleges that Lin placed him on an unwarranted PIP after supervising him for only one month; was generally hostile toward him; attended the March 17, 2014 meeting with Matthew where he was asked how they were discriminating against him; and expressed her disappointment at that meeting that Brown could not be reprimanded based on credit reports that were not yet due. First Am. Compl. ¶¶ 28-30, 36-39. Brown avers that Mindick was rude and condescending toward him; treated him differently than his non-black coworkers; selectively enforced policies against him; implied that he was scared of Brown punching him based on Brown's race; was hostile toward and harassed him; placed him on an unwarranted PIP; undermined him at work by failing to provide him with proper support, lucrative accounts, adequate time to complete his assignments, and timely responses to emails, and so forth. Id. at ¶¶ 22-29.

Brown claims that Matthew belittled and ridiculed him in a meeting about his new PIP; asked him in a follow-up meeting why he felt he was being discriminated against; criticized him for not completing assignments ahead of schedule; and ordered Lin to give him more work and revise his PIP. Id. at ¶¶ 35-39. Brown alleges that Badecki did not follow up on his April 7, 2014 email expressing concerns about Lin and Matthew's conduct; informed him that he was being suspended because of the investigation into his conduct at the April 10, 2014 meeting; drafted his suspension letter before meeting with him on April 15, 2014; accused him of trying to take TD Bank loan documents and insisted that he give her his bag; and did not investigate his March 11, 2014 discrimination complaint. Id. at ¶¶ 40, 50-57.

**1. Count I: Hostile Work Environment, Racial Discrimination, Retaliation**

Brown alleges that all of the individual defendants, as part of TD Bank's management, subjected him to ongoing and pervasive harassment and hostility, treated him in a demeaning manner, gave him pretextual discipline, and personally participated in discriminatory and retaliatory harassment against him in the last ten months of his employment. First Am. Compl. ¶¶ 68-72.

Case 2:22-cv-01916-GEKP Document 49 Filed 12/20/22 Page 234 of 243

Brown v. TD Bank, N.A., Not Reported in Fed. Supp. (2016)

We use the same analysis to assess the substantive merits of a hostile work environment claim under 🔖 Section 1981 as we would in the Title VII context. See, e.g., Verdin v. Weeks Marine Inc., 124 F. App'x 92, 96 (3d Cir. 2005) (non-precedential) (noting that the statute of limitations was the only distinction between 🔖 Section 1981 and Title VII with respect to a hostile work environment claim). To establish a hostile work environment, a plaintiff must show that (1) he suffered intentional race discrimination, (2) the discrimination was pervasive and regular, (3) the discrimination detrimentally affected him, (4) the discrimination would detrimentally affect a reasonable person of the same race in that position, and (5) there is respondeat superior liability. 🚩 Andrews v. City of Philadelphia, 895 F.2d 1469, 1482 (3d Cir. 1990) (discussing these factors in the sex discrimination context); Woodard v. PHB Die Casting, 255 F. App'x 608, 609 (3d Cir. 2007) (non-precedential). The discriminatory conduct must be so extreme as to amount to a change in the terms or conditions of employment, and offhanded comments or isolated incidents, unless extremely serious, are insufficient to sustain a hostile work environment claim. 🔖⚠️ Caver v. City of Trenton, 420 F.3d 243, 262-63 (3d Cir. 2005). We must look at the totality of the circumstances, including the frequency of the alleged conduct, its severity, whether it was physically threatening or humiliating, and whether it unreasonably interfered with the plaintiff's work performance. Id.

**\*10** Brown has not pled sufficient factual matter, accepted as true, to demonstrate that any of the individual defendants intentionally infringed on his 🔖 Section 1981 rights by causing TD Bank to infringe on his rights or by authorizing, directing, or participating in a hostile work environment. With respect to Lin, Brown only generally alleges that she participated in undermining conduct and mentions only two discrete instances of allegedly harassing conduct: placing him on a PIP and noting with disappointment that his credit reports were not yet due. As to Matthew, Brown alleges only that he belittled and ridiculed him in one meeting and asked him about his allegations of discrimination in another. Regarding Badecki, Brown only alleges that she did not investigate his claims of discrimination, informed him of his suspension, and accused him of taking loan documents. These allegations against Lin, Matthew, and Badecki do not plead the type of severe, extreme, or pervasive conduct that would suggest they are personally liable under 🔖 Section 1981 for creating

a hostile work environment. With respect to Mindick, the allegations are more detailed and indicate a longer duration of alleged undermining conduct, but those allegations also do not raise the inference that Mindick intentionally violated Brown's 🔖 Section 1981 rights or caused TD Bank to do so. Mindick's individual conduct was not so extreme, severe, or pervasive as to ground individual liability against him for creating a hostile work environment.

We will therefore dismiss Count I with respect to the individual defendants Lin, Matthew, Mindick, and Badecki, but without prejudice to refiling a second amended complaint.

## 2. Counts III and V: Wrongful Suspension And Termination

Brown alleges that one month after notifying the defendants of his intent to file an EEOC charge, and one week after complaining to Badecki that Matthew and Lin were treating him with hostility, he was suspended for pretextual reasons. First Am. Compl. ¶ 82. Brown also alleges that the individual defendants "all personally participated in the retaliatory and discriminatory decision to" suspend him because of his race and complaints about race discrimination and retaliation. Id. at ¶ 84. Brown further alleges that his subsequent termination was pretextual and retaliatory and that the individual defendants "all personally participated in the retaliatory and discriminatory decision" to terminate him. Id. at ¶¶ 93, 95.

Brown's first amended complaint contains sufficient factual matter, accepted as true, to support a reasonable inference that the individual defendants intentionally caused the alleged violation of Brown's rights under 🔖 Section 1981 by participating in or otherwise directing his suspension and eventual termination. The individual defendants' alleged acts, taken in light of their supervisory authority, render plausible Brown's allegations that they caused TD Bank to wrongfully suspend or terminate him, especially given the temporal proximity between the alleged discrimination and retaliation and adverse employment actions. We will therefore deny the individual defendants' motion to dismiss Counts III and V.

## C. Counts X and XI: Individual Liability Under Section 955(e) Of The PHRA

Brown alleges in Counts X and XI that the defendants violated the PHRA by wrongfully suspending and terminating him. The individual defendants move to dismiss these counts, arguing that the first amended complaint fails to set forth allegations sufficient to demonstrate that they are individually liable under Section 955(e) of the PHRA for aiding, abetting, inciting, compelling, or coercing unlawful discriminatory practices. Partial MTD at 20. Brown responds that his factual allegations raise the plausible inference that the individual defendants are supervisory employees who engaged in discriminatory or retaliatory conduct against him. Pl.'s Resp. in Opp. at 29.

Section 955(e) of the PHRA forbids "any person, employer, employment agency, labor organization or employee, to aid, abet, incite, compel or coerce the doing of any act declared by this section to be an unlawful discriminatory practice…" 43 Pa. Cons. Stat. § 955(e). Based on the theory that only supervisory employees can share the discriminatory purpose and intent of the employer, such supervisors can be held personally liable under an aiding and abetting theory for their own direct acts of discrimination or their failure to take action to prevent further discrimination. Holocheck v. Luzerne Cty. Head Start, Inc., 385 F. Supp. 2d 491, 496-97 (M.D. Pa. 2005);

see also 🚩 Dici v. Commonwealth of Pa., 91 F.3d 542, 552 (3d Cir. 1996) (explaining that individual employees can be held liable under the PHRA but not Title VII); Davis v. Levy, Angstreich, Finney, Baldante, Rubenstein & Coren P.C., 20 F. Supp. 2d 885, 887 (E.D. Pa. 1998) (finding that plaintiff had adequately pled a Section 955(e) claim by averring that defendants were supervisors with whom she spoke about the firm's disability policies and who later terminated her).

 **\*11** In the procedural posture of a motion to dismiss, Brown's allegations regarding the individual defendants' supervisory roles, alleged discriminatory or retaliatory acts, and his eventual suspension and termination, suffice to raise the reasonable inference that the individual defendants Lin,

Mindick, Mathew, and Badecki could be found plausibly liable under Section 955(e). We will therefore deny their motion to dismiss Counts X and XI.

## V. Conclusion

Although we find that threatening to file, and then filing, a civil action may constitute an adverse employment action in light of Burlington Northern's definition of materially adverse and based upon a common sense approach to what might deter a reasonable employee, the Noerr-Pennington doctrine protects the defendants with respect to the civil action because we find the lawsuit was not objectively baseless in light of Brown's actions during and after his suspension and termination. We will therefore grant the defendants' motion to dismiss Counts VII, VIII, and XII of the first amended complaint with prejudice. We will grant the individual defendants' motion to dismiss Count I because the first amended complaint does not contain sufficient factual matter, accepted as true, to demonstrate the kind of severe and pervasive discriminatory conduct that would create a hostile work environment, but we dismiss Count I without prejudice to refiling a second amended complaint.

We will deny the individual defendants' motion to dismiss Counts III, V, X, and XI because Brown's factual averments regarding the individual defendants' supervisory positions and their alleged discriminatory and retaliatory acts, combined with his eventual suspension and termination, permit the reasonable inference that they may have either caused, participated in, aided, or abetted TD Bank's decision to suspend and then terminate him.

An appropriate Order follows.

## All Citations

Not Reported in Fed. Supp., 2016 WL 1298973

## Footnotes

1    "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts…as is enjoyed by white citizens…" 🚩 42 U.S.C. § 1981(a). The term "make and enforce contracts" includes the "making, performance, modification, and termination of contracts, and the enjoyment of all benefits, terms, and conditions of the contractual relationship." 🚩 42 U.S.C.

**Brown v. TD Bank, N.A.**, Not Reported in Fed. Supp. (2016)

Case 2:22-cv-01916-GEKP   Document 49   Filed 12/20/22   Page 236 of 243

§ 1981(b). The rights protected by ⚑Section 1981 "are protected against impairment by nongovernmental discrimination and impairment under color of State law." ⚑42 U.S.C. § 1981(c).

2     Initially, defendants also argued that Brown (4) had failed to exhaust his administrative remedies with respect to his claim that the civil action was retaliatory. Partial MTD at 13. But defendants withdrew this argument in their reply. See Defs.' Reply Br. at 7 n.2 (withdrawing the argument).

3     We may consider the civil action because Brown's claims are based on it, the defendants attached it as an exhibit to their partial motion to dismiss, and no party disputes its authenticity. ⚑Pension Benefits Guar. Corp., 998 F.2d at 1196.

4     Brown alleges that as he was clearing off his desk after Badecki informed him of his suspension, she accused him of trying to take loan documents. First Am. Compl. ¶¶ 52-54. Although Brown told Badecki that the papers he had placed in his bag were personal papers, she insisted that he give her his bag, but he refused. Id. at ¶ 55. After TD Bank fired Brown for, among other reasons, removing TD Bank documents from the workplace after his suspension, it asked him to sign an affidavit or certification preventing him from disseminating documents or information related to his work at TD Bank or contacting TD Bank's clients and customers. Id. at ¶¶ 63-64. Because TD Bank would not agree to Brown's amendments providing exceptions for his ongoing EEOC proceedings, Brown refused to sign. Id. at ¶¶ 65-66.

---

End of Document            © 2022 Thomson Reuters. No claim to original U.S. Government Works.



2022 WL 3229321
Only the Westlaw citation is currently available.
United States District Court, E.D. Pennsylvania.

William SMART, Plaintiff,
v.
PHOENIX LITHOGRAPHING
CORPORATION, et al., Defendants.

CIVIL ACTION NO. 21-486-KSM
|
Filed August 10, 2022

**Attorneys and Law Firms**

Brian Farrell, Console Mattiacci Law, LLC, Philadelphia, PA, for Plaintiff.

Christina Mae Michael, Fisher & Phillips LLP, Philadelphia, PA, Daniel H. Aiken, Alfred W. Putnam, Jr., Faegre Drinker Biddle & Reath LLP, Philadelphia, PA, for Defendants.

### MEMORANDUM

MARSTON, District Judge

 **\*1**  Plaintiff William Smart, formerly employed by Phoenix Lithographing Corporation ("Phoenix"), sues Defendants Phoenix, The Phoenix Group, and Innovation Marketing Corporation, LLC (the "Corporate Defendants") and Barry Green and Stephen Anello (the "Individual Defendants") (collectively, "Defendants"). In his original complaint, Smart brought claims against the Corporate Defendants for disparate treatment and retaliation under the Americans with Disabilities Act ("ADA"), the Pennsylvania Human Relations Act ("PHRA"), and the Philadelphia Fair Practices Ordinance ("PFPO") (Counts I, II, and IV), as well as state law claims for breach of contract and fraudulent and negligent misrepresentation and concealment (Counts VI–VIII). (Doc. No. 1.) Smart also asserted aiding and abetting claims against Green under the PHRA and PFPO (Counts III and V), and a claim for violations of Pennsylvania Wage Payment and Collection Law ("WPCL") against all Defendants (Count IX). (*Id.*)

In its Answer, Phoenix filed a counterclaim against Smart for breach of his fiduciary duty and duty of loyalty to Phoenix (the "Counterclaim"). (Doc. No. 8 at 30–35.) Subsequently, Smart filed an Amended Complaint, which added ADA, PHRA, and PFPO retaliation claims against the Corporate Defendants based on the Counterclaim. (Doc. No. 18 at 19–20 (Counts II, IV, and VII).) Smart alleged that the Counterclaim is "baseless" and "frivolous" and "constitute[d] retaliation for Plaintiff's complaints of Defendants' discriminatory conduct and his prosecution of same." (*Id.* at ¶¶ 111, 114, 127, 130, 151, 154.) In his Amended Complaint, Smart also added PHRA and PFPO aiding and abetting claims against Anello. (*See id.* at 22, 24.)

Defendants move to dismiss the newly added ADA, PHRA, and PFPO retaliation claims, arguing that the Counterclaim was compulsory and Smart failed to plead facts to plausibly show that it was objectively baseless and, therefore, the Counterclaim was not an adverse action. (Doc. No. 20-1.) In their motion to dismiss, Defendants also contend that the aiding and abetting claims against Anello should be dismissed because Smart failed to exhaust his administrative remedies. (*Id.*) Smart opposes the motion. (Doc. No. 22.)

For the reasons discussed below, the Court grants Defendants' motion.

### I. Background

#### A. *Smart Works for Phoenix, is Diagnosed with Cancer, and is Later Fired*
Accepting all allegations in the Amended Complaint as true, the relevant facts are as follows.

Phoenix is a collection of commercial printing companies that produces commercial printing products for various companies in the pharmaceutical, telecommunications, arts, and retail industries. (Doc. No. 18 at ¶ 26.) In 2018, Phoenix recruited Smart to join Phoenix as a commercial printing sales executive. (*Id.* at ¶¶ 27, 31.) Phoenix and Smart executed an employment contract on September 5, which provided for an annual salary of $1 million,[1] and Smart began work on October 1. (*Id.* at ¶¶ 46–48.) Smart held the position of Vice President of Business Development and reported to Green, the CEO of Corporate Defendants. (*Id.* at ¶¶ 52–53.)

 **\*2**  In April 2019, Smart was diagnosed with squamous cell carcinoma cancer of the head and neck. (*Id.* at ¶ 54.) During a meeting with Green and Anello (the Vice Chairman of Phoenix), Smart informed them that in June, he would be undergoing a series of complex surgeries to remove his tumors and reconstruct his throat and he would need time

off to recover. (*Id.* at ¶ 56.) On June 10, Smart underwent those surgeries and the next day he underwent an emergency surgery on his throat due to a post-operative hemorrhage. (*Id.* at ¶¶ 57–58.)

Smart returned to work in July 2019. (*Id.* at ¶ 59.) According to Smart, upon his return to work, Defendants began discriminating against him due to his disability. (*Id.* at ¶ 60.) Specifically, on July 31, Smart began proton radiation therapy and the treatment sessions were scheduled five days a week, in the evenings. (*Id.* at ¶ 62.) Green persisted in scheduling meetings at the end of the day, despite Smart's specific request that he schedule them earlier; these meetings "often interfered" with Smart's radiation treatments. (*Id.* at ¶ 64.) And in early August, directly before one of Smart's treatments, Green and Anello called Smart a "financial drain" on the company, falsely accused him of not hitting his sales goals, and demanded Smart agree to reduce his compensation. (*Id.* at ¶ 65.) On August 9, Ken Marino, the President of Phoenix, said that Smart could "no longer ignore" the demand that he reduce his compensation and suggested a $600,000 pay decrease (i.e., a yearly compensation of $400,000). (*Id.* at ¶ 67.) Smart refused. (*Id.*) Five days later, on August 14, Marino told Smart he needed to reduce his salary to remain employed by Phoenix and informed Smart that Green was "offering $333,000" per year but thought that if Smart "cooperated," Marino could "talk [Green] into" $400,000 per year. (*Id.* at ¶ 68.) Smart again refused to such a drastic pay cut. (*Id.*)

On August 16, Green, Anello, and Marino met with Smart and continued to insist that he voluntarily accept a reduction in pay, notwithstanding the documentation Smart showed them that "indicated he had actually established a higher sales profit margin than originally anticipated during his first year of employment and was, despite his cancer diagnosis, still performing at a very high level." (*Id.* at ¶ 69.) On August 19, Green, Anello, and Marino held another meeting, again demanding that Smart make a proposal to reduce his salary; Smart refused. (*Id.* at ¶ 70.) The next day, Marino delivered Smart an ultimatum from Green: "accept a $600,00 pay decrease ... and an involuntary reassignment of one of [Smart's] largest client accounts, or face termination." (*Id.* at ¶ 71.) Smart would not accept the pay decrease and Marino terminated his employment, effective immediately. (*Id.*) "Due to his weakened physical condition caused by ongoing radiation treatment," Smart asked two other employees to help him carry his belongings from his office to his car; once

Green witnessed this, he instructed those employees to stop helping Smart. (*Id.* at ¶ 72.)

### B. Smart Initiates this Lawsuit Against Defendants

On February 14, 2020, Smart dual-filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human Relations Commission ("PHRC") against Phoenix, Phoenix Lithographing Corporation, High Road Press, Phoenix Veterans Print, Innovation Marketing Communications, and Green.[2] (Doc. No. 18 at ¶ 21; *see also id.*, Ex. A at 33–26.) The EEOC dismissed the Charge and issued Smart a notice of his right to sue. (*Id.* at ¶ 22; *see also id.*, Ex. B.) On February 2, 2021, Smart filed his original Complaint. (Doc. No. 1.) As noted *supra*, Smart asserted claims against the Corporate Defendants for disparate treatment and retaliation under the ADA, the PHRA, and the PFPO, as well as state law claims for breach of contract and fraudulent and negligent misrepresentation and concealment. (*Id.*) He also brought aiding and abetting discrimination and retaliation claims against Green under the PHRA and PFPO and a claim for violations of the WPCL against all Defendants. (*Id.*)

### C. Phoenix Files a Counterclaim

**\*3** On April 12, 2021, Defendants filed their Answer. (Doc. No. 8.) Simultaneously, Phoenix brought a counterclaim against Smart, alleging that Smart breached his fiduciary duty and duty of loyalty toward Phoenix. (*Id.* at 30–35, ¶¶ 32–39.) Specifically, Phoenix alleged that in July 2019, Anello learned that Smart was sending printing jobs to commercial printing companies other than Phoenix. (*Id.* at ¶ 25.) According to Phoenix, Anello discovered that Smart sent "a large printing job for a consumer products company to a competitor of Phoenix ... and did not run any part of the printing job through Phoenix, as he was obligated to do" in his role as Vice President of New Business Development. (*Id.* at ¶ 26; *see also id.* (alleging that this was the type of job that Phoenix performs and "would have performed had Smart brought the opportunity to Phoenix").) Phoenix alleged that Anello confronted Smart, and Smart did not deny sending the job to Phoenix's competitor; rather, Smart allegedly claimed that his employment contract with Phoenix did not prevent him from sending printing business to another company either directly or through his wife. (*Id.* at ¶ 27.)

On May 3, Smart filed his Answer to the Counterclaim. (Doc. No. 9.) Smart denied that he breached any fiduciary duty. (*See, e.g., id.* at ¶¶ 33–39.)

### D. Smart Files Another Charge with the EEOC and Amends His Complaint

Shortly after Phoenix filed its Counterclaim, on April 26, Smart filed a second Charge of Discrimination with the EEOC and the PHRC against the Corporate Defendants, Green, and Anello. (Doc. No. 18, Ex. D at 43–45.) In the Second Charge, Smart alleged that Defendants' filing of the counterclaim was retaliatory and done solely to "punish [him] for engaging in protected activity (i.e., filing [his] first charge of discrimination and [the] subsequent federal court complaint)." (*Id.* at 44.)

On May 20, the EEOC dismissed the Second Charge and issued a right to sue letter. (*Id.*, Ex. E at 48.) Smart then moved for leave to amend his original complaint to add claims for unlawful retaliation based on the Counterclaim. (Doc. No. 14.) Defendants did not oppose the motion, and the Court granted Smart leave to amend. (Doc. Nos. 16–17.) On July 26, 2021, Smart filed his Amended Complaint. (Doc. No. 18.)

As noted *supra*, Smart amended his complaint to include aiding and abetting claims against Anello under the PHRA and PFPO and added ADA, PHRA, and PFPO retaliation claims against the Corporate Defendants based on the Counterclaim. (*See id.*) Presently before the Court is Defendants' motion to dismiss those added claims. (Doc. No. 20.) Smart opposes the motion. [3] (Doc. No. 22.)

### II. Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In deciding a motion to dismiss under Rule 12(b)(6), the Court must accept as true all well-pleaded facts in the non-moving party's complaint. *Castleberry v. STI Grp.*, 863 F.3d 259, 263 (3d Cir. 2017). However, the Court need not "accept ... a legal conclusion couched as a factual allegation." *Id.* (quotation marks omitted). To state a claim for relief, the plaintiff must provide more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

### III. Discussion

**\*4** First, Defendants argue that Smart's newly added retaliation claims against the Corporate Defendants under the ADA, the PHRA, and the PFPO should be dismissed because Smart has not suffered an adverse employment action. Second, Defendants argue that Smart's aiding and abetting claims against Anello must be dismissed because Smart did not administratively exhaust his remedies as to Anello. We address each in turn.

### A. Retaliation Claims

A plaintiff bringing an employment retaliation claim must plead that he: (1) engaged in a protected activity, (2) suffered an adverse employment action, and (3) a causal connection existed between the protected activity and the adverse action. *Feliciano v. Coca-Cola Refreshments USA, Inc.*, 281 F. Supp. 3d 585, 592 (E.D. Pa. 2017). It is undisputed that Smart engaged in protected activity when he filed a Charge of Discrimination against Defendants and when he filed his subsequent lawsuit. However, the Corporate Defendants argue that the Counterclaim did not constitute an adverse action because it was compulsory and because Smart has not sufficiently pleaded that the Counterclaim was objectively baseless. We agree.

Under *Burlington Northern & Santa Fe Railway Co. v. White*, a plaintiff bringing a retaliation claim "must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it might well have dissuaded a reasonable worker from making or supporting a charge of discrimination." 548 U.S. 53, 68 (2006). "[C]ourts are split on whether filing a counterclaim is an adverse action." *Berrada v. Cohen*, 792 F. App'x 158, 164 (3d Cir. 2019). However, some district courts within this Circuit have held that "the filing of a counterclaim by an employer could dissuade a reasonable worker from engaging in protected activity, thus constituting unlawful retaliation." *Romero v. Allstate Ins. Co.*, No. 01-3894, 2016 WL 3654265, at \*11–12 (E.D. Pa. July 6, 2016); *see also Brown v. T.D. Bank, N.A.*, Civil Action No. 15-5474, 2016 WL 1298973, at \*7 (E.D. Pa. Apr. 4, 2016) ("[O]ther courts have found that the filing of a counterclaim by an employer might well ground a retaliation claim, since an employee might choose to withdraw her charges of discrimination rather than face counterclaims which directly attack the integrity of the plaintiff." (cleaned up) (collecting cases)).

Even assuming for the purposes of this motion that a counterclaim is an adverse action, Smart's retaliation claims must nonetheless be dismissed. As the Third Circuit has noted, "[c]ourts holding that a counterclaim can be an adverse action require that the counterclaim be baseless." *Berrada,* 792 F. App'x at 164. *Accord Pawlowski v. Kitchen Expressions Inc.,* 19-CV-7052 (PKC) (RML), 2017 WL 10259773, at *5 (E.D.N.Y. Dec. 15, 2017) ("A counterclaim cannot, however, constitute an adverse employment action unless it is frivolous. When the counterclaim has merit, it is not an adverse employment action. In other words, only if a counterclaim is baseless can it constitute retaliation under employment law."). "Even if [a] counterclaim[ ] ultimately lacks merit, that does not mean [it is] 'baseless.' " *Berrada v. Cohen,* Civil Action No. 16-574 (SDW)(LDW), 2017 WL 1496930, at *6 (D.N.J. Apr. 24, 2017), *aff'd,* 792 F. App'x 158 (3d Cir. 2019). Rather, "[c]ourts applying the 'baseless' standard have defined baseless as akin to 'frivolous (and therefore sanctionable).' " *Id.* (citations omitted); *see also* Black's Law Dictionary (11th ed. 2019) (defining "baseless" as "having no basis in fact or sound reason; without any foundation or support; groundless").

**\*5** To plead that a counterclaim is baseless, a plaintiff must do more than merely contest the factual allegations underlying the counterclaim or the merits of the counterclaim. *See, e.g., Berrada,* 2017 WL 1496930, at *6 (denying the plaintiff's motion to amend the complaint to add a retaliation claim based on the defendant's counterclaims as futile where the plaintiff's proposed amended complaint merely "contest[ed] the facts underlying the counterclaims" but did not plead "that they are frivolous or sanctionable" and "the allegations in plaintiff's [proposed amended complaint] provided no basis to conclude that [the] counterclaims [were] baseless"). Rather, for a retaliation claim to survive the motion to dismiss stage where the employer's counterclaim is alleged to be the adverse action, a plaintiff must plead facts from which the court can reasonably infer that the counterclaim is objectively baseless. *See Romero,* 2016 WL 3654265, at *13 (determining whether "the plaintiffs plead[ed] facts from which [the court] can reasonably infer [the defendant's] counterclaims are objectively baseless, made in bad faith [sic] brought with a retaliatory motive"); *see also Sharqawi v. Kirby Co.,* Case No. 1:20cv00271, 2022 WL 1227327, at *6 (N.D. Ohio Apr. 26, 2022) ("[T]here must ... be some factual allegation that the compulsory counterclaim was baseless or pursued in bad faith."); *Viera,* 2021 WL 396687, at *12 ("[A] plaintiff must allege sufficient facts to

raise a reasonable expectation that [discovery] will show that the defendant's counterclaims were baseless, brought with a retaliatory motive and lack[ ] a reasonable basis in law and fact." (cleaned up)); *Morrissey v. CCS Servs., PLLC,* Case No. 19-cv-13027, 2020 WL 5878214 at *4 (E.D. Mich. Oct. 2, 2020) ("To sufficiently allege that a counterclaim is an adverse action in a FLSA retaliation claim, a Plaintiff must put forth facts that the counterclaims were either baseless, frivolous, or in bad faith with retaliatory motivation.");

*Warner v. Sims Metal Mgmt.,* No. C 13-02190 WHA, 2013 WL 4777314, at *2 (N.D. Cal. Sept. 6, 2013) ("Plaintiff must explain the reason that defendant's counterclaims are baseless with specific factual allegations."). Smart has not done so here.

For example, in *Morrisey,* the plaintiff sued her former employer, alleging overtime violations of the Fair Labor Standards Act ("FLSA"), and in an amended answer, the defendants brought three counterclaims against the plaintiff. 2020 WL 5878214, at *1. The plaintiff then amended her complaint to include a FLSA retaliation claim based on the defendants filing of the counterclaims. *Id.* The court granted the defendants' motion to dismiss because the plaintiff claimed that the defendants were "motivated to file counterclaims by Plaintiff's filing of the lawsuit" and that the counterclaims were "filed in retaliation of plaintiff exercising her legally protected right," but offered no facts to support these conclusory assertions. *Id.* at *4; *see also Sharqawi,* 2022 WL 1227327, at *6 (granting motion to dismiss where the plaintiff alleged that a compulsory counterclaim filed by the defendant was retaliatory because the complaint did "not include factual assertions sufficient to allege that the counterclaim is baseless or was initiated in bad faith").

In contrast, in *Romero,* the court denied the defendant-employer, Allstate's, motion to dismiss a retaliation claim based on counterclaims because the plaintiffs pleaded facts from which the court could reasonably infer that the counterclaims were baseless. 2016 WL 3654265, at *13–14. There, Allstate brought counterclaims for breach of the covenant of good faith and fair dealing, unjust enrichment, negligent misrepresentation, and fraud. *Id.* at *11. "Each of the[ ] counterclaims plead[ed] the [plaintiff-employees] entered into [a] Release intending to breach the Release by suing Allstate." *Id.* In a consolidated complaint, the plaintiff added retaliation claims based on the counterclaims, alleging that the counterclaims were baseless because: "the language of the Release did not contain any promise not to sue Allstate"; representations Allstate's attorneys made to the

EEOC in May 2000 showed that Allstate knew all along that it could not satisfy critical elements of the counterclaims; Allstate knew "that it could not possibly prove detrimental reliance under circumstances when it decided to proceed with the Program in the face of the EEOC's determination that the Release was invalid and request to suspend the Release requirement"; and Allstate ultimately requested leave to amend its counterclaims to withdraw three of the four counterclaims once threatened with sanctions. *Id.* at \*13–14. Based on these specific allegations, the court found that the plaintiffs sufficiently pleaded that the counterclaims were objectively baseless. *Id.* at \*14.

**\*6** This case is akin to *Morrisey* and distinguishable from *Romero.* As to each of his three retaliation claims, Smart pleads the following:

- In their answer, Defendants asserted a baseless counterclaim against Plaintiff for an alleged breach of fiduciary duty/ duty of loyalty.

- Defendants' counterclaim rests on the unfounded allegation that Plaintiff "acted in direct competition" with Defendants' business by diverting a "large printing job for a consumer products company to a competitor of Phoenix."

- Defendants' allegations against Plaintiff are false.

- Defendants filed the counterclaim against Plaintiff in bad faith.

- Plaintiff never acted "in direct competition" with Defendants; nor did he wrongfully divert business from Phoenix to a competitor.

- Defendants' assertion of this counterclaim against Plaintiff constitutes retaliation for Plaintiff's complaints of Defendants' discriminatory conduct and his prosecution of same.

- Defendants' counterclaim is frivolous and filed as a sole result of Plaintiff's assertion of his protected statutory rights.

- Defendants asserted this counterclaim against Plaintiff to retaliate against and punish him for having engaged in protected activity under the ADA, PHRA, and PFPO.

- Defendants' actions would cause reasonable people, like Plaintiff, who have had their civil rights violated, to be

deterred from filing claims under the ADA, PHRA, and PFPO.

(Doc. No. 18 at ¶¶ 92–100; *see also id.* at ¶¶ 111–16, 127–32, 151–56.) But most of these allegations, such as Smart's claim that Defendants' account of the facts is "false" and "unfounded," amount to mere denials of Defendants' allegations; yet Smart fails to provide any factual support for his denials. And the rest of Smart's allegations are *legal* conclusions which the Court must disregard when deciding a motion to dismiss. As just one example, Smart's statement that "Defendants asserted a baseless counterclaim against Plaintiff" is not a well-pleaded factual allegation which the Court is required to accept as true. The same is true of the allegations that Defendants' counterclaim is "frivolous" and that Defendants filed it in "bad faith." Searching the entirety of Smart's First Amended Complaint, the Court is unable to discover *any* non-conclusory factual allegations which make it plausible that the Counterclaim was baseless. This is fatal to Smart's ADA, PHRA, and PFPO retaliation claims.[4] *See Morrisey,* 2020 WL 5878214, at \*1; *see also* 🟡 *Warner,* 2013 WL 4777314, at \*2 ("Plaintiff's counterclaim in reply [to the defendant's counterclaim] includes wholly conclusory statements, such as 'none of defendant's accusations have merit.' ... Vague uses of weasel phases such as 'completely without merit' ... will not defeat a motion to dismiss for failure to state a claim." (cleaned up)). *Contra Romero,* 2016 WL 3654265, at \*13–14.

**\*7** In addition, we note that the Third Circuit considered the compulsory nature of a counterclaim in holding that a retaliation claim based on a counterclaim fails to state a claim, albeit in a non-precedential opinion. *See Berrada,* 792 F. App'x at 164. In *Berrada,* the district court denied the plaintiff's motion to amend to add a FLSA retaliation claim based on the defendant's counterclaims, finding that the proposed claim was futile. The Third Circuit affirmed, and one of its reasons was that "the counterclaims were compulsory, and there is nothing suspicious about Defendants' counterclaims when the Rules required Defendants to assert them or risk waiving them." *Id. Contra Viera,* 2021 WL 396687, at \*13–15 (denying motion to dismiss retaliation claim where the plaintiff pleaded facts to plausibly allege that the defendants acted with retaliatory motive and where the counterclaim was permissive in nature).

Here, Smart does not challenge Defendants' assertion that the Counterclaim was compulsory. And, in any event, the Court agrees that the Counterclaim is compulsory. As in *Berrada,*

the Court finds that compulsory nature of the counterclaim weighs against finding that the Counterclaim is baseless.

For these reasons, the Court finds that Smart has failed to plead that Smart suffered an adverse reaction for purposes of a retaliation claim, as he has not pleaded that the Corporate Defendants' breach of fiduciary duty counterclaim is objectively baseless. Therefore, dismissal is warranted on Smart's ADA, PHRA, and PFPO retaliation claims.

### B. Aiding and Abetting Claims Against Anello

Defendants also move to dismiss the aiding and abetting claims against Anello, arguing that Smart failed to exhaust his administrative remedies as to Anello. Anello was not named in in the first Charge filed with the EEOC. (*See* Doc. No. 18, Ex. A at 33.) However, Anello was named in the second Charge that alleged retaliation based on Defendants' Counterclaim (*see id.*, Ex. D at 43), and in his response, Smart clarifies that he is only bringing the aiding and abetting claims against Anello concerning the retaliation claims (*not* the discrimination claims alleged in the original Complaint). (*See* Doc. No. 22 at 20.) Therefore, Defendants' administrative exhaustion argument is moot.

Nonetheless, because Smart admits that the aiding and abetting claims are premised solely on the newly added retaliation claims, and for the reasons discussed above, the Court dismisses the retaliation claims for failure to state a claim, it follows that the aiding and abetting claims against Anello must also be dismissed.

### IV. Conclusion

For the foregoing reasons, the Court grants Defendants' motion to dismiss the ADA, PHRA, and PFPO retaliation claims against the Corporate Defendants (Counts II, IV, and VII) and the aiding and abetting claims brought against Anello (Counts V and VIII). This dismissal is without prejudice.

An appropriate Order follows.

### All Citations

Slip Copy, 2022 WL 3229321

---

## Footnotes

1    Green and Smart negotiated the terms of the contract. (*See id.* at ¶¶ 33–47.) Under the contract, Smart was guaranteed a three-year term of employment and a compensation rate of $1 million per year. (*Id.* at ¶ 44.) In addition, Smart was to be paid a signing bonus "commensurate with any commission" he would be required to forego by virtue of leaving his former company. (*Id.* at ¶ 45.) Smart was also to earn a one-percent commission on all sales generated by salespersons recruited by Smart to join Phoenix. (*Id.*) In his Amended Complaint, Smart alleges that Green made false representations during contract negotiations concerning the status of Phoenix's Comcast account. (Id. at ¶¶ 49–50.)

2    Smart did not name Anello as a Respondent in the first Charge. (*See also* Doc. No. 18, Ex. A at 33.)

3    On September 7, 2021, Defendants filed a motion for leave to file a reply brief. (Doc. No. 23.) On November 21, 2021, Smart died (*see* Doc. No. 26 (Suggestion of Death)), and the Court stayed the case pending substitution of Smart's estate as the proper party and directed the Clerk of Court to place the case into suspense (Doc. No. 29). On January 28, 2022, Smart's estate filed a motion to substitute proper party (Doc. No. 30), which the Court granted on February 4 (Doc. No. 31). On June 21, 2022, this case was reassigned from the Honorable C. Darnell Jones, II to the Honorable Karen Spencer Marston. (Doc. No. 32.) On June 24, the Court removed this case from suspense and granted Defendants' motion for leave to file a reply. (Doc. No. 33.) On July 8, Defendants filed their reply. (Doc. No. 36.)

4    Defendants argue that because Smart has "repeatedly admitted to the key facts underlying the Counterclaim—namely that he sent at least some business to a competitor while employed by Phoenix," it follows that the

2022 WL 3229321

Counterclaim cannot be baseless. (*See* Doc. No. 36 at 5; *see also* Doc. No. 20-1 at 11 ("In the instant matter, Plaintiff has done nothing to 'disprove the challenged lawsuit's objective legal viability. To the contrary, Plaintiff has provided the Court with at least one example of his directing a printing transaction to a company other than Phoenix."); *id.* at 4 (stating that in "prior representations to the Court," Smart has acknowledged that "he facilitated a commercial printing transaction for his wife's business").) However, when deciding a motion to dismiss for failure to state a claim, we may consider only the allegations in the Amended Complaint and any documents attached thereto or that are integral to or relied upon in the Amended Complaint. *See, e.g.*, *Berrada*, 2017 WL 1496930, at *2 ("In evaluating a claim under the Rule 12(b)(6) standard, 'courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint,' and 'matters of public record of which the court can take judicial notice.' " (citation omitted)). And Defendants do not point us to any allegations in the Amended Complaint or the attached exhibits in which Smart admitted to sending printing jobs to other companies.

---

**End of Document**

© 2022 Thomson Reuters. No claim to original U.S. Government Works.

---